## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Attorney Complaint No(s).:

CHRISTOPHER S.P. GREGORY,

      Complainant,

v.

MARIA BERKENKOTTER,
NATHAN B. COATS,
BRYAN FIELDS,
RICHARD GABRIEL,
NATALIE HANLON-LEH,
MELISSA HART,
WILLIAM HOOD, III,
MONICA MÁRQUEZ,
LEEANN MORRILL,
ANDREW ROTTMAN,
CARLOS SAMOUR,
GRANT SULLIVAN, AND
KEVIN TRASKOS,

      Respondent(s).

---

## ATTORNEY MISCONDUCT COMPLAINT;
## EXHIBITS 1-8

---

### INTRODUCTION

"There is no kind of dishonesty into which otherwise good people more easily and frequently fall than that of defrauding the Government."–Benjamin Franklin

Regretfully, this attorney misconduct complaint and invocation of this Court's

disciplinary jurisdiction under D.C.COLO.LAttyR 1(c) has become necessary because the

Justices of the Colorado Supreme Court have systematically undermined and obstructed

Colorado's judicial disciplinary and attorney regulation structures. The ongoing Colorado



PLAINTIFF'S
EXHIBIT
1

Judicial Scandal began in 2018 and its coverup has continued through the cascading misconduct of numerous judges, attorneys, and public officials/employees.  The breadth of the conspiracy and the protection racket involved makes regulation of the underlying misconduct unwieldy. Consequently, this attorney misconduct complaint is intended to initiate the process of seeking accountability by focusing upon the keystone of the Colorado Judicial Scandal—attorneys admitted to practice before this Court and/or the U.S. Court of Appeals for the 10th Circuit knowingly withheld material information from the Colorado Office of the State Auditor (OSA) as the OSA performed its continuous, ongoing, and federally-required single statewide audit. Through uncontroverted evidence, probable cause exists to suspect that the involved judges and attorneys committed various federal felony-level crimes, including but not limited to obstruction of justice (18 U.S.C. § 1503), false statements (18 U.S.C. § 1001), and obstruction of a federal audit (18 U.S.C. § 1516).  *See also United States v. Jones*, 41 Fed. Appx. 220, 223 (10th Cir. 2002) (recognizing private contractor performing required federal audit as a federal auditor completing an "official investigation"); 31 U.S.C.. §§ 7501-7507 (the federal Single Audit Act).

The involved attorneys, include but are not limited to the following individuals, who are admitted to practice before either or both this Court and the U.S. Court of Appeals for the 10th Circuit:

> Maria Berkenkotter (D. Colo. Atty. Reg. # 596763; admitted to 10th Circuit),
> Nathan B. Coats (D. Colo. Atty. Reg. # 591795, admitted to 10th Circuit),
> Richard Gabriel (D. Colo. Atty. Reg. # 682419; admitted to 10th Circuit),
> Natalie Hanlon-Leh (D. Colo. Atty. Reg. # 704484; admitted to 10th Circuit),
> Melissa Hart (D. Colo. Atty. Reg. # 1980828; admitted to 10th Circuit),
> William Hood, III (D. Colo. Atty. Reg. # 688626; admitted to 10th Circuit),
> Monica Márquez (D. Colo. Atty. Reg. # 799305; admitted to 10th Circuit),
> LeeAnn Morrill (D. Colo. Atty. Reg. # 1828438; admitted to 10th Circuit),
> Andrew Rottman (D. Colo. Atty. Reg. # 1896776; admitted to 10th Circuit),
> Carlos Samour (D. Colo. Atty Reg. # 703570),

Grant Sullivan (D. Colo. Atty. Reg. # 1850542; admitted to 10th Circuit), and Philip Weiser (Admitted to 10th Circuit).

At all times relevant, Maria Berkenkotter, Brian Boatright, Nathan Coats, Richard Gabriel, Melissa Hart, William Hood III, Monica Márquez, and Carlos Samour were justices of the Colorado Supreme Court (referred to herein collectively as the "Justices"). Brian Boatright, however, is not admitted to practice before this Court or the 10th Circuit. Consequently, Justice Boatright is not listed as an attorney / respondent in this Complaint.

