The uploaded anonymous cover letter and request for evaluation (RFE) of judicial conduct submitted to the Colorado Commission on Judicial Discipline (CCJD) details a pattern of fraudulent conduct involving the Justices of the Colorado Supreme Court, Leadership within the Colorado Judicial Department, Colorado Attorney General Phil Weiser, Leadership within the Attorney General's Office, and within the CCJD itself.  A full copy of the RFE and supporting Appendices will be mailed separately due to file size.

If summarized and made relevant to purposes of the Fraud Hotline, there is substantial and reliable evidence that, for years, the Justices of the Colorado Supreme Court, Colorado Attorney General Phil Weiser, and other public officials/employees have conspired to openly engage in a pattern of misusing public funds, public resources, and the authority of their positions to unlawfully conceal evidence of misconduct by judges, attorneys, and public officials/employees. This fraudulent conduct includes a pattern of intimidation, retaliation, and the misuse of public funds (in excess of $4 million since 2019) to negotiate general waivers / non-disclosure agreements intended to silence victims, whistleblowers, and, even, other public officials.  The fraudulent conduct involved also includes a history of withholding material information from the Colorado Office of the State Auditor (OSA) and, otherwise, obstructing the OSA's single statewide audit, its previous fraud hotline investigation, and its 2020 performance audit of the State Court Administrator's Office (SCAO).  *See Matter of Nathan B. Coats*, 2023 CO 44, ¶ 6 (violation of Code of Judicial Conduct Canon Rule 2.5 supported public censure of former Chief Justice who with other Justices collectively approved the Masias Contract without notice to either the OSA or the SCAO's Financial Services Division (FSD) and despite personal knowledge of April 15, 2019 anonymous fraud report).

More specifically, the record includes evidence of various false claims that include but are not limited to: 1) the Masias Contract, 2) the Masias Separation Agreement, 3) the David Kribs Voluntary Separation Incentive (VSI) Agreement, 4) the Jane Hood Separation Agreement, 5) a separation agreement with an unidentified Judicial Department employee who was retaliated against for internally reporting former Denver Presiding Juvenile Court Judge D. Brett Woods's habitual intemperance, 6) the Justices knowingly allowing former 18th Judicial District Court Judge John Scipione to retain an over $189,530 windfall attributable to his judicial misconduct and bad faith litigation tactics, 7) a series of general waivers and non-disclosure agreements negotiated by the Attorney General's Office (in excess of $4 million since 2019), and 8) the Justices of the Colorado Supreme Court misusing approximately $350,000 of public funds to contract for "independent" investigations of their own conduct (as otherwise prohibited by Canon Rule 2.9 of the Colorado Code of Judicial Conduct).  The Justices have further misused an unquantified amount of public funds and have co-opted other judges and the State Commission on Judicial Performance to make public statements/endorsements and cover up the Justices' own probable judicial misconduct through the Court's statewide "listening tours" and "Workplace Culture Initiative."  As an indication of scope, for Fiscal Year 2024-25, the Justices sought a recurring annual appropriation of over $1.2 million to implement their ethically dubious initiative.  As also part of their FY 2024-25 budget request for the Judicial Department, the Justices resurrected the "leadership training program" at issue in the Masias Controversy with a requested initial appropriation of $500,000, increasing to $700,000 in FY 2025-26.  As before, this request creates appearances of impropriety in violation of the Colorado Code of Judicial Conduct as well as the Judicial Department's internal Code of Conduct. Additionally, the Justices have misused their access to SCAO employees, Supreme Court staff, the Attorney General's



Office, and the SCAO's internal Legal Counsel as a means of defending against and covering up allegations of the Justices' own judicial misconduct and violations of the law.  The Justices' fraud includes abusing their authority: 1) to prevent the OSA from previously making immediate, full, and timely referrals to law enforcement at all levels and 2) to prevent the OSA from publishing its complete prior Fraud Hotline Investigation Report and supporting evidence related to the Masias Controversy without redaction.  The retaliatory actions of the Justices, the Attorney General, and their accomplices support causes of action and present a basis for individual liability under 31 U.S.C. §3730(h) and § 24-31-1204, C.R.S. as well as various criminal laws, if enforced equally.

