

# The Gregory Law Firm, LLC

Christopher S.P. Gregory
Attorney at Law

cspgregory@thegregorylawfirm.net

August 25, 2025

Colorado Judicial Discipline Rulemaking Committee
Ralph L. Carr Judicial Center
1300 Broadway, Suite 210
Denver, CO 80203

*Re: Public Notice and Comment as to Proposed Colo. RJD Amendments and Request for Evaluation of Judicial Conduct; Appendices 1-6*

Dear Committee Members:

### SUMMARY

In November 2024, 73% of Colorado voters approved Amendment H, mandating that the state's judicial discipline system operate with objective independence, fairness, and public transparency. The amendment specifically directs this Committee to adopt rules defining:

- Standards of proof,
- Confidential reporting procedures, and
- Complainant rights.

Rather than fulfilling this mandate, this Committee offers only *pro forma* rule changes that will further insulate judges who violate their ethical duties from public accountability. This Committee's actions reflect a troubling conflict of interest—the Committee appears to function as a proxy for the Justices of the Colorado Supreme Court who seek to perpetuate a 6-year pattern of engaging in and concealing the most serious forms of judicial misconduct, which include a multi-million-dollar public fraud.

By knowingly assisting the Justices in their misconduct, refusing to disclose conflicts or disqualify themselves, and disregarding credible reports of misconduct from multiple individuals, this Committee's members have created probable cause to suspect violations of law, including but not limited to:

- First-Degree Official Misconduct (§ 18-8-404, C.R.S.) and
- Retaliation Against a Witness or Victim (§ 18-8-706, C.R.S.).



201 Coffman St., #1822, Longmont, CO 80502
● 970-648-0642 ● Fax: 970-648-0643 ●

Christopher S.P. Gregory, esq.
August 25, 2025
Page 2 of 32

In light of these concerns, I respectfully request the following actions:

1. **Formation of a Conflict-Free Special Commission, Adjudicative Panel, and Special Tribunal**

   That the non-conflicted members of the Colorado Commission on Judicial Discipline (the CCJD)—District Court Judge Reed Owens and County Court Judge Meredith Patrick McCord—form a special commission, request the formation of a conflict-free special adjudicative panel, and request the formation of a conflict-free special tribunal under Colo. RJD 41 and Colo. Const. Art. VI, § 23(3)(f)(II) to consider:

   - These public comments and this request for evaluation (RFE) of judicial conduct, and
   - The prior anonymous RFE dated October 24, 2024.

   The special commission should also:

   - Recognize complaints under Colo. RJD 13(b) and begin investigations under Colo. RJD 14(a) and
   - Make all appropriate referrals (judges, attorneys, and public officials) to law enforcement (federal, state, local) and regulatory authorities, including but not limited to:

     - Colorado Office of Judicial Performance Evaluation (OJPE)
     - Colorado Office of Attorney Regulation (OARC)
     - U.S. District Court for the District of Colorado's Committee on Conduct
     - Colorado Commission on Civil Rights
     - Colorado State Auditor
     - Colorado Independent Ethics Commission (IEC)
     - U.S. Department of Justice
     - Federal Bureau of Investigation

2. **Independent Investigation by Another State's Attorney General**

   That Colorado State Auditor Kerri Hunter exercise her authority under § 24-31-111(5), C.R.S. to appoint another state's attorney general as a Special Assistant Attorney General (SAAG) to investigate and prosecute—civilly and/or criminally—allegations of public fraud committed by the Justices, Attorney General Phil Weiser, Secretary of State Jena Griswold, and Governor Jared Polis.

3. **Legislative Referral for Conflict-Free Federal and Out-of-State Investigations**

   That, during its current special session, the Colorado General Assembly pass a joint resolution formally requesting a conflict-free investigation and potential civil/criminal

Christopher S.P. Gregory, esq.
August 25, 2025
Page 3 of 32

prosecutions through the U.S. Department of Justice and Federal Bureau of Investigation. The joint resolution would further direct the Colorado State Auditor to appoint an another state's attorney general as a SAAG to investigate the allegations of public fraud under Colorado's Fraud Hotline statute (§ 2-3-110.5, C.R.S.) and the Colorado False Claims Act (§§ 24-31-101, et. seq., C.R.S.).

4. **Dissolution of the Current Committee**

That this Committee disband itself and withdraw its proposed rule changes, which improperly shield the Justices and other judges who have violated the Colorado Code of Judicial Conduct (the Code)).

5. **Adoption of Comprehensive Rule Revisions**

Upon reformation of a conflict-free Committee, adopt rule changes consistent with Amendment H's transparency mandate and nationally recognized best practices, including:

**Structural Reforms**

a. Replace the current special master system with the Colorado Judicial Discipline Adjudicative Board (the CJDAB) as the final adjudicative body.

b. Provide for en banc review and decision-making by the CJDAB.

c. Confirm the CCJD's discretion to utilize its special cash fund and directly appoint outside special counsel, when needed.

d. Conform Colo. RJD 41 to Colo. Const. Art. VI, § 23(3)(f)(II) so that special tribunals are composed of no more than one randomly selected court of appeals judge or district court judge from the same judicial district.

e. Define processes for appointing special commissioners/adjudicators when a quorum of non-conflicted members does not exist.

**Transparency Measures**

f. Establish anonymous and confidential reporting procedures.

g. Eliminate restrictions on the CCJD's communications with the press and the public as imposed by the Justices through Colo. RJD 3.5(c)(2).

h. Eliminate the Colo. RJD 6.5(e) certification requirement.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 4 of 32

    i.    Require that the CCJD notify the OJPE of pending complaints, motions for temporary suspension, and informal dispositions.

    j.    Require the CJDAB to maintain a public website and to publish its final decisions in the West National Reporter System.

    k.    Define "public records" broadly to include administrative records, financial records, and the records of formal proceedings, available free of charge.

**Jurisdiction and Standards of Proof**

    l.    Clarify the CCJD's constitutional jurisdiction over all Colorado judges of courts of record (including private judges, CJDAB members, magistrates, some ALJs, and some municipal judges (other than Denver County Court judges who are subject to a constitutional exception)).

    m.    Remove the limitations periods for judicial misconduct allegations, consistent with federal standards.

    n.    Apply reasonable basis and probable cause standards for initiating investigations and filing charges.

    o.    Consistent with federal standards, replace the current "clear and convincing evidence" burden of proof with a preponderance of evidence standard in both the imposition of informal discipline and in formal discipline proceedings.

    p.    Clarify the CJDAB's authority over temporary suspensions under Colo. RJD 34 and provide appellate review.

**Complainant and Victim Rights**

    q.    Define the complainant's (and victims') standing and access to the CCJD's record of proceedings.

    r.    Provide an opportunity for complainants and victims to assert and enforce grounds for disqualification.

    s.    Apply Canon Rule 2.11 disqualification standards to the CCJD, the CJDAB, and this Committee.

    t.    Recognize complainants' and victims' rights to judicial and appellate review in both informal and formal proceedings.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 5 of 32

### Sanctions and Enforcement

u.  Prohibit diversion plans with deferred dismissal where misconduct warrants a private censure, a public reprimand, or a public censure.

v.  Harmonize the definitions of private and public reprimands/censures.

w.  Recognize aggravated sanctions for concealment or obstruction.

x.  Provide for recoupment of a suspended judge's salary/benefits upon adjudication.

y.  Authorize the CCJD to recover reasonable attorney's fees as a prevailing party, with reciprocal provision for judges in bad-faith prosecutions.

These actions, reforms, and rule changes are necessary to restore public trust, ensure impartial adjudication of judicial misconduct, and fulfill the constitutional mandate overwhelmingly approved by Colorado voters.

## DISCUSSION

The Justices of the Colorado Supreme Court abandoned their honor,[1] integrity, and obligations to enforce an appropriate tone at the top when they collectively decided to excuse State Court Administrator's Office (SCAO) Chief of Staff Mindy Masias's dishonesty and alteration of financial records.  Instead of terminating Masias for cause, the Justices proceeded to negotiate a $2.66-2.75 million sole-source *quid pro quo* contract that was preconditioned upon Masias signing a non-disclosure agreement (NDA).  The Justices approved the Masias Contract despite the individual Justices, Governor Jared Polis, and Attorney General Phil Weiser each having received an anonymous Fraud Hotline complaint that detailed Masias's financial misconduct and other malfeasance within the SCAO.  Then, when the existence of the Masias Contract was made public, the Justices began a 6-year ongoing conspiracy intended to cover up their own judicial misconduct through a government-wide pattern of non-disqualification, intimidation, and retaliation reinforced by publicly funded self-investigations, public relations strategies, and hush money payments (NDAs).  Put more plainly, the Justices got caught after they collectively approved and began paying a $2.66-2.75 million bribe with taxpayer funds.  The public fraud involved and the subsequent cover up continues to wrongfully cost taxpayers tens of millions of dollars.  The Justices' collective misconduct has already been proven through the stipulated disciplinary opinion in *Matter of Coats*, 2023 CO 44 and the Justices' own official public statements.  Nevertheless, the Justices (other than former Chief Justice Nathan Coats) have persevered in their corrupt efforts to avoid **_any_** accountability.

---

[1] *See generally* Chenise S. Kanemoto, *Bushido in the Courtroom: A Case for Virtue-Oriented Lawyering*, 57 S.C. L. Rev. 357 (2005).

Christopher S.P. Gregory, esq.
August 25, 2025
Page 6 of 32

When the Colorado Commission on Judicial Discipline (the CCJD) sent each of the Justices letters (dated June 13, 2022 and July 1, 2022) requesting their disqualification from the then-pending proceedings in *Coats* and other matters related to judicial discipline (which included legislative reforms, rulemaking, and the hearing of other judicial discipline cases), the Justices simply ignored the CCJD. Instead, the Justices proceeded to coordinate the abuse of their own and Governor Jared Polis's appointment powers to stack the boards and commissions responsible for attorney and judicial oversight with their cronies.[2] The Justices are overtly violating Canon Rules 1.1 (Compliance with Law), 1.2 (Promoting Confidence in the Judiciary), 1.3 (Abuse of Prestige of Judicial Office), 2.2 (Impartiality and Fairness), 2.3 (Bias, Prejudice, and Harassment), 2.4 (External Influences on Judicial Conduct), 2.5 (Competence and Cooperation), 2.6 (Ensuring the Right to be Heard), 2.9 (Ex Parte Communications), 2.10 (Judicial Statements on Pending and Impending Cases), 2.11 (Disqualification), 2.12 (Supervisory Duties), 2.13 (Administrative Appointments), 2.15 (Responding to Judicial and Lawyer Misconduct), 2.16 (Cooperation with Disciplinary Authorities), 3.1 (Extrajudicial Activities in General), and 4.1 (Political and Campaign Activities) of the Colorado Code of Judicial Conduct ("the Code"). Likewise, the judges who have been appointed to the now-conflicted boards and commissions through this collusion[3] are themselves complicit in violating Canon Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.4, 2.5, 2.6, 2.9, 2.10, 2.11, 2.12, 2.13, 2.15, 2.16, 3.1, and 4.1. It deserves emphasis that even the creation of appearances of impropriety is sufficient grounds for judicial discipline, including under Canon Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.5, 2.6, 2.11, and 2.13. Judges, attorneys, and judicial employees have mandatory duties to report both judicial and attorney misconduct. § 13-5.3-106, C.R.S.; Canon Rules 2.15 and 2.16; Colo. RPC 8.3. The judges and attorneys appointed to the now-conflicted boards and commissions are further violating Colo. RPC 8.4(f) (knowingly assisting a judge violate the Code or other laws). The citizen members, who are violating their duties to enforce the Code, the Colo. RJD, the Colo. RPC, and other ethical rules are also abusing their offices without any oversight from their appointing authorities or from law enforcement.

---

[2] Colorado Attorney General Phil Weiser has similarly abused his appointment authority by colluding with the Justices and Governor Jared Polis in the conflicted selection of the members of Colorado's judicial nominating commissions. Colo. Const. Art. VI, § 24(4) (attorney members of nominating commissions chosen by majority action of governor, attorney general, and chief justice). The composition of the judicial nominating commissions becomes a critical part of the judicial discipline process when a judge or justice is removed from office and a replacement is selected. If any of the justices or judges involved in the Masias Controversy are ultimately removed from office, it will be necessary to recompose the various nominating commissions through a conflict-free process. *See* David Migoya, *Appellate Court Nominees Include One of the Most-Reversed Judges and a Lawyer Tied to Memo Scandal*, DENVER GAZETTE, November 1, 2023 (Assistant Solicitor General Grant Sullivan nominated to Colorado Court of Appeals despite his reported role in concealing the material Masias Memo from the Colorado State Auditor).

[3] 5th Judicial District Court Judge Reed Owens and El Paso County Court Judge Meredith Patrick McCord were appointed to the CCJD following the adoption of Amendment H. Accordingly, Judge Owens and Judge Patrick McCord were presumably appointed through the random process defined by § 13-5.3-102(2)(b), C.R.S. Unless Judge Owens and Judge Patrick McCord have endorsed the misconduct of the other members of the CCJD, they have not violated the Code.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 7 of 32

The Justices and their co-conspirators have continued to evade **_any_** accountability for their significant misconduct by ignoring and (through a complicit CCJD) quietly dismissing a detailed anonymous request for evaluation (RFE) of judicial conduct and an accompanying anonymous Fraud Hotline complaint, both dated October 20, 2024.[4]  Copies of the October 20, 2024 RFE, its appendices, and the Fraud Hotline complaint were made part of the legislative record at the April 28, 2025 hearing of the Colorado Senate Judiciary Committee.

The collusion and cronyism that undermine the effectiveness of Colorado's judicial and attorney discipline systems as well as oversight of elected officials persist despite legislative reforms and voters approving Amendment H / HCR 23-1001 with a 73% majority.  Amendment H should have removed the Colorado Supreme Court's control over Colorado's constitutional judicial discipline system through the separation of enforcement, adjudicatory, and appellate functions and by removing the Colorado Supreme Court's control over rulemaking.  Ultimately, this Committee's composition and its conflicted promulgation of meaningless or detrimental rule changes are substantial violations of the Code, the Colo. RPC, and criminal laws that include the offenses of First-Degree Official Misconduct, § 18-8-404, C.R.S.[5], and Retaliation Against a Witness or Victim, § 18-8-706, C.R.S.  Because of the corruption of Colorado's judicial discipline, judicial performance evaluation, attorney discipline, and law enforcement systems, however, legislative and direct voter oversight are the only plausible paths to accountability left under state law.  For the reasons explained in these public comments and in the appended op-ed articles,[6] this Committee and its rulemaking process have been made a farce.  The Justices and their co-conspirators have intentionally prevented the administration of justice by suppressing, obstructing, or otherwise interfering with every investigation of their misconduct that has occurred.  The rulemaking process is now being used to augment that historic cover up.

In addition to my comments supporting the adoption of alternative and additional rules, I formally request the creation of a special commission, a special adjudicatory panel, and a special tribunal appointed through conflict-free processes to evaluate, prosecute, adjudicate, and review the Justices' proven violations of the Code.  According to Colo. RJD 34(a), adequate grounds already exist for the Justices' immediate suspension from judicial office pending judicial

---

[4] David Migoya, *Federal Probe of Judiciary Scandal in Colorado Requested at Hearing*, DENVER GAZETTE, April 28, 2025.

[5] According to § 18-8-404, C.R.S., it is a crime for a public servant to knowingly 1) engage in the unauthorized exercise of official functions, 2) to refrain from performing their legal duties, or 3) to violate a statute, rule, or regulation related to their office.  § 18-1-901(3)(o), C.R.S. provides:

> "Public servant" means any officer or employee of government, whether elected or appointed, and any person participating as an advisor, consultant, process server, or otherwise in performing a governmental function, but the term does not include witnesses.

[6] Christopher Gregory, *Opinion: Colorado's Highest Court Has Lost Credibility*, COLORADO POLITICS, May 1, 2025 (Appendix 1); Christopher Gregory, *Perspective: Above the Law*, DENVER GAZETTE, June 15, 2025 (Appendix 2); Christopher Gregory, *Feedback: System Skewed to Benefit Disciplined Judges*, COLORADO POLITICS, July 24, 2025 (Appendix 3).

Christopher S.P. Gregory, esq.
August 25, 2025
Page 8 of 32

discipline proceedings.  I also call upon the Colorado General Assembly to pass a joint resolution during its current special session.  The necessary joint resolution (which will not require a fiscal note[7]) would refer the Masias Controversy to the U.S. Department of Justice, to the Federal Bureau of Investigation, and to an outside state's attorney general for conflict-free investigation and prosecution.  Ultimately, following full, legitimate, and conflict-free investigations, the Colorado General Assembly will be able to determine whether impeachment proceedings are warranted as to the justices, judges, and elected officials involved in the Masias Controversy.

To be perfectly clear, these public comments are dually filed as a Colo. RJD 12 request for evaluation (RFE) of judicial conduct as to the following justices, judges, private judges, and members of the Colorado Judicial Discipline Adjudicative Board (CJDAB)[8]:

- Angela Arkin;
- Karen Ashby;
- Maria Berkenkotter;
- Brian Boatright;
- Jill Brady;
- Jeff Chostner;
- Laurie Clark;
- Christopher Cross;
- Eric Elliff;
- Laura Ellis;
- Richard Gabriel;
- Sara Garrido;
- Tyrone Glover;
- Justin Haenlein;
- Melissa Hart;
- James Hartmann;
- William Hood, III;
- Bryon Large;
- Gretchen Larson;
- Monica Márquez;

---

[7] According to §§ 24-31-101(1)(g) and 24-31-111(5), C.R.S., the Colorado State Auditor (through the Legislative Audit Committee) has the authority to directly appoint a special assistant attorney general (including another state's attorney general) to complete a fraud investigation under the Fraud Hotline statute, § 2-3-110.5, C.R.S. and/or the Colorado False Claims Act, Title 24, Art. 31, Pt. 12.  The costs of a special assistant attorney general are paid through funds already appropriated to the Colorado Office of the Attorney General through its annual budget.  It will be important for the Colorado State Auditor to select another state's attorney general from a state that has a comparable civil false claims act.  Appendix 4 (proposed joint resolution and list of states with comparable civil false claims acts).

