

# The Gregory Law Firm, LLC

Christopher S.P. Gregory
Attorney at Law

cspgregory@thegregorylawfirm.net

September 12, 2025

Colorado Judicial Discipline Rulemaking Committee
Ralph L. Carr Judicial Center
1300 Broadway, Suite 210
Denver, CO 80203

*Re: Supplement to August 25, 2025 Public Notice and Comment as to Proposed Colo. RJD
Amendments and Request for Evaluation of Judicial Conduct*

Dear Committee Members:

On August 25, 2025, I submitted public comments on this Committee's draft and interim rule
changes, together with a combined request for evaluation (RFE) of judiciasl conduct. The
Colorado Commission on Judicial Discipline (CCJD) has docketed my RFE as CCJD Case
No. 25-310.

In those filings, I called for:

- The dissolution and conflict-free re-composition of this Committee;
- The creation of a conflict-free special commission to replace the CCJD and its Staff;
- The dissolution and re-composition of the Colorado Judicial Discipline Adjudicatory
  Board (CJDAB); and
- The formation of a Special Tribunal under Colo. RJD 41 and Colo. Const. art. VI,
  § 23(3)(f)(II).

I further urged the Colorado General Assembly to formally refer these matters—and related
allegations of public fraud—to conflict-free federal law enforcement. I also requested that the
Colorado State Auditor exercise her statutory authority to appoint another state's attorney
general as a conflict-free Special Assistant Attorney General (SAAG).

Despite public submission of my comments and RFE, with distribution to all members of the
Colorado General Assembly and to major news outlets, I have been systematically ignored and
denied any opportunity to be heard.

It bears emphasis that Justice Richard Gabriel's membership on this Committee ensured that all
the Justices were personally aware of my August 25, 2025 filings. Rather than recuse
themselves, the Justices proceeded to issue their opinion in *Matter of Stanley*, 2025 CO 51.  In
*Stanley*, the majority, which included Justice Gabriel, held that Presiding Disciplinary Judge
Bryon Large was not required to disqualify himself under Canon Rule 2.11(A) when Judge
Large had previously prosecuted the subject attorney's predicate disciplinary case on behalf of

PLAINTIFF'S
EXHIBIT
**1-5**

EXHIBIT
**5**

201 Coffman St., #1822, Longmont, CO 80502
• 970-648-0642 • Fax: 970-648-0643 •

Christopher S.P. Gregory, esq.
September 12, 2025
Page 2 of 5

the Colorado Supreme Court's Office of Attorney Regulation Counsel (OARC).[1]  Judge Large is a member of this Committee and one of the subject judges listed in the duly filed RFE. Incidentally, Attorney Regulation Counsel Jessica Yates and Senior Assistant Regulation Counsel Erin Robson Kristofco prosecuted former 11th Judicial District Attorney Linda Stanley in the current case.  With the Justices' endorsement and blessing, ARC Yates and Ms. Kristofco had collectively written the February 6, 2023 disciplinary letter sent to Vice-Chair / District Court Judge David Prince and to all the other judge and attorney members of the CCJD.  The February 6, 2023 disciplinary letter was intended to intimidate and retaliate against the CCJD for pursuing discipline in *Matter of Coats*, 2023 CO 44 and in *Matter of Scipione*, 2024 CO 23. ARC Yates's disciplinary letter clearly violated § 8-2.5-101, C.R.S. (Intimidation of a Legislative Witness) and arguably violated Colo. RPC 8.2(a) (knowingly or recklessly making false statements about the integrity of a judge or public legal officer),[2] yet the Justices took no administrative actions against her or Ms. Kristofco (who like PDJ Large are directly/derivatively appointed by and serve at the pleasure of the Justices—C.R.C.P. 242.5(a) and C.R.C.P. 242.6(a)).  Moreover, in *Stanley*, Justice Carlos Samour, joined by Chief Justice Monica Márquez, dissented, concluding that Canon Rule 2.11(A) required Judge Large's disqualification and that his refusal to voluntarily recuse created appearances of impropriety.  According to Canon Rule 2.11(A), a judge is required to disqualify himself or herself whenever the judge's impartiality can be reasonably questioned.  The fact that two justices have recognized reasonable grounds to question Judge Large's impartiality is grounds for judicial discipline proceedings (in addition to the grounds for Judge Large's disqualification from this Committee and for discipline as described in the August 25th RFE).  Neither the majority opinion nor the dissent, however, addresses the propriety of the Justices themselves continuing to hear and to issue a decision in *Stanley* with knowledge of the August 25, 2025 RFE.  It is uncertain whether Linda Stanley will petition for rehearing.  Nevertheless, the issuance of a decision in *Stanley* without disclosure of the existence of the August 25, 2025 RFE violated Canon Rules 1.1 (Compliance with Law), 1.2 (Promoting Confidence in the Judiciary), 1.3 (Abuse of Prestige of Judicial Office), 2.2 (Impartiality and Fairness), 2.3 (Bias, Prejudice, and Harassment), 2.5 (Competence and Cooperation), 2.6 (Ensuring the Right to be Heard) 2.11 (Disqualification), 2.12 (Supervisory

