IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-3361-GPG

CHRISTOPHER S. P. GREGORY,

      Plaintiff,

v.

THE COLORADO JUDICIAL RULEMAKING COMMITTEE, et al.,

      Defendants.

---

**MOTION TO SET ASIDE ENTRY OF DEFAULT**

---

Defendants, through their undersigned attorneys and the Office of the Colorado Attorney General, pursuant to Federal Rule of Civil Procedure 55(c), hereby move to set aside the Clerk's entry of default, ECF 46.

## INTRODUCTION

At the time Plaintiff filed his Application for Entry of Default, ECF 39, Plaintiff was fully aware that (1) Defendants had filed their letter of intent to file a motion to dismiss pursuant to then-presiding Judge R. Brooke Jackson's practice standards, four days before the parties' agreed-upon motion to dismiss deadline of February 16, 2026, ECF 35, (2) Judge Jackson's practice standards provide that a defendant's deadline to respond to the complaint is automatically stayed upon filing of a pre-motion letter and do not permit a defendant to file a motion to dismiss until after he considers the parties' letters, RBJ Prac. Standards, p.2, and (3) on February 18, 2026, the day after this action was reassigned to Judge Gordon P. Gallagher, Defendants asked to meet and confer with Plaintiff to clarify the applicable motion to dismiss deadline, ECF 40-1. Rather than confer with Defendants on determining a deadline, Plaintiff filed his Application for Entry of Default, ECF 39. On February 23, 2026, the Clerk entered default. ECF 46. These facts, omitted from Plaintiff's Application, show that Plaintiff moved for entry of default with no basis – his assertions that Defendants "failed to plead or otherwise respond" are demonstrably false. *See* ECF 39, p.2.

The facts also show that good cause exists for setting aside default. First, default was not due to any culpable conduct by Defendants. Defendants did not miss the parties' agreed-upon February 16, 2026 deadline to file a motion to dismiss because

1

Defendants had filed their letter of intent and were waiting for Judge Jackson's instructions, in compliance with his Practice Standards, which prohibit filing a motion to dismiss until Defendants have "complied or at least attempted to comply" with Judge Jackson's requirements. RBJ Prac. Standards, p.2. Second, Plaintiff is not prejudiced by setting aside default – Plaintiff simply seeks to leverage a technicality caused by reassignment, and Defendants filed a motion for leave to file their motion to dismiss, attaching the proposed motion to dismiss, just four days after the parties' original agreed-upon February 16, 2026 deadline, ECF 44. Finally, Defendants have numerous meritorious defenses, as outlined in their proposed motion to dismiss and set forth in part herein. See ECF 44-1. Defendants therefore respectfully request the Court set aside entry of default.

## D.C.COLO.LCivR 7.1 Conferral Statement

On February 23, 2026, the same day the Clerk of Court entered default, counsel for Defendants emailed counsel for Plaintiff, stating that Defendants plan to file a motion to set aside the entry of default under Rule 55(c), explaining the bases for good cause to set aside default, and asking for Plaintiff's availability to discuss. In response, Plaintiff refused to meet and confer on setting aside default unless and until the parties met and conferred on the Colorado Department of Law's alleged conflicts and continued representation of Defendants. See Ex. A, Feb. 24, 2026 (1:07 PM) Email from C. Gregory. Defendants offered to meet and confer on all issues, and in response, Plaintiff asserted that "[i]t is difficult to understand what value a telephone conversation or virtual

2

meeting would have, particularly if it is not recorded and transcribed." *See* Ex. B, Feb. 24, 2026 (4:24 PM) Email from C. Gregory. Plaintiff further stated:

> [W]e are receptive to recognizing the disqualification of your Office and the appointment of impartial counsel to represent the interests of the State of Colorado as good cause to set aside the default. Short of this, we do not believe that your intentional disregard for the previously agreed answer deadline is good cause sufficient to merit setting aside the default.

*See id.*; *see also* Ex. C, Feb. 25, 2026 Email from C. Gregory. Given Plaintiff's position, Defendants file this Motion.

## LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that the Court may set aside default upon a showing of "good cause." The Court has discretion to determine whether good cause exists, being "mindful of the strong preference that cases be decided on their merits." *Gallatin v. VCG Mountain Ridge LLC*, 2025 WL 1242351, at *5 (D. Colo. Apr. 30, 2025) (citing *In re Rains*, 946 F.2d 731, 732-33 (10th Cir. 1991)). The Court should consider: "(1) whether the defendant's culpable conduct led to the default; (2) whether the plaintiff will be prejudiced by setting aside the entry of default; and (3) whether the defendant has a meritorious defense." *Rayford v. Arnette*, 2024 WL 4202218, at *2 (D. Colo. Aug. 13, 2024), *recommendation adopted*, 2024 WL 4202134 (D. Colo. Aug. 28, 2024) (citation omitted). Default judgments are disfavored. *Polaski v. Colo. Dep't of Transp.*, 198 F. App'x 684, 685 (10th Cir. 2006); *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970) ("The preferred disposition of any case is upon its merits and not by default judgment.").

## ARGUMENT

3

All three factors support a finding of good cause to set aside default.

I.      **A procedural technicality, not culpable conduct on the part of Defendants, led to the entry of default.**

At all times since being served and/or waiving service in this action, Defendants have been diligent in defending this action and meeting court deadlines. After being served and/or waiving service, Defendants worked to analyze Plaintiff's claims and draft a comprehensive motion to dismiss addressing Plaintiff's expansive claims, which include numerous legal theories asserted against forty Defendants, including thirty-six defendants in their individual capacities and various defendants in their official capacities. As a result, the parties agreed to several modest extensions, with Defendants' last unopposed motion for extension of time requesting until February 16, 2026, to file their motion to dismiss. ECF 27; ECF 42, p.5, ¶ 22 (Plaintiff agreeing that Defendants' response was due February 16).

Defendants continued to act diligently when this action was reassigned from Judge Daniel D. Domenico to Judge R. Brooke Jackson on February 4, 2026. Although Defendants were originally planning to file their motion to dismiss by February 16, 2026, as agreed to by the parties, Judge Jackson's Practice Standards require a different process whereby Defendants must "file and serve a short letter . . . setting forth the basis for the anticipated motion [to dismiss.]" RBJ Prac. Standards, p.2. Judge Jackson's Practice Standards further provide that "Defendants' deadline to respond to the complaint will be stayed pending the Court's consideration of the letter(s)." *Id.* On February 12, 2026, Defendants filed the required letter of intent to file a motion to dismiss for Judge Jackson's consideration. ECF 35. Under the Practice Standards,

Plaintiff then had seven days to file a response to Defendants' letter, after which "[t]he Court w[ould] then evaluate the parties' positions and determine what the next steps should be." RBJ Prac. Standards, p.2. Moreover, Judge Jackson's Practice Standards provide that "the Court will not consider motions to dismiss unless the moving party has complied or at least attempted to comply with these practice standards." *Id.*

These facts establish that Defendants were in compliance with the motion to dismiss requirements, and they did not suddenly become delinquent by the mere fact of reassignment and newly applicable practice standards. Indeed, judges in this District have recognized that a party's filings in compliance with then-current practice standards is good cause to recognize them even if reassignment makes new practice standards applicable. *See Aronstein v. Thompson Creek Metals Co.*, 2015 WL 1541050, at *1 (D. Colo. Mar. 31, 2015) (granting motion for reconsideration and granting leave for party to refile Motion to Dismiss that exceeded court's page limitations, that were consistent with prior judge's practice standards before case was reassigned); *see also Ward v. Nat'l Credit Sys., Inc.,* 2024 WL 2846609, at *8 n.5 (D. Colo. June 5, 2024) (concluding motion was timely submitted because it was consistent with prior Court's practice standards, although it was untimely had the court applied the practice standards when reassigned). Thus, Plaintiff's claim that the Defendants had to file their motion to dismiss by February 16, 2026, is wrong, as Defendants would have had to contravene Judge Jackson's Practice Standards to do so.

Defendants again showed diligence when this action was next reassigned from Judge Jackson to Judge Gordon P. Gallagher on February 17, 2026. ECF 37, 38. In

light of this most recent reassignment, it was not clear what impact Judge's Jackson's

conferral/letter protocol and automatic stay of the deadline to respond to the Complaint

had on Defendants' deadline to file their motion to dismiss. As a result, on February 18,

2026, counsel for Defendants attempted to confer with counsel for Plaintiff via

email. ECF 40-1. In that conferral, Defendants stated as follows:

> The deadline for Defendants to file their motion to dismiss was previously stayed pending resolution of Judge Jackson's conferral/letter protocol. In light of this matter being reassigned from Judge Jackson to Judge Gallagher, the deadline for Defendants to file a responsive pleading is now unclear. As such, Defendants will be filing a motion seeking leave to file their motion to dismiss by February 27, 2026. Please let us know if Plaintiff has any objection to that motion.

*Id.* Plaintiff did not respond and instead filed his Application for Entry of Default later that

day on February 18, 2026. ECF 39. Defendants again took immediate action. On

February 19, 2026, Defendants filed their opposition to and request to strike Plaintiff's

Application for Entry of Default. ECF 40. On February 20, 2026, Defendants filed their

Motion for Leave to File Motion to Dismiss, ECF 44, and attached as an exhibit their

fully drafted, comprehensive motion to dismiss, ECF 44-1.

These facts show that the February 16, 2026 agreed-upon deadline was not

operational by virtue of Judge Jackson's practice standards, and to the extent it became

operational by virtue of assignment to Judge Gallagher, Defendants' failure to meet it

was an "unintentional or good faith mistake [that] does not rise to the level of culpable

conduct under Rule 55(c)." *Gallatin*, 2025 WL 1242351, at *5. Moreover, Defendants

took "prompt action to remedy [their] error," further showing good faith. *Id.* (quoting *Gold*

*v. State Farm Mut. Auto. Ins. Co.*, 2018 WL 1010943, at *2 (D. Colo. Feb. 22, 2018)).

Finally, promptly moving to set aside entry of default, as Defendants do herein, further

demonstrates Defendants' good faith. *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F.

App'x 744, 750 (10th Cir. 2009).

## II.      Plaintiff will not be prejudiced by setting aside entry of default.

"Prejudice is established when a plaintiff's 'ability to pursue the claim has been

hindered by, for example, loss of available evidence, increased potential for fraud or

collusion, or substantial reliance upon the judgment." *Gallatin*, 2025 WL 1242351, at *5

(quoting *SecurityNational Mortg. Co. v. Head*, 2014 WL 4627483, at *3 (D. Colo. Sep.

15, 2014)). No such facts exist here. Defendants filed their motion for leave to file a

motion to dismiss just four days after the parties' agreed-to deadline. Plaintiff was not

prejudiced by this short delay because, at all times, Plaintiff knew that Defendants were

defending this action and simply needed clarification on the motion to dismiss deadline

given the reassignment to Judge Gallagher. *See* ECF 40-1. Moreover, Plaintiff was well

aware of the plan to file a motion to dismiss and the basis for that motion from the letter

filed with the Court on February 12, and Defendants' efforts to confer about its motion to

dismiss. Far from being prejudiced, Plaintiff used reassignment and the resulting lack of

clarity as a "gotcha" in filing his Application for Entry of Default. Plaintiff's

gamesmanship does not constitute prejudice.

## III.     Defendants have meritorious defenses.

On this factor, "the court examines the allegations contained in the moving

papers to determine whether the movant's version of the factual circumstances

surrounding the dispute, if true, would constitute a defense in the action." *Gallatin*, 2025 WL 1242351, at *6 (quoting *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978)).

Applied here, the Complaint makes broad assertions of violations of federal and state constitutional and statutory law by a total of forty state entities and individuals. But missing from the Complaint are any actual factual allegations that explain what it is that each of forty named Defendants did to Plaintiff, and/or how such facts support any of his claims. Defendants' proposed motion to dismiss, attached to their motion for leave, outlines numerous independent bases for dismissal of all claims against all Defendants pursuant to both Rules 12(b)(1) and 12(b)(6). Defendants respectfully request the Court consider the defenses presented in Defendants' proposed Motion to Dismiss, ECF 44-1, and further highlight many of these defenses applicable to subject matter jurisdiction, immunity, and the federal law claims[1] as follows:

**A. The Court lacks subject matter jurisdiction over many of Plaintiff's claims.**

Because a judgment is void where a court that enters it lacks subject matter jurisdiction, lack of subject matter jurisdiction constitutes good cause to set aside an entry of default. *Guttman v. Silverberg*, 167 F. App'x 1, 3-5 (10th Cir. 2005); *see also* Fed. R. Civ. P. 12(h)(3).

The Court lacks subject matter jurisdiction over all the §§ 1983, 1985, and 1986 claims against the Colorado Supreme Court ("CSC"), the Colorado Commission on

---

[1] Plaintiff also asserts state law claims, which fail for various reasons outlined in Defendants' proposed motion to dismiss. Because the Court could decline jurisdiction over those claims if the federal claims are dismissed, Defendants focus here on the subject matter jurisdiction, immunity, and federal law deficiencies.

Judicial Discipline ("CCJD"), and the Colorado Judicial Discipline Rulemaking Committee ("CJDRC") because they are arms of the state.[2] *See* Colo. Const. art. VI, § 1 ("The judicial power of the state shall be vested in a supreme court[.]"); *id.* § 23(3)(a) ("There shall be a commission on judicial discipline."); *id.* § 23(3)(k)(I) ("There is created a rule-making committee to adopt rules for the judicial discipline process."). As arms of the State of Colorado, they are entitled to sovereign immunity regardless of the relief sought against them. *See Will*, 491 U.S. at 65, 70-71 (dismissing § 1983 action brought by state employee in state court against state agency), *holding limited on other grounds by Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Cf. Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (noting that §§ 1983, 1985, and 1986 did not abrogate state sovereign immunity); *see also* ECF 44-1, § I.B (Section 1983, 1985, and 1986 claims barred by sovereign immunity).

The Court lacks subject matter jurisdiction over the claims for writs of mandamus against CSC, CCJD, CJDRC, Attorney General Weiser in his official capacity, and Governor Polis in his official capacity because the All Writs Act is "not a source of subject-matter jurisdiction[,]" *United States v. Denedo*, 556 U.S. 904, 913 (2009), and the federal question claims in this case do not authorize mandamus relief. *See Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (Section 1983 allows individual-capacity damages and official-capacity injunctive relief); 42 U.S.C. §§ 1985(3) (authorizing damages), 1986 (same).

---

[2] Plaintiff's §§ 1983, 1985, and 1986 claims against state entities CSC, CCJD, and CJDRC also fail because these entities are not "persons" subject to suit, *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66, 70-71 (1989).

9

The Court lacks subject matter jurisdiction over Plaintiff's § 1983 claim against all Defendants to the extent Plaintiff asserts a claim based on a generalized grievance that government agencies ignored his complaints about judicial misconduct. Plaintiff has no "judicially cognizable interest in the prosecution or nonprosecution of another[,]" *Leeke v. Timmerman*, 454 U.S. 83, 85–86 (1981), and he lacks standing to assert claims related to his allegedly ignored complaints. *See also* ECF 44-1, § II.A.

Finally, the Court lacks subject matter jurisdiction over the state-law claims against CSC, CCJD, CJDRC, and Defendants in their official capacities or where the state is the real party in interest. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, 117 (1984) ("[A] federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when – as here – the relief sought and ordered has an impact directly on the State itself."). Additionally, Plaintiff's Colorado False Claims Act ("CFCA") and disgorgement claims lie in tort and are barred by the Colorado Governmental Immunity Act, §§ 24-10-101–120, C.R.S.

## B.  The individually named Defendants are entitled to qualified immunity.

Each of the individually named Defendants has a meritorious defense because they are entitled to qualified immunity for Plaintiff's federal claims for damages. *See Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) (no abuse of discretion in setting aside the entry of default because, *inter alia*, the Defendants "did have a meritorious defense, namely, qualified immunity").

Courts in the Tenth Circuit use a two-part test to analyze whether a plaintiff has overcome a defendant's qualified immunity defense: (1) whether the alleged facts make

out a violation of constitutional right, and (2) whether the right was clearly established at the time of the alleged misconduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019). A plaintiff must satisfy both prongs of the inquiry to overcome qualified immunity. *Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009).

Here, the Complaint satisfies neither element. First, the Complaint fails to allege any defendant-specific facts showing what each individual defendant did to Plaintiff, and further falls well short of stating a plausible claim that any named Defendant acted in a way that violated any of Plaintiff's constitutional or statutory rights. *See infra* III.D-E*; see also* ECF 44-1, §§ II.A-E.

Second, Plaintiff has not alleged that any such violated right was clearly established at the time of the misconduct. Indeed, he has not identified and cannot identify any clearly established law holding that a state official violates the First Amendment, the Due Process Clause, or the Equal Protection Clause by declining to act on requests, declining to publish submissions, or declining to adopt requested remedial measures in discretionary administrative or rulemaking contexts. Supreme Court precedent makes clear that the rights to speak and petition do not require government officials to listen to, respond to, or act upon an individual's communications. *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984). Likewise, to the extent Plaintiff's theory depends on an asserted entitlement to compel government enforcement action or disciplinary proceedings, courts have long held that private citizens generally lack a judicially cognizable interest in the prosecution or non-prosecution of others and analogous enforcement decisions. *Leeke*, 454 U.S. at 85-86;

11

*Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566-67 (10th Cir. 1993). The individually

named Defendants are therefore entitled to qualified immunity.

## C. Defendant Sullivan and CCJD members are entitled to absolute immunity.

Defendants Sullivan and the CCJD members have a meritorious defense to the

claims against them because a plaintiff cannot base a claim for damages against a

defendant on conduct within their judicial or quasi-judicial capacity due to absolute

immunity. *See Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006) ("Absolute

immunity bars suits for money damages for acts made in the exercise of prosecutorial

or judicial discretion.").

Plaintiff's claims against Director Sullivan are all centered around her dismissal of

Plaintiff's charge of discrimination. *See* ECF 1, ¶¶ 5, 75, 91. The Tenth Circuit has

explained that immunity applies to the CCRD Director: she "is required by statute to

investigate charges of discrimination, make a finding of probable cause and report to

the commission when conciliation efforts fail. Thus, she is in a position in the state

administrative process that is similar to that of a judge, hearing officer or prosecutor."

*Wilhelm v. Cont'l Title Co.,* 720 F.2d 1173, 1178 (10th Cir. 1983); *see also Masterpiece*

*Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1249 (D. Colo. 2019) (Director Sullivan

entitled to absolute immunity for duties to "receive, investigate, and make

determinations on charges alleging unfair or discriminatory practices.").

Plaintiff's claims against current and former members and staff of the CCJD are

also all premised on their quasi-judicial work for the CCJD. CCJD investigates

complaints regarding judicial conduct and either dismisses the complaint or orders

informal discipline or a formal hearing seeking "the removal, retirement, suspension, censure, reprimand, or other discipline of a justice or a judge." Colo. Const. art. VI, § 23(3)(e)(I). Plaintiff's claims against these Defendants are based on their handling of complaints he filed. *See* ECF 1, ¶¶ 69, 70. These functions provide them with absolute immunity. *See Guttman*, 446 F.3d at 1033.

### D. The Complaint fails to state any § 1983 claim.

In addition to the meritorious defense of qualified immunity, Defendants have a meritorious defense to each of Plaintiff's § 1983 claims because they either fail to state a claim, do not apply to actions by state governments, or assert causes of action unavailable under § 1983, as follows:

Plaintiff's First Amendment claims (right to petition and/or access to the courts) fail because none of the allegations in the Complaint suggest he was prevented from making any complaints and/or providing filings, and the CCRD properly dismissed his discrimination charge for lack of jurisdiction. *See also* ECF 44-1, § II.A.2. His First Amendment Claim (retaliation) fails because there are no allegations regarding his termination or any purported adverse actions by any Defendant. *See also id.*, § II.A.3.

Plaintiff's Fourteenth Amendment claims fail because, for his equal protection claim, there are no allegations that Plaintiff was treated differently from similarly situated individuals, *see Montoya*, 662 F.3d at 1172, and for his due process claim, he has not and cannot identify a protectible property interest of which he was deprived by each Defendant. *See Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (Under either a procedural or substantive due process theory, "a plaintiff must first establish that a

defendant's actions deprived plaintiff of a protectible property [or liberty] interest.'"). *See also* ECF 44-1, § II.A.4.

The Complaint offers no basis for a Fifth Amendment claim. ECF 1, ¶ 78. Regardless, "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen[th] Amendment applies to actions by state governments." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013). *See also* ECF 44-1, § II.A.4.

On the FCA, Plaintiff cannot utilize § 1983 as a vehicle to assert it. *See* ECF 44-1, § II.A.4. The FCA's comprehensive scheme to remedy retaliation precludes an FCA claim under § 1983. *See* 31 U.S.C. § 3730(h)(1)-(3) (providing a cause of action for retaliatory actions, specific forms of relief, the appropriate venue for a claim, and three-year statute of limitations); *Graham v. Kan. City Area Transp. Auth.*, 2023 WL 12198578, *4 (W.D. Mo. July 26, 2023) ("[T]he FCA's comprehensive remedial scheme demonstrates Congress' intent to prohibit plaintiffs from relying on § 1983 to enforce their rights under the FCA.").

Finally, as to alleged state law violations, § 1983 only provides a cause of action for violations of the United States Constitution and federal law, not the state Constitution or state statutory law. *See, e.g., D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) ("Section 1983 affords a remedy for violations of federal law and does not provide a basis for redressing violations of *state* law.") (internal quotation omitted). As a result, Plaintiff's § 1983 claims for alleged violations of article II and article V of the Colorado Constitution and the CFCA (to the extent raised as part of Count I) fail.

14

### E. Plaintiff's §§ 1983 and 1985 conspiracy claims and 1986 neglect to prevent claims fail.

Similarly, Defendants have a meritorious defense to Plaintiff's §§ 1983, 1985(2), and 1985(3) conspiracy claims because the Complaint lacks well-pleaded allegations showing that an agreement existed among any of the Defendants, *see Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), that any Defendant acted to deter his attendance in court or testimony, or to injure Plaintiff for having appeared in court or testified as required under § 1985(2), *see Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014), or interfered with his rights based on racial or class-based animus as required under § 1985(3). *See also* ECF 44-1, §§ II.B, C. Plaintiff's § 1986 neglect-to-prevent claim fails because the § 1985 conspiracy claims fail, *see Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985), and there are no well-pleaded facts showing any Defendant had the knowledge of, power to prevent, and neglected to prevent a § 1985 conspiracy. *See Ganzy ex rel. J.G. v. Douglas Cnty. Sch. Dist. RE-1*, 744 F. Supp. 3d 1187, 1192-93 (D. Colo. 2024); *see also* ECF 44-1, § II.D.

### CONCLUSION

As discussed above, no culpable conduct on the part of Defendants led to the entry of default, and Plaintiff will not be prejudiced if the entry of default is set aside. Furthermore, as established above and in Defendants' proposed Motion to Dismiss, ECF 44-1, Defendants have meritorious defenses to each and every one of Plaintiff's claims. Therefore, Defendants have established good cause and respectfully request that the Court set aside the entry of default.

Respectfully submitted this 25th day of February 2026.

15

PHILIP J. WEISER
Attorney General

s/ Clayton J. Ankney

**Daniel M. Combs**
**Katharine Brown**
First Assistant Attorneys General
**Clayton J. Ankney**
Second Assistant Attorney General
Civil Litigation and Employment Law
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6000
Email:  Dan.Combs@coag.gov;
Katharine.Brown@coag.gov;
Clayton.Ankney@coag.gov

16