IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

     Plaintiff,

v.

The COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.

     Defendants.

---

**VERIFIED MOTION TO DISQUALIFY COUNSEL; EXHIBITS 1 THROUGH 7**

---

**Conferral Statement:** The Defendants' Counsel have been aware of conflicts of interest preventing the state-funded representation of the Defendants through the Colorado Office of the Attorney General (COAG) since before this case was filed. In or about July 26, 2024, First Assistant Attorney General Dan Combs contacted the Plaintiff to arrange publicly-funded representation for the Plaintiff in a related *pro se* lawsuit in which the Plaintiff was named as a defendant based upon his official functions as the former Executive Director of the Colorado Commission on Judicial Discipline (the CCJD). *Dees, et al. v. William Hood, et al.*, 1:24-cv-00848-PAB-NRN (D. Colo.). During the Plaintiff's conversations and communications with Mr. Combs, the Plaintiff confided that he had been retaliated against in his role as Executive Director and that the current members and staff of the CCJD were intentionally suppressing legitimate grounds for judicial discipline (i.e. violating the CCJD's constitutional mandate as described according to Colo. RJD 1(b)). Mr. Combs responded by arranging for the appointment of private

counsel, Andrew Ringel[1] of Hall and Evans, LLC, as a Special Assistant Attorney General (SAAG) to provide impartial representation. Mr. Combs, however, denied the Plaintiff's contemporaneous request to have input in the selection of a SAAG. At that time, the appointment of a SAAG required the approval of Solicitor General Shannon Stevenson and would have been a matter warranting the attention of the COAG's senior staff, including First Assistant Attorney General LeeAnn Morrill, Deputy Attorney General Kurtis Morrison, Chief Deputy Attorney General Natalie Hanlon-Leh, and Attorney General Phil Weiser. A copy of the Plaintiff's email correspondence relevant to the appointment of a SAAG is provided as Exhibit 1. At the time, Mr. Combs knew that the COAG had previously provided the CCJD with a SAAG, when Attorney Regulation Counsel Jessica Yates unlawfully threatened the CCJD's Vice Chair Judge David Prince and the other attorney and judge members of the CCJD through a formal disciplinary letter dated February 6, 2023.

Collaterally, the Plaintiff has consistently and publicly called for the formal referral of the issues in this case to conflict-free federal law enforcement and for the Colorado General Assembly to direct Colorado State Auditor Kerri Hunter to appoint another state's attorney general as a SAAG capable of impartially representing the interests of the State of Colorado (and the integrity of the institutions and offices which the individually named defendants occupy/represent). The request for the Colorado General Assembly to refer the Colorado Judicial Scandal to federal law enforcement was first made at the April 28, 2025 Senate Judiciary

---

[1] Incidentally, Mr. Ringel is listed as counsel in one of the example cases included in U.S. District Judge Daniel D. Domenico's response to the Senate Questionnaire, which he submitted upon his appointment to the district court. U.S. Senate Comm. on the Jud., *Questionnaire for Judicial Nominees (Daniel D. Domenico's Response)*, p. 27.

Committee hearing on the reappointment of Chair Mindy Sooter and Vice-Chair James Carpenter to the CCJD. The Plaintiff's requests for conflict-free representation of the State of Colorado's interests have most recently included development of the legislative record (including the submission of a proposed joint resolution to formally refer the Colorado Judicial Scandal to conflict-free law federal law enforcement and to direct the State Auditor to appoint a SAAG),[2] filing a Senate ethics complaint against the members of the Colorado Senate Judiciary Committee,[3] and filing complaints with the Colorado Independent Ethics Commission (IEC)

_____

[2] The legislative record that the Plaintiff has created can be found as follows:

> Joint Judiciary Committee 1/21/2026 SMART Act Hearing re: Colorado Judicial Department Presentation--
> https://leg.colorado.gov/committee_meeting_hearing_summary/28660;
>
> Senate Judiciary Committee 2/9/2026 Confirmation Hearing re: Appointment of former Senator Robert Gardner to the Colorado Commission on Judicial Discipline--
> https://leg.colorado.gov/committee_meeting_hearing_summary/28938; and
>
> Senate Judiciary Committee 2/11/2026 Hearing re: SB26-084--
> https://leg.colorado.gov/committee_meeting_hearing_summary/29188.

The Plaintiff's February 25, 2026 supplement to the February 11, 2026 Senate ethics complaint submitted to Senate President James Coleman (included in the Plaintiff's written testimony opposing SB26-084 referenced *supra*) is provided as Exhibit 2. The proposed joint resolution is also separately provided as Exhibit 3. The legislative record also includes examples of the Plaintiff filing complaints seeking civil and criminal enforcement directly with the COAG. Like President Coleman's response to the Senate ethics complaint, the COAG has deliberately disregarded the filed complaints. Exhibit 4.

For reasons described in the motion itself, the Defendants are not privy to an unopposed motion that the Plaintiff filed in his parallel sealed case which requests this Court to issue protective orders and facilitate the appointment of another state's attorney general as a SAAG through the authority of the Colorado State Auditor. *Sealed Case*, 1:25-cv-00190-KHV-GEB (D. Colo.), ECF No. 56.

[3] The February 11, 2026 Senate ethics complaint documents the Plaintiff's prior complaints submitted directly to the COAG, which requested an investigation of U.S. District Judge Daniel

-3-

challenging the Defendants' use of public resources in this case and Senate President James Coleman's deliberate disregard of the Plaintiff's Senate ethics complaint. The Plaintiff's IEC complaints, with individual complaints against the Defendants' Counsel of record (Clayton Ankney, Katharine Brown, and Dan Combs), are included in Exhibit 3.

Due to near-universal conflicts of interest and obstruction of justice, the Plaintiff has been unable to meaningfully engage with either federal law enforcement or state and local law enforcement regarding the many crimes and examples of public fraud that are established through the allegations of the Plaintiff's Verified Complaint, ECF No. 1, and the Plaintiff's publicly-suppressed "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel," ECF No. 26; *see also* ECF No. 46 (entry of default as to all Defendants); *see, e.g., Dickinson v. Lincoln Building Corp.*, 2015 COA 170M, ¶¶ 22-23("[A]n entry of default establishes a party's liability. . . An entry of default, however, is not an admission regarding damages."). Indeed, the Colorado Office of the State Auditor (OSA) has refused to respond to the Plaintiff's request for the appointment of another state's attorney general as a SAAG and has further refused to confirm whether it has consulted or is consulting with the COAG in the handling of the Plaintiff's 2024 and 2025 Fraud Hotline reports.[4]

---

Domenico's persistent refusal to recuse himself and an investigation of patterns and practices of civil rights violations within the Colorado Judiciary. Copies of these COAG complaints are provided as Exhibit 4.

[4] Circumstantial evidence causes the Plaintiff to have concerns that the COAG has used its statutory role as support for the OSA to undermine a legitimate investigation through the OSA's Fraud Hotline. After filing his "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel," ECF No. 26, the Plaintiff provided copies to the OSA and this Court's Committee on Conduct. Shortly afterwards, Mr. Combs informally communicated with District Judge Daniel D. Domenico via email to cause suppression of the Affidavit from public access. Exhibit 7, p. 41. The Plaintiff suspects that communications between the OSA and the

Despite the formal steps taken to appoint a SAAG in *Dees*, the Defendants (including those named in their individual capacities) responded to the present action by apparently agreeing to consolidated representation through the COAG, with Mr. Combs acting as lead counsel.  When the Plaintiff raised concerns about the assignment of this case to U.S. District Court Judge Daniel D. Domenico, Defendants' Counsel responded by disputing the Plaintiff's assertions of actual bias (as also stated in the Plaintiff's Verified Complaint and subsequent case filings).  ECF No. 1 p. 6 fn.3, ECF Nos. 7, 12, 26; Exhibit 7, p. 31.  The Defendants continued to dispute the need to assign this case to a judge from outside the District of Colorado even after Judge Domenico recused himself.  Exhibit 7, p. 11.  After the Plaintiff raised Mr. Combs's personal conflicts as part of meeting and conferral, he quietly substituted Second Assistant Attorney General Clayton Ankney as the Plaintiff's primary point of contact.  *Compare* Exhibit 7, pp. 27-32 *with* Exhibit 7, pp. 21-26.

In response to the Plaintiff's successful application for a default to enter as to all Defendants, Defendants' Counsel continued to deny that the circumstances of this case require the COAG's disqualification.  Exhibit 7, pp. 1-6.  Indeed, the Defendants, through Mr. Ankney, categorically rejected the Plaintiff's overtures to discuss disqualification of counsel as a possible basis for a stipulated motion to set aside the default.   Exhibit 7, p. 2; ECF No. 47, pp. 2-3. Finally, after the Defendants proceeded to file their "Motion to Set Aside Entry of Default," Mr. Ankney ignored the Plaintiff's email asking whether any further efforts to meet and confer

---

COAG are what motivated Mr. Combs's efforts to suppress the Affidavit from public access. *See* Exhibit 6 (email requesting OSA to confirm existence of communications with the COAG as part of Plaintiff's Fraud Hotline complaints and why OSA has refused to respond to Plaintiff's requests for appointment of a SAAG).

regarding the present Verified Motion to Disqualify Counsel would be useful.  Exhibit 7, p. 1.

Defendants' Counsels' consistent and persistent refusal to directly address these issues is

reflective of a vexatious litigation strategy intended to delay the Defendants' obligations to

provide a timely response to the merits of the Plaintiff's Verified Complaint.  *See* F.R.C.P. 11(b);

*see also* F.R.C.P. 55(c) (demonstration of good cause required to set aside default).  The required

good faith meeting and conferral on the issue of disqualification of counsel has not occurred.

Motions to disqualify counsel are generally disfavored.  *See, e.g., Banks v. Jackson*, 20-

CV-02074-NYW, 2022 WL 1451904, at *9 (D. Colo. May 9, 2022).  This, however, is not a

close case.  No reasonable remedies short of disqualification will adequately protect the integrity

and fairness of this Court's proceedings.

The Plaintiff, Christopher S.P. Gregory, for himself and through his counsel, Ingrid J.

DeFranco, moves this Court to enter an order disqualifying the Colorado Department of Law /

the COAG from further representation of any and all the Defendants in this case.  In support of

this motion, the Plaintiff states the following, upon his personal knowledge, information, and

belief:

INTRODUCTION

This case arises from the Defendants' systematic efforts to censor or otherwise suppress

the Plaintiff's constitutionally-and-statutorily protected right and professionally mandated

obligation to freely and publicly report judicial, attorney, and official misconduct. *See* U.S.

Const. amend. I; Colo. Const. Art. II, §§ 10 and 25; Colo. Const. Art. VI, § 23(3)(g), (i); Colo.

Const. Art. XIII; Colo. RPC 8.3; Colo. RPC 8.4 (f); Canon Rules 1.1, 1.2, 2.15 and 2.16 of the

Colorado Code of Judicial Conduct (the Code); Canons 1, 2(A)-(b), and 3 of the Code of

Conduct for United States Judges (the federal Code).  More specifically, the Plaintiff is seeking accountability for the retaliation that occurred and continues to occur with the specific intent of obstructing the Plaintiff's efforts to freely and publicly report judicial, attorney, and official misconduct.

If the allegations of the Plaintiff's Verified Complaint are proven by default or otherwise, there is indisputable evidence that, in addition to their civil violations, the Defendants have individually and collectively committed a spectrum of crimes.  These crimes include, but are not limited to, Obstruction of Justice, False Statements, Obstruction of a Federal Audit, First Degree Official Misconduct, and Attempt to Influence a Public Servant.  Ordinarily, state and federal law enforcement could be relied upon to receive complaints, to investigate, and to prosecute these crimes.  Instead, Colorado's chief law enforcement officer, Attorney General Phil Weiser, has misused the resources of his office to provide publicly funded representation for both himself and the other Defendants so as to avoid and indirectly defend against the Plaintiff's allegations of public fraud and public corruption.  Attorney General Weiser has and continues to misuse the resources of his official position to perpetuate, rather than prosecute and prevent, public fraud. Moreover, the consolidated representation of all the Defendants by the COAG ignores the fact that the individual interests of the defendants are not aligned.

Among the remedies sought in the Verified Complaint is restitution to the State of Colorado for reasonable attorney's fees and costs unjustly expended by the State in defending those individually-named defendants ultimately found civilly liable.  The facts of this case are now further complicated by the entry of default against all defendants and circumstances where the attorneys representing the Defendants are now necessary witnesses for consideration of the

Defendants' own pending motion to set aside the default, as part of the litigation of the Plaintiff's anticipated Motion for a Preliminary Injunction, and at a prospective trial to determine the amount of damages awardable with the Defendants being joint and severally liable. Until and unless the default is set aside, liability has been proven and the allegations of the Verified Complaint are deemed admitted.

These circumstances require the disqualification of the entire COAG from further representation of any and all of the Defendants. Disqualification is necessary to protect the fairness and integrity of this Court's further proceedings. Only after assignment of this case to neutral and detached judicial officers from outside the District of Colorado has it become possible or realistic for the Plaintiff to make this Verified Motion to Disqualify Counsel.

## QUESTION PRESENTED

Where the Colorado Attorney General has statutory obligations to receive complaints, investigate, and prosecute public fraud, civil rights violations, and other crimes, whether an inherent conflict of interest requiring disqualification exists when the Colorado Attorney General uses the resources of his own office to defend himself and others against legitimate allegations that the same laws that the Colorado Attorney General is charged with enforcing have been violated.

## BACKGROUND

No damages are sought from the State of Colorado or for actions taken by the Defendants in their official capacities. ECF No. 1, pp. 7 through 10 ¶¶ 13-18, 28 ¶ 79, 31 through 33 ¶¶ 92-99. Instead, the remedies sought against the State of Colorado and its official capacity defendants are limited to equitable relief and secondary liability for attorney's fees and costs under 42 U.S.C. § 1988. *See also* ECF No. 1, p. 28 ¶ 79. The State of Colorado has no legitimate interests in protecting the individual capacity defendants from personal liability and damages arising from the Plaintiff's legal (as opposed to equitable claims). On the contrary, as

Colorado's chief law enforcement officer, Attorney General Phil Weiser is obligated to impartially receive complaints, investigate, and prosecute allegations of civil rights violations, public fraud (including false claims), public corruption, and other forms of official misconduct. *See, e.g.,* § 24-31-101, C.R.S. (defining Attorney General's underlying authority prosecute and defend civil and criminal actions in the interests of the State of Colorado); § 24-31-106, C.R.S. (authorizing Attorney General to appoint a crime victims' services coordinator); § 24-31-111(4), C.R.S. (appearances of subordinates representing state agencies in state or federal court must be specifically authorized by the Attorney General); § 24-31-113, C.R.S. (authorizing Attorney General to bring civil action to stop patterns and practices of civil rights violations within government agencies); § 24-31-1204(1), C.R.S. (Attorney General required to "diligently investigate" violations of the CFCA).  Importantly, § 24-31-101(1)(m), C.R.S. expressly prohibits the Attorney General from using the resources of his or her Office to represent public employees named as defendants in actions brought personally under the Colorado Whistleblower Protection Act (CWPA), §§ 24-50.5-101, et seq., C.R.S.[5]  The anti-retaliation provisions of the CWPA are analogous to the retaliation provisions of the CFCA.  *Compare* § 24-50.5-101, C.R.S. *with* § 24-31-1204(8), C.R.S.  The violations of the Colorado Rules of Professional Conduct implicated by the actions and omissions of the Defendants and their Counsel include, but are not

---

[5] The Plaintiff's complaint in the parallel and related sealed case, includes a claim for violation(s) of the CWPA.  *Sealed Case*, ECF No. 1, p. 196.  With the possibility of the refiling of that claim into the present case, the COAG is statutorily prohibited from its continued representation of the Defendants. § 24-31-101(1)(m), C.R.S. specifically provides: "[E]xcept that the attorney general ***shall not represent*** any such [public] employee in an action brought under section 24-50.5-105[.]" (Emphasis added).

limited to, Colo. RPC 1.7, 1.8, 1.10, 1.13(b), 3.3(b), 3.4(a), 3.5(a), 3.7, 4.1, 5.1, 5.2, 8.3, 8.4(a-1), (a-2), (b), (c), (d), (f), (h).

The conflicts of interest inherent in the COAG's representation of the Defendants in this case arise through an extensive, though constant, history.  The primary conflict, of course, is that Attorney General Weiser is using state resources to personally defend himself and his current/former subordinates against verified allegations of official, ethical, and criminal misconduct.[6]  These current or former subordinates (named as defendants in the present action or as respondents in the related federal attorney discipline complaint) include Ingrid Barrier, Gina Cannan, Kirsten Grooms, Alison Kyles, Natalie Hanlon-Leh, Anne Mangiardi, LeeAnn Morrill, Grant Sullivan, and a number of Attorney General Weiser's friends and significant political donors.

Conflicts of interest through the COAG, however, go back further.  As explained in the Plaintiff's federal attorney discipline complaint, Comm. on Conduct Case No. 25-cc-3, the keystone of the Masias Controversy is that the Justices, Attorney General Weiser, former-State Court Administrator's Office (SCAO) Judicial Counsel Terri Morrison, 1st Assistant Attorney General LeeAnn Morrill, current-SCAO Judicial Counsel Andrew Rottman, and then-Assistant Solicitor General Grant Sullivan knowingly concealed information material to the State of Colorado's federally required single statewide audit (i.e. the contemplation of the $2.66-$2.75

---

[6] The provision of public representation to the Defendants is occurring in stark contrast to former Colorado Senate Judiciary Committee Chair Pete Lee's having had to personally spend approximately $68,000 to defend himself against retaliatory criminal charges which were ultimately dismissed.  The sole charge on which Senator Lee was indicted was determined to have arisen from fabricated evidence produced by the Colorado Supreme Court's Office of Attorney Regulation Counsel.

million Masias Contract/bribe and the existence of the related Masias Memo).  When the CCJD

advocated for legislative reforms to Colorado's judicial discipline system, the COAG (through

Deputy Attorney General Kurtis Morrison) responded by supporting the Justices' unethical

lobbying efforts and opposition to SB22-201.  Hanlon-Leh, Kurtis Morrison, and Morrill later

continued their efforts to meddle with legislative reforms by obstructing the formation of the

Office of Administrative Services for Independent Agencies created by SB23-228.  Gina Cannan

and Alison Kyles, presumably supervised by others, were directly involved in the premeditated

retaliation that culminated in the Plaintiff's wrongful termination, in conjunction with the COAG

/ CCJD offering severance pay in exchange for a waiver of claims and non-disclosure agreement.

Beyond COAG attorneys being part of the underlying civil rights violations and

retaliation alleged in this case, other current and former COAG attorneys are material witnesses

in connection with the representation provided to the CCJD through the COAG in *Matter of

Timbreza II*, 2023 CO 16 and *Matter of Scipione*, 2024 CO 23.

As it relates to the COAG's representation of the Defendants in this case, there are

current conflicts which adversely impact the Plaintiff's right to fair, public, and impartial

proceedings.  These conflicts include the COAG's efforts to suppress the Plaintiff's 28 U.S.C. §

144 Affidavit from public access and the facilitation of ongoing criminal conduct by the

Defendants (including allowing the concealment of material information from the Colorado

General Assembly and continuing intimidation of and retaliation against the Plaintiff that is

intended excuse the Defendants from responding to the merits of this case).  Additionally, and

without justification, the Defendants' Counsel have opposed, and continue to oppose, the

Plaintiff's efforts to seek a fair and impartial forum.  Specifically, Defendants' Counsel

-11-

supported the assignment of this case to District Judge Domenico and, then, opposed the

Plaintiff's repeated requests (ultimately granted) reassigning this case to judges from outside the

District of Colorado. Defendants' Counsel have persistently refused to disqualify themselves

and continue to do so even after they have received the Plaintiff's Senate and IEC ethics

complaints. The non-disqualification of Defendants' Counsel is the principal reason for the entry

of a default. Nevertheless, counsel continue to obstruct the Plaintiff's right to have this case

heard before an impartial judge and, ultimately, an impartial jury (even if a trial limited to the

calculation of damages as allowed in this Court's discretion). *See Frankart Distributors, Inc. v.*

*Levitz*, 796 F. Supp. 75, 77 (E.D.N.Y. 1992) (recognizing trial court's discretion to allow jury

trial on damages even after entry of default judgment); *see also* F.R.C.P. 55(b)(2) (allowing

referral of application for a default judgment including to allow a jury trial if statutorily

required).

DISCUSSION

**LEGAL STANDARD GOVERNING DISQUALIFICATION**

> Motions to disqualify are governed by standards developed under
> federal law as well as the Local Rules of this District, which
> incorporate the standards of professional responsibility in the
> Colorado Rules of Professional Conduct ("Colo. RPC"), *see*
> D.C.COLO.LAttyR 2(a). *Cole v. Ruidoso Mun. Schs.*, 43 F.3d
> 1373, 1384 (10th Cir. 1994). "It is well-established that control of
> attorneys' conduct in trial litigation is within the supervisory
> powers of the trial judge, and is thus a matter of judicial
> discretion." *Id.* (quotation omitted).

> Although the Court has discretion to disqualify counsel, motions to
> disqualify opposing counsel are generally disfavored. *See Chavez
> v. New Mexico*, 397 F.3d 826, 839-40 (10th Cir. 2005); *Fogani v.
> Young*, 115 P.3d 1268, 1272 (Colo. 2005) ("[C]ourts have
> historically been highly cynical of motions to disqualify opposing
> counsel, noting that such motions are often dilatory or tactical

-12-

devices.”). As the moving party, Plaintiffs have the burden of
showing sufficient grounds for disqualification by alleging specific
facts rather than relying on speculation or conjecture. *See Quark,
Inc. v. Power Up Software Corp.*, 812 F. Supp. 178, 179 (D. Colo.
1992).

*Vincenzetti v. Amazon.com Servs. LLC*, 21-CV-02681-RM-NRN,
2025 WL 3299383, at *1 (D. Colo. Sept. 29, 2025).

Two particular circumstances require the disqualification of counsel: a nonwaivable

conflict which unfairly prejudices a party, and counsel's involvement in the facts and

circumstances of a case to the point where he or she becomes a necessary witness.  Both exist

here and are substantiated by specific facts.

Disqualification is proper when counsel has a conflict which could reasonably be

expected to prejudice a party.  Prior representation of a client whose interests are antithetical to

the party's or knowledge obtained in the course of a privileged relationship, which may prejudice

the party, constitute grounds for disqualification.  "A conflict of interest is traditionally a matter

of concern where an attorney's interest conflicts with that of her own client – not that of the

opposing party." *Miller v. Deutsche Bank Nat. Trust Co.*, 2013 WL 4776054, at *5 (D. Colo.

Sept. 4, 2013) (quoting *Fognani v. Young*, 115 P.3d 1268, 1272 (Colo. 2005)).  While, as a

general rule, courts do not address claimed violations of the ethical rules made by non-clients,

the Colorado Supreme Court has created an exception to that rule, when "a potential ethical

violation threatens to prejudice the fairness of the proceedings." *Fognani,* 115 P.3d at 1269.

When counsel possesses such evidence that she or he becomes a necessary witness, s/he

may not properly occupy two roles at trial, due to the potential to confuse a jury.

Before an advocate will be disqualified under Colorado Rule 3.7, it
must be "likely" that the lawyer will be a "necessary" witness.
Compare DR 5-101(B) (attorney must decline employment if the

-13-

attorney "ought to be called" as a witness). The "necessary" witness standard is recognized as requiring "an even more specific showing of necessity" than the Code. *Security General. Life Ins. Co. v. Superior Court*, 149 Ariz. 332, 718 P.2d 985 (1986) (Rule 3.7(a) requires a showing that the proposed testimony is relevant, material and unobtainable elsewhere). It has been held that the advocate's testimony must be necessary, and not merely cumulative, and that the court may delay ruling on a motion to disqualify until it can determine whether another witness can testify.

*World Youth Day v. Famous Artists Merchandising Exch.,* 886 F.Supp. 1297, 1302, (D. Colo. 1994) (citing Colorado Rule of Professional Conduct 3.7, and analyzing its predecessor).

**A.     AAG Combs's Representation, and, by Extension, That of AAGs Ankeney and Brown, Will Necessarily Result in a Violation of the Rules of Professional Conduct Which Will Prejudice the Fairness and Integrity of these Proceedings**

The COAG's attorneys of record in this case, Dan Combs, Clayton Ankney, and Katharine Brown, are defending the personal interests of the individually-named Defendants, rather than impartially representing the interests of the State of Colorado. *See Berger v. United States*, 295 U.S. 78, 99 (1935) (describing objective of government lawyer is not to win a case but to ensure "that justice shall be done"). By collectively representing both the institutional and individual Defendants, the COAG, AAG Combs, AAG Ankney, and AAG Brown are merely facilitating and endorsing the judicial, attorney, and official misconduct alleged in the Verified Complaint. Instead of representing the State of Colorado's interests in protecting public confidence in the Judiciary and the integrity of state government, the COAG is opposing the injunctive relief the Plaintiff seeks and knowingly concealing legitimate grounds for judicial discipline from the public, as expressed in the Plaintiff's 28 U.S.C. § 144 Affidavit. It should be clear that the COAG's attorneys are knowingly interfering with the administration of justice in violation of Colo. RPC 8.4(d), (f), (h). AAG Combs's representation is particularly problematic

-14-

and conflicted given that he had discussed the merits of this case and other attorney-client

sensitive information as part of the COAG's appointment of a SAAG for the Plaintiff in *Dees*.

**B.      AAGs Coombs, Ankeney, and Brown are Necessary Witnesses Who Will Be Called to Testify About Their Own Conduct, and that of Attorney General Weiser.**

As described in the complaints that the Plaintiff has filed with the IEC, there are

reasonable grounds to suspect that both the Defendants and their Counsel through the COAG

have committed or are committing various crimes, which include Obstruction of Justice

(18 U.S.C. § 1503), False Statements (18 U.S.C. § 1001), Obstruction of a Federal Audit (18

U.S.C. § 1516), Retaliation Against a Witness or Victim (§ 18-8-706, C.R.S.), First Degree

Official Misconduct (§ 18-8-404, C.R.S.), and Attempt to Influence a Public Servant

(§ 18-8-306, C.R.S.).  The Defendants' Counsel's attempts to intimidate the Plaintiff, their

persistent non-disqualification, and bad faith defense against this action support additional

individual claims against Defendants' Counsel for retaliation as defined under the CFCA, § 24-

31-1204(8)(b).  Accordingly, there are now inherent attorney-witness conflicts that require the

disqualification of the entire COAG according to Colo. RPC 1.7, 1.10(a), 3.7.

CONCLUSION

**WHEREFORE**, the Plaintiff respectfully requests that this Court enter an order

disqualifying the Colorado Attorney General's Office from further representation of any of the

defendants in this case and for a further order directing Colorado State Auditor Kerri Hunter to

exercise her authority under § 24-31-111(5), C.R.S. to appoint another state's attorney general to

impartially represent the interests of the State of Colorado as a Special Assistant Attorney

General.  The appointee should be chosen from amongst other states that have state-level false

claims acts.  The qualifying states and the District of Columbia are: California, Connecticut,

Delaware, District of Columbia, Florida, Georgia, Hawai'i, Illinois, Indiana, Iowa, Kansas,

Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New Mexico, New York, North

Carolina, Oregon, Rhode Island, Tennessee, and Vermont.

    Dated: March 11, 2026

            /s/ Ingrid J. DeFranco
            **Ingrid J. DeFranco, esq.**
            Law Office of Ingrid J. DeFranco
            P.O. Box 128
            Brighton, CO 80601
            Telephone: (303) 641-6812
            Email:  Ingrid.DeFranco@gmail.com
            Attorney for Plaintiff Christopher S.P. Gregory

            /s/ Christopher S.P. Gregory
            **Christopher S.P. Gregory, Esq.**
            The Gregory Law Firm, LLC
            201 Coffman St., #1822
            Longmont, CO 80502
            Telephone: (970) 648-0642
            E-mail: cspgregory@thegregorylawfirm.net
            *Pro Se* Attorney for Plaintiff
            Christopher S.P. Gregory

## VERIFICATION

    I declare under penalty of perjury that the statements made in this Motion to Disqualify

Counsel are true and correct to the best of my knowledge.

Executed at Boulder County, Colorado, this 11th day of March, 2026.

**Christopher S. P. Gregory**

CERTIFICATE OF SERVICE

       I certify that on March 11, 2026, I filed the above filing via email to the Clerk of the Court, who will docket it in CM/ECF. CM/ECF will send notification of this filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

/s/ Ingrid J. DeFranco
Ingrid J. DeFranco