The attorney misconduct at issue has been further complicated by the failure of Assistant U.S. Attorney Bryan Fields, Assistant U.S. Attorney Kevin Traskos, and other federal attorneys to disqualify themselves and the Department of Justice (DOJ)—Denver Office from the investigation of and prosecution decisions made as to the Colorado Judicial Scandal. Mr. Traskos is Colorado Supreme Court Justice Melissa Hart's husband and currently serves as Chief of the DOJ-Denver Office's Civil Division (which oversees civil enforcement of public fraud and public corruption cases). In addition to violating the DOJ's internal disqualification standards, there is probable cause to suspect criminal violations of 18 U.S.C. § 208. *See also* 5 C.F.R. § 2635.501-503 (defining general grounds for disqualification to ensure appearances of impartiality); 28 C.F.R. § 45.2 (defining conflicts of interest in criminal investigations including political and personal relationships). Bryan Fields and Kevin Traskos are admitted to practice before both this Court and the U.S. Circuit Court of Appeals for the 10th Circuit.

A criminal conviction (or a criminal charge) is not a prerequisite for judicial discipline and/or attorney discipline. *See, e.g., In re Cruikshanks*, 648 S.E.2d 19, 23 (W. Va. 2005) (neither conviction nor criminal charge prerequisite to judicial discipline where state supreme court had inherent authority and duty to "promote and protect the honor, integrity, dignity, and efficiency of

the judiciary and the justice system"); *People v. Parsley*, 109 P.3d 1060 (Colo. PDJ 2005)

(criminal conviction not predicate to attorney discipline under Colo. RPC 8.4(b), (c);

"Disbarment is the presumptive sanction for the commission of a serious crime involving

dishonesty."). The criminal conduct involved here, however, supports recognition that the

involved attorneys subject to this Court's and/or the 10th Circuit Court of Appeals' disciplinary

jurisdiction have further violated other standards of conduct as adopted by this Court through the

Colorado Rules of Professional Conduct. D.C.COLO.LAttyR 2(a); *accord* 10th Cir. R. Add. III,

§ 2.3 (10th Circuit's disciplinary jurisdiction includes enforcing "the Code of Professional

Responsibility adopted by the highest court of any state to which the attorney is admitted to

practice").

Ultimately, the Colorado Judicial Scandal involves a broader pattern of intimidation,

retaliation, and an enforced culture of silence facilitated through publicly-funded hush money /

non-disclosure agreements (NDAs), self-controlled "independent" investigations, and self-

serving public relations strategies. The Colorado Judicial Scandal continues to wrongfully cost

taxpayers tens of millions of dollars.

This Complaint is also related to a separate judicial misconduct proceeding pending

before the U.S. Court of Appeals for the 10th Circuit. The parallel judicial discipline proceeding

has been docketed as Judicial Complaint No. 10-25-90048 and is subject to a petition for review

according to 10th Circuit JCD Rule 18(b). Because of circumstances described in Judicial

Complaint No. 10-25-90048 and in the accompanying materials,[1] this Complainant respectfully

---

[1] A former member of this Court's Committee on Conduct, John F. Walsh III, was directly
involved in the alleged attorney misconduct. A current member of this Court's Committee on
Conduct, Kathyrn Stimson, is, likewise, a material witness as to the allegations of misconduct

requests that this Court and the U.S. Court of Appeals for the 10th Circuit address both apparent

and actual conflicts of interest within the membership of this Court's Disciplinary Panel, this

Court's Committee on Conduct, and the 10th Circuit's Judicial Council.  D.C.COLO.LAttyR 6(a),

---

asserted through this Complaint.  There are also acknowledged grounds for the disqualification of this Court's entire Disciplinary Panel, including Chief District Court Judge Philip Brimmer. Exhibit 8 further provides grounds for 10th Circuit Court of Appeals Chief Judge Jeffrey Holmes to disqualify himself from consideration of this Complaint according to the procedures defined in 10th Cir. R. Add. III, § 4.3, 5.3. Because of circumstances described in Exhibit 2, it would also be "clearly inappropriate" for the 10th Circuit to appoint the Colorado Office of Attorney Regulation Counsel as disciplinary counsel in this case.  10th Cir. R. Add. III, § 4.4.

The Complainant further notes that during the fall of 2023, while still serving as the Executive Director of the Colorado Commission on Judicial Discipline (CCJD), he had applied for appointment to this Court's Committee on Conduct expressly because of the breakdown of Colorado's attorney regulation system.  At the time, the Complainant was rightfully apprehensive of imminent retaliation for having internally raised the issues presented in this Complaint.

The following Exhibits are filed with this Complaint and incorporated by reference:

- Exhibit 1—Anonymous Fraud Hotline complaint submitted by the Complainant on October 20, 2024 and supplemental anonymous Fraud Hotline complaint submitted by the Complainant on November 4, 2024;
- Exhibit 2—Anonymous request for evaluation (RFE) of judicial conduct submitted by the Complaint to the CCJD on October 20, 2024;
- Exhibit 3—Appendices to the October 20, 2024 RFE;
- Exhibit 4—Dually filed public comments to the Colorado Judicial Discipline Rulemaking Committee (CJDRC) and RFE with appendices submitted to the CCJD on August 25, 2025;
- Exhibit 5—First supplement to combined public comments and RFE submitted on September 12, 2025;
- Exhibit 6—Second supplement to combined public comments and RFE with appendix submitted on September 12, 2025;
- Exhibit 7—Third supplement to combined public comments and RFE with appendices submitted on September 30, 2025; and
- Exhibit 8—Complainant's email correspondence with the American Inns of Court and request for clarification as to 10th Circuit Chief Judge Jeffrey Holmes's involvement in the decision to award Justice Richard Gabriel the 2024 AIC 10th Circuit Professionalism Award.

(d); *see also* D.C.COLO.LAttyR 7(h) (addressing conflict mechanism for complaints brought against a sitting member of the Committee on Conduct); 10th Cir. R. Add. III, § 4.3 (Chief Judge or designee authorized to appoint Disciplinary Panel); *Cf.* 10th Cir. JCD Rules 25 (disqualification) and 26 (transfer to another Judicial Council).

## RELEVANT BACKGROUND

On July 15, 2018, Colorado State Court Administrator's Office (SCAO) Controller Myra Dukes discovered and internally reported evidence that SCAO Chief of Staff Mindy Masias had intentionally altered a receipt as part of a request for personal reimbursement.  State Court Administrator Christopher Ryan immediately recognized Masias's suspected conduct as material to a continuous, recurring annual single statewide audit of the Judicial Department's internal controls conducted as a component for certification of the State of Colorado's Annual Comprehensive Financial Report (ACFR).  Like other states and governments, Colorado is required to produce its ACFR as a condition of receiving federal funding and for its federally granted authority to issue bonds.  Following internal and external investigations, the Justices of the Colorado Supreme Court collectively decided to terminate Masias's employment.  As part of the notice provided to Masias, State Court Administrator Ryan explained the materiality of Masias's financial misconduct to the OSA's single statewide audit and the ACFR.  Instead of accepting her termination or agreeing to the severance offer made by the Colorado Judicial Branch, Masias instead activated leave under the Family Medical Leave Act (FMLA).

In December 2018, Masias's colleague and successor as SCAO Human Resources Director, Eric Brown, began negotiating a multi-million-dollar, sole-source contract for Masias to provide leadership training services to the Judicial Department.  As part of these negotiations,

-6-

Brown met with then-Chief Justice Nathan Coats, Counsel to the Chief Justice Andrew Rottman, and State Court Administrator Ryan to essentially present an ultimatum that Masias would release compromising information about the Department and the Justices if an agreement could not be reached. Brown's talking points (including Masias's allegations of covered up judicial, attorney, and employee misconduct) were reduced to writing in a document later referred to as the Masias Memo. SCAO Legal Counsel Terri Morrison was also contemporaneously aware of the Masias Memo and the meeting that occurred between Brown, Coats, Rottman, and Ryan.

Masias remained on FMLA leave until March 15, 2019, when she executed a separation agreement, effective March 19, 2019, that allowed her to keep her income from paid leave in exchange for a general release of claims and a non-disclosure agreement. Masias executed her separation agreement with the expectation of a 5-year, $2.66-2.75 million sole-source contract to provide leadership training services. To provide some perspective, under this contract Masias would have been paid approximately three-times the salaries of the individual Justices (i.e. $532,000 per year). Before State Court Administrator Ryan signed the sole-source determination on March 25, 2019, Chief Justice Coats informed all the other Justices of Masias' resignation and her proposal for the leadership training program. Through an April 4, 2019 email chain between Chief Justice Coats and Justice Melissa Hart about Masias applying to become the Utah State Court Administrator, Coats explained that Masias had signed an NDA and was negotiating the Masias Contract. With Coats's approval, State Court Administrator Ryan then circulated the $2.66-2.75 million Masias Contract for its first execution on April 11, 2019. On April 15, 2019, however, an anonymous complaint was submitted to the OSA's Fraud Hotline that alleged widespread occupational fraud within the SCAO and specifically involving additional financial

-7-

misconduct by Masias.  The anonymous Fraud Hotline complaint was personally sent to each of the Justices, to Attorney General Phil Weiser, and to Governor Jared Polis.  Upon receiving a letter from State Auditor Dianne Ray inquiring as to how the Judicial Department wished to proceed in response to the Fraud Hotline complaint, Chief Justice Coats confirmed that he had "look[ed] into th[e] allegations . . . in consultation with the Attorney General . . . and the Attorney General's Staff."  In his response dated May 29, 2019, Chief Justice Coats, however, did not inform the State Auditor that the $2.66-2.75 million sole-source Masias Contract had already been approved or that the Masias Contract would be executed a second time three business days later—June 3, 2019—and one business day after SCAO Controller Myra Dukes retired.  Chief Justice Coats further knowingly concealed the existence of the Masias Memo and its significance in negotiations of the Masias Contract from the OSA.

In July 2019, the existence of the Masias Contract became public and the Justices accepted State Court Administrator Ryan's offer to resign.  At the time, the Justices, through an official statement made by the Colorado Judicial Department, confirmed that they had collectively approved and made the decision to cancel the Masias Contract.  As part of his debriefing, Ryan met with 1st Assistant Attorney General LeeAnn Morrill and Assistant Solicitor General Grant Sullivan to discuss and turn over his copy of the Masias Memo.[2]  At that time, SCAO Legal Counsel Terri Morrison also had access to a copy of the Masias Memo.  In a July 19, 2019 email exchange with Andrew Rottman, Morrill acknowledged possession of the Masias Memo, its materiality to the OSA's Fraud Hotline investigation, and the need to preserve

---

[2] David Migoya, *Colorado Attorney General's Office Lawyers Knew About Judicial Misconduct Memo: Whether they could, should or did tell Attorney General, other authorities is unclear*, DENVER POST, February 22, 2021.

the document.  Despite this email and later deposition testimony from Justice Melissa Hart confirming that the Justices were aware of the Masias Memo in 2019, the Masias Memo was intentionally withheld from the OSA (and from the CCJD) for over 1 ½ years until then-former State Court Administrator Ryan came forward and publicly revealed the document's existence. In the meantime, the OSA issued a December 2019 management letter as part of the ACFR audit and a November 18, 2020 SCAO Performance Audit Report that both recognized the breakdown of SCAO's internal controls and appearances of impropriety created by the Masias Contract.

In response to State Court Administrator Ryan's revelation of the Masias Memo's existence, the Justices and the other attorneys listed in this Complaint collaborated on damage control that included the Justices issuing separate public statements on February 4, 2021 and on February 8, 2021.  The collaboration between the Justices, the attorneys listed in this Complaint, other public officials, and former U.S. Attorney for the District of Colorado John F. Walsh, III (who was then a partner at the national law firm WilmerHale) is documented through internal Judicial Department email chains created concurrently with the drafting of the public statements. The public statements, in turn, confirmed that the Justices and the other attorneys were fully informed by former Chief Justice Coats and were complicit in knowingly concealing material information from the OSA as it performed a federal function through its ACFR audit, its 2020 Performance Audit of SCAO, and its Fraud Hotline Investigation.   These circumstances have been further proven through Chief Justice Coats's admissions and judicial discipline.  *Matter of Coats*, 2023 CO 44, ¶¶ 4(9)-(14), (20)-(23), 6.  A separate, though only partially disclosed, attorney regulation investigation of former Chief Justice Coats concluded with findings (upon

clear and convincing evidence) that he had failed to report the misconduct of subordinate attorneys, as required by Colo. RPC 5.1 and 8.3.[3]

When the OSA finally issued its Fraud Hotline Investigation Report on February 4, 2022 with referrals for prosecution, interference, obstruction, and delay of the Fraud Hotline investigation caused state statutes of limitations to lapse. The Justices, Andrew Rottman, Terri Morrison, Attorney General Phil Weiser, Chief Deputy Attorney General Natalie Hanlon-Leh, LeeAnn Morrill, and Grant Sullivan were all directly involved in this interference, obstruction, and forced delay.

At various times, the Complainant reported these circumstances to federal law enforcement (specifically Bryan Fields, the DOJ—Denver Office, the DOJ Public Integrity Section, and the FBI) and to the CCJD only to be intentionally ignored. Exhibits 4-6 further document how these circumstances are now being intentionally disregarded or suppressed by the Colorado State Commission on Judicial Performance, the Colorado Civil Rights Division, the Colorado Judicial Discipline Rulemaking Committee, and the CCJD. Moreover, there appears to be cultural resistance within the press, Colorado's political parties, and the Colorado General Assembly to holding the attorneys listed in this Complaint (particularly Attorney General Weiser) and others involved in the Colorado Judicial Scandal accountable.

---

[3] The Colorado Legal Regulation Committee's public statement dated January 20, 2023, states, in relevant part:

> "Based on the evidence provided by outside counsel, the Committee believes that there is clear and convincing evidence that the former Chief Justice violated the rules with respect to his duty to report what appeared to be improper conduct of other lawyers which contributed to the ongoing consideration of awarding the [Masias] contract."

-10-

ANALYSIS

Attorneys admitted to practice before this Court are expected to abide by standards of professional conduct defined through the Colorado Rules of Professional Conduct.  Under the Colo. RPC, the Colorado Code of Judicial Conduct (the Code), and the Code of Conduct for United States Judges (the federal Code), both judges and attorneys are required to report judicial or attorney misconduct and/or to otherwise take "appropriate action."  Colo. RPC. 8.3; Canon Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.5, 2.6, 2.12, 2.15, 2.16 of the Code; Canons 1, 2(A)-(B), and 3(B)(6) of the federal Code.  Similarly, non-compliance with the law (whether criminal, civil, or ethical rules) also violates the respective codes of conduct.  In proceedings before this Court and the 10th Circuit, violations of the standards of professional conduct are proven through a preponderance of evidence.  D.C.COLO.LAttyR 7(e)(1), (f).  As previously noted, neither a criminal conviction nor even a criminal charge is prerequisite to recognizing violations of Colo. RPC 8.4(a-1), (b)-(d), (f), (h), Canon Rules 1.1 and 1.2 of the Code, and/or Canon 2(A) of the federal Code.

Despite a complex history of ancillary judicial, attorney, and employee misconduct, there are clear grounds for discipline of the respondent attorneys.  The Justices and those who helped them were aware of information material to the OSA's federally required single statewide audit / ACFR audit (including the contemplation of the $2.66-2.75 sole-source Masias Contract and the existence of the Masias Memo) and, yet, intentionally withheld/concealed the material information from the OSA and the CCJD (which had exclusive constitutional authority to investigate judicial misconduct).

There is probable cause to suspect that the Justices and those helping them committed the crimes of obstruction of justice, false statements, and obstruction of a federal audit.

The elements of obstruction of justice (18 U.S.C. § 1503) are:

1. The defendant corruptly,

2. Endeavored to influence, obstruct, or impede the due administration of justice,

3. With knowledge and specific intent to obstruct.

The elements of False Statements (18 U.S.C. § 1001) are:

1. The defendant, in a matter within the jurisdiction of the federal government,

2. Falsifies,

3. Conceals, or

4. Covers up by any trick, scheme, or device,

5. A material fact.

The elements of Obstruction of a Federal Audit are (18 U.S.C. § 1516) are:

1. The defendant,

2. With the intent to deceive or defraud the United States,

3. Endeavors to influence, obstruct, or impede a federal auditor,

4. In the performance of official duties relating to an entity receiving in excess of $100,000, directly(a) or indirectly in any 1-year period.

"'Federal auditor' means any person employed on a full- or part-time or contractual basis to perform an audit or a quality assurance inspection for *or on behalf of* the United States."  18 U.S.C. § 1516(b)(1) (emphasis added).

The intentional withholding of material information from the OSA and the CCJD by the Justices and those helping them violated Canon Rules 1.1 (Compliance with Law), 1.2 (Promoting Confidence in Judiciary), 1.3 (Abusing Prestige of Office), 2.2 (Impartiality and Fairness), 2.3 (Bias, Prejudice, and Harassment), 2.5 (Competence and Cooperation), 2.6 (Ensuring the Right to be Heard), 2.9(C) (Ex Parte Communications), 2.11 (Disqualification), 2.12 (Supervisory Duties), 2.15 (Responding to Judicial and Lawyer Misconduct), 2.16 (Cooperation with Disciplinary Authorities), 3.1 (Extrajudicial Activities in General), 4.1 (Political and Campaign Activities of Judges) of the Code and Colo. RPC 1.7(a)(2) (Conflict of Interest), 1.13(b) (Organization as Client), 3.3(a) (Candor Toward the Tribunal), 3.4 (Fairness to Counsel), 3.5(a) (Impartiality of Tribunal), 4.1 (Truthfulness in Statements to Others), 5.1 (Responsibilities of Supervisory Lawyer), 6.4 (Law Reform Activities), 8.3 (Reporting Professional Misconduct), 8.4 (a-1), (b)-(d), (f), (h) (violation of RPC, commission of criminal act, dishonesty/fraud/deceit, conduct prejudicial to administration of justice, assisting judicial misconduct, wrongfully harming others).

By failing to disqualify themselves and the DOJ-Denver Office from the investigation of and prosecution decisions as to the Colorado Judicial Scandal, Civil Division Chief Kevin Traskos and Assistant U.S. Attorney Bryan Fields similarly violated the law and should be subject to discipline for further violating their duties under Colo. RPC 1.7(a)(2), 1.10(a), 4.1, 5.1, 8.3, 8.4(a-1), (b)-(d), (f), (h).  By intentionally disregarding the Complainant's reporting of suspected crimes and public fraud, there is also probable cause to suspect that Bryan Fields and

Kevin Traskos jointly and severally committed the crime of obstruction of justice (18 U.S.C. §

1503) and that Kevin Traskos criminally violated 18 U.S.C. § 208.[4]

**WHEREFORE**, the Complainant respectfully requests that this Court, through a

conflict-free Disciplinary Panel and Committee on Conduct, initiate an investigation and attorney

discipline proceedings according to D.C.COLO.LAttyR 7.  Concurrently, the Complaint

respectfully requests that the U.S. Court of Appeals for the 10th Circuit initiate attorney discipline

proceedings under 10th Cir. R. Add. III.

Dated: September 30, 2025

/s/ Christopher S.P. Gregory
**Christopher S.P. Gregory, Esq.**
The Gregory Law Firm, LLC
201 Coffman St., #1822
Longmont, CO 80502
Telephone: (970) 648-0642
E-mail: cspgregory@thegregorylawfirm.net
*Pro Se* Attorney Complainant
Christopher S.P. Gregory

---

[4] 18 U.S.C. § 208(a) provides, in relevant parts:

**(a)** Except as permitted by subsection (b) hereof, whoever, being an
officer or employee of the executive branch of the United States
Government . . .  participates personally and substantially as a
Government officer or employee, through decision, approval, disapproval,
recommendation, the rendering of advice, investigation, or otherwise, in a
judicial or other proceeding, application, request for a ruling or other
determination, contract, claim, controversy, charge, accusation, arrest, or
other particular matter in which, to his knowledge, he, *his spouse*, minor
child, general partner, organization in which he is serving as officer,
director, trustee, general partner or employee, or any person or
organization with whom he is negotiating . . . has a financial interest--
Shall be subject to the penalties set forth in section 216 of this title.
(Emphasis added).

-15-

To the best of my knowledge, I declare under penalty of perjury under the law of Colorado that the foregoing facts and circumstances described in this Complaint are true and correct.

Executed on the 30th day of September 2025 at Longmont, Boulder County, Colorado.


_____
Christopher S.P. Gregory