Although § 2-3-110.5(3)(a)(II), (III), C.R.S. contemplates the reporting of fraud to the Colorado Attorney General's Office's False Claims Unit and the reporting of fraud committed by public employees to the employees' respective agencies, the wrongdoers involved in this fraudulent conduct and the historic obstruction of the OSA's functions include the Justices of the Colorado Supreme Court, Colorado Attorney General Phil Weiser, and their subordinates.  Moreover, the Justices and Attorney General Weiser are personally responsible for causing the statute of limitations to partially expire as to the OSA's prior referrals of suspected fraud to law enforcement for criminal prosecution.  Even though the statutes of limitations for civil violations under the False Claims Acts have not yet expired, Attorney General Weiser has further failed to pursue any enforcement through his False Claims Unit or to perform his preliminary obligations to diligently investigate fraud under § 24-31-1204(1)(a), C.R.S.  The Fraud Hotline statute (§ 2-3-110.5, C.R.S.) and the Colorado False Claims Act (HB 22-1119; codified as Title 24, Art. 31, Part 12, C.R.S.) were not drafted in contemplation of such conflicts of interest.  Accordingly, the Legislative Audit Committee should be consulted for possible legislative changes and any referrals/disclosures to law enforcement under § 2-3-110.5(2)(f)(II), (3)(c)(IV), C.R.S. should be directed to conflict-free agencies, such as the U.S. Department of Justice's Public Integrity Unit and its national Civil and Civil Rights Divisions or local prosecutors (excluding the Colorado Attorney General's Office and the 2nd Judicial District Attorney's Office).  Because the State of Colorado, the Colorado Department of Law, and the Colorado Judicial Department are all recipients of federal funds, the fraud involved here impacts the U.S. Treasury.  Accordingly, in addition to probable violations of Colorado law, these circumstances also implicate federal criminal offenses and civil violations.

Ultimately, the circumstances described here and in the uploaded RFE present repeated incidents of conduct that meet the definition of "fraud" stated in § 2-3-110.5(1)(d), C.R.S., which provides, in relevant part:

> "Fraud" means occupational fraud or the use of one's occupation for personal enrichment through the deliberate misuse or misapplication of the employing organization's resources or assets.

Beyond this anonymous fraud report, this complainant/reporter intends to separately seek further direct enforcement through the U.S. Department of Justice and the federal courts.

On October 20, 2024, the complainant/reporter submitted an anonymous fraud complaint with accompanying materials also submitted as an anonymous request for evaluation (RFE) of judicial conduct submitted to the Colorado Commission on Judicial Discipline (CCJD).  After submitting the anonymous complaint and RFE, the complainant/reporter discovered additional material evidence of fraud relevant to the submissions.

The newly discovered evidence includes the fact that the Justices of the Colorado Supreme Court apparently misused public funds to contract with a public relations firm, Silvers Jacobson, LLC, in February 2021 as part of their strategy to make prohibited commentary on pending/impending cases and to cover up their own judicial misconduct with contracted-for "independent" investigations.  The Silvers Jacobson website expressly references the firm's representation of the Colorado Supreme Court.  The contract with and the public funds spent on the Justices' consultation with Silvers Jacobson, LLC is likely an additional false claim.

Additionally, the complainant/reporter's RFE includes discussion of how the Colorado Judicial Institute has created appearances of impropriety by acting as a *de facto* lobbyist and personal spokesperson for the Justices in contravention of the Colorado Code of Judicial Conduct.  On or about May 30, 2024, the CCJD's Vice-Chair James Carpenter demonstrated bias and added to the conflicts of interest involved by becoming a member of the Colorado Judicial Institute's board of directors.  A copy of the announcement of Carpenter's membership on the board is attached.  The Colorado Judicial Institute's unethical public "advocacy" on behalf of the Justices remains ongoing as part of pending judicial retention elections for Chief Justice Monica Márquez, Justice Brian Boatright, and Justice Maria Berkenkotter.

# SILVERS JACOBSON

HOME    CRISIS    STRATCOMMS    ABOUT    CLIENTS    Search

INFO & INFLUENCE BLOG

# Specializing in Crisis Management & Strategic Communications

We are accomplished, senior-level reputation management and strategic communications experts with a long track record of helping clients handle lawsuits and litigation, internal and external investigations, legislation and regulatory matters, mergers and acquisitions, bankruptcies, cybersecurity breaches, activist attacks, conspiracy theories, board conflicts and scores of other multifaceted issues.



### Steven Silvers
Partner & Senior Counsel
(720) 402-8820 | email

Steve is one of the Rocky Mountain West's most trusted crisis, reputation management and strategic communications advisors. Over the last 30 years, his dozens of crisis and controversy clients have included the Colorado Supreme Court, American Humane Association, Chipotle Mexican Grill, CSG International, Denver International Airport, EAS, Fox News, Lions Club International, Taubman Centers, Noble Energy, Vail Resorts, many law firms, new ventures, international charities and universities.

Steve has held strategic communications titles at



### Paul Jacobson
Partner & Director, Corp. Comm.
(303) 548-6684 | email

Over three decades, Paul has managed hundreds of complex issues and crisis situations for Senators, CEOs, major league sports teams and major theatrical motion picture productions.

He was press secretary to three U.S. Senators, two of them majority leaders: Bob Dole, Dr. Bill Frist and Warren B. Rudman. He also helped prepare former Supreme Court Justice David Souter for his Senate confirmation hearings.

In addition, Paul directed communications for

the Pentagon, Fortune 500 companies, international PR firms and as president of a successful technology PR agency. His corporate communications expertise draws from a long history of new ventures, lawsuits and litigation, M&A events, reorganizations, development projects, IPOs and complex  issues management initiatives.

Steve is a U.S. Army veteran and award-winning military journalist, and served as associate editor and columnist at the Pentagon's official U.S. Army News Service (ARNEWS).

He created SilversJacobson's *Reputation Asset Management Platform*, a uniquely pragmatic, real-world approach to defining effective positioning, messaging and communications strategies for any challenging situation.

Steve completed a combined journalism and photojournalism major at Syracuse University's prestigious Newhouse School of Public Communications, and later worked as a freelance magazine writer for several years.

A 1998 Leadership Denver graduate, Steve served on the board of directors for the Denver Metro Chamber Leadership Foundation.  He is Accredited in Public Relations (APR) by Public Relations Society of America.

Steve often speaks to professional groups and is

passage of the Medicare Part D (prescription drug) benefit. He was involved in the Iran-Contra hearings and the Gramm-Rudman-Hollings deficit reduction legislation, among many other national and international issues and events.

In the private sector, Paul was lead communications executive for Ascent Entertainment, including its IPO, NBA Denver Nuggets ownership, acquisition of the NHL Quebec Nordiques (now the Colorado Avalanche) and construction of Denver's Pepsi Center, now called The Ball Arena.

For Ascent's Hollywood production company, he managed corporate communications for major theatrical releases including *Air Force One.* Paul then served as top communications executive for STARZ-Encore Group, its eight cable and satellite movie networks and original productions.

He went on to lead corporate communications for the rescue management team that took over Adelphia Communications, the nation's fifth largest cable company, as it navigated through and successfully emerged from one of the most complex Chapter 11 bankruptcies in American history.

In the energy sector, Paul led communications for USEC Inc. (now Centrus Energy), its $4 billion American Centrifuge uranium enrichment project and its "Megatons to Megawatts" program that

a frequent expert source on crisis communications for news media around the country.

converted Soviet nuclear warheads into American electricity. At USEC he also managed crisis communications related to the Fukishima nuclear fuel meltdown, the company's passage through Chapter 11 bankruptcy and its rebranding as Centrus Energy Corp.

**Silvers Jacobson, LLC | Crisis Management & Strategic Communications, LLC**

Denver & Washington, D.C. | (720) 402-8820 | info@silversjacobson.com | @2023 Silvers Jacobson

*Help strengthen CJI's impact. #DonateNow!*

Upcoming Events          Get Our Newsletter          CJI Board Portal                ♥ Donate



# COLORADO JUDICIAL INSTITUTE

Who We Are          What We Do          How To Help          **News & Events**

🏠 **NEWS & EVENTS · NEWSROOM & BLOGS**

# Newsroom



**Newsroom & Blogs**

Newsroom

CJI Blog

Altruism Blog

**Event Calendar**

**Get Our Newsletter**

**Photo Galleries**

Welcome to the CJI newsroom. Stay in the loop about CJI news and announcements by checking this page regularly.

MAY 30, 2024

# CJI Elects New Board Chair and Board Members at Its Annual Meeting



*May 30, 2024* — CJI members elected officers, including a new board chair, and four new board members at the CJI Annual Meeting, held May 29 at Polsinelli PC in downtown Denver.

CJI's new board chair is Thor Nelson, an attorney and partner at Holland & Hart whose practice areas include utility law, telecommunications law, antitrust law, and environmental law. Nelson earned his undergraduate degree at Saint Louis University and his law degree at the Georgetown University Law Center. He takes over as CJI board chair from Don Samuels, an attorney and partner at Polsinelli.

Keo Frazier and Jeff George were re-elected as CJI board secretary and treasurer, respectively.

CJI also elected four new board members.

Jim Carpenter runs Freestone Strategies, a strategic public affairs and communications firm. He brings much political experience, having worked in high-level roles for Colorado politicians including Bill Ritter, Roy Romer, Ken Salazar, and Timothy Wirth. He also worked in public affairs for the National Jewish Medical and Research Center, now known as National Jewish Health. Carpenter is currently a citizen member of the Colorado Commission on Judicial Discipline, and previously he served on the Colorado Supreme Court Nominating Commission and the 18th Judicial District Nominating Commission. He has also been active in the non-profit community, serving

organizations such as Bright by Three/Bright by Text, Mile High United Way, Denver Academy, and more. Carpenter is a Colorado native and earned his undergraduate degree at CU Boulder. He and his wife Nancy have two adult children.

Joe Kennedy brings over 30 years of business development and executive experience within the legal technology vertical including his current role at Stenograph. He also volunteers with several nonprofit organizations, including Her Justice, Metro Caring, and Project Angel Heart. Kennedy grew up on a farm in northwest Kansas and earned his undergraduate degree at Kansas State. After graduation, he moved from the Little Apple—Manhattan, Kansas—to the Big Apple of New York City, where he lived for many years before relocating to Denver.

Judge Andrew Luxen is a district court judge in the 2nd Judicial District and has served in that role since January 2023. Previously he served in various district attorney roles in Denver. Luxen earned his undergraduate degree from the University of Colorado and his law degree from the University of Denver Sturm College of Law.

Shawna Seldon McGregor is a public relations executive and founder of Maverick Public Relations. She participates in industry organizations such as the Public Relations Society of America, where she serves on the Colorado chapter's DEI committee, and also the Publicity Club of New York and the Crisis Ready Institute. McGregor also has served on nonprofit boards including Climate Ride and a Colorado-based dog rescue organization called Saving Dobermankind. She lives in Mountain View—on the eastern border of Jefferson County—with her husband and her dogs Maverick and Leo.

CJI welcomes its new board chair and board members!

‹ Return To List

f   in          Privacy Policy          Terms & Conditions          CJI Board Portal   303-766-7501

Colorado Judicial
Institute
PO Box 118
Broomfield , Colorado
80038
**Phone** 303-766-7501
Contact Us

© 2024 Colorado Judicial Institute    Crafted by Firespring