[8] The members of the CJDAB are: Jeff Chostner (attorney), Eric Elliff (Judge), Laura Ellis (attorney), Tyrone Glover (attorney), Grechen Larson (judge), Colleen McManamon (citizen), Kristen Mix (attorney), Jeff Swanty (citizen), Jeannie Valliere (citizen), Vincente Vigil (judge), and Leanne Wheeler (citizen).

Christopher S.P. Gregory, esq.
August 25, 2025
Page 9 of 32

- Robert McGahey;
- Bonnie McLean;
- Colleen McManamon;
- William Meyer;
- Kristen Mix;
- Crista Newmyer-Olsen;
- Nancy Rice;
- Carlos Samour;
- Kevin Sidel;
- Elizabeth Starrs;
- Jeff Swanty;
- Jeannie Valliere;
- Vincente Vigil;
- Leanne Wheeler; and
- Mariana Vielma.

I am mindful that at least some of the individuals listed above may have been unwittingly drafted to participate in the Justices' overall scheme to suppress, obstruct, and interfere with the judicial discipline process. How the individuals respond to this RFE and these public comments, however, will determine whether they are knowingly violating the Code and are subject to judicial discipline. This RFE also expressly requests that a conflict-free special commission evaluate the allegations of judicial misconduct presented through the October 20, 2024 RFE, its appendices, and its accompanying Fraud Hotline complaint.

In addition, these public comments and this RFE are submitted as a complaint as to the conduct of the members of the CCJD (excluding Judge Reed Owens and Judge Meredith Patrick McCord), former Chair Mindy Sooter, former Secretary Mariana Vielma, former Commissioner Bonnie McLean, Executive Director Anne Mangiardi, Special Counsel Jeff Walsh, and General Counsel Gina Cannan under Colo. RJD 3.5(b), (h). The CCJD, its Executive Director, its Special Counsel, and its General Counsel continue to retaliate against and ignore numerous individuals (including myself) who have come forward to report substantial judicial misconduct. The CCJD and its staff are not following the law, are intentionally violating the constitutional rights of victims of judicial misconduct, are facilitating public fraud, and have abdicated their duties to perform the CCJD's constitutional mandate, as defined by Colo. RJD 1(b).[9] Accordingly, probable cause exists to suspect that the CCJD's current and former members, its Executive

---

[9] Colo. RJD 1(b) states:

> **Constitutional Mandate.** The Constitutional mandate of the Commission is to protect the public from improper conduct of judges; preserve the integrity of the judicial process; maintain public confidence in the judiciary; create a greater awareness of proper judicial behavior on the part of the judiciary and the public; and provide for the fair and expeditious disposition of complaints of judicial misconduct or judicial disabilities.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 10 of 32

Director, its Special Counsel, and its General Counsel have committed or are committing the crimes of First-Degree Official Misconduct, § 18-8-404, C.R.S. and Retaliation Against a Witness or Victim, § 18-8-706, C.R.S.  To the extent that the CCJD continues to obstruct a fair, impartial, and conflict-free inquiry into the conduct of its current and former members and its staff, potential remedies include a civil action for whistleblower retaliation and petitioning a court to compel prosecution according to § 16-5-209, C.R.S.

1. The public deserves to understand the nature and ramifications of the conflicts of interest involved in this Committee exercising its rulemaking function.

Under Colo. Const. Art. VI, § 23(3)(k)(I), this Committee's authority includes defining: 1) the standards of proof, 2) confidential/anonymous reporting procedures that protect victims, and 3) complainant rights in the judicial discipline process.  Traditionally, the rulemaking function has also defined the CCJD's jurisdiction over a "judge," limitations periods, and the remedies available in judicial discipline proceedings.  *See* Colo. RJD 2(a), 4(a), 35-36.  Because the judicial discipline structure is civil, preventative, and remedial in its purposes, rulemaking changes are not constrained by constitutional prohibitions against retroactive legislation.  *Calder v. Bull*, 3 U.S. 386, 399 (1798) (Iredell, J.) (application of *ex post facto* clause of the U.S. Constitution limited to criminal laws; "[T]he true construction of the prohibition extends to criminal, not civil, cases."); *City of Golden v. Parker*, 138 P.3d 285, 289-90 (Colo. 2006) (Colo. Const. Art. II, § 11's prohibition against retroactive legislation allows retroactive changes in civil laws that are procedural or remedial; even when a vested right is impaired, retroactivity will depend upon balancing of public interests in the exercise of the state's police powers).  Within this context, it is incredibly important that this Committee perform its function in a conflict-free manner.

When the Colorado House of Representatives originally proposed that this Committee's composition provide the CCJD with greater influence to ensure rulemaking that facilitates equal enforcement of the Code, then-Senator Bob Gardner opposed the House's version of HCR 23-1001.  Gardner's position and his opposition to removing the Justices' authority to appoint members of the CCJD aligned with the Justices' unethical lobbying.   To reward Gardner for his fealty and continued participation in the Justices' cover up, Governor Polis subsequently appointed Gardner to the CCJD to replace Mindy Sooter (whose reappointment was rejected by the Colorado Senate).[10]   The result of the Justices' undue influence upon the legislative process and their subsequent coordinated abuse of their appointment powers is that this Committee and

---

[10] When confronted with allegations that CCJD Chair Mindy Sooter and CCJD Vice-Chair Jim Carpenter had retaliated against me for my internal reporting of judicial misconduct (specifically the Masias Controversy and Justice Brian Boatright's concealment/non-reporting of former Denver Presiding Juvenile Court Judge D. Brett Woods's habitual intemperance and retaliation), Governor Jared Polis persisted in lobbying the full Colorado Senate to proceed with approving his re-appointment of Sooter and Carpenter to the CCJD.  A copy of the talking points that Governor Polis circulated are attached as Appendix 5.  Without explanation or recourse through judicial review, the Colorado Independent Ethics Commission (IEC) refused to exercise jurisdiction to investigate my complaint that Governor Polis has abused his appointment powers.  Appendix 6; *See also Colorado Ethics Watch v. Indep. Ethics Comm'n*, 2016 CO 21, ¶¶ 24-67 (Gabriel, J., dissenting) (confidentiality of IEC complaint evaluation should not preclude complainant from seeking judicial review of dismissal decision).

Christopher S.P. Gregory, esq.
August 25, 2025
Page 11 of 32

the other judicial oversight authorities are stacked with the Justices' cronies and co-conspirators. This Committee's rulemaking is nothing more than a continued effort to shield the Justices from **_any_** accountability under the Code.  To understand how the members of this Committee are themselves violating or assisting the Justices in violating the Code, it is necessary to consider how the members of this Committee were selected.  It is also important to understand the nature of the conflicts of interest which require the disqualification of individuals from this Committee and from participation in its rulemaking function.

Unlike the random process now required for the Colorado Supreme Court to appoint judge members to the CCJD, the Justices directly selected the judge members of the CJDAB and the Court's share of the members of this Committee.  The Justices selectively appointed 2nd Judicial District Court Judge Eric Eliff, 21st Judicial District Court Judge Gretchen Larson, 12th Judicial District Court Judge Crista Newmyer-Olsen, and 19th Judicial District Court Judge Vincente Vigil to the CJDAB.  In addition, the Justices selectively appointed Justice Richard Gabriel, Presiding Disciplinary Judge Bryon Large, former 19th Judicial District Court Chief Judge / Senior Judge James Hartmann, and attorney Nancy Cohen to this Committee.  The CJDAB, in turn, appointed Colleen McManamon, Kristen Mix, Jeff Swanty, and Vincente Vigil to this Committee.  The CCJD apparently appointed Commissioner Ingrid Barrier, Executive Director Anne Mangiardi, Special Counsel Jeff Walsh, and attorney David Beller to this Committee. Governor Jared Polis appointed Amanda Hollander as this Committee's victim advocate member.

The conflicts and coordinated abuse of the Justices' powers in violation of Canon Rules 1.1, 1.2, 1.3, 2.11, and 2.13 goes much deeper than the composition of this Committee.  In addition to her appointment and election as Vice Chair of this Committee, the Justices have appointed attorney Nancy Cohen to the Colorado Supreme Court's Advisory Committee on the Practice of Law (the Advisory Committee).  The Advisory Committee, together with its subsidiary Legal Regulation Committee, oversees the Court's attorney regulation system and the Court's Office of Attorney Regulation Counsel (OARC).  C.R.C.P. 242.3.  Ms. Cohen also regularly represents subject judges in judicial discipline proceedings and has a direct, personal, and substantial financial interest in this Committee's rulemaking function (particularly its ability to define jurisdiction, burdens of proof, and sanctions).  As a senior judge, former Chief Judge Hartmann is a contractor subject to the Justices' direct supervision through SCAO.[11]  Accordingly, Chief Judge Hartmann has a direct, personal, and substantial financial interest in this Committee's rulemaking function.  Similarly, Judge Bryon Large was directly appointed by the Justices to his position as Presiding Disciplinary Judge and, ultimately, serves at their pleasure subject to oversight by the Advisory Committee.[12]  Judge Large similarly has a direct, personal, and

---

[11] § 24-51-1105, C.R.S. (chief justice approves retired judges for senior judge program and determines judges' continued participation); *see also* David Migoya, *State Court Administrator Admits He "Missed" Discipline Advisory and Allowed "Hairy Chest" Jurist Into Senior Judge Program*, DENVER GAZETTE, August 9, 2022 (Chief Justice Boatright used his authority to terminate senior judge Thomas Ensor's contract over allegations in Masias Memo that, while serving as active judge, Ensor had rubbed his "hairy chest" on female court staff's back).

[12] C.R.C.P. 242.6(a) provides: "**Presiding Disciplinary Judge.** The supreme court appoints one or more Presiding Disciplinary Judges to serve at the pleasure of the supreme court."  C.R.C.P. 242.6(d) further provides, in relevant

Christopher S.P. Gregory, esq.
August 25, 2025
Page 12 of 32

substantial financial interest in this Committee's rulemaking function.  As discussed *infra*, attorney David Beller represented former 13th Judicial District Court Judge Justin Haenlein in a pending judicial discipline proceeding when the CCJD appointed him to this committee.  In addition to Ms. Cohen, the Justices have appointed Mr. Beller to the Advisory Committee.  Given the opportunity to assist his client to engage in further misconduct, Mr. Beller also has a direct, personal, and substantial financial interest in this Committee's rulemaking function.  The appointment of Justice Richard Gabriel to this Committee, however, is the most egregious violation of the Justices' appointment power when Justice Gabriel was, himself, directly involved in the approval of the $2.66-2.75 million *quid pro quo* Masias Contract and the broader Masias Controversy.

### *Matter of D. Brett Woods,* 2024 CO 72

David Brett Woods was the Presiding Denver Juvenile Court Judge.  In that role, Judge Woods heard some of the most sensitive cases involving the most vulnerable populations.  In December of 2023, as Executive Director of the CCJD, I requested Judge Woods's temporary suspension under Colo. RJD 34(a) after evidence confirmed Judge Woods' habitual intemperance (alcohol abuse), including while on the bench.  Following Judge Woods' suspension, the CCJD's investigator discovered further evidence that Judge Woods had retaliated against a court administrator who had internally reported / raised concerns about Judge Woods's alcohol abuse in 2019 (concurrent with the negotiation and approval of the Masias Contract).  The retaliation against the court administrator was facilitated through a coerced and publicly funded non-disclosure agreement.  The CCJD's investigator further discovered that Judge Woods's alcohol abuse and retaliation had been reported to Justice Brian Boatright, Court of Appeals Judge Karen Ashby, and Denver Juvenile Court Judge Laurie Clark.  Justice Boatright, Judge Ashby, and Judge Clark, however, knowingly concealed Judge Woods's unfitness and misconduct by not reporting to the CCJD (as they were required to do under Canon Rule 2.15(A)).

Through a January 9, 2024 in-person meeting with CCJD member Stefanie Trujillo, I internally reported my suspicion that I was being retaliated against by CCJD Chair Mindy Sooter, CCJD Vice Chair James Carpenter, and other members of the CCJD for my efforts to hold the Justices' responsible for their individual roles in approving the Masias Contract.  I also informed Ms. Trujillo of the then-recently discovered evidence of retaliation in *Woods* and Justice Boatright's 4-year long concealment of Judge Woods's unfitness/misconduct.  The following day, and as I predicted, the CCJD's members proceeded to retaliate against me and voted for my termination.  I, however, was not informed that I was being summarily terminated until January 19, 2024 (after I had made the CCJD's 2024 SMART Act presentation to the Joint House and Senate Judiciary Committees on January 12, 2024).  On March 3, 2024, the press reported on the grounds for Judge Woods's suspension and the non-reporting by Judge Ashby, Justice Boatright, and Judge Clark.[13]  Nevertheless, on March 6, 2024, the Senate Judiciary Committee proceeded

---

part: "**Disqualification.** The Presiding Disciplinary Judge must refrain from taking part in a proceeding in which a similarly situated judge would be required to disqualify. . ."

[13] David Migoya, *Colorado Supreme Court Chief Justice and Others Aware of Colleague's Drinking Problem, But Kept Silent*, DENVER GAZETTE, March 3, 2024.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 13 of 32

to recommend the confirmation of Ingrid Barrier and Stefanie Trujillo's appointments to the CCJD despite the reported coverup involving Judge Woods.

This Committee's Vice-Chair Nancy Cohen represented Judge Woods in his disciplinary proceedings. The October 20, 2024 RFE specifically raised the conflicts involved in the CCJD's Special Counsel Jeff Walsh continuing to prosecute the Woods matter and the Colorado Supreme Court hearing the case, which included allegations of misconduct by Justice Boatright. RFE (October 20, 2024), pp. 16 fn. 19, 127 fn. 175, 135, 137 fn. 188, 257, 268, 281-82, 305. Instead of seeking the formation of a special commission, the appointment of outside special counsel, and the formation of a Special Tribunal according to Colo. RJD 41, Special Counsel Walsh, Ms. Cohen, and the Justices colluded to resolve the Woods matter through a stipulated disciplinary opinion (which did not address Judge Ashby's, Justice Boatright's, or Judge Clark's facilitation/non-reporting of Judge Woods's admitted unfitness and misconduct). *Matter of Woods*, 2024 CO 72. Jeff Walsh, as "Special Counsel and Interim Executive Director," filed the CCJD's recommendation for stipulated discipline on November 15, 2024 (10 days after the 2024 General Election) and the Justices issued a *per curiam* disciplinary opinion on December 9, 2024. The coordinated involvement of Ms. Cohen, Special Counsel Walsh, and the Justices in covering up Justice Boatright's violations of Canon Rules 2.15 and 2.16 is directly relevant to the conflicted composition of this Committee and the violations of the Code that are occurring through this Committee's promulgation of its proposed rule changes.

### *Private Judges*

This Committee has promulgated its proposed rule changes in the context of the press reporting that a number of private judges violated their duties under Canon Rule 4.1(A)(4) by making political contributions while appointed to hear cases.[14] Citing ambiguity in the Colo. RJD's definition of an "active judge," Executive Director Anne Mangiardi and the CCJD disclaimed having jurisdictional authority over the private judges, who include former Chief Justice Nancy

---

[14] Canon Rule 4.1(A)(4) provides: "**(A)** Except as permitted by law,* or by this Canon, a judge or a judicial candidate* shall not: . . . (4) solicit funds for, pay an assessment to, or make a contribution* to a political organization or a candidate for public office[.]" Through records obtained from the Colorado Secretary of State's Office and the Federal Election Commission, the following private judges were identified as having made political contributions prohibited by Canon Rule 4.1(A)(4):

- Angela Arkin;
- William Meyer;
- Kevin Sidel;
- Elizabeth Starrs;
- Nancy Rice;
- Robert McGahey; and
- Christopher Cross.

David Migoya, *Judges Made Campaign Contributions Despite Rules Prohibiting the Practice*, DENVER GAZETTE, April 1, 2025.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 14 of 32

Rice.[15]  The only justification for not disciplining the identified private judges is claimed ambiguity in the Colo. RJD, which could be readily remedied through the exercise of this Committee's rulemaking authority.

A number of the private judges identified as violating Canon Rule 4.1(A)(4) work for Colorado's largest mediation and arbitration groups, Judicial Arbiter Group, Inc. (JAG) and Judicial Arbitration and Mediation Services, Inc. (JAMS-Denver).[16]  Neither JAG nor JAMS-Denver verifies the disciplinary histories of their judge arbitrators/mediators with the CCJD as allowed by Colo. RJD 6.5(d)(9) and as part of their hiring processes.  In at least one case where he was appointed as private judge, JAG Managing Arbiter and ADA Coordinator William Meyer has refused to disqualify himself even after publicly admitting that he had violated Canon Rule 4.1(A)(4) and that he was self-reporting his misconduct to the CCJD.  *See* Migoya, s*upra* at fn. 14.  It is unknown whether Judge Meyer or any of the other private judges who violated Canon Rule 4.1(A)(4) notified parties in their cases of the violation(s) with opportunities for the parties to request disqualification.  In yet another conflict of interest, the Justices have appointed private judge and JAG Arbiter Angela Arkin to the Advisory Committee.  The Chair of this Committee, former U.S. Magistrate Judge, and CJDAB attorney member Kristen Mix, is employed by JAG.  Chair Mix has a direct, personal, and substantial financial interest in this Committee's rulemaking function and its impacts upon her colleagues, who have admittedly engaged in judicial misconduct as appointed private judges employed at JAG.[17]  Chair Mix's non-

---

[15] David Migoya, *Critics Decry "Black Hole" of Oversight for Code Violations by Appointed Judges in Colorado*, DENVER GAZETTE, April 27, 2025.  It is unclear why none of the private judges who self-reported their violations of Canon Rule 4.1(A)(4) did not insist upon a public reprimand for their failure to meet the minimum standards of judicial conduct.

[16] JAG employs the following private judges identified as having violated Canon Rule 4.1(A)(4):

- Angela Arkin;
- William Meyer;
- Nancy Rice; and
- Elizabeth Starrs.

JAMS employs the following private judges identified as having violated Canon Rule 4.1(A)(4):

- Robert McGahey; and
- Christopher Cross

[17] *See* Canon Rule 2.11 (listing circumstances that require *sua sponte* judicial disqualification).  In addition to her conflicted appointment to this Committee and her participation in its rulemaking process, CJDAB member Kristen Mix openly violated Canon Rules 1.1, 1.2, 1.3, and 2.10 by delivering an April 23, 2025 keynote address to a combined meeting of the Colorado American Inns of Court on the subject of "judicial independence."  Mix prefaced her lecture by publicly praising Justice Richard Gabriel for his receipt of the 2024 American Inns of Court 10th Circuit Professionalism Award. Mix then proceeded to highlight the litigation between President Donald Trump and large law firms, to list numerous pending federal cases, and to call out individual federal district court judges whose specific rulings she agreed with.  Justice Gabriel, U.S. Magistrate Judge N. Reid Neureiter, U.S. Magistrate Judge Kathyrn Starnella, and other judges were in the audience when Mix delivered her remarks.  Mix explained that her retirement from the federal bench (without recognizing her judicial/quasi-judicial appointments to the CJDAB and to this Committee) allowed her to publicly comment on the various pending and impeding cases.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 15 of 32

disqualification and her participation in rulemaking that gives her the authority to indirectly excuse her colleagues' publicly admitted judicial misconduct creates significant appearances of impropriety.

### *Matter of Justin B. Haenlein*, CCJD Case No. 24-176

Former 13th Judicial District Court Judge Justin Haenlein admitted to abusing the prestige of his judicial office and unlawfully providing legal representation to pursue his sexual interests in a former client he represented as a criminal defense attorney. Judge Haenlein's admitted misconduct included: 1) exchanging sexually explicit text messages and images with the former client, 2) continued provision of legal advice to the former client in her pending allocation of parental responsibilities case after Judge Haenlein ascended the bench, 3) contributing to the former client's living expenses, 4) not recusing himself and presiding (for more than 2-years) over a new criminal case involving the former client, and 5) intentionally interfering with another judge's orders setting bond for the former client's ex-boyfriend. "Order Regarding Public Censure," *Matter of Haenlein*, CCJD Case No. 24-176 (CJDAB July 18, 2025).[18] Based upon these admissions, Judge Haenlein further admitted that his judicial misconduct violated Canon Rules 1.1, 1.2, 2.11, and 3.10 of the Code. The Order is notable in its failure to recognize Judge Haenlein's abuse of the prestige of judicial office and actual bias under Canon Rules 1.3, 2.2, and 2.3.[19]

Despite the obvious gravity of his misconduct and the apparent timing of when the CCJD received the underlying RFE or reliable information resulting in recognition of a complaint, Judge Haenlein proceeded to seek judicial retention through the November 5, 2024 general election. Both Judge Haenlein and the CCJD withheld disclosure of Judge Haenlein's pending judicial discipline proceedings from the 13th Judicial District Performance Commission.[20] Consequently, the 13th Judicial District Performance Commission unanimously made a mistaken and unreliable recommendation that Judge Haenlein "Meets Performance Standards," including having sufficient judicial integrity. Voters, in turn, approved Judge Haenlein's retention with a 57% majority. The adjudicative panel's final disciplinary order does not address Judge Haenlein's violations of Canon Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.16, and 4.1, as those rules relate to his dishonesty in seeking retention.

---

[18] In yet another perversion of the judicial discipline process, the CCJD kept the identity of Judge Haenlein's former client and her ex-boyfriend confidential, claiming that they were the victims rather than co-conspirators and beneficiaries of judicial misconduct. This phony confidentiality, in turn, was used to excuse the full public disclosure of the evidence and allegations of Judge Haenlein's misconduct under the Code. [TR (4/11/25 Status Conf.), pp. 26:15-27:1 (Special Counsel Walsh explaining intentionality of submitting a sanitized stipulation that did not disclose identities of witnesses / co-conspirators)].

[19] If parallel attorney discipline proceedings are ever brought against Judge Haenlein under Colo. RPC 8.4, they would be resolved before the Presiding Disciplinary Judge and this Committee's member, Bryon Large.

[20] While professing the importance of transparency, David Beller acknowledged Judge Haenlein having been retained by voters as part of his remarks during the adjudicative panel's April 11, 2025 status conference. [TR (4/11/25 Status Conf.) p. 35:11-25].

Christopher S.P. Gregory, esq.
August 25, 2025
Page 16 of 32

Following the election, the CCJD requested Judge Haenlein's temporary suspension under Colo. RJD 34(a). On November 24, 2024, the Colorado Supreme Court granted the request and issued its order suspending Judge Haenlein. Judge Haenlein was represented throughout his judicial discipline proceedings by this Committee's member, David Beller. Instead of resigning and allowing the judicial discipline process to move forward, Judge Haenlein remained on temporary paid suspension. Judge Haenlein's suspension required the Colorado Judicial Department, at the taxpayers' expense, to assign senior judges to perform Judge Haenlein's judicial duties. The CCJD delayed initiating formal proceedings and did not request the assignment of a CJDAB adjudicative panel until March 27, 2025. In the interim, Judge Haenlein continued to receive his full $16,566.50 per month salary plus benefits. Presumably, Judge Haenlein used his salary and benefits to pay the costs of Mr. Beller's representation.

After the CCJD initiated formal proceedings, the CJDAB assigned the matter to an adjudicative panel composed of Tyrone Glover, Jeff Swanty, and Vincente Vigil. A status conference was held before the adjudicative panel on April 11, 2025.[21] At the status conference, Executive Director Mangiardi, Special Counsel Walsh, and Mr. Beller all allowed misrepresentations that Judge Haenlein's removal/resignation and public censure was the most stringent / sole remedy available to the adjudicative panel. [TR (4/11/2025 Status Conf.) pp. 37:5-22,[22] 40:2-23, 40:25-

---

[21] To have the status conference included in the CJDAB's public record of proceedings, I had to personally pay for the $283.97 costs of transcription. The transcript was, then, posted with other case filings on the Weld Combined Court's website. https://www.coloradojudicial.gov/node/13168.

[22] Special Counsel Walsh stated:

> Okay. So, what I want to say is there are -- the Commission is very limited in what it can do. And what the -- basically, as Mr. Beller has indicated, Judge Haenlein is -- the anticipation is tendering his resignation. ***That is as severe as it gets. There's nothing more the Commission can do.***
>
> And so, if you're dissatisfied as a Panel with what the Commission's options are here, the Commission has taken this case very seriously. It has pursued this case aggressively and it has sought the ultimate sanction, which the parties have agreed to. ***And there's nothing more that can be done.***
> * * *
> I'm going to represent to you as the Commission's Counsel and as an officer of the Court, this stipulation contains the universe of facts of the alleged misconduct here.
> * * *
> That is not done to try to whitewash things. ***It's not done to try to protect the judiciary or the reputation of the judiciary or of Judge Haenlein.*** That's not what's going on.
> * * *
> ***I think I speak on behalf of Mr. Beller*** as well as not -- as a fellow officer of the Court. We're, you know, it's -- you know, sorry that we don't have this quite the way you guys would like it presented as yet, ***we will get it there and give you the information we hope that you need <u>so that you can make an informed choice</u> about what the best resolution here is***.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 17 of 32


41:6, 41:14-42:13, 42:23-43:16, 51:22-52:22, 58:1-11]. Special Counsel Walsh further argued that the impacts of Judge Haenlein's paid suspension and the burdens of the 13th Judicial District Court assigning senior judges to Judge Haenlein's caseload supported expedited approval of the stipulation.[23] To its credit, the panel rejected the CCJD and Judge Haenlein's mutual request to resolve the case only on the face of the unpublished stipulation. [TR (4/11/25 Status Conf.) p. 53:1-10]. The panel set deadlines for the CCJD to file formal charges and for Judge Haenlein to file his answer. The panel scheduled a second status conference for May 8, 2025. When Judge Haenlein filed his answer on April 29, 2025,[24] he also submitted his belated resignation effective

---

> [TR (4/11/25 Status Conf.), pp. 37:11-22, 38:23-39:1, 39:5-7, 62:3-9] (emphasis added).

[23] Special Counsel Walsh's comments confirm the collusion between the CCJD and Mr. Beller to delay resolution of Judge Haenlein's case with an ultimate bare public censure and without a request for attorney's fees, costs, or recoupment of Judge Haenlein's salary and benefits. Special Counsel Walsh stated:

> We haven't filed a complaint, mostly because ***Mr. Beller and I have been acutely aware of the fact that Judge Haenlein is on temporary suspension right now. He's being paid.*** And that has been the circumstance for four months now. And while he's also being paid while not working, the 13th Judicial District is currently laboring under the burden of being down a judge. And that I'm sure is a struggle for them.
>
> ***So time has been of the essence for Mr. Beller and I to try to resolve this***, and as quickly and as efficiently as possible. And so reaching a stipulated agreement, I mean, basically the stipulation that we've tendered to the Panel is (indiscernible) the format of what stipulations looked like previously under the previous rules.
>
>             \* \* \*
>
> And so really, ***my request on behalf of the Commission***, is for the -- for this Panel to accept this stipulation, and really just tell us where we need to file it. And we'd like to get the case resolved just as quickly as possible, ***given that when the case becomes public*** and everyone kind of knows what's happening, the Judicial Department and the 13th Judicial District in particular, is going to be able to get some relief here quickly and start proceeding.
>
>             \* \* \*
>
> ***[Y]ou know, currently, Judge Haenlein is being paid $16,500 a month to not work.***
>
>             \* \* \*
>
> And so, we want -- and the 13th is down a judge. And so, we're very interested in getting this moving as fast as possible.
>
> [TR (4/11/25 Status Conf.) pp. 18:3-15, 18:19-19:1, 56:3-4, 56:6-8] (emphasis added).

[24] Judge Haenlein's Answer asserts that this Committee's failure to adopt rules and procedures to conform to Amendment H / HCR 23-1001 is an affirmative defense to the charges against Judge Haenlein. The Answer states:

> The Adjudicative Panel is operating without any clearly articulated rules or procedures. The absence of rules and procedures may deny Judge Haenlein his constitutional right to due process of law.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 18 of 32


April 30, 2025.  On May 1, 2025, my op ed article *Opinion: Colorado's Highest Court Has Lost Credibility* was published in *Colorado Politics*.  Appendix 1.  The article asserted that the CCJD, the CJDAB, and this Committee have been rigged by the Justices, the CCJD, and Governor Jared Polis abusing their appointment powers.  After the filing of Judge Haenlein's answer and announcement of his resignation, the Senate Judiciary Committee voted to forward the reappointments of CCJD Chair Mindy Sooter and Vice Chair James Carpenter to the full Senate with ***unfavorable*** recommendations.[25]  With the full Senate vote on Sooter and Carpenter's reappointments pending, Mr. Beller filed a May 6, 2025 motion to vacate the May 8, 2025 status conference.[26]  The adjudicatory panel granted the motion on May 7, 2025 (the same day that the Senate rejected Sooter's reappointment (19-16) and barely approved Carpenter's reappointment (16-19)).[27]

On June 15, 2025, my op-ed *Perspective: Above the Law* was published in *The Denver Gazette*.  Appendix 2.  The article specifically called out the adjudicative panel's refusal to publish the proposed stipulation in *Haenlein* and how the stipulated outcome of a bare public censure would defraud the public and provide Judge Haenlein with a substantial windfall (approximately $120,000 including being excused from paying attorney's fees and costs according to Colo. RJD

---

In filing Judge Haenlein's answer, however, attorney David Beller was less than candid by failing to publicly disclose / explain that he is, himself, a member of this Committee with authority to retroactively amend the Colo. RJD (including defining what sanctions are available against his client under Colo. RJD 36).  As part of the April 11, 2025 status conference, adjudicative panel member Tyrone Glover disclosed that he and Mr. Beller had an extended history of serving together on various boards and as part of a brief office sharing arrangement.  [TR (4/11/25 Status Conf.) p. 5:11-7:1].  Mr. Glover's disclosure (contrasted with the non-disclosure of Mr. Beller's conflicts despite the other panel members, Executive Director Mangiardi, and Special Counsel Walsh's knowledge of them) only highlights the appearances of impropriety that existed with Mr. Beller serving on this Committee while simultaneously representing Judge Haenlein in his pending case.  *See also* [TR (4/11/25 Status Conf.) p. 12:14-17 (Judge Vincente Vigil explaining how he is a member of this Committee), 16:19-23 (Beller mentioning rulemaking through this Committee and inadvertently referencing the Advisory Committee without disclosing his membership on both)].

[25] David Migoya, *Colorado Senate Committee Balks at Governor's Judicial Discipline Nominations*, Denver Gazette, May 6, 2025.

[26] In his motion, David Beller continued to maintain that a bare public censure, following Judge Haenlein's resignation, was the only sanction the adjudicative panel could impose.  In the motion, Mr. Beller states:

> The Adjudicative Panel's options at this point are, therefore, to accept the parties' stipulation to public censure, or at the Panel's discretion, dismiss the complaint, or impose public or private discipline (e.g. reprimand or censure).  See, House Concurrent Resolution 23-1001(e)(I), Colo. Const. Art. XI § 23(3)(e)(II). Judge Haenlein's resignation moots all available options other than dismissal of the complaint, reprimand, or censure. *Id.*

> "Motion to Vacate Status Conference," *Matter of Haenlein*, CCJD Case No. 24-176, p. 2, ¶ 4 (May 6, 2025).

[27] David Migoya, *Senate Rejects Colorado Judicial Discipline Appointee While Approving Another*, Denver Gazette, May 7, 2025.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 19 of 32

36(g)).  Despite some finger waiving over the adjudicative panel's authority to impose "*other discipline* as provided by the Colorado Constitution," the adjudicative panel ignored my public criticisms and accepted the stipulation that allowed Judge Haenlein's unjust enrichment.  July 18, 2025 Order, p. 1.  I followed up with a second op-ed *Feedback: System Skewed to Benefit Disciplined Judges* that was published in *Colorado Politics* on July 24, 2025.  Appendix 3.[28] This Committee responded by posting notice of its proposed rule changes on July 29, 2025. Interestingly, the public notice of the proposed rule changes explains that the rules had already been adopted on an interim basis, effective June 5, 2025 and June 18, 2025.  This Committee, however, did not notify the public of its interim rule adoptions until it posted the July 29, 2025 notice on the CCJD website.

The non-enforcement and facilitated public fraud in *Haenlein* follows a pattern of collusion between the Justices, the CCJD, and subject judges to reward the most serious forms of judicial misconduct by unjustly enriching the subject judges.  Through substantially similar circumstances, the CCJD (through Interim Executive Director and Special Counsel Jeff Walsh), subject judge John Scipione, Scipione's counsel John Gleason, and the Justices colluded to allow Scipione to 1) retain his salary and benefits while suspended / on self-initiated disability status, 2) avoid paying a full assessment of attorney's fees and costs, and 3) avoid contribution obligations for the Judicial Department's settlement of workplace harassment complaints. *Matter of Scipione*, 2024 CO 23.  Through the Justices' final disciplinary opinion, former Judge Scipione received an approximately $250,000 publicly funded windfall.

The outcomes in both *Haenlein* and *Scipione* are examples of substantial public fraud collectively perpetuated by the Justices, the CCJD, the subject judges, and the subject judges' attorneys.

2.  This Committee's proposed amendments to the Colo. RJD are *pro forma* and will only facilitate further judicial misconduct.

As part of its Fiscal Year 2023-24 budget request, the CCJD received a $25,000 appropriation to work with a national organization such as the American Bar Association or the National Center for Judicial Ethics on rule amendments in anticipation of the adoption of Amendment H by voters.  Had the CCJD used its funding, comprehensive temporary rules could have been in place immediately when Amendment H became effective January 4, 2025.  Instead, through premeditated incompetence, the CCJD did not consult with the ABA or the National Center. The CCJD delayed drafting any proposed rules until after the Justices and Governor Polis could stack this Committee and the CJDAB with conflicted appointments.  The apparent result is this Committee proposing meaningless *pro forma* rule changes that do nothing but further obstruct the realization of a meaningful, independent, and publicly accountable judicial discipline system.

---

[28] Following my op ed article and the announcement of this Committee's rule change proposals, the press also recognized David Beller's dual representation of Judge Haenlein and his membership on this Committee with Anne Mangiardi, Jeff Swanty, Jeff Walsh, and Vincente Vigil.  Michael Karlik, *Colorado Judicial Discipline Rules Released for Public Comment*, COLORADO POLITICS, August 6, 2025.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 20 of 32

This Committee proposes rule changes that add a new Colo. RJD 3.6 and amend the existing Colo. RJD 34 and Colo. RJD 37(e).

Instead of amending Colo. RJD 2(a) to include the members of the CJDAB in the definition of a "judge" with an accompanying amendment of the Code's applicability section, this Committee proposes a "code of conduct" through Colo. RJD 3.6 that essentially mirrors the code of conduct for CCJD members and staff in Colo. RJD 3.5.  Notably, the Justices did not engage in any meaningful consultation with the CCJD when they adopted/imposed Colo. RJD 3.5 on October 12, 2021 while the disciplinary proceedings in *Coats* were pending.  As the judges who will adjudicate other judges' charged misconduct, there is no reason why the members of the CJDAB (judges, attorneys, and citizens) are not held to the same standards under the Code.[29]  In a particularly distasteful provision (proposed Colo. RJD 3.6(g)(2)), this Committee has given the Colorado Supreme Court's Judicial Ethics Advisory Board (the CJEAB) authority to determine what circumstances require or do not require a member of the CJDAB to disqualify himself or herself.  In the past, the Chair of the CJEAB, Alec Rothrock, saw no ethical problems with the CJEAB issuing an advisory opinion despite his law firm representing the subject judge while judicial discipline proceedings were then-pending.  Although this Committee proposes a disqualification rule for the CJDAB, it does not propose a disqualification rule for its own proceedings (including the current promulgation of these amended rules).

Without explanation, this Committee proposes amending Colo. RJD 34 so that the Colorado Supreme Court continues to control when a subject judge may be temporarily suspended pending judicial discipline or disability proceedings.  With the creation of the CJDAB, suspension determinations should be made by the full CJDAB or at least the adjudicatory panel that will be hearing the discipline or disability proceedings.  Importantly, the proposed amendments to Colo. RJD 34 do not include a provision for circumstances where the subject judge is a justice, which now requires the formation of a special tribunal under Colo. RJD 41 and Colo. Const. Art. VI, § 23(3)(f)(II).  Again without explanation, this Committee moves the existing standard for temporary suspension (which expressly includes non-cooperation in the judicial discipline process) and subsumes it with a highly subjective and overly stringent "substantial threat of serious harm" standard.[30]  Consistent with principles of equity, a temporary suspension is

---

[29] As the CCJD's Executive Director, I had requested that all members of the adjudicative panels (including the attorney and citizen members) receive the same rate as a per diem judge for their services.  This appropriation is discussed in the final fiscal note for HCR 23-1001.  For all intent and purposes, the members of the CJDAB are all judges.

[30] *Compare* added Colo. RJD 34(a) and amended Colo. 34(d) *with* existing Colo. RJD 34(a) (moved to proposed Colo. RJD 34(b)(1)):

> **Request to Supreme Court.** The Commission, by its chair, the executive director, or special counsel, may request the Supreme Court to order temporary suspension of a Judge, with pay, pending the resolution of preliminary or formal proceedings. The request shall include a statement of the reasons in support of the suspension, which may include the Judge's failure to cooperate with the Commission. Upon receipt of such a request, the Court may require additional information from the Commission.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 21 of 32

appropriate whenever a judge's conduct or circumstances present an imminent risk of irreparable harm (including risks to public safety, obstruction of the judicial discipline process, impairment of the integrity of the judicial process, or diminishment of public confidence in the judiciary). *See LTCPRO, LLC v. Johnson*, 2024 COA 123, ¶17 (listing required elements for party to obtain preliminary injunction). The "substantial threat of serious harm" standard is nonsense. At no time in the history of the CCJD did the Colorado Supreme Court deny a pre-dispositional request for a judge's temporary suspension and there is no evidence that the authority to request temporary suspensions has ever been misused. The proposed amendments to Colo. RJD 34 also fail to provide for the unsealing / publication of temporary suspension records once a judicial discipline case becomes public with the filing of formal proceedings. *See* Colo. Const. Art. VI, § 23(3)(g)(1). The unsealing of temporary suspension records upon the filing of formal proceedings would allow the public to make their own determinations as to whether suspension requests are made and ruled on appropriately. This Committee's proposed amendments to Colo. RJD 34 reduce rather than reinforce the public transparency mandated by Amendment H. Of equal significance, the proposed amendments to Colo. RJD 34 do not include a mechanism for recoupment of an ultimately sanctioned subject judge's salary and benefits received while suspended. *But see* Colo. Const. Art. VI, § 23(2) (defining procedure through which judge's salary is suspended following conviction of felony or crime of moral turpitude subject to appeal); Appendices 2 and 3 (describing how this Committee and the adjudicatory panel facilitated subject judge Justin Haenlein receiving an approximately $120,000 windfall by prolonging his paid suspension under Colo. RJD 34).

This Committee's proposed amendments to Colo. RJD 37(e) are primarily focused upon continuing a mechanism through which the CCJD and a subject judge may resolve formal proceedings through a stipulated resolution. The proposed rule allows the CCJD to file a stipulation in lieu of filing a formal complaint. Like the existing rule, however, the proposed rule does not provide any standing or opportunity for the complainant or other victims of judicial misconduct to object to the stipulated resolution, particularly the agreed sanction. The proposed rule also does not provide a mechanism for the CJDAB to require disclosure of a more detailed record of the allegations and evidence compiled through the CCJD's Colo. RJD 14 and Colo. RJD 16(b)(4) investigation(s). Indeed, the proposed Colo. RJD 37(e) strikes text that previously contemplated the filing of both the stipulated resolution and "the record of proceedings," as further defined by Colo. RJD 33. The proposed Colo. RJD 37(e) is amended to state, "The stipulated resolution shall become public when it is filed with the Adjudicative Board Panel." Despite this change, this Committee and the adjudicative panel in *Haenlein*, have refused to publish the stipulation relied upon to resolve that case. *See* Appendices 2 and 3; *see also* [TR (4/11/25 Status Conf.), p. 11:4-14 (confirming that the adjudicative panel had received a copy of the unpublished stipulation)]. Like the other proposed rule changes, the amendments to Colo. 37(e) do not promote greater transparency. Instead, the amendments only reinforce a judicial discipline system that encourages backroom deals and opportunities to minimize the subject judge's accountability for misconduct.

Collectively, the rule amendments proposed by this Committee do nothing more than further entrench a failed judicial discipline system that focuses upon the self-protection of disciplined judges rather than fully remedying the harms caused by judicial misconduct and deterring future

Christopher S.P. Gregory, esq.
August 25, 2025
Page 22 of 32

misconduct.  With these proposed rule changes, neither individual victims nor the public are given any voice in the judicial discipline process.

3. A series of revisions is necessary to remedy the Colorado judicial system's ongoing failure to hold the Justices of the Colorado Supreme Court accountable for their already proven and substantial violations of the Code.

**STRUCTURAL REFORMS**

- **Replace the current special master system with the CJDAB as the final adjudicative body:** Under the existing Colo. RJD, many of the functions of the CJDAB were delegated by the Colorado Supreme Court to one or more special masters.  Colo. RJD 2, 4, 10, 18-20, 21.5, 22, 25-27, 29-30, 32-34, 36-40.  All references to special masters in the Colo. RJD need to be updated to refer to the CJDAB or its assigned panels.  Because the CJDAB is now authorized to enter final disciplinary orders with the Colorado Supreme Court and a Special Tribunal limited to performing appellate functions, the Colo. RJD must be generally updated to conform to the changed constitutional procedures.  Moreover, the procedures for disability cases need to be updated to reflect the assignment of a full CJDAB panel to make both preliminary and final determinations.  *See* Colo. RJD 33.5(b)(4) (allowing appointment of single special master rather than full panel of special masters in disability proceedings).

- **Provide for en banc review and decision-making by the CJDAB:** In order to ensure that assigned panels are complying with the Code and other laws, the Colo. RJD should be amended to include authority for the CJDAB to exercise en banc review either *sua sponte* or upon the request of a party with standing (including a complainant or victim).  En banc review would have been appropriate prior to CJDAB panel's issuance of its final disciplinary order in *Haenlein*.  Additionally, the Colo. RJD should define what types of administrative and other actions require en banc decisions (rather than decisions made by individual CJDAB panels).

- **Confirm the CCJD's discretion to utilize its special cash fund and directly appoint outside special counsel, when needed:** § 13-5.3-102(3)(e), C.R.S. provides that the CCJD may "employ attorneys or appoint outside special counsel pursuant to sections 24-31-101(1)(g) and 24-31-111 who serve at the pleasure of the commission[.]"  Ostensibly, § 13-5.3-102(3)(e), C.R.S. allows the Colorado Attorney General to control which attorneys the CCJD is able to appoint to perform services paid through the CCJD's special cash fund, including needs to appoint outside special counsel to address internal disqualifications.  The Colo. RJD should be amended to clarify that utilization of the special cash fund occur in the sole discretion of the CCJD, consistent with § 13-5.3-104(6), C.R.S. ("Money in the fund may be used for payment of the expenses for evaluations, investigations, formal proceedings, or special projects that the commission has determined are to be undertaken by personnel other than or in addition to those employed by the office.").  Additionally, the Colo. RJD should clarify that the CCJD (not the chief justice) determines whether the attorney general "is unable, has

Christopher S.P. Gregory, esq.
August 25, 2025
Page 23 of 32

failed, or refuses to provide legal services" allowing the CCJD to directly appoint special assistant attorneys general (SAAGs) according to § 24-31-111(5), C.R.S. and § 13-5.3-109, C.R.S.

- **Conform Colo. RJD 41 to Colo. Const. Art. VI, § 23(3)(f)(II) so that special tribunals are composed of no more than one randomly selected court of appeals judge or district court judge from the same judicial district:** When confronted with grounds for their disqualification from the *Coats* case, the Justices responded by adopting Colo. RJD 41, which authorizes the formation of special tribunals to recompose the Colorado Supreme Court where specific conflicts exist.  Colo. RJD 41, however, merely replaces the Justices with randomly selected members of the Colorado Court of Appeals. The CCJD opposed this structure and had, instead, argued for the special tribunals to be composed of both court of appeals and district court judges, with no more than one judge appointed from the same court or judicial district.  Even though the Colorado Legislature adopted the CCJD's proposed structure/composition of the special tribunals through HCR 23-1001, the Justices refused the CCJD's June 2023 request for a conforming amendment to Colo. RJD 41.  With voters now having adopted HCR 23-1001 / Amendment H, there is no reason why Colo. RJD 41 should not be amended to respect the constitutional change.

- **Define processes for appointing special commissioners and special adjudicators when a quorum of non-conflicted members does not exist:** There is currently no provision in the Colo. RJD that implements the CCJD's authority to appoint special commissioners when there is less than a quorum of non-conflicted remaining members or where, as in the Masias Controversy, the appointing authorities are themselves conflicted. The Colo. RJD should be amended to allow any remaining non-conflicted members of the CCJD and/or the CJDAB to appoint special commissioners or special adjudicators (regardless of whether there is a quorum or majority of non-disqualified members left). In circumstances where the entire CCJD or the entire CJDAB is disqualified, the CCJD and the CJDAB should be recomposed with the random selection of judge members according to the process defined in § 13-5.3-102(2)(b), C.R.S.  In turn, the randomly selected judge members / special commissioners would have authority to appoint the remaining special attorney and citizen members.

## TRANSPARENCY MEASURES

- **Establish anonymous and confidential reporting procedures:** Colo. Const. § 23(3)(g)(II)(A), (C)(IV), § 13-5.3-111(2), C.R.S., and § 13-5.3-112, C.R.S. require that the CCJD provide a process for confidential and/or anonymous reporting with recognition that complainants who identify themselves are entitled to notice and information sharing throughout the judicial discipline process.  The Colo. RJD should be amended to further define the CCJD's obligations to keep complainants informed as well as how to publicly respond to anonymous complaints.  The CCJD should be required to post a dispositional memorandum on its website when it resolves an anonymous

Christopher S.P. Gregory, esq.
August 25, 2025
Page 24 of 32

complaint through a jurisdictional dismissal or through the imposition of an informal disposition under Colo. RJD 35. Where appropriate to provide context, the CCJD should have authority to post the anonymous RFE with redaction of the subject judge's name. Although the Colorado General Assembly failed to stand it up and defunded it, the Colorado Office of the Judicial Discipline Ombudsman (COJDO) is a necessary tool for facilitating anonymous and other confidential reporting. § 13-3-120, C.R.S. The Colo. RJD should be amended to define the information sharing and other cooperation expected between the CCJD and the COJDO.

- **Eliminate restrictions on the CCJD's communications with the press and the public as imposed by the Justices through Colo. RJD 3.5(c)(2):** Through Colo. RJD 3.5(c)(2), the Justices attempted to impose an unconstitutionally overbroad gag order with respect to CCJD's communications with the public and the news media. Colo. RJD 3.5(c)(2) conflicts with Colo. RJD 6.5(d) which allows disclosures "in the interest of justice or public safety" or that are "reasonably necessary . . . to fulfill the Commission's Constitutional mandate under Rule 1(b)." With the CCJD's role having changed to primarily a prosecution function, its Commissioners and staff should have the same opportunities to communicate with the public and the media as afforded by Colo. RPC 3.6(b), (c) and 3.8(f), particularly following the filing of formal proceedings. Colo RJD 3.5(c)(2) should be stricken and replaced with cross-references to Colo. RPC 3.6 and 3.8(f).

- **Eliminate the Colo. RJD 6.5(e) certification requirement**: Currently, Colo. RJD 6.5(e) requires certification before the CCJD may share requested records with attorney regulation agencies or law enforcement. This restriction is not supported by any legitimate public policy justifications and conflicts with the CCJD's authority to share information with law enforcement or OARC "in order to protect the public or the judiciary or to further the administration of justice." Colo. RJD 6.5(d)(2). Accordingly, Colo. RJD 6.5(e) should be stricken in its entirety.

- **Require that the CCJD notify the OJPE of pending complaints, motions for temporary suspension, and informal dispositions:** As demonstrated in *Haenlein*, the CCJD's current failures to inform the Judicial Performance Commissions that a judge who is standing for retention faces pending judicial discipline proceedings result in the respective Judicial Performance Commissions making retention recommendations based upon incomplete or misleading information. In turn, voters are provided misinformation, and the value of the Judicial Performance Commissions' recommendations are brought into doubt. The Colo. RJD should be amended (concurrently with the State Judicial Performance Commission's rules) to require that the CCJD notify the Colorado Office of Judicial Performance Evaluation whenever a RFE is recognized as a complaint under Colo. RJD 13(b), a judge is temporarily suspended under Colo. RJD 34, or an informal disposition is imposed under Colo. RJD 35.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 25 of 32

- **Require the CJDAB to maintain a public website and to publish its final decisions in the West National Reporter System:** With its consideration of *Haenlein*, the CJDAB adopted an ad hoc system for publication of case filings and the panel's final disciplinary order.  In order to maintain the documentation of precedential decisions, the Colo. RJD should include rules and a process through which all final judicial disciplinary dispositions and orders are included in the West National Reporter System.  For informal dispositions, it is possible for the CCJD to submit an anonymized summary (similar to the summaries contained in annual reports).  For formal dispositions, the CJDAB should follow a process similar to the Colorado Supreme Court's previous publication of judicial discipline opinions in the Pacific Reporter.  In addition to publishing final dispositions and opinions in the National Reporter System, a rule should be adopted requiring the CJDAB to make case filings publicly available on its website, including transcriptions of its hearings.  A protocol is also needed to define under what circumstances the identities of victims or minor children should be protected by redaction, the use of initials, or the use of anonymized monikers (i.e. Victim 1, etc.) in case filings and the CCJD's record of proceedings.

- **Define "public records" broadly to include administrative records, financial records, and records of formal proceedings, available free of charge**: The CCJD's, the CJDAB's, and this Committee's administrative and financial records should be made publicly available by amendment of the Colo. RJD.  Moreover, the Colo. RJD should recognize that the CCJD's investigation records, record of proceedings (including but not limited to the RFE, the Colo. RJD 14(a) notice letter, and the subject judge's response(s)), and all other communications with the subject judge or their counsel become public records upon the filing of formal proceedings.[31]  The CCJD should make such records available (in electronic form) to the public free of charge.  The Colo. RJD should further require that the CJDAB post the complete record of formal judicial disciplinary proceedings (including recordings of hearings and/or transcripts and all case filings) on its website free of charge to the public.  Likewise, the Colo. RJD should require the CJDRC to post the full record of rule promulgations on the CCJD's or its own website.  The CJDRC's record should contain recordings and/or transcriptions of its public hearings.  Like the CJDAB's court files, the CJDRC's records of rulemaking should be made available to the public free of charge.  Tailored redactions and the anonymization of victim, witness, and child names can be allowed by rule, as necessary to protect legitimate privacy interests.

---

[31] Recognition that a subject judge may appeal an informal disposition without losing his or her rights to confidential proceedings can be distinguished through the rule amendments.  Colo. Const. § 23(3)(c.5)(1) ("Appeals to the adjudicative board are confidential.").  Judicial disability proceedings also remain confidential following the adoption of Amendment H. *See generally* Colo. Const. § 23(3) (no changes to § 23(3)(d) provision that judge "may be retired for disability interfering with the performance of his duties which is, or is likely to become, of a permanent character").

Christopher S.P. Gregory, esq.
August 25, 2025
Page 26 of 32

**JURISDICTION AND STANDARDS OF PROOF**

- **<u>Clarify the CCJD's constitutional jurisdiction over all Colorado judges of courts of record (including private judges, CJDAB members, magistrates, some ALJs, and some municipal judges (other than Denver County Court judges who are subject to a constitutional exception)):</u>** Although it has been long accepted that Colo. Const. Art. VI, § 23 does not apply to municipal judges, administrative law judges, or to magistrates, that interpretation is not supported by the text of § 23. Rather, § 23 states that its provisions apply to any "justice or judge of a court of record of this state." *See also* Colo. Const. Art. VI, § 1 (recognizing delegated authority of home rule cities and towns to create municipal and police courts); § 13-10-102(3), C.R.S. (allowing creation of qualified municipal courts of record); § 24-30-1003(2), C.R.S. (ALJ's required to "meet the same qualifications as a district court judge" and the OAC's proceedings are held on the record). The exclusion of Denver County Court Judges from the authority of the CCJD and the statewide judicial disciplinary system is separately and expressly provided through Colo. Const. Art. VI, § 26. Because magistrates perform nearly the same functions as judges (except presiding over jury trials), magistrates should be held to the same standard and process as judges under the Code. *See* § 13-6-501, C.R.S. (defining functions and duties of county court magistrates); § 13-5-201, C.R.S. (defining authority of district court magistrates in conjunction with supreme court rules). Similarly, private judges, the members of the CJDAB, and the Presiding Disciplinary Judge are judges of courts of record and should be included in the definition of a "judge" for the purposes of defining jurisdictional authority under Colo. Art. VI, § 23. Colo. RJD 2(a) (and potentially § 13-5.3-101(9)(a), C.R.S.) should be amended to include magistrates in the definition of a "judge." Colo. RJD 2(a) should be further amended to include private/appointed judges, administrative law judges (who sit on courts of record such as the Colorado Office of Administrative Courts), municipal court judges (who sit on qualified courts of record), the members of the CJDAB, and the Presiding Disciplinary Judge in the definition of a "judge." The inclusion of municipal court judges within the jurisdictional authority of Colo. Const. Art. VI, § 23 will also require amendment/clarification of the Code's Application section, subrule I, Comment 3.

- **<u>Remove the limitations periods for judicial misconduct allegations, consistent with federal standards:</u>** Since the formation of the CCJD in 1966, there has been a tradition of subject judges avoiding discipline by either intentionally concealing their misconduct or retiring/resigning to avoid scrutiny through the judicial discipline and judicial performance evaluation processes. As a consequence, there is a dearth of Colorado caselaw recognizing what constitutes judicial misconduct under the Code. Moreover, the current limitations period provided through Colo. RJD 4(b) creates circumstances that limit the CCJD's abilities to hold senior judges, private judges, and private arbitrators/mediators accountable for later discovered misconduct that occurred while they served as regular, active judges. Even if certain sanctions (such as suspension or removal) may not be possible following a judge's retirement or resignation, the public has a compelling and substantial interest in recognizing and memorializing what constitutes judicial misconduct under the Code. *Accord* Colo. RJD 1(b) (CCJD's

Christopher S.P. Gregory, esq.
August 25, 2025
Page 27 of 32

constitutional mandate includes "creat[ing] a greater awareness of proper judicial behavior on the part of the judiciary and the public").  Removing the limitations period for judicial discipline proceedings is further consistent with the federal Judicial Conduct and Disability Act of 1980 as well as the U.S. District Court for the District of Colorado's Attorney Rules.  *In re Complaint of Judicial Misconduct*, 591 F.3d 638, 642 (U.S. Jud. Conf. 2009) (recognizing that there is no statute of limitations for federal judicial misconduct proceedings but that U.S. Courts Misconduct Rule 9 allows for dismissal where "the passage of time has made an accurate and fair investigation of the complaint impractical"); *see also* D.C.COLO.LAttyR 3(e) (attorney may resign from U.S. District Court's Bar only if in good standing, not counsel of record in active case, and not the subject of any disciplinary proceeding before the court); D.C.COLO.LAttyR 7 (complaint may be filed against any member of U.S. District Court's Bar (regardless of active/inactive status) and without any stated limitation period).

- **<u>Apply reasonable basis and probable cause standards for initiating investigations and filing charges:</u>** Existing Colo. RJD 13(b) and Colo. RJD 16(c) provide for increased thresholds of proof for the evaluation of an RFE (reasonable basis) and the imposition of private discipline or initiation of formal proceedings (preponderance of evidence). Although it is appropriate to require the CCJD to make a preponderance of evidence determination before imposing private discipline or other informal dispositions, the thresholds for recognizing a complaint to open an investigation and what is required to initiate of formal proceedings should follow standards similar to a criminal prosecution. In that context, a reasonable basis or reasonable suspicion justifies opening an investigation. *See, e.g., United States v. Smart*, 91 F.4th 214, 223 (4th Cir. 2024) (reasonable suspicion "low bar" "considerably less than preponderance of evidence but more than unparticularized suspicion).  Probable cause that a subject judge has violated one or more specific provisions of the Code, the Colo. RJD, or Colo. Const. Art. VI, § 23(3) supports the initiation of formal proceedings (i.e. the filing of charges).  *See, e.g. Petersen v. Garcia*, 2023 WL 3023017 (D. Colo. 2023) (describing probable cause as "not a high bar" where there is a reasonable belief that the defendant committed the offense charged).  The Colo. RJD should be amended to conform or maintain the thresholds of proof to the well-established reasonable basis/suspicion and probable cause standards applied in criminal cases.

- **<u>Consistent with federal standards, replace the current "clear and convincing evidence" burden of proof with a preponderance of evidence standard in both the imposition of informal discipline and in formal discipline proceedings:</u>** Although the thresholds for investigation and the filing of charges should be lowered/made consistent with a criminal prosecution, judicial discipline proceedings are ultimately civil matters that only require proof through a preponderance of evidence.  Colo. RJD 16 and Colo. RJD 31 should be amended to uniformly apply a preponderant burden of proof to both the CCJD's imposition of informal discipline and to the adjudication of formal proceedings through the CJDAB.  Application of a preponderance of evidence standard is consistent with the federal Judicial Conduct and Disability Act of 1980 and recent

Christopher S.P. Gregory, esq.
August 25, 2025
Page 28 of 32

amendments to the U.S. District Court for the District of Colorado's attorney rules.  *See In re Complaint of Judicial Misconduct*, 575 F.3d 279 (3d Cir. 2009) (applying preponderance of evidence standards to recognize various acts of self-reported judicial misconduct including private hosting of website containing sexually explicit materials by then-9th Circuit Court of Appeals Chief Judge Alex Kozinski and appropriateness of public admonishment; Judge Kozinski ultimately resigned following subsequent allegations of sexual and other workplace harassment); D.C.COLO.LAttyR 7(f) ("If the charges are sustained [by] a preponderance of the evidence, the Panel may censure, suspend, disbar, or otherwise discipline the respondent."); *see also* "Order and Certification," *In re Complaint of Judicial Misconduct*, Case No. 22-90121 (9th Cir. May 23, 2024) (Judicial Council applying preponderance standard to publicly admonish, request resignation, and recommend referral for impeachment of U.S. District Court for the District of Alaska Judge Joshua Kindred).

- **Clarify the CJDAB's authority over temporary suspensions under Colo. RJD 34 and provide appellate review:** Colo. RJD 34 should be amended to replace the Colorado Supreme Court with the CJDAB (or an assigned panel) as the court / judicial body that determines whether a subject judge should be temporarily suspended based upon thresholds similar to those required for the issuance of preliminary injunctions.  In turn, the subject judge, the CCJD, and/or a complainant should have the right to appeal the CJDAB or its panel's decision granting or denying a temporary suspension request to the Colorado Supreme Court or to a Special Tribunal.  To ensure that requests for temporary suspensions are not brought arbitrarily and that disciplinary proceedings do not languish indefinitely, Colo. RJD 34 should be amended to require the filing of charges and the initiation of formal proceedings within 21 days of the CCJD submitting a Colo. RJD 34(a) request.  Moreover, Colo. RJD 34 should be amended to cross-reference an amended Colo. RJD 36, which will allow for recoupment of a suspended judge's salary and benefits as part of a disciplinary adjudication.  It deserves emphasis that temporary suspensions under Colo. RJD 34 apply to judicial discipline proceedings whereas Colo. RJD 33.5 defines the process for suspensions in judicial disability proceedings.

## COMPLAINANT AND VICTIM RIGHTS

- **Define the complainant's (and victims') standing and access to the CCJD's record of proceedings:** A complainant should have access to the CCJD's investigation record, record of proceedings, and correspondence with the subject judge whenever a complaint is resolved by dismissal, private disposition, stipulation, or the initiation of formal proceedings.  Where necessary, provision can be made to protect the identities of victims, witnesses, minor children, etc. provided that the complainant has a meaningful opportunity to seek judicial review (as defined through other rule amendments).  Moreover, the CCJD's investigation record, record of proceedings, and correspondence with the subject judge should be made publicly available upon the filing of formal proceedings.

Christopher S.P. Gregory, esq.
August 25, 2025
Page 29 of 32

- **Provide an opportunity for complainants and victims to assert and enforce grounds for disqualification:** Under the existing Colo. RJD, a subject judge may request the disqualification of members of the CCJD but a complainant may not.  Moreover, a CCJD member or a justice/judge who recuses himself or herself need not explain the reasons for the recusal.  The Colo. RJD should be amended to recognize a process for both complainants and victims to request the disqualification of members of the CCJD, the CJDAB, and the Colorado Supreme Court or a Special Tribunal.  Similar to what is required under D.C.COLO.LCivR 40.1(f), the recusal of a member of the CCJD, the CJDAB, the Colorado Supreme Court, or a Special Tribunal should occur "by [public] written order stating the reasons."  The disqualification decisions of members of the CCJD, the CJDAB, and the CJDRC should be posted immediately on the CCJD's and CJDAB's respective websites, including recusals that occur in response to anonymous RFEs or complaints initiated *sua sponte* by the CCJD according to Colo. RJD 13(f).

- **Apply Canon Rule 2.11 disqualification standards to the CCJD, the CJDAB, and this Committee:** Current Colo. RJD 3.5 and proposed Colo. RJD 3.6 do not cross-reference and make Canon Rule 2.11 the foundational standard for the disqualification obligations of commissioners, board members, committee members, and staff.  In the interests of consistency, the Colo. RJD should be amended to require that the CCJD, the CJDAB, and this Committee's members and staff all uniformly comply with the disqualification standards defined by Canon Rule 2.11.  To the extent that other provisions limit rather than expand grounds for required disqualification, they should be stricken.

- **Recognize complainants' and victim's rights to judicial and appellate review in both informal and formal proceedings:** The existing Colo. RJD and caselaw do not afford a complainant or victims with standing or procedures through which to challenge the CCJD's dismissal of an RFE, the sufficiency of an informal disposition, or the outcome of formal proceedings (including stipulated resolutions).  *See also Higgins v. Owens*, 13 P.3d 837 (Colo. App. 2000) (affirming jurisdictional dismissal of C.R.C.P. 106 challenge to Commission's dismissal of RFE without investigation).  Under the federal Rules for Judicial Conduct and Judicial Disability Proceedings and the Judicial Conduct and Disability Act of 1980, complainants may petition the respective Circuit Court of Appeals' Judicial Council to review a Chief Judge's dismissal of a judicial misconduct complaint.  28 U.S.C. § 352(c)-(d); U.S. Courts Misconduct Rules 18 and 19.  When the merits of a complaint are ultimately ruled on by the Judicial Council, there are further mechanisms for review through the federal courts' Committee on Judicial Conduct and Disability and the federal courts' Judicial Conference.  28 U.S.C. § 357; U.S. Courts Misconduct Rules 21 and 22.  The Colo. RJD should be amended to provide a structure that allows a complainant to seek judicial and appellate review of decisions made throughout the judicial discipline process.  Consistent with the procedures for federal judicial misconduct proceedings, a requestor or complainant should have the right to request review of the CCJD's preliminary dismissal decisions by the full CJDAB.  If a recognized complaint is resolved through dismissal, an informal disposition, or formal

Christopher S.P. Gregory, esq.
August 25, 2025
Page 30 of 32

proceedings, the complainant should have the right to judicial review and/or appellate review through the CJDAB and/or the Colorado Supreme Court or a Special Tribunal.

## SANCTIONS AND ENFORCEMENT

- **Prohibit diversion plans with deferred dismissal where misconduct warrants a private censure, a public reprimand, or a public censure:** The availability and requirements of diversion plans that include a deferred dismissal should be better defined under Colo. RJD 35(c).  Such diversion plans should not be available in circumstances providing grounds for a subject judge's private censure under Colo. RJD 35(f), public reprimand under Colo. RJD 36(e), or public censure under Colo. RJD 36(e).

- **Harmonize the definitions of private and public reprimands/censures:** Colo. RJD 36(e) should be amended to conform the grounds for public reprimand and public censure to the grounds for private reprimand and private censure under Colo. RJD 35(e)-(f), respectively.

- **Recognize aggravated sanctions for concealment or obstruction:** Under the current Colo. RJD, there are no deterrents against a judge intentionally concealing misconduct that justifies his or her removal from judicial office.  To remedy this, the sanctions available through Colo. RJD 36 should be amended to include the availability of forfeiture or fines in cases where a subject judge intentionally concealed the existence and evidence of his or her judicial misconduct.  For example, if the Justices are found responsible for their obstruction, non-reporting, and non-cooperation with the CCJD as to the Masias Controversy, available remedies should include the forfeiture of the salaries and benefits they received since they began concealing their misconduct on June 3, 2019 (when the Masias Contract was executed a second time after receipt of the April 15, 2029 anonymous Fraud Hotline complaint).  Likewise, former 18th Judicial District Court Judge John Scipione should be held accountable for his concealment of an inappropriate sexual relationship with his subordinate that occurred when he worked as a magistrate (before becoming a judge through further misrepresentations).  *Scipione*, ¶20.  Former 13th Judicial District Court Judge Justin Haenlein's more than 2-year concealment of his non-disqualification is a further example of circumstances where aggravated sanctions are appropriate.  Imposing aggravated sanctions for concealment or obstruction will encourage the self-reporting of judicial misconduct (as required through Canon Rules 2.15 and 2.16) and prevent harms to the public from continuing unaddressed.  The imposition of a precedent setting aggravated sanction for concealment or obstruction would be a powerful deterrent and likely to prevent similar judicial misconduct from ever happening again in the future.

- **Provide for recoupment of a suspended judge's salary/benefits upon adjudication:** Existing Colo. RJD 34 and Colo. RJD 36, as interpreted by the Justices in *Scipione*, are a perverse incentive for subject judges who face forgone removal to intentionally prolong their paid suspensions.  The Colo. RJD should not incentivize further judicial misconduct

Christopher S.P. Gregory, esq.
August 25, 2025
Page 31 of 32

or provide the worst behaving judges with the biggest windfalls of taxpayer money (as compared with those subject judges who immediately resign pending further judicial discipline proceedings so as to not further harm the public). It is equally disturbing that, through his membership on this Committee and collusion with the CCJD, attorney David Beller was able to assist former Judge Justin Haenlein exploit the opportunity to prolong his paid suspension. In its existing form, the Colo. RJD only perpetuates public fraud and must be amended to include provisions for the automatic recoupment of a temporarily suspended judge's salary and benefits upon the judge's adjudication for violations of the Code (including circumstances where a subject judge has wrongfully invoked disability proceedings under Colo. RJD 33.5(c)). A subject judge should not have incentives to prolong or to gain false leverage in otherwise meritorious judicial discipline proceedings.

- **Authorize the CCJD to recover reasonable attorney's fees as a prevailing party, with reciprocal provision for judges in bad faith prosecutions:** Colo. RJD 35(g) allows the CCJD to directly assess attorney's fees and costs as part of an informal disposition. In contrast, Colo. RJD 36(g) allows the CCJD to recommend reimbursement for attorney's fees and costs with the Colorado Supreme Court authorized to determine whether the grounds for reimbursement are "appropriate and equitable in the circumstances." The availability of attorney's fees and costs to the CCJD arises from Colo. Const. Art. VI, § 23(e)(II), which now provides: "The adjudicative panel may also order that the costs of the investigation and hearing be assessed against such justice or judge." Essentially, the voters' intent is that the public should not subsidize a judge or justice prolonging meritorious judicial discipline proceedings. Colo. RJD 36(g) should be amended to recognize the CCJD's entitlement to attorney's fees and costs as a prevailing party, including in circumstances where a subject judge has wrongfully invoked disability proceedings under Colo. RJD 33.5(c). Conversely, and in fairness to the subject judge, Colo. RJD 36(g) should include a provision analogous to the Colorado Open Meetings Law that allows a subject judge to recover the reasonable costs of their defense if the adjudicatory panel finds that the CCJD's initiation and continued litigation of formal proceedings was frivolous, vexatious, or groundless. *Cf.* § 24-6-402(9)(b), C.R.S.; *see also Matter of Keenan*, 502 P.3d 1271 (Wash. 2022) (reversing and dismissing judicial discipline charges brought contrary to the Washington Code of Judicial Conduct and in violation of judge's expressive rights consistent with judicial office).

CONCLUSION

Amendment H charged this Committee with the simple task of adopting rules that define standards of proof, confidential reporting procedures, and complainant rights. Instead of proposing such rules, this Committee offers only *pro forma* rule changes focused upon further insulating dishonest and unethical judges from public accountability. Through its conflicted composition, this Committee is fundamentally flawed. The present promulgation of proposed rule changes is itself violative of various provisions in the Code. The proposed rule changes should be abandoned, this Committee should be dissolved and recomposed through a conflict-free appointment process, and, according to Colo. RJD 13(b), complaints should be recognized

Christopher S.P. Gregory, esq.
August 25, 2025
Page 32 of 32


as to some or all of the listed judges and members of the CJDAB.  Additionally, complaints should be recognized based upon the allegations of judicial misconduct asserted in the October 24, 2024 RFE.  Appropriate actions should also be taken to address the misconduct of the CCJD's current and former members and its staff.  Once a new conflict-free rulemaking committee (along with a conflict-free CCJD and a conflict-free CJDAB) is formed, it will be appropriate for the CJDRC to resume its rulemaking function, including consideration of these and other public comments.


Sincerely,

Christopher S.P. Gregory

Enclosures (5)


Cc: The Colorado Commission on Judicial Discipline
The Colorado Office of the State Auditor / the Colorado Fraud Hotline
The Colorado Office of Judicial Performance Evaluation
Members of the Colorado General Assembly
The Denver Gazette
The Denver Post

# Colorado's highest court has lost credibility | OPINION

By **By Christopher Gregory**    05/01/2025 | updated 4 months ago

| Appendix 1 |

Colorado is haunted by the ghosts of Watergate. Through his preemptive pardon of Richard Nixon, Gerald Ford blunted the rule of law by preventing our country from ever directly addressing the wrongfulness of Nixon's conduct and having public discourse as to what accountability was appropriate. The evolution of Colorado's judicial scandal has been very similar to the chronology of Watergate. In it I have found my own spiritual camaraderie with Justice Melissa Hart's grandfather, Archibald Cox. Like me, Cox was retaliated against and fired just as his investigation of Nixon discovered critical evidence.

The greatest danger to the American republic is not who voters choose to represent them but rather the selective enforcement or non-enforcement of our nation's and our states' public corruption laws and civil rights protections.  In his 1776 Thoughts on Government, John Adams stated: "A republic is the best form of government, a government of laws, not arbitrary rule. (T)here is no good government but what is Republican. (T)he very definition of a Republic, is "an Empire of Laws, and not of Men."

During the past six years, the justices of the Colorado Supreme Court have consistently enforced what amounts to a protection racket in which they choose their own investigators, prosecutors, adjudicators, and appellate panels all while acting as their own legislature. The citizens of Colorado should be petrified by the fact that the justices and their co-conspirators have overtly endorsed a system where those in power may sit in judgment of themselves with license to violate the law, including their ethical obligations.

Voters expressed their desire to have an independent and legitimate judicial discipline system by approving Amendment H with a 73% majority. Despite this mandate, the justices and the Colorado Commission on Judicial Discipline's members responded by rigging the newly created judicial discipline adjudicatory board and the judicial discipline rulemaking committee through the appointment of more of their cronies.

***Stay up to speed: [Sign up for daily opinion in your inbox Monday-Friday](#)***

At the April 28 Senate Judiciary Committee hearing on the reappointment of the commission's Chair Mindy Sooter and its Vice Chair James Carpenter, it was revealed that the commission had summarily dismissed a 330-page anonymous request for evaluation (RFE) of judicial conduct. The anonymous RFE, reported in the Oct. 27, 2024 Denver Gazette, alleged significant misconduct by the justices and a conspiracy that includes the commission itself. Gov. Jared Polis's re-appointment of Sooter and Carpenter despite his personal awareness of the allegations in the anonymous RFE is evident that Polis is knowingly conspiring to protect the justices and the commissioners. Although this is only the latest example of a judicial discipline system that has been degraded into being merely a tool for judicial self-protection, it is perhaps the most blatant abuse of the justices and the commissioners' obligations to be fair and impartial as well as to provide an opportunity to be heard.

Through all the complexity of the Colorado judicial scandal, it has been lost that the commission has already proven sufficient grounds to merit the immediate suspension and removal of six of the seven justices. Through Matter of Coats, 2023 CO 44, a special tribunal publicly censured former Chief Justice Nathan B. Coats for his role in approving at a $2.66 million-plus sole-source quid pro quo contract intended to prevent former State Court Administrator's Office Chief of Staff Mindy Masias from disclosing compromising information about the justices and the Colorado Judicial

Department. It is uncontested that all of the Justices were aware of allegations of fraud by Masias at the time; that all the justices approved the Masias contract, and that all the justices intentionally concealed the Masias contract and the Masias memo from the Colorado Office of the State Auditor. Despite their proven complicity, Justices Boatright, Gabriel, Hart, Hood, Márquez, and Samour remain in their positions on the state's highest court without the commission pursuing any judicial disciplinary proceedings against them. Moreover, with the support of the State Commission on Judicial Performance, Justices Berkenkotter, Boatright and Márquez all overcame 2024 retention elections without any acknowledgment of their own or their colleagues' judicial misconduct with respect to the Masias Contract and its cover up.

During and after the 2024 judicial retention elections, it has been the justices' publicly expressed position that any scrutiny of their conduct is an attack on judicial independence because of their purportedly brave hearing of Anderson v. Griswold, 2023 CO 63 (holding that Donald Trump engaged in insurrection; barring Trump from the 2024 presidential primary election ballot), reversed by Trump v. Anderson, 601 U.S. 100 (2024) (unanimously holding that qualifications of candidates for federal office are determined by Congress).

Instead of being a brave exercise of judicial independence, the justices' hearing of Anderson v. Griswold was an unethical effort to politicize the court (which the justices would later use to justify their own candidacies for retention). Because the justices should have been accountable for their misconduct involving the Masias controversy, they were required to disqualify themselves from all pending judicial discipline cases and any other matters in which they had personal interests in the outcome.

On Dec. 14, 2023, as the Commission's executive director, I hand-delivered a disciplinary notice letter to then-Chief Justice Brian Boatright via the clerk of the Colorado Supreme Court. The letter contained allegations of judicial misconduct by all of the justices as asserted by former 10th Judicial District Court Chief Judge Dennis Maes. Instead of disqualifying themselves as they should have done under Canon Rule 2.11 of the Code of Judicial Conduct, the justices proceeded to announce their opinion in Anderson v. Griswold on Dec. 19, 2023. There are reasonable grounds to suspect that the justices and those who assisted them in suppressing the judicial discipline process knowingly interfered with the 2024 presidential election for their own personal advantage.

At the April 28 Senate Judiciary Committee hearing, I called for the non-confirmation of Chair Sooter and Vice Chair Carpenter's reappointments to the commission. I also called for the Colorado General Assembly to pass a bipartisan joint resolution referring the Colorado judicial scandal to conflict-free federal law enforcement for further investigation.

Unless there is finally an independent, unobstructed, and legitimate investigation, Colorado will continue to suffer from public corruption, patterns of retaliation and arbitrary rule analogous to Watergate. Our last hope in protecting Colorado's republican form of government is for our Legislature to exercise meaningful and legitimate oversight.

***Christopher Gregory, appointed by Gov. John Hickenlooper, served as a member, vice chair and chair of the Colorado Commission on Judicial Discipline from May 15, 2017 through June 30, 2021. Gov. Jared Polis replaced Gregory with Mindy Sooter on July 1, 2021. Gregory then served***

*as executive director from Jan. 3, 2022 until Jan. 19, 2024 when he was fired by Mindy Sooter and James Carpenter.*

# SUNDAY PERSPECTIVE

DENVERGAZETTE.COM

SUNDAY, JUNE 15, 2025



**GUEST COLUMNIST**

**CHRISTOPHER GREGORY**

## Above the law

We live with the illusion that justice rises or falls with the outcome of an election. In reality, justice dies when we allow a culture of boot licking to thrive. Nowhere is the corrosiveness of such a culture of enforced fealty and silence more embedded than in the Colorado judiciary.

Even with a published opinion (Matter of Coats, 2023 CO 44) and public admissions that all the justices of the Colorado Supreme Court were complicit in approving and covering up a $2.66 million to $2.75 million sole-source quid pro quo contract for silence, the justices have been able to avoid any meaningful accountability by hiding behind the prestige of their offices, cynical public relations campaigns, and their preferential access to public resources.

The corruption that pervades the Colorado judiciary has been built one cocktail party, one specialty bar association meeting, one self-promoting award, and one politically correct "outreach," "diversity," or "workplace culture" effort at a time. Facing sufficient grounds for their immediate suspension and removal from office, the justices chose to politicize the court by hearing and issuing their opinion in Anderson v. Griswold, 2023 CO 63, holding that Donald Trump engaged in insurrection; disqualifying Trump from the 2024 Colorado presidential primary ballot. The justices, in turn, argued that their hearing of Anderson supported their retention by voters in the 2024 election.

More than anything else, the Colorado Judicial Scandal revealed the lengths to which otherwise well-intentioned judges, attorneys and politicians will go to protect a group of charlatans perceived to control access to career progression and case outcomes. But for the justices' persistent refusal to disqualify themselves; their intimidation and their retaliation, I would have used my prior authority as executive director of the Colorado Commission on Judicial Discipline (CCJD) to have moved for their immediate suspension of and the initiation of judicial discipline proceedings according to Colo. RJD 14(c) and 34(a).

Unfortunately, the culture of enforced

**SEE LAW • PAGE 2**

GETTY IMAGES

---

## MORE INSIDE

Ukraine's 'Spiderweb' sneak attack offers lessons for U.S. and Russia. **B4**

## OUR TAKE

Pursuit of justice cannot place judges above the law. **B6**

## CALDARA

Mostly peaceful protests in Denver have been getting more 'mostly-er.' **B9**

SUNDAY, JUNE 15, 2025  |  THE DENVER GAZETTE  |  **B1**

Appendix 2

# PERSPECTIVE

## LAW

**FROM PAGE 1**

silence created by the justices came at the cost of hundreds or more victims. Through the normalization of a widely recognized "toxic" workplace culture, the justices systematically intimidated or retaliated against these victims to suppress accountability through legitimate judicial discipline proceedings. By endorsing the retaliatory termination of the State Court Administrator's Office's (SCAO) Director of Financial Services David Kribs, and encouraging the retirement of Controller Myra Dukes, the justices covered up their own malfeasance with respect to the $2.66 million to $2.75 million contract with former SCAO Chief of Staff Mindy Masias and the related Masias Memo (which contained a litany of allegedly unreported misconduct within the Colorado Judiciary).

Through their failure to supervise the Colorado Supreme Court's Office of Attorney Regulation Counsel (OARC) and their conflicted hearing of the Matter of Scipione, 2024 CO 23, the justices allowed the intimidation and harassment of District Judge John Scipione's victims with Judge Scipione ultimately receiving an approximately $250,000 windfall for his bad faith defense and judicial misconduct. As executive director of the CCJD, I internally demanded accountability for the justices' roles in the Masias contract and incontrovertible evidence that Justice Brian Boatright had intentionally concealed Presiding Denver Juvenile Court Judge D. Brett Woods' habitual alcohol abuse and retaliation against a whistleblowing court administrator.

Through a commission that the justices and Gov. Jared Polis rigged by abusing their appointment powers, I was immediately and summarily fired. Nothing has been done to remedy Judge Woods having deprived hundreds if not thousands of parents and children of their due process by failing to perform his judicial function for over four years. Through their failure to report internal human resources complaints about District Judge Robert Kiesnowski, the justices also enabled an over six-year pattern of harassment and retaliation against Judge Kiesnowski's former clerk, Emily Betts.

In the latest example of malfeasance, the justices are colluding with their partially self-appointed CCJD, the Judicial Discipline Adjudicatory Board, and the Judicial Discipline Rulemaking Committee to enable District Judge Justin Haenlein to receive an over $120,000 windfall (like that received by Judge Scipione) through Judge Haenlein intentionally prolong-

ing his paid suspension under Colo. RJD 34. Despite the clear intention of the 73% of voters who approved Amendment H to open formal judicial discipline proceedings to the public, the adjudicatory panel is resolving Matter of Haenlein, CCJD Case No. 24-176, behind closed doors and without publication of the proposed stipulation.

The extreme examples of judicial misconduct by the justices have only been possible because of the bootlicking culture and public apathy/mystique that the justices actively cultivated. On April 28, I publicly raised my concerns about the ethics of the justices and within the CCJD as I opposed the reappointment of the CCJD's Chair Mindy Sooter and its Vice Chair James Carpenter. The Senate Judiciary Committee voted against the reappointments of both Chair Sooter and Vice Chair Carpenter. When Gov. Polis's reappointment orders came before the full Senate, the senators voted (16-19) against Sooter's reappointment. Only after the Joint Budget Committee chair, state Sen. Jeff Bridges of Greenwood Village, made a personal appeal as a former subordinate of Carpenter did the senators vote (19-16) to reappoint him. Predictably, The governor responded to the non-confirmation of Sooter by immediately appointing former state Sen. Bob Gardner (another reliable apologist for the justices) to the CCJD.

No action was taken in response to my request for the Colorado General Assembly to pass a bipartisan joint resolution referring the Colorado judicial scandal to conflict-free federal law enforcement from outside of Colorado for a thorough and legitimate investigation.

Despite the Senate's non-confirmation of Sooter and the call for a federal investigation, the justices have continued to pretend that substantial concerns about their ethics do not exist. Rather than addressing such ethical concerns, the justices have leaned into favorable media coverage of the court's opinions, the justices' roles in the judicial selection process,



The Ralph L. Carr Colorado Judicial Center is seen Sept. 13, 2022, in Denver.

THE DENVER GAZETTE FILE

their conflicted efforts to promulgate "emergency" judicial discipline rules, a commencement address, and the court's high school "outreach" efforts. This strategy of rug sweeping seems to be working, with The Gazette being the sole major media outlet continuing to bring scrutiny to the justices over the Masias controversy. The only explanation for such sympathetic news coverage is cultural reinforcement that somehow the justices are above reproach and above the law.

Through the already proven grounds in Coats and the allegations further stated in an extensively detailed October 20, 2024 anonymous request for evaluation (RFE) of all the justices' conduct, the justices are obligated to form a Special Tribunal according to Article VI, Section 23(3)(f)(II) of the Colorado Constitution. Full copies of the anonymous RFE and its accompanying anonymous Fraud Hotline complaints can now be found at colo-radojudges.org.

The Oct. 20, 2024 RFE proposed many of the following solutions to the Colorado judicial scandal:

• An intergovernmental request for conflict-free federal investigation and prosecution

• Further legislative reforms: Standing up and strengthening the authorized but defunded Office of the Judicial Discipline Ombudsman

• Including the Colorado Judicial Department's administrative records and decision-making in the scope of the Colorado Open Records Act and the Colorado Open Meetings Law

• Making obstruction of the judicial discipline process a felony

• Removing the Colorado attorney general's authority to influence the CCJD's appointment of outside special counsel and use of its special cash fund

• Requiring the Colorado Supreme Court to exercise its powers to appoint members to the CCJD and other judicial discipline-related boards through random selection

• Making the Office of Attorney Regulation Counsel and the Office of the Presiding Disciplinary Judge independent agencies, rather than subdivi-

sions of the Colorado Supreme Court;

• Requiring that judicial selection and judicial performance review processes occur in public and on the record

• Authorizing the CCJD to regulate the conduct of magistrates

• Requiring the recoupment of a subject judge's salary and benefits if, following a paid suspension under Colo. RJD 34, the judge is adjudicated for violating their ethical duties

• The removal and replacement of the CCJD's current members, executive director and special counsel

• The formation of a conflict-free Special Commission to evaluate, investigate, and prosecute alleged misconduct by the justices and the CCJD's judge members

• The formation of a Special Tribunal to facilitate the appointment of the Special Commission and to address other conflicts of interest within the current judicial discipline structure

• Use of the Judicial Performance Commissions' authority to conduct both regular and interim judicial performance evaluations as a means of publicly verifying the integrity of those judges and justices suspected of violating their ethical duties

• The Legislature's consideration of impeachment proceedings to investigate and address the official misconduct involved in the Colorado judicial scandal.

Other than the Colorado Senate's rejection of the reappointment of Sooter as CCJD chair, however, no action has been taken to pursue any of these recommended solutions.

By continuing to ignore their proven and alleged misconduct while simultaneously refusing to form a Special Tribunal, the justices are publicly confirming that they have placed themselves above the law with the arbitrary power to excuse their own violations of the Colorado Code of Judicial Conduct.

The culture of boot licking, cocktail parties, self-promoting awards, politically correct pandering, and tolerance of overt judicial misconduct by the justices needs to end. Until there are greater public demands for judicial accountability and concomitant press coverage, public corruption will be allowed to thrive. Colorado deserves better than a judiciary that has replaced justice with an entrenched culture of intimidation, retaliation and hush money.

*Christopher Gregory, appointed by Gov. John Hickenlooper, served as a member, vice chair and chair of the Colorado Commission on Judicial Discipline from May 15, 2017 through June 30, 2021. Gov. Jared Polis replaced Gregory with Mindy Sooter on July 1, 2021. Gregory then served as executive director from Jan. 3, 2022 until Jan. 19, 2024, when he was fired by Sooter and Vice Chair James Carpenter.*

# System skewed to benefit disciplined judges | FEEDBACK

Jul 24, 2025



Court gavel.

greenleaf123

On June 16, the Denver and Colorado Springs Gazettes published my guest column, "Perspective: Above the Law." In it, I raised concerns about conflicts among the Colorado Supreme Court, the Colorado Commission on Judicial Discipline (the CCJD), the Colorado Judicial Discipline Adjudicatory Board (the CJDAB), and the Colorado Judicial Discipline Rulemaking Committee (the CJDRC). Specifically, I described how individuals serving on these entities were apparently colluding to allow former 13th Judicial District Court Judge Justin Haenlein to retain an approximately $120,000 windfall through a then-proposed stipulation resolving Judge Haenlein's judicial discipline proceedings in CCJD Case No. 24-176.

Appendix 3

From Nov. 24, 2024 until his resignation on April 30, Judge Haenlein received his full pay ($16,566.50 per month) and benefits while suspended under Colo. RJD 34. The CCJD delayed four months before initiating formal proceedings on March 17, 2025. In a departure from past practices where proposed stipulations were made public immediately upon their filing with the Colorado Supreme Court, the CJDAB panel refused to publish the stipulation with the other parts of the case record posted on the Weld County District Court's website. Instead of the new adjudicatory process being more transparent as intended by Colorado voters, the process has become only more shrouded in secrecy for the benefit of the subject judge.

The public should also have significant concerns the allegations against Judge Haenlein were apparently raised earlier in 2024 with Judge Haenlein still being able to seek retention in the November 2024 general election. Indeed, the 13th Judicial District Judicial Performance Commission unanimously supported Judge Haenlein's retention with a favorable recommendation.

***Stay up to speed: [Sign up for daily opinion in your inbox Monday-Friday](#)***

My publicly expressed concerns were ignored and the CJDAB's hearing panel proceeded to issue its July 21, 2025 disciplinary order adopting the parties' stipulation (which did not require Judge Haenlein to refund the salary and benefits he unjustly received while suspended). Although not described in the media's coverage or in the CJDAB's final disciplinary order, the outcome of Judge Haenlein's case was further complicated by the fact his attorney, David Beller, is himself a member of the CJDRC. Ultimately, the CJDRC has the authority to adopt rules (both prospectively and retroactively) that define the remedies available in the judicial discipline process, including disgorgement of a judge's salary and benefits received while on paid suspension.

Judge Haenlein's unjust enrichment and ability to profit from his significant and now admitted judicial misconduct is only the latest example of systemic public corruption and fraud within Colorado's Judiciary. Until there is public outrage, legislative action and a referral of the broader Colorado Judicial Scandal to conflict-free federal law enforcement, Colorado's endemic problems with a deficient judicial discipline system and the ongoing misuse of millions of taxpayer dollars will continue unabated.

***Christopher Gregory***

*Longmont*

***Send us your feedback: [Click here](#).***

*The author has served as a member, vice chair, chair and executive director of the Colorado Commission on Judicial Discipline.*

Be It Resolved by the Senate of the Seventy-Sixth General Assembly of the State of Colorado, the House of Representatives concurring herein:

Whereas credible evidence exists that whistleblowers, witnesses, and public officials within Colorado state and local governments are being systematically intimidated and retaliated against through the misuse of public resources and the selective prosecution / non-prosecution of the wrongdoers involved;

Whereas examples of the systematic misconduct involved include patterns of alleged corruption within the Colorado Judiciary, alleged interference with the 2024 presidential election, publicly funded self-investigations of various incidents of alleged official misconduct, non-disclosure and hush money agreements valued at over $4 million which have been negotiated by the Colorado Attorney General's Office and other agencies / public officials, and the allegedly invalid approval of an urban renewal authority estimated to divert $155 million of tax revenues over 25 years;

Whereas, these circumstances present probable cause and a reasonable basis to suspect violations of both Colorado and federal law;

Whereas, because of conflicts of interest, the Colorado Attorney General and the entire Colorado Department of Law are unable to impartially enforce Colorado's False Claims Act, Title 24, Part 12, C.R.S.;

Whereas, 22 other states and the District of Columbia have their own equivalent civil false claims acts.  Those states and the District of Columbia are:

- California—Cal. Gov't Code §§ 12650 to 12656;
- Connecticut—Conn. Gen. Stat. Ann. §§ 4-274 to 4-289;
- Delaware--Del. Code Ann. tit. 6, §§ 1201-1201;
- District of Columbia—D.C. Code Ann. §§ 2-381.01 to 2-381.10;
- Florida—Fla. Stat. Ann. §§ 68.082 to 68.105;
- Georgia—Ga. Code Ann. §§ 23-3-120 to 23-3-120;
- Hawai'i—Haw. Rev. Stat. Ann. §§ 661-21 to 661-31;
- Illinois—740 Ill. Comp. Stat. Ann. 175/1 to 175/8;
- Indiana—Ind. Code Ann. §§ 5-11-5.5-1 to 5-11-5.5-18;
- Iowa—Iowa Code Ann. §§ 685.1 to 685.7;
- Kansas—Kan. Stat. Ann. §§ 75-7501 to 75-7511;
- Maryland—MD GEN PROVIS §§  8-101 to 8-111;
- Massachusetts—Mass. Gen. Laws Ann. ch. 12, §§ 5A to 5O;
- Minnesota—Minn. Stat. Ann. §§ 15C.01 to 15C.16;
- Nevada—Nev. Rev. Stat. Ann. §§ 357.010 to Nev. Rev. Stat. Ann. § 357.250:
- New Jersey—N.J. Stat. Ann. §§ 2A:32C-1 to N.J. Stat. Ann. § 2A:32C-18;
- New Mexico—N.M. Stat. Ann. §§ 44-9-1 to 44-9-14;
- New York—N.Y. State Fin. Law §§ 188 to 194;
- North Carolina—N.C. Gen. Stat. Ann. §§ 1-605 to 1-618;

- Oregon—Or. Rev. Stat. Ann. §§ 180.750 to 180.785;
- Rhode Island—9 R.I. Gen. Laws Ann. §§ 9-1.1-1 to 9-1.2-9;
- Tennessee—Tenn. Code Ann. §§ 4-18-101 to 4-18-108; and
- Vermont--Vt. Stat. Ann. tit. 32, §§ 630 to 642; and

Whereas, the U.S. Department of Justice—Denver Office also has conflicts of interest as to the individuals involved in the alleged public corruption and is unable to impartially investigate the factual circumstances;

**Section 1.** The Colorado General Assembly shall submit a formal request to the U.S. Department of Justice to assign an Office outside of the U.S. Department of Justice—Denver Office to complete a conflict-free investigation of the alleged public corruption within Colorado state and local government.

**Section 2.** As authorized by § 24-31-101(1)(g), C.R.S. and § 24-31-111(5), C.R.S., the Colorado General Assembly (through and as the Colorado State Auditor's supervising authority) shall designate and appoint another state's attorney general (from one of the 22 other states or the District of Columbia with equivalent civil false claims acts) as a Special Assistant Attorney General charged with investigating and representing the State of Colorado's interests as to alleged violations of Colorado's False Claims Act.  The costs of the investigation and representation shall be paid through funds already appropriated through HB25-1321 and the Colorado Department of Law's annual budget, as provided by § 24-31-111(5), C.R.S.

## Background on the Commission

The Colorado Commission on Judicial Discipline serves a critical role in protecting public trust in the judiciary by investigating and prosecuting allegations of judicial misconduct.

The Commission is comprised of ten volunteers members:
- Two district court judges and two county court judges (appointed by the Chief Justice)
- Two lawyers and four citizen members (appointed by the Governor), among them is Mindy Sooter an attorney, and Jim Carpenter a non-attorney.

In 2024, Colorado voters approved Amendment H, modernizing the state's judicial discipline system by:
- Separating prosecution (this commission) from adjudication (new independent adjudicative board)
- Enhancing transparency, victim engagement, and communication with complainants.

The Commission continues to be the first and most critical point of review for allegations of judicial misconduct.

## Summary of Allegations in the 300-Page RFE

### Scope of Allegations:

- The RFE (Request for evaluation) alleges a widespread conspiracy involving most of the Colorado Supreme Court Justices, the judicial department leadership, AG Phil Weiser and his office, Governor Polis, SOS Jena Griswold, Denver DA John Walsh as well as private attorneys and law firms tied to judicial investigations and members and staff of the Commission on Judicial Discipline (including Mindy Sooter and Jim Carpenter).
- It calls for the impeachment proceedings against all Colorado Supreme Court Justices, Governor Polis, AG Weiser, SOS Griswold, Denver DA John Walsh, and the judge members of the Commission.
- No independent entity (including the State Auditor and Judicial Performance Evaluation Commission) has corroborated any of Gregory's claims.

### Key Themes and Claims:

- Claims that misconduct by judges and judicial officials was systematically covered up.
- Focuses heavily on the Masias scandal, where judicial leadership allegedly paid large sums to a departing official to suppress damaging information.
- Accuses judicial officials and the AG's office of actively obstructing investigations by: The Office of the State Auditor (OSA), The General Assembly, and Judicial Performance Evaluation Commissions.
- Claims that individuals (including Chris Gregory himself) were fired or marginalized for raising concerns.
- Criticizes the use of retired judges acting as private dispute resolvers without public accountability.
- Asserts that federal law enforcement in Colorado cannot investigate impartially because Justice Melissa Hart's husband works for the U.S. The Attorney's Office and other local federal officials are allegedly conflicted and calls for an out-of-state federal DOJ office to intervene.
- Said in the testimony he is being ghosted by the FBI

## Dismissal by Independent Review:

- All ten members of the Commission, representing judges, attorneys, and citizens, reviewed and unanimously dismissed the anonymous RFE after full evaluation.
- No independent entity (including the State Auditor and Judicial Performance Evaluation Commission) has corroborated any of Gregory's claims.

Appendix 5

## Strong Qualifications and Record of Mindy Sooter and Jim Carpenter

**Mindy Sooter** – Attorney Member and Chair:

- 20+ years of legal experience; Partner-in-Charge at WilmerHale Denver, specializing in patent, trade secret, and commercial litigation.
- Named a top intellectual property litigator by Chambers USA, Managing IP, and Colorado Super Lawyers.
- **Public Service**:
  - Chair of the Commission during a critical reform period.
  - Led efforts to modernize Commission processes under Amendment H.
  - Spearheaded improvements to victim and complainant engagement.
  - Led pro bono teams on immigration, excessive force, habeas corpus, and reproductive justice cases.
  - Mentor to young attorneys and former adjunct professor at the University of Colorado School of Law.

**Jim Carpenter** – Citizen Member and Vice Chair:

- Former Chief of Staff to Governor Bill Ritter, with senior-level responsibility for state agencies, budgets, and legislative initiatives.
- Co-founder of Freestone Strategies, advising NGOs, businesses, and governments across diverse sectors like renewable energy, healthcare, and transportation
- **Judicial System Advocate**:
  - Board member of the Colorado Judicial Institute, promoting equity, impartiality, and public trust in the judiciary
  - Played a central role in supporting Amendment H implementation
  - Volunteer leadership in multiple nonprofit and civic organizations.

## Concrete Accomplishments Under Their Leadership

- Sought public discipline against judges six times in four years nearly equal to the total public discipline in the prior forty years combined.
- Oversaw the public discipline of former Chief Justice Coats, reinforcing accountability even at the highest judicial levels
- Implemented key reforms to comply with Amendment H:
  - New, accessible Commission website.
  - New fillable online complaint form
  - Improved processing speed for Requests for Evaluation.
  - Increased transparency and communication for complainants
- Eliminated significant case backlogs and filled all new Commission staffing positions.

Reestablished trust and relationships with judiciary stakeholders, setting a stronger foundation for ongoing reforms.

---

## Why some Senators voted no

- During the hearing someone testified against them alleging widespread past conspiracies, the conspiracies focused on leadership in the judicial, all supreme court justices, AG Wieser, Governor Polis, SOS Griswold, DA John Walsh but also had implications for the members of the commission among which are Carpenter and Sooter. The individual that testified against them was Chris Gregory the former executive director of the commission on judicial discipline who was fired as he said in his testimony. The commission and the commissioner are not allowed to currently discuss the termination.
- Senators voted no, as a means of starting fresh. However continuity for the commission is very important. The rest of the commission are all new members, having served less than 2 years.
  - Also want to note that these commissioners Sooter and Carpenter did censure then chief justice Coats after the Maisas scandal.

# State of Colorado



**Sarah Mercer,** *Chair*
**Daniel Wolf,** *Vice-Chair*
**Elizabeth Espinosa Krupa,** *Commissioner*
**Lori Laske,** *Commissioner*
**Cole Wist,** *Commissioner*

Independent Ethics Commission
1300 Broadway, Suite 240
Denver CO 80203
Phone: (720) 625-5697
www.colorado.gov/iec

**Dino Ioannides,** *Executive Director*

May 27, 2025

Christopher S. P. Gregory
201 Coffman St., #1822
Longmont, CO 80502
*via email to: cspgregory@thegregorylawfirm.net*

Re: Complaint No. 25-31

Dear Mr. Gregory,

On May 20, 2025, the Independent Ethics Commission met and reviewed the complaint you filed, which was assigned number 25-31. The Commission dismissed the complaint as frivolous, pursuant to Rules 2(A)(9) and 5(F) of the Commission's Rules of Procedure. Frivolous complaints are those that are filed without a rational basis in fact or law for the Commission's involvement, including complaints over which the Commission lacks jurisdiction.

While the Commission is not unsympathetic to the concerns expressed in your complaint, this is not the proper forum in which to raise them. There may be other, more appropriate avenues through which you may explore relief. However, the Commission cannot provide you with guidance or advice, nor does it take a position on whether relief is ultimately available to you.

Regards,

*[signature]*

Dino Ioannides, Executive Director
Independent Ethics Commission

---

| Appendix 6 |
| --- |

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Saturday, May 3, 2025 9:58 PM |
| **To:** | iecinfo@state.co.us |
| **Subject:** | IEC Complaint |
| **Attachments:** | Attachments.txt |

### ShareFile Attachments                          Expires November 2, 2025

| | |
|---|---|
| 241020 Anon FHI Report.pdf | 82.3 KB |
| 241020 Anonymous RFE to CCJD.pdf | 2 MB |
| 241104 FHI Complaint Addendum w Attachmts.pdf | 1.4 MB |
| 250501 CP Op Ed CSPG re CSC Lost Credibility.pdf | 144.8 KB |
| 250503 CSPG IEC Complaint.pdf | 141 KB |
| Appendices to 241020 Anon RFE.pdf | 61.1 MB |

Download Attachments

Christopher Gregory uses ShareFile to share documents securely.

Good Evening,

Attached please find a time-sensitive complaint as to Governor Jared Polis.  In addition to the complaint, I have
provided the above links to an anonymous October 20, 2025 request for evaluation of judicial conduct (with its
appendices) and an anonymous Fraud Hotline report as supplemented.  The op ed article that I have also
provided provides an overview relevant to the review of the complaint and the other materials.

Please do not hesitate to contact me if you have any questions or if there is anything that I can do to assist you
with your evaluation and investigation of this complaint.

Warmest regards,
Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502

1

● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

2

| Independent Ethics Commission – Formal Complaint Form | |
|---|---|
| Before the Independent Ethics Commission<br>of the State of Colorado | *For Commission Use Only*<br>Received date: _____<br>Case. No.: _____ |

The Complainant is: **Christopher S.P. Gregory**
(name)

Mailing Address: **201 Coffman St., #1822**

**Longmont, CO 80502**

Daytime telephone number: **970-648-0642**

Email address: **cspgregory@thegregorylawfirm.net**

---

The Respondent is: **Governor Jared Polis**
(name)

Mailing Address: **200 E. Colfax Ave., Rm. 136**

**Denver, CO 80203**

Daytime telephone number: **(303) 866-2471**

Email address: **governorpolis@state.co.us**

---

When did the alleged violation occur: **Shortly before April 28, 2025, ongoing**

---

Describe the specific acts or things complained of, with facts that provide a full understanding of the alleged violation(s). If possible, cite the specific ethical standards alleged to have been violated and describe how the violation(s) occurred. Use additional pages if necessary. Attach any documentary evidence you wish to submit.

Beginning on July 1, 2021, when without notice he appointed Mindy Sooter to replace me while I was serving as Chair of the Colorado Commission on Judicial Discipline (CCJD), Governor Jared Polis has knowingly obstructed the judicial discipline process to protect the Justices of the Colorado Supreme Court. The July 1, 2021 appointment of Sooter occurred as the investigation that resulted in Matter of Coats, 2023 CO 44 was just beginning. Despite being advised of conflicts of interest, the gravity of the Justices' now proven misconduct, and other reasons not to appoint particular individuals to the Commission, Governor Polis has continued to abuse his appointment powers. Most recently, Governor Polis knowingly ignored substantial allegations of malfeasance by the Justices and members of the Commission to reappoint Mindy Sooter and James Carpenter. Even after the problems with the appointments were publicly raised at the Senate Judiciary Committee's April 28, 2025 confirmation hearing, Governor Polis has refused to withdraw his appointment Orders. This has placed the Senate Judiciary Committee in the politically awkward position of needing to reject the appointees contrary to Governor Polis's will.

Description of acts or things complained of (continued):

Governor Polis along with Legislative Leadership, the Colorado judicial performance commissions, the CCJD, and the Colorado Office of the State Auditor all received an extensively detailed anonymous request for evaluation (RFE) of judicial conduct as to the Justices of the Colorado Supreme Court and the judge members of the CCJD. The anonymous RFE was dated October 20, 2024 and contained allegations of the most serious forms of judicial and attorney misconduct. Despite requests in the anonymous RFE for the creation of a conflict-free special commission and for Governor Polis and a Special Tribunal to consider the removal and replacement of the regular Commissioners, the RFE was ignored. At their April 28, 2025 confirmation hearing, Carpenter and Sooter revealed that, despite being expressly requested to disqualify themselves, the Commissioners, the CCJD's Executive Director, and the CCJD's Special Counsel proceeded to consider and summarily dismiss the anonymous RFE. Their actions included exonerating themselves from the allegations of their own misconduct. Despite the disclosure of this information and the laying over of the confirmation hearing until May 5, 2025, Governor Polis has refused to withdraw his appointments. Effectively, Governor Polis has endorsed, supported, and ratified his appointees' commission of the gravest forms of official misconduct.

Governor Polis's failure to exercise supervision over his appointments to the CCJD has helped facilitate an ongoing pattern of fraud involving tens of millions of taxpayer dollars used to cover up significant judicial misconduct, attorney misconduct, and misconduct by other public officials / public employees. The fraud involved can be summarized as a scheme to facilitate intimidation and retaliation through the repeated illegal use of non-disclosure agreements, self-controlled investigations, and public relations strategies.

I have summarized the significance of the problem in the accompanying op ed piece published in Colorado Politics on May 1, 2025. A complete copy of the anonymous RFE and Fraud Hotline reports included in the legislative record are also provided with this complaint. Because of its time sensitive nature and the need to prevent further imminent harm to the integrity of the Colorado General Assembly, this complaint will be shared with the Colorado Senate Judiciary Committee.

Advisement regarding remedies and penalties: Pursuant to Colo. Const. art. XXIX, § 6, a covered individual found to have breached the public trust for private gain is liable for double the amount of the financial equivalent of any benefits obtained by such actions. The manner of recovery and additional penalties may be provided by law. The Commission does not assess criminal penalties, award injunctive relief, or award damages to complainants.

I hereby acknowledge that the facts presented herein are true to the best of my knowledge, and I will cooperate in the process regarding this complaint and will appear at any proceeding of the Independent Ethics Commission if the complaint is scheduled for a hearing.

Signature: _____

Attorney (if applicable): Pro Se Attorney _____

Dated at Longmont (City), Colorado, this 3rd day of May , 20 25 .

Created by Article XXIX of the Colorado Constitution, the Independent Ethics Commission may review and hold hearings on matters falling within its jurisdiction as outlined in Article XXIX.

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Saturday, May 3, 2025 10:18 PM |
| **To:** | julie.gonzales.senate@coleg.gov; mike.weissman.senate@coleg.gov; matt.ball.senate@coleg.gov; john.carson.senate@coleg.gov; lindsey.daugherty.senate@coleg.gov; lisa.frizell.senate@coleg.gov; dylan.roberts.senate@coleg.gov |
| **Cc:** | Juliann Jenson |
| **Subject:** | CCJD Senate Confirmation Hearing--May 5, 2025 |
| **Attachments:** | 250503 CSPG IEC Complaint.pdf |

Good evening Senators,

I understand that the continued hearing on the reappointments of Jim Carpenter and Mindy Sooter has been scheduled for Monday, May 5, 2025.  I further understand that Governor Polis has refused to withdraw his reappointment Orders notwithstanding the information that was revealed at the April 28, 2025 hearing.  That information, of course, was the fact that the Commission did not disqualify itself as requested and, instead, exonerated its members and staff by summarily dismissing the anonymous RFE.  In that context, I have submitted the attached Independent Ethics Commission complaint.  Because the IEC follows an initially confidential screening process, I am providing you with the complaint as a non-public record.  The time-sensitive nature of the issue, however, compels me to notify you of the complaint, nevertheless.

Again, please do not hesitate to let me know if you have any questions or if there is any information that I can provide to assist you in your process.

Warmest regards,
Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Monday, May 5, 2025 4:27 PM |
| **To:** | judy.amabile.senate@coleg.gov; mark.baisley@senate.co.com; matt.ball.senate@coleg.gov; jeff.bridges.senate@coleg.gov; scott.bright.senate@coleg.gov; john.carson.senate@coleg.gov; marc.catlin.senate@coleg.gov; james.coleman.senate@coleg.gov; lisa.cutter.senate@coleg.gov; jessie.danielson.senate@coleg.gov; lindsey.daugherty.senate@coleg.gov; tony.exum.senate@coleg.gov; lisa.frizell.senate@coleg.gov; julie.gonzales.senate@coleg.gov; nick.hinrichsen.senate@coleg.gov; iman.jodeh.senate@coleg.gov; cathy.kipp.senate@coleg.gov; barbara.kirkmeyer.senate@coleg.gov; chris.kolker.senate@coleg.gov; larry.liston.senate@coleg.gov; paul.lundeen.senate@coleg.gov; janice.marchman.senate@coleg.gov; dafna.michaelson.jenet.senate@coleg.gov; kyle.mullica.senate@coleg.gov; byron.pelton.senate@coleg.gov; rod.pelton.senate@coleg.gov; janicerichsd7@gmail.com; dylan.roberts.senate@coleg.gov; robert.rodriguez.senate@coleg.gov; cleave.simpson.senate@coleg.gov; marc.snyder.senate@coleg.gov; tom.sullivan.senate@coleg.gov; katie.wallace.senate@coleg.gov; mike.weissman.senate@coleg.gov; faith.winter.senate@coleg.gov |
| **Subject:** | Senate Judiciary Committee Unfavorable Recommendations on CCJD Appointees |
| **Attachments:** | Page.pdf |

Good afternoon Senators,

Earlier this afternoon, the Senate Judiciary Committee rejected motions to forward the re-appointments of the Colorado Commission on Judicial Discipline (CCJD) Chair Mindy Sooter and Vice-Chair James Carpenter.  The reason for the Committee's votes includes the creation of an extensive legislative record.  Nevertheless, even with unfavorable recommendations, the appointments will still come before the full Senate for a final vote.  I respectfully encourage each of you to review the full documents that have been submitted into the legislative record.  To ensure that you are able to vote based upon complete information, however, I have also attached a complaint that I submitted to the Independent Ethics Commission (IEC) as to Governor Jared Polis's exercise of his appointive powers.  Because of the IEC's process, the attached document remains non-public until the IEC may deem it non-frivolous according to the IEC's rules.  Imminent and irreparable harm could occur to the General Assembly as an institution, however, if a vote is taken upon incomplete information.  Accordingly, I am providing you with a copy of the IEC complaint as a non-public record.

Sincerely,

Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

1

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

**Christopher Gregory**

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Tuesday, May 6, 2025 2:43 PM |
| **To:** | judy.amabile.senate@coleg.gov; mark.baisley@senate.co.com; matt.ball.senate@coleg.gov; jeff.bridges.senate@coleg.gov; scott.bright.senate@coleg.gov; john.carson.senate@coleg.gov; marc.catlin.senate@coleg.gov; james.coleman.senate@coleg.gov; lisa.cutter.senate@coleg.gov; jessie.danielson.senate@coleg.gov; lindsey.daugherty.senate@coleg.gov; tony.exum.senate@coleg.gov; lisa.frizell.senate@coleg.gov; julie.gonzales.senate@coleg.gov; nick.hinrichsen.senate@coleg.gov; iman.jodeh.senate@coleg.gov; cathy.kipp.senate@coleg.gov; barbara.kirkmeyer.senate@coleg.gov; chris.kolker.senate@coleg.gov; larry.liston.senate@coleg.gov; paul.lundeen.senate@coleg.gov; janice.marchman.senate@coleg.gov; dafna.michaelson.jenet.senate@coleg.gov; kyle.mullica.senate@coleg.gov; byron.pelton.senate@coleg.gov; rod.pelton.senate@coleg.gov; janicerichsd7@gmail.com; dylan.roberts.senate@coleg.gov; robert.rodriguez.senate@coleg.gov; cleave.simpson.senate@coleg.gov; marc.snyder.senate@coleg.gov; tom.sullivan.senate@coleg.gov; katie.wallace.senate@coleg.gov; mike.weissman.senate@coleg.gov; faith.winter.senate@coleg.gov |
| **Subject:** | RE: Senate Judiciary Committee Unfavorable Recommendations on CCJD Appointees |
| **Attachments:** | 250506 Gov Office Talking Points Senate Vote.pdf; 250501 CP Op Ed CSPG re CSC Lost Credibility.pdf |

Good afternoon Senators,

It has come to my attention that the attached document is being circulated by Governor Jared Polis's Office in an effort to discredit the allegations of misconduct that supported the Senate Judiciary Committee's votes not to forward the reappointments of Mindy Sooter and Jim Carpenter with favorable recommendations. Other than confirming the Governor's culpable intent and refusal to withdraw his reappointments, this document does not provide any valid reasons for the full Senate to disregard the Senate Judiciary Committee's judgment. The complaint that I have submitted to the Independent Ethics Commission and which I have shared with you has now been updated to include the Governor's Office's circulation of these talking points. I have also attached my op ed piece published in *Colorado Politics* on May 1, 2025. The op ed distills the significance of the Colorado Judicial Scandal and the reasons for Sooter and Carpenter's non-confirmations into two pages. It is important that the vote on this critically important issue occur with integrity and courage.

Warmest regards,
Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone: 970.648.0642 ● Fax: 970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

**From:** Christopher Gregory
**Sent:** Monday, May 5, 2025 4:27 PM
**To:** judy.amabile.senate@coleg.gov; mark.baisley@senate.co.com; matt.ball.senate@coleg.gov; jeff.bridges.senate@coleg.gov; scott.bright.senate@coleg.gov; john.carson.senate@coleg.gov; marc.catlin.senate@coleg.gov; james.coleman.senate@coleg.gov; lisa.cutter.senate@coleg.gov; jessie.danielson.senate@coleg.gov; lindsey.daugherty.senate@coleg.gov; tony.exum.senate@coleg.gov; lisa.frizell.senate@coleg.gov; julie.gonzales.senate@coleg.gov; nick.hinrichsen.senate@coleg.gov; iman.jodeh.senate@coleg.gov; cathy.kipp.senate@coleg.gov; barbara.kirkmeyer.senate@coleg.gov; chris.kolker.senate@coleg.gov; larry.liston.senate@coleg.gov; paul.lundeen.senate@coleg.gov; janice.marchman.senate@coleg.gov; dafna.michaelson.jenet.senate@coleg.gov; kyle.mullica.senate@coleg.gov; byron.pelton.senate@coleg.gov; rod.pelton.senate@coleg.gov; janicerichsd7@gmail.com; dylan.roberts.senate@coleg.gov; robert.rodriguez.senate@coleg.gov; cleave.simpson.senate@coleg.gov; marc.snyder.senate@coleg.gov; tom.sullivan.senate@coleg.gov; katie.wallace.senate@coleg.gov; mike.weissman.senate@coleg.gov; faith.winter.senate@coleg.gov
**Subject:** Senate Judiciary Committee Unfavorable Recommendations on CCJD Appointees

Good afternoon Senators,

Earlier this afternoon, the Senate Judiciary Committee rejected motions to forward the re-appointments of the Colorado Commission on Judicial Discipline (CCJD) Chair Mindy Sooter and Vice-Chair James Carpenter. The reason for the Committee's votes includes the creation of an extensive legislative record. Nevertheless, even with unfavorable recommendations, the appointments will still come before the full Senate for a final vote. I respectfully encourage each of you to review the full documents that have been submitted into the legislative record. To ensure that you are able to vote based upon complete information, however, I have also attached a complaint that I submitted to the Independent Ethics Commission (IEC) as to Governor Jared Polis's exercise of his appointive powers. Because of the IEC's process, the attached document remains non-public until the IEC may deem it non-frivolous according to the IEC's rules. Imminent and irreparable harm could occur to the General Assembly as an institution, however, if a vote is taken upon incomplete information. Accordingly, I am providing you with a copy of the IEC complaint as a non-public record.

Sincerely,

Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone: 970.648.0642 ● Fax: 970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this

transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Thursday, May 8, 2025 8:53 PM |
| **To:** | Indep. Ethics Comm'n |
| **Subject:** | RE: Polis Complaint--Senate Votes |

Mr. Ioannides,

Thank you for your docketing notice and explanation of the timeline for the Commission's next action.  As the Commission processes my complaint, I wanted to highlight one additional fact.  At no time, including after my testimony at the Senate Judiciary Committee's hearing on April 28, 2025, did the Governor's Office contact me to inquire as to the alleged retaliatory nature of my termination and how such allegations might relate to whistleblower protections or other civil rights.  Instead, the Governor's Office proceeded to circulate its talking points categorically defending the reappointments to the Senators.  There was no concern for victim interests, and I was not given any opportunity to be heard / to have Governor Polis address my concerns.

Again, I appreciate your follow up.  In my earlier email, I misstated the vote counts (which were 16-19 and 19-16, respectively).  Please do not hesitate to contact me if you have any questions or if you need anything else prior to the Commission's May 20, 2025 meeting.

Sincerely,
Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

**From:** Indep. Ethics Comm'n <iecinfo@state.co.us>
**Sent:** Thursday, May 8, 2025 7:28 PM
**To:** Christopher Gregory <cspgregory@thegregorylawfirm.net>
**Subject:** Re: Polis Complaint--Senate Votes

Mr. Gregory,

Your complaint has been received and docketed as Complaint No. 25-31.  The complaint will be considered by the Commission at its regular meeting on May 20, 2025.

The Commission keeps all complaints confidential until it decides that a complaint is non-frivolous.  As such, on May 20, the Commission will consider your complaint in closed session.  You need not appear at that time.  If the Commission finds a complaint is non-frivolous, the Respondent will be afforded an opportunity to respond, an investigation will be conducted, and a public hearing will be set at which the Commission may receive additional testimony and evidence from the parties.

Thank you,

**Dino Ioannides**
**Executive Director**
**Colorado Independent Ethics Commission**
1300 Broadway, Suite 240, Denver, CO  80203
iecinfo@state.co.us  |  (720) 625-5697  |  iec.colorado.gov

On Wed, May 7, 2025 at 11:54 AM Christopher Gregory <cspgregory@thegregorylawfirm.net> wrote:

Good Morning,

Just so you are aware, the full Senate voted not to confirm Colorado Commission on Judicial Discipline Chair Mindy Sooter through a vote of 17-19.  After an appeal based upon reputation and ethos made by Vice Chair James Carpenter's former employee, current Joint Budget Committee Chair, and State Treasurer candidate Jeff Bridges, Carpenter was confirmed by a mirrored vote of 19-17.

I was able to reduce the file size of the document that I sent yesterday and have attached the updated file for your convenience.

Warmest regards,

Christopher Gregory

 The Gregory Law Firm, LLC

Christopher S.P. Gregory

Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502

2

● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

3

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Sunday, May 18, 2025 3:50 PM |
| **To:** | iecinfo@state.co.us |
| **Subject:** | IEC Case No. 25-31--Supplemental Information |
| **Attachments:** | 250516 JP Press Release GardnerB Appt CCJD.pdf |

Dear Mr. Ioannides,

Per our prior correspondence, I understand that the Independent Ethics Commission will take up my complaint as to Governor Jared Polis. Since my last email to you, however, there has been another significant factual development that impacts consideration of the complaint. On Friday, May 16, 2025, Governor Polis issued a press release confirming his appointment of former Senator Bob Gardner to the Colorado Commission on Judicial Discipline (CCJD) in place of Governor Polis's previously rejected reappointment of Mindy Sooter. During the legislative reforms of the judicial discipline system that occurred from 2022-23, Senator Gardner distinguished himself as being receptive to lobbying by the Justices of the Colorado Supreme Court and the Colorado Judicial Department. The effect of this lobbying was to blunt some of the principal reforms sought by the CCJD, including removing the Justices' powers to appoint members of the CCJD. The circumstances of Senator Gardner's positions are examined at length in the anonymous October 20, 2024 request for evaluation (RFE) of judicial conduct that accompanies my complaint. In addition, Senator Gardner is responsible for the Legislature's failure to stand up the Office of the Judicial Discipline Ombudsman. Brian Eason, *Colorado Lawmakers Funded an Office to Handle Complaints Against Judges. No One Set It Up.*, COLORADO SUN, March 13, 2025. Governor Polis's appointment of Senator Gardner is yet further circumstantial evidence of the Governor's coordination of his appointments with the Justices and his knowing participation in retaliation against me as a whistleblower otherwise protected by Colorado law.

Please supplement my complaint with these new facts.

Warmest regards,

Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone: 970.648.0642 ● Fax: 970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

1



# Gov. Polis Announces Boards and Commissions Appointments

FRIDAY, MAY 16, 2025

### Air Quality Control Commission

The Commission develops and maintains a comprehensive program for the prevention and control of air pollution in Colorado. The major goal of this program is to meet national ambient air quality standards.

for a term expiring January 31, 2026:

- Daniel Blankenship of Fountain, Colorado, to serve as a member with industrial and private sector experience, occasioned by a resignation.

### Commission on Judicial Discipline

The Colorado Commission on Judicial Discipline investigates complaints of judicial misconduct.

Following the passage of Amendment H, the Commission now serves as the independent investigative

and prosecutorial body for judicial discipline matters, with adjudication handled separately by the newly established Adjudicative Board.

effective July 1, 2025 for a term expiring June 30, 2029:
- Robert Gardner, of Colorado Springs, Colorado, to serve as an attorney, appointed.

## Charter School Institute Board

The mission of the Institute Board shall be to foster high-quality public school choices offered through institute charter schools, including particularly schools for at-risk students.

effective July 2, 2025 for terms expiring July 1, 2028:
- Liz Howell of Grand Junction, Colorado, to serve as a parent whose child is attending an institute charter school, appointed;
- Andrew Karow of Carbondale, Colorado,to serve as a member with board experience with other boards or public service experience, reappointed.

## Child Protection Ombudsman

The Child Protection Ombudsman Board oversees decisions related to the Office of the Child Protection Ombudsman, including personnel decisions, accountability and consistency in operating policies and procedures, and fiscal oversight of the general operating budget.

for a term expiring August 1, 2025:
- Matthew Tulley of Monte Vista, Colorado, to serve as an individual with previous professional experience with a rural county human or social services agency or a rural private child welfare advocacy agency, occasioned by a resignation, appointed.

for a term expiring August 1, 2027:

## Contact Governor Polis

State Capitol Bldg - 200 E. Colfax Ave., Rm. 136, Denver, CO 80203

Constituent Services Help Line: (303) 866-2885

Governor's Office, Front Desk: (303) 866-2471

## NEWSLETTER SIGNUP



© State of Colorado 2023        Transparency Online        Accessibility Statement

## Christopher Gregory

| | |
|---|---|
| **From:** | Christopher Gregory |
| **Sent:** | Tuesday, May 20, 2025 10:06 AM |
| **To:** | Indep. Ethics Comm'n |
| **Subject:** | RE: IEC Complaint No. 25-31--Disqualification of General Counsel Gina Cannan |

Mr. Ioannides,

Thanks for confirming.

Warmest regards,
Christopher Gregory



The Gregory Law Firm, LLC
Christopher S.P. Gregory
Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502
● Phone: 970.648.0642 ● Fax: 970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege. If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited. If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

**From:** Indep. Ethics Comm'n <iecinfo@state.co.us>
**Sent:** Tuesday, May 20, 2025 10:03 AM
**To:** Christopher Gregory <cspgregory@thegregorylawfirm.net>
**Subject:** Re: IEC Complaint No. 25-31--Disqualification of General Counsel Gina Cannan

She already plans to announce her recusal. She will not participate in your complaint discussion at all.

**Dino Ioannides**
**Executive Director**
**Colorado Independent Ethics Commission**
1300 Broadway, Suite 240, Denver, CO 80203
iecinfo@state.co.us | (720) 625-5697 | iec.colorado.gov

On Tue, May 20, 2025 at 9:59 AM Christopher Gregory <cspgregory@thegregorylawfirm.net> wrote:

Dear Mr. Ioannides,

1

In order to ensure the fair and impartial consideration of my complaint and any subsequent proceedings, I feel that it is necessary to raise a conflict of interest as to Gina Cannan (who I assume is still serving as the IEC's general counsel appointed through the Colorado Attorney General's Office).  Beyond broader conflicts of interest that exist through the involvement of the Attorney General's Office in the misconduct alleged in my complaint against Governor Jared Polis, Ms. Cannan directly participated in the CCJD Commissioners' retaliation against me for engaging in protected whistleblower activities (specifically my internal reporting of misconduct related to the Masias Controversy and the concealment of Judge D. Brett Woods's habitual alcohol abuse and retaliation against court staff).  Ms. Cannan should be disqualified and should not provide any advice to the IEC with regards to my complaint.  Ideally a conflict-free special assistant attorney general from outside the Attorney General's Office can be appointed as a substitute for Ms. Cannan.  Although these issues may have already been addressed by the IEC, I wanted to bring them to your attention, nevertheless.

Thank you again for your assistance with this process.  Please let me know the outcome of todays meeting.  Do not hesitate to contact me if you need any additional information or have any questions.

Warmest regards,

Christopher Gregory



The Gregory Law Firm, LLC

Christopher S.P. Gregory

Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502

● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

2

**Christopher Gregory**

| | |
|---|---|
| **From:** | Indep. Ethics Comm'n <iecinfo@state.co.us> |
| **Sent:** | Wednesday, May 28, 2025 9:11 AM |
| **To:** | Christopher Gregory |
| **Subject:** | Re: Disposition of Complaint 25-31 |

Mr. Gregory,

As you know, due to the confidentiality requirements imposed by the Colorado Constitution, the IEC always considers new complaints in closed, executive session.  I wish I could tell you more about the IEC's reasoning in your case, but I am unable to disclose the deliberations that occur in any of the IEC's closed sessions.  I am sure this comes as a disappointment, but I am restricted from making additional comment.

Regards,

**Dino Ioannides**
**Executive Director**
**Colorado Independent Ethics Commission**
1300 Broadway, Suite 240, Denver, CO  80203
iecinfo@state.co.us  |  (720) 625-5697  |  iec.colorado.gov

On Tue, May 27, 2025 at 3:24 PM Christopher Gregory <cspgregory@thegregorylawfirm.net> wrote:

Dear Mr. Ioannides,

Thank you for informing me of the IEC's disposition of this Complaint.  Because the IEC's jurisdiction is broadly defined to include "any other standards of conduct and reporting requirements as provided by law," Colo. Const. Art. XXIX, Sec. (5)(1), I do not understand the basis for the IEC's dismissal.  Per the IEC's Ethics Handbook (3rd ed. 20216), conflicts of interest and appearances of impropriety should provide sufficient grounds for a complaint to meet the threshold for the IEC's jurisdiction.  Likewise, verifiable retaliation by an appointing authority as prohibited by the Colorado Whistleblower Protection Act, the Colorado False Claims Act, and other Colorado laws should meet the jurisdictional threshold.  The IEC otherwise has personal jurisdiction over Governor Jared Polis.  Such matters go to the IEC's core purpose of enforcing ethical standards within Colorado State Government.

If you could provide a more detailed explanation of the grounds for the IEC's jurisdictional determination, I would greatly appreciate it.

1

Warmest regards,

Christopher Gregory



The Gregory Law Firm, LLC

Christopher S.P. Gregory

Attorney at Law

201 Coffman St., #1822, Longmont, CO 80502

● Phone:  970.648.0642 ● Fax:  970.648.0643 ●

This e-mail transmission contains information from the Gregory Law Firm, LLC which may be confidential or protected by the attorney-client privilege.  If you are not the intended recipient, you are hereby notified that you must not read this transmission and that any disclosure, copying, printing, distribution or use of any of the information contained in or attached to this transmission is prohibited.  If you have received this transmission in error, please notify us immediately by e-mail and delete the original transmission.

**From:** Indep. Ethics Comm'n <iecinfo@state.co.us>
**Sent:** Tuesday, May 27, 2025 2:56 PM
**To:** Christopher Gregory <cspgregory@thegregorylawfirm.net>
**Subject:** Disposition of Complaint 25-31

Mr. Gregory,

Please see the attached correspondence, which describes the disposition of Complaint 25-31.

Thank you,

**Dino Ioannides**

2

**Executive Director**

**Colorado Independent Ethics Commission**

1300 Broadway, Suite 240, Denver, CO  80203

iecinfo@state.co.us  |  (720) 625-5697  |  iec.colorado.gov

3