---

[1] In their opinion, the Justices repeatedly re-assert their self-created authority as the ultimate and exclusive overseers of attorney discipline.  *Stanley*, ¶¶ 70, 73, 111.  The Justices, however, do not address the argument that the attorney discipline structure in Colorado (with the Colorado Supreme Court overseeing the investigation of cases likely to come before the Justices) is itself violative or potentially violative of Canon Rules 1.1, 1.2, 2.9(C), 2.12, 2.13, 2.15. Since at least 1971, the Colorado Supreme Court has failed to justify a system where the court (rather than an independent agency subject to both direct legislative oversight and indirect judicial oversight) has exclusive control over attorney regulation.  *Compare Colo. Supreme Ct. Grievance Comm. v. Dist. Ct.*, 850 P.2d 150, 152 (Colo. 1993) (authored by Erickson, J. citing line of prior cases authored by Erickson, J.) *with* O.R.S. § 9.010 (statutorily authorizing Oregon State Bar) and *Jenkins v. Oregon State Bar*, 405 P.2d 525 (Or. 1965) (reconciling Oregon State Bar's role as investigator/prosecutor with Oregon Supreme Court's role as appellate body with "inherent power to purge unfit and corrupt attorneys from its bar") and *State ex rel. Frohnmayer v. Oregon State Bar*, 767 P.2d 893, 896-897 (Or. 1989) (recognizing constitutionality of Oregon State Bar as a legislatively derived attorney regulation authority subject to public records laws).

[2] A similar violation of Colo. RPC 8.2(a) likely occurred when ARC Yates authorized OARC to transmit one or more false affidavits supporting an unlawful felony charge being brought against then-Colorado Senate Judiciary Committee Chair Pete Lee.

Christopher S.P. Gregory, esq.
September 12, 2025
Page 3 of 5

Duties), 2.13 (Administrative Appointments), 2.15 (Responding to Judicial and Lawyer Misconduct), 2.16 (Cooperation with Disciplinary Authorities).

Similarly, the CCJD disregarded my call for a special commission and instead initiated formal proceedings against Montezuma County Court Judge Ian MacLaren—an action that appears to be a transparent attempt to divert attention from the CCJD's mishandling of *Matter of Scipione*, *Matter of Haenlein*—CCJD Case No. 24-176, the approximately 73 personal financial disclosure cases processed/suppressed in 2023-2024, and the suppression of private-judge political contribution cases (including verifiable allegations that former Chief Justice Nancy Rice violated Canon Rule 4.1(A)(4)).[3]  The allegations in *MacLaren* include assertions that Judge MacLaren was "dishonest" in his communications with Executive Director Anne Mangiardi and the CCJD. These allegations, however, exist in the context of substantial doubts as to Executive Director Mangiardi's and Special Counsel Jeff Walsh's own credibility[4] and their collective misconduct as alleged in the August 25, 2025 RFE and in the prior October 20, 2024 anonymously filed

---

[3] Curiously, Special Counsel Jeff Walsh published the complaint in *MacLaren* without its certificate of service.  It is unclear whether Judge MacLaren has legal representation and, if so, whether his attorney is one of the attorneys serving on this Committee or otherwise directly involved in the Masias Controversy.

[4] As part of an interview that occurred on or about October 12, 2024, Anne Mangiardi described her background before being hired as Executive Director.  Ms. Mangiardi stated, in relevant part:

> I was at the AG's office for about seven years and my primary role there was tax — litigating tax cases, advice around TABOR — completely unrelated to what I'm doing now. At that role, I would occasionally take on one-off projects. A couple of those projects related to state agencies that were facing an investigation, like the Department of Justice, *or who had decided to get outside counsel to do an investigation into themselves.*
> So, I was brought on to work on and supervise a few of those and it got me interested in this question of how do you do an investigation? How do you do it well? How do you increase public confidence?
> When I saw this position come up, it really dovetailed with that experience.
>
> Michael Karlik, *Q&A with Anne Mangiardi: New Judicial Discipline Director Shares Plans for Change*, COLORADO POLITICS, October 12, 2024.

In her interview, however, Ms. Mangiardi did not disclose that she had been assigned within the AG's Office to supervise and act as a go between for the Justices' unethical self-controlled "independent investigation" of the Masias Memo (i.e. the ILG, LLC investigation).  By knowingly assisting the Justices conduct a publicly funded investigation in violation of Canon Rule 2.9(C) ("A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.") and later concealing her involvement, there is a probability that Ms. Mangiardi has herself violated Colo. RPC 1.7(a)(2), 8.3(b) and 8.4(a-1), (c), (d), (f), (h).  The CCJD initiated formal proceedings against Judge MacLaren on August 28, 2025 (three days after submission of my public comments and RFE).  The Complaint filed by Special Counsel Jeff Walsh on September 8, 2025 is wrought with hypocrisy.  The *MacLaren* Complaint alleges violations of Canon Rules 1.1, 1.2, 1.3, 2.2, 2.3, 2.4 (External Influences), 2.6, and 2.16 even though the same Code violations are alleged as to the Justices (facilitated by the CCJD, Executive Director Mangiardi, and Special Counsel Walsh).  The fact that Executive Director Mangiardi and Special Counsel Walsh have ignored the August 25, 2025 public comments and RFE while methodically proceeding with formal discipline against Judge MacLaren is a substantial departure from the Code and the standards of practice.

Christopher S.P. Gregory, esq.
September 12, 2025
Page 4 of 5


RFE.  Despite their awareness of the August 25, 2025 RFE, the members of the CJDAB assigned District Court Judge Vincente Vigil, attorney Jeff Chostner, and non-attorney Jeannie Valliere to the adjudicative panel with none of the panelists recusing themselves.  In contrast with *Haenlein*, the CCJD has apparently refrained from seeking Judge MacLaren's suspension under Colo. RJD 34(a), even though the CCJD seeks Judge MacLaren's removal and alleges non-cooperation. Without the formation of a conflict-free special commission, a conflict-free special adjudicatory panel, and a conflict-free special tribunal, Judge MacLaren will be denied his fundamental rights to fair and open proceedings before impartial judges (both the adjudicative panel and the appellate court).  The public will, likewise, be deprived of the fair, impartial, independent, and publicly transparent judicial discipline process mandated by the 73% majority of voters who approved Amendment H.

The Justices of the Colorado Supreme Court, the members of the CJDAB, the members of this Committee, and the CCJD and its Staff have continued to openly violate their duties under the Code, the Colorado Rules of Professional Conduct, and the Colorado Rules of Judicial Discipline.  Again, these overt violations of the law create probable cause to suspect/charge criminal offenses that include:

- First-Degree Official Misconduct (§ 18-8-404, C.R.S) and
- Retaliation Against a Witness or Victim (§ 18-8-706, C.R.S.).

Colo. RJD 5(a)-(c) and Colo. RJD 34(a) make clear that obstructing or refusing to cooperate with the judicial discipline process is grounds for a judge's temporary suspension and the initiation of formal disciplinary proceedings. By that standard, there is more than enough basis for a conflict-free special commission to act now—seeking the immediate suspension of the Justices and any other judges who have knowingly aided in the ongoing six-year cover-up of the Masias Controversy.

It is particularly troubling that the otherwise non-conflicted members of the CCJD—District Court Judge Reed Owens and County Court Judge Meredith Patrick McCord—have been complicit in disregarding my August 25, 2025 public comments and RFE. Rather than exercising their authority to form a conflict-free special commission, Judge Owens and Judge McCord have permitted the Justices to issue the *Stanley* opinion.  Judge Owens and Judge McCord have further allowed Executive Director Anne Managiardi and Special Counsel Jeff Walsh to continue prosecuting the *MacLaren* case, despite obligations to disqualify themselves under Canon Rule 2.11(A), Colo. RJD 3.5(d), (g), (h), and Colo. RPC 1.7(a)(2) (significant risk representation materially limited by personal interest of lawyer), 8.4(d) (conduct prejudicial to administration of justice). Consequently, Judge Owens and Judge McCord's misconduct in disregarding the August 25th RFE should be evaluated as grounds for recognition of a complaint and the initiation of judicial discipline proceedings against them under Colo. RJD 13(b) and Colo. RJD 14(a). Judge Owens and Judge McCord no longer possess the impartiality required to appoint other members to a special commission under Colo. Const. Art. VI, § 23(3)(b).

Christopher S.P. Gregory, esq.
September 12, 2025
Page 5 of 5

I respectfully request supplementation of my combined August 25, 2025 public comments and RFE to include the subsequent facts and additional circumstances described here.  I also reassert my call for the Colorado General Assembly to formally refer this matter to conflict-free federal law enforcement and for Colorado State Auditor Kerri Hunter to exercise her authority to appoint another state's attorney general as a conflict-free SAAG.

Sincerely,

Christopher S.P. Gregory

Cc: The Colorado Commission on Judicial Discipline
The Colorado Office of the State Auditor / the Colorado Fraud Hotline
The Colorado Office of Judicial Performance Evaluation
Members of the Colorado General Assembly
The Denver Gazette
The Denver Post
The Durango Herald
9News
CBS Colorado