# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-03361-KHV-GEB

CHRISTOPHER S. P. GREGORY,

      Plaintiff,

v.

THE COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.,

      Defendants.

---

## MOTION TO DISMISS

---

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................ 1

FACTUAL BACKGROUND ........................................................................................... 2

I.      The Complaint's Allegations ........................................................................... 2

II.     Enumerated Claims ........................................................................................ 5

LEGAL STANDARDS ................................................................................................... 7

I.      Rule 12(b)(1) .................................................................................................. 7

II.     Rule 12(b)(6) .................................................................................................. 7

ARGUMENT .................................................................................................................. 8

I.      Plaintiff has failed to state a claim against any Defendant ................................ 8

        A.      The Complaint fails to state a cognizable claim for relief against any
                named Defendant (Rule 12(b)(6)) ............................................................. 8

        B.      All claims against the CSC, CCJD, and CJDRC are barred because they
                are arms of the State (Rules 12(b)(1) and 12(b)(6)) ............................... 12

        C.      Director Sullivan and the CCJD members and staff have absolute
                immunity from damages claims (Rule 12(b)(6)) ....................................... 13

II.     Each federal law claim of the Complaint fails for various independent reasons. 15

        A.      Claim 1 (42 U.S.C. § 1983) fails for multiple reasons (Rule 12(b)(1) and
                12(b)(6)) .............................................................................................. 15

        B.      Claims 1-3 (42 U.S.C. §§ 1983, 1985, 1986) fail to plausibly allege a
                conspiracy (Rule 12(b)(6)) ..................................................................... 26

        C.      Claim 2 (§§ 1985(2) and (3) conspiracy) fail for additional reasons (Rule
                12(b)(6)) .............................................................................................. 27

        D.      Claim 3 (§ 1986) fails for additional reasons (Rule 12(b)(6)) ................. 28

        E.      Claims 1-3: Individually named Defendants are entitled to qualified
                immunity (Rule 12(b)(6)) ........................................................................ 29

        F.      Claim 5: Plaintiff's request for writs of mandamus fails as a matter of law
                (Rules 12(b)(1) and (b)(6)) ..................................................................... 30

III.    Plaintiff's state law claims (Claims 4, 6) must be dismissed. ............................ 33

        A.      Plaintiff's state law claims are barred by the Eleventh Amendment and the
                Colorado Governmental Immunity Act (Rule 12(b)(1)) ............................ 33

        B.      Claim 4 (CFCA) fails to state a cognizable claim (Rule 12(b)(6)) ............. 37

ii

C. Claim 7 (unjust enrichment) fails to state a cognizable claim (Rule 12(b)(6)). ................................................................................... 38

IV. Claim 6 (equitable relief) is not a stand-alone claim (Rule 12(b)(6)). .................. 38

CONCLUSION ................................................................................. 39

Defendants Colorado Judicial Discipline Rulemaking Committee ("CJDRC"),

Colorado Commission on Judicial Discipline ("CCJD"), the Colorado Supreme Court

("CSC"), Mary Sooter, Philip Weiser, Jared Polis, Maria Berkenkotter, Brian Boatright,

Richard Gabriel, Melissa Hart, William Hood III, Monica Márquez, Carlos Samour, Jr.,

Ingrid Barrier, David Beller, Jill Brady, Gina Cannan, James Carpenter, Nancy Cohen,

Robert Gardner, Sara Garrido, Kirsten Grooms, James Hartmann, Amanda Hollander,

Alison Kyles, Bryon Large, Anne Mangiardi, Bonnie McLean, Colleen McManamon,

Kristen Mix, Reed Owens, Meredith Patrick Cord, Aubrey Sullivan, Courtney Sutton, Jeff

Swanty, Emily Tofte Nestaval, Stefanie Trujillo, Mariana Vielma, Vincente Vigil, and

Jeffrey Walsh, through their undersigned counsel and the Office of the Colorado

Attorney General, and pursuant to Federal Rules of Civil Procedure 12(b)(1) and

12(b)(6), move to dismiss Plaintiff's Verified Complaint and Jury Demand, ECF No. 1.

Pursuant to GPG Civ. Prac. Standard 7.1B(b), counsel for Defendants outlined

the bases for this motion and requested a telephonic conference to confer in several

correspondences including on January 12 and 27, 2026, and February 5th, 6th, 10th,

and 11th. During the time this case was assigned to Judge R. Brooke Jackson,

Defendants also complied with his practice standards, filing a notice of intent to file a

motion to dismiss on February 12, 2026. ECF No. 35. Plaintiff opposes dismissal.

## INTRODUCTION

Despite naming forty Defendants and making broad assertions of violations of

federal and state constitutional and statutory law, the Complaint includes few factual

allegations that would explain Plaintiff's claims. Plaintiff asserts that during the time he

1

was a member and/or the Executive Director of the CCJD, certain Defendants allegedly

failed to properly handle and/or covered up financial misconduct by Mindy Masias, the

former Chief of Staff for the State Court Administrator's Office ("SCAO"). Plaintiff further

alleges that years after the alleged misconduct and after the CCJD terminated his

employment, Plaintiff submitted various papers regarding the alleged mishandling

and/or coverup of Masias' misconduct, which Defendants ignored.

Plaintiff names as Defendants *anyone* who received his papers, asserting some

nearly limitless conspiracy that spans the CSC, Attorney General's office, CCJD,

CJDRC, and Colorado Civil Rights Division ("CCRD"). But missing from the Complaint

are any actual factual allegations that explain his complaints, what it is that each of forty

named Defendants did to Plaintiff, and/or how such facts support any of his claims.

Indeed, despite using loaded words such as "retaliation," "conspiracy," "public

corruption," "intimidation," "harassment," and "obstruction of justice," the Complaint is

devoid of well-pleaded allegations supporting such conclusions. Compounding these

pleading deficiencies, Plaintiff not only failed to allege facts supporting his claim, but he

*cannot* plead certain claims against the named Defendants. Defendants respectfully

request that the Complaint be dismissed under Rules 12(b)(1) and (b)(6).

## FACTUAL BACKGROUND

## I.     The Complaint's Allegations

Defendants vigorously dispute that Plaintiff's allegations of misconduct against

Defendants have any basis in fact. For purposes of this Motion, however, Defendants

address any well-pleaded allegations as if true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Complaint outlines two periods in time – an alleged mishandling/coverup regarding misconduct by Masias that spanned from 2018 to 2022, and Plaintiff's submissions to various Defendants starting in 2024 after the CCJD terminated his employment as Executive Director.

As to Masias, the Complaint alleges the following disputed facts: (1) in July 2018, the then-current CSC Justices decided to terminate Masias after learning she had engaged in financial misconduct, ECF No. 1, ¶¶ 53-54; (2) rather than accept termination, Masias took leave and negotiated a multi-million-dollar contract to provide leadership training to the Judicial Department (the "Masias Contract"), *id.* ¶¶ 55-56; (3) during negotiations of the Masias Contract, the CSC was issued "an ultimatum that Masias would release compromising information about the Department and the Justices if an agreement could not be reached," *id.* ¶ 55; (4) while the Masias Contract was being circulated for execution in April 2019, the Office of the State Auditor ("OSA") Fraud Hotline, CSC Justices, Attorney General, and Governor Polis were sent an anonymous complaint alleging fraud within the SCAO and by Masias, *id.* ¶ 60; (5) in response to the State Auditor's inquiry, then-Chief Justice Coats allegedly failed to disclose a memorandum about the Masias Contract ("Masias Memo") or that it would be executed a second time three days later on June 3, 2019, *id.* ¶ 61; (6) in July 2019, the Justices approved canceling the Masias Contract after it became public, *id.* ¶ 62; (7) in early 2021, the Masias Memo became public, and the Justices issued what the

3

Complaint labels as public "damage control" statements, *id.* ¶ 64; and (8) on February 4, 2022, the OSA issued its Fraud Hotline Investigation Report making "referrals for prosecution" of former Judicial Department employees, but the Complaint alleges that the delay caused the statutes of limitation to lapse, *id.* ¶ 65.

The Complaint does not allege that Plaintiff was involved in or has firsthand knowledge about the above events, even though he was an appointed member of the CCJD from May 15, 2017, until June 30, 2021, and was employed as its Executive Director from January 3, 2022, until January 19, 2024. *Id.* ¶ 12. Indeed, the Complaint does not allege that Plaintiff was responsible for the 2022 anonymous complaint described in paragraph 60. Rather, the Complaint asserts that "at various times" after his termination in 2024, he "reported these circumstances [of the Masias events]" by submitting complaints, public comments, and two requests for evaluation of judicial conduct ("RFEs")[1] to the Colorado State Commission on Judicial Performance, the CCJD, the CJDRC, the CSC, the Colorado Judicial Discipline Adjudicative Board ("CJDAB"), and the CCRD, only to be "intentionally ignored and/or suppressed." *Id.* ¶ 66. These complaints include: (1) an anonymous fraud hotline complaint to the OSA made on October 20, 2024, *id.* ¶ 69; (2) an anonymous "detailed RFE to the CCJD," also sent on October 20, 2024, which was summarily dismissed without any explanation and despite his request for the CCJD to disqualify itself, *id.* ¶¶ 69, 70; and (3) public comments made in October 2025 about CJDRC's rulemaking process, which

---

[1] An "RFE" is a complaint filed with the CCJD alleging judicial misconduct. All RFEs filed with the CCJD are confidential. Colo. Const. art. VI, § 23(3)(g)(I).

4

Defendants did not accept and/or publish into the CJDRC's public record, *id.* ¶¶ 71-73.

The Complaint also alleges that Plaintiff filed a discrimination charge with the CCRD

alleging that his termination as Executive Director of CCJD was retaliatory, that CCRD

Director Aubrey Sullivan summarily dismissed his charge of discrimination and denied

his appeal, and that it is unclear "what record, if any [she] provided to the [Colorado Civil

Rights Commission ("CCRC")] before communicating her declination" of appeal. *Id.* ¶

75.

Rather than describe these submissions, the Defendants allegedly involved, what

each Defendant allegedly did and/or how they handled Plaintiff's submissions, the

Complaint refers to over 3,700 pages of attached exhibits.

## II.   Enumerated Claims

Plaintiff names thirty-six defendants in their individual capacities (*i.e.*, all

Defendants except the CJDRC, CCJD, CSC, and Jeffrey Walsh[2]) for the following:

- Claim 1, under 42 U.S.C. § 1983 for conspiracy, for alleged violations of rights

  under the First, Fifth, and Fourteenth Amendments to the United States

  Constitution, Colorado Constitution article II, §§ 3, 6, 10, 24, and 25, Colorado

  Constitution article V, § 16, the False Claims Act ("FCA"), 31 U.S.C. §§ 3729

  et seq., and the Colorado False Claims Act ("CFCA"), *id.* ¶ 78;

- Claim 2, under 42 U.S.C. § 1985(2) and (3) for an alleged conspiracy to deny

  Plaintiff equal protection of the laws and participation in the legislative and

---

[2] While the Complaint's caption names Mr. Walsh as a defendant, individually, none of the claims name Mr. Walsh. On this basis alone, he should be dismissed.

administrative processes, to injure Plaintiff for attempting to enforce the rights of others to equal protection of the laws, and to prevent Plaintiff from exercising his rights under the constitutions of Colorado and the United States, *id.* ¶¶ 81-83;

- Claim 3, under 42 U.S.C. § 1986 for neglect to prevent an alleged conspiracy to deprive Plaintiff of his freedom of expression, freedom to petition for grievances, right to be heard, equal protection, and due process under the constitutions of Colorado and the United States, *id.* ¶¶ 85-89;

- Claim 4, under the CFCA, § 24-31-1204(8), C.R.S., for retaliation, ¶ 91; and

- Claim 7, seeking disgorgement and reimbursement from individual defendants to the State of Colorado of reasonable attorney's fees and costs incurred through state-funded representation based on alleged unjust enrichment, *id.* ¶¶ 98-99.

Plaintiff also sues various defendants in their official capacities for the following:

- Claim 1, under 42 U.S.C. § 1983, against the CJDRC, CCJD, CSC, Attorney General Weiser, and Governor Polis for injunctive relief, *id.* ¶ 79; and

- Claim 5, seeking writs of mandamus against (1) CJDRC to invalidate all interim rules or rule changes adopted by CJDRC and enjoin future rulemaking; (2) CCJD to, inter alia, remove the current Executive Director and reinstate Plaintiff; (3) the CSC and Governor Jared Polis to, inter alia, remove all its appointees to the CCJD, CJDAB, the CJDRC, the Colorado Judicial Performance Commissions, and the Colorado Judicial Nominating

6

Commissions; and (4) Colorado Attorney General Phil Weiser to, inter alia,

remove all his appointees to the Colorado Judicial Nomination Commissions,

*id.* ¶¶ 93-94, pp.33-34.

Finally, Claim 6 seeks an order to "prevent and restrain ongoing violations of

administrative, statutory, and constitutional law (both state and federal) by the

Defendants (in either their individual or official capacities)." *Id.* ¶ 96.

## LEGAL STANDARDS

### I.     Rule 12(b)(1)

Dismissal under Rule 12(b)(1) is not a judgment on the merits but is instead a

determination that the court lacks authority to adjudicate the matter. *Castaneda v. INS*,

23 F.3d 1576, 1580 (10th Cir. 1994). If a court lacks jurisdiction, it "must dismiss the

cause at any stage of the proceedings in which it becomes apparent that jurisdiction is

lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). A

plaintiff bears the burden of establishing subject matter jurisdiction. *Id.*

### II.    Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege

enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . .

plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)

(citing *Twombly*, 550 U.S. at 570). "A claim is facially plausible when the plaintiff has

pled 'factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged.'" *Llacua v. W. Range Ass'n*, 930 F.3d

1161, 1177 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While

a complaint "need only give the defendant fair notice of what the claim is and the grounds upon which it rests," *Khalik*, 671 F.3d at 1192 (cleaned up), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

Far from being "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8, the Complaint names forty separate Defendants, attaches over 3,700 pages of documents,[3] and makes conclusory allegations that fail to explain what each Defendant did to Plaintiff, much less link those allegations to his expansive legal conclusions that constitutional and statutory law were violated. Because the Rule 12(b)(1) and 12(b)(6) dismissal arguments apply both on a per-party and per-claim basis, Defendants first address why the Complaint fails to assert claims against any Defendant and then address each claim, noting where Defendants raise Rule 12(b)(1) and 12(b)(6) arguments.

## I.    Plaintiff has failed to state a claim against any Defendant.

### A.    The Complaint fails to state a cognizable claim for relief against any named Defendant (Rule 12(b)(6)).

---

[3] Although the Court *may* consider exhibits attached to the Complaint, the Court has no obligation to review and interpret Plaintiff's lengthy exhibits. *See Cohen v. Delong*, 369 F. App'x 953, 957 (10th Cir. 2010) ("Rule 8 demands more than naked assertions and unexplained citations to voluminous exhibits."); *Vreeland v. Raemisch*, 2019 WL 8128734, at *4 (D. Colo. Mar. 15, 2019), aff'd, 777 F. App'x 281 (10th Cir. 2019) (dismissing pro se complaint where "the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record"). Defendants nonetheless cite some exhibits to show where the Complaint's allegations lack factual basis.

A complaint must inform *each defendant* "what [he or she] did to [the plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007); *see also Brewer v. Gilroy*, 625 F. App'x 827, 833 (10th Cir. 2015) ("The complaint must therefore 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face' as to the specific constitutionally impermissible actions allegedly committed by *each named defendant* to survive a motion to dismiss *as to each defendant*." (emphasis added, citation omitted, cleaned up)).

Moreover, for Plaintiff's claims under 42 U.S.C. §§ 1983 and 1985, where individual liability "must be based on personal involvement in the alleged constitutional violation," Plaintiff must plead the specific allegations against *each* defendant. *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (addressing § 1983); *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) ("[P]ersonal involvement is an essential allegation in a § 1983 action."); *Muhammad v. Hall*, 674 F. App'x 810, 814 (10th Cir. 2017) (§ 1985 claim allegations require "either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants"). Similarly, § 1986 liability requires knowledge of a § 1985 conspiracy and a failure to prevent it. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1125 n.5 (10th Cir. 1994). For § 1983 claims specifically, the Tenth Circuit has "stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. '[I]t is particularly important' that plaintiff[] 'make[s] clear exactly *who* is alleged to have done *what* to *whom*, . . . as distinguished from collective

9

allegations.'" *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) (citations omitted). "Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id.*

Although almost half of the Complaint's allegations are recitals describing each Defendant (*see* ECF No. 1, ¶¶ 13-52), few of the remaining paragraphs actually describe what any specific Defendant allegedly did, and none connect any Defendant's conduct to any alleged harm to Plaintiff. The remaining legal conclusions are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678.

For example, the Complaint asserts that Ms. Sooter provided testimony to the Colorado Senate Judiciary Committee confirming that the CCJD had dismissed an anonymous RFE. ECF No. 1, ¶ 70. That Ms. Sooter provided this testimony does nothing to state a plausible claim that she violated any laws, much less caused any harm that violated any legal right of Plaintiff.

As to Director Sullivan, the Complaint asserts that she (1) "abused her official authority to prevent the [CCRC] from hearing or considering the merits of Plaintiff's administrative claims for discrimination and unfair employment practices," *id.* ¶ 5; (2) issued a letter summarily denying Plaintiff's administrative appeal of the CCRD's determination that it lacked jurisdiction over Plaintiff's untimely charge of discrimination, *id.* ¶ 75; and (3) "obstructed Plaintiff's access to allow the [CCRC] to consider the merits of a collateral complaint brought under the Colorado Anti-Discrimination Act [CADA]," *id.* ¶ 91. These assertions are legal conclusions; they do not allege a plausible basis that Director Sullivan interfered with Plaintiff's ability to access the courts.

10

Nor are the allegations as to the Defendant-Justices tied to Plaintiff in any manner. The Complaint alleges the Justices terminated Masias's employment, *id.* ¶ 54; accepted State Court Administrator Ryan's resignation and cancelled the Masias Contract, *id.* ¶ 62; knew of the Masias Memo in 2019, *id.* ¶ 63; and issued public statements, *id.* ¶ 64. The remainder of the allegations are bare legal conclusions which should be rejected on Rule 12(b)(6) – e.g., that the Justices "were complicit in knowingly concealing material information from the OSA," *id.* ¶ 64; were "directly involved in . . . interference, obstruction, and forced delay" generally and related to a Fraud Hotline investigation, *id.* ¶ 65; and were engaged in "abuse" by "stack[ing] . . . judicial discipline oversight entities," *id.* ¶ 68. *See, e.g., Gowadia v. Stearns*, 596 F. App'x 667, 671-72 (10th Cir. 2014) (affirming dismissal of complaint relying on conclusions that defendants conspired to "cover up . . . crimes" and relied on "false allegations," among others).

Finally, as to the named state entities and individuals named in their official capacities, the Complaint includes only the most conclusory allegations. *See, e.g.,* ECF No. 1, ¶¶ 66 (alleging the CSC, CCJD, CJDRC, and others "intentionally ignored and/or suppressed the Plaintiff's submission of renewed" complaints, comments, and requests); 68 (alleging Governor Polis, Attorney General Weiser, and others abused appointment powers); 75 (alleging the Director Sullivan "summarily dismissed Plaintiff's complaint on jurisdictional grounds" without identifying the official responsible for the decision). Again, "[c]onclusory allegations are not enough to withstand a motion to dismiss." *Gallagher v. Shelton,* 587 F.3d 1063, 1068 (10th Cir. 2009).

On this basis alone, the Complaint should be dismissed in its entirety for failure to assert a plausible claim as to any Defendant.

**B.      All claims against the CSC, CCJD, and CJDRC are barred because they are arms of the State (Rules 12(b)(1) and 12(b)(6)).**

Plaintiff's claims against the CSC, CCJD, and CJDRC fail for two reasons. First, Eleventh Amendment sovereign immunity applies as "'a jurisdictional bar that precludes unconsented suits in federal court against a state and arms of the state.'" *Parker v. Third Dist. Juv. Ct.*, 601 F. App'x 617, 620 (10th Cir. 2015) (quoting *Wagoner Cnty. Rural Water Dist. No. 2 v. Grand River Dam Auth.*, 577 F.3d 1255, 1258 (10th Cir. 2009)); *Collins v. Daniels*, 916 F.3d 1302, 1316 (10th Cir. 2019), *cert. denied* 140 S. Ct. 203 (Oct. 7, 2019) (stating, in dismissing claims against the New Mexico Supreme Court and other state court judicial bodies, that "'[a]s a general matter, state courts are considered arms of the state' and are entitled to sovereign immunity" (quoting 13 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3524.2 (3d ed. 2018))). Sovereign immunity applies to claims for both monetary and equitable relief. *See Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).

The CSC, CCJD, and CJDRC are all arms of the State of Colorado. *See* Colo. Const. art. VI, § 1 ("The judicial power of the state shall be vested in a supreme court[.]"); *id.* at § 23(3)(a) ("There shall be a commission on judicial discipline."); *id.* at § 23(3)(k)(I) ("There is created a rule-making committee to adopt rules for the judicial discipline process."). The Complaint fails to allege that the CSC, CCJD, or CJDRC consented to this suit before its filing, *see generally* ECF No. 1, and indeed they did not. *Cf. Wagoner*, 577 F.3d at 1258-59 (listing circumstances where federal courts have

12

found consent or waiver, none of which are present here). Thus, the Court does not have jurisdiction over claims against these entities.

Second, even assuming *arguendo* that Plaintiff could overcome this jurisdictional bar (he cannot), Plaintiff's federal claims (asserting violations of 42 U.S.C. §§ 1983, 1985, and 1986) against the CSC, CCJD, or CJDRC fail under Rule 12(b)(6) because they are not "persons" as required by these statutes. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65, 70-71 (1989) (dismissing § 1983 action brought by state employee in state court against state agency), *holding limited on other grounds by Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Cf. Patillo v. Larned State Hosp.*, 462 F. App'x 780, 783 (10th Cir. 2012) (noting that §§ 1983, 1985, and 1986 did not abrogate state sovereign immunity).

### C. Director Sullivan and the CCJD members and staff have absolute immunity from damages claims (Rule 12(b)(6)).

A plaintiff cannot base a claim for damages against a defendant on conduct within their judicial or quasi-judicial capacity due to absolute immunity. *See Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006) ("Absolute immunity bars suits for money damages for acts made in the exercise of prosecutorial or judicial discretion."); *Horowitz v. State Bd. of Med. Exam'rs*, 822 F.2d 1508, 1513-17 (10th Cir. 1987) (discussing absolute immunity for quasi-judicial actors and applying the same immunity); *see also Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007) ("Absolute prosecutorial immunity is a complete bar to a suit for damages under 42 U.S.C. § 1983." (citing *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976)).

13

Plaintiff's claims against Director Sullivan are all centered around her dismissal of Plaintiff's charge of discrimination. *See* ECF No. 1, ¶¶ 5, 75, 91. The Tenth Circuit has explained that immunity applies to the CCRD Director: she "is required by statute to investigate charges of discrimination, make a finding of probable cause and report to the commission when conciliation efforts fail. Thus, she is in a position in the state administrative process that is similar to that of a judge, hearing officer or prosecutor." *Wilhelm v. Cont'l Title Co.,* 720 F.2d 1173, 1178 (10th Cir. 1983); *see also Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1249 (D. Colo. 2019) (Director Sullivan, then known as Director Elenis, is entitled to absolute immunity given her statutory duties to "receive, investigate, and make determinations on charges alleging unfair or discriminatory practices." (citing § 24-34-302(2), C.R.S.)).

Plaintiff's claims against current and former members and staff of the CCJD – Defendants Sooter, Brady, Barrier, Carpenter, Gardner, Garrido, Mangiardi, McLean, Owens, Patrick Cord, Sutton, Tofte Nestaval, Trujillo, Vielma, and Walsh – are also all premised on their work for the CCJD that is quasi-judicial. The CCJD investigates complaints regarding judicial conduct and either dismisses the complaint, or orders informal discipline or a formal hearing seeking "the removal, retirement, suspension, censure, reprimand, or other discipline of a justice or a judge." Colo. Const. art. VI, § 23(3)(e)(I). In turn, Plaintiff bases his claims against these Defendants on their handling of RFEs he filed. *See* ECF No. 1, ¶¶ 69, 70. These functions provide them with absolute immunity. *See Guttman*, 446 F.3d at 1033.

14

**II.      Each federal law claim of the Complaint fails for various independent reasons.**

**A.      Claim 1 (42 U.S.C. § 1983) fails for multiple reasons (Rule 12(b)(1) and 12(b)(6)).**

Under the umbrella of 42 U.S.C. § 1983, Claim I alleges that Defendants violated a panoply of federal and state laws, including Plaintiff's First, Fifth, and Fourteenth Amendment rights of "access to the courts / administrative remedies / equality of justice, fundamental fairness, free speech, free participation in legislative and rulemaking processes (including the freedom to petition and non-interference with legislative privilege), due process, and equal protection under the law," violations of his Colorado constitutional rights, the FCA, and the CFCA. ECF No. 1, ¶ 78. This claim asserts that Defendants suppressed his speech in reporting "public fraud and official misconduct," stripped Plaintiff of his "right and duty to freely and publicly report evidence" of misconduct, and "obstructed the various judicial oversight entities" by refusing to disqualify themselves. *Id.*

The only factual allegations arguably explaining these legal conclusions are the allegations regarding his complaints – that the CCJD "summarily dismissed" his anonymously filed RFE "without any publicly expressed explanation of the grounds for dismissal," *id.* ¶ 69, the CJDRC refused to publish a filing by Plaintiff that included both public comments and a non-anonymous RFE, *id.* ¶¶ 71-72, and "Defendants have refused Plaintiff's repeated requests to disqualify themselves and to allow the various judicial selection, retention, and disciplinary processes to occur in a transparent and conflict-free manner," *id.* ¶ 73. The Complaint also broadly alleges some generalized

15

failure to address complaints about judicial misconduct. *See, e.g., id.* ¶¶ 2 (alleging

failure to investigate and prosecute "knowing concealment of information material to the

performance of a federal function and to enforcement of the Code [of Judicial

Conduct]"); 74 (alleging that "Defendants have also obstructed Plaintiff's fundamental

right to be heard as to misconduct within the CCJD"); 78 (alleging that "Defendants

interfered with Plaintiff's fundamental right to be heard as well as his federal . . .

constitutional rights of . . . due process, and equal protection under the law"). These

allegations fail to state a plausible claim for violations of any of these laws through §

1983.

**1.    Plaintiff lacks standing to maintain a claim based on a generalized grievance (Rule 12(b)(1)).**

To the extent Plaintiff bases this claim on the assertion that government agencies

ignored his complaints about judicial misconduct, he lacks standing.

Article III standing requires a plaintiff to "have (1) suffered an injury in fact, (2)

that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to

be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330,

338 (2016) (citation omitted). To establish injury, a plaintiff must "show that he or she

suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (quoting *Lujan v.

Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). An injury is "particularized" if it affects the

plaintiff "in a personal and individual way;" and it is concrete only if it "actually exist[s],"

and is "real" but "not abstract." *Id*. at 339-40.

16

These standing requirements ensure that claims are presented by a plaintiff who has "alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions[.]" *Baker v. Carr,* 369 U.S. 186, 204 (1962). It is not enough to simply have a personal, ideological interest that creates adverseness between the parties. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 482-86 (1982). Rather, adverseness is the consequence of a plaintiff's satisfaction of the Article III injury-in-fact requirement. *Id.*

Particularly relevant here, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Leeke v. Timmerman*, 454 U.S. 83, 85-86 (1981) (citation omitted). *See also Dohaish v. Tooley*, 670 F.2d 934, 937 (10th Cir. 1982) (same); *Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 433 (S.D.N.Y. 2012) ("[A]n individual has no constitutionally protected right to an investigation by government officials of alleged wrongdoing by other government officials." (citations omitted)). And even assuming *arguendo* that Plaintiff has such federally protected rights for purposes of analyzing standing, his alleged injuries lack particularity because each is a "'generalized grievance' shared in substantially equal measure by all or a large class of citizens." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Under *Warth*, a plaintiff "claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the

public at large . . . does not state an Article III case or controversy." *Lance v. Coffman*,

549 U.S. 437, 439 (2007) (per curiam) (internal quotation marks omitted).

Based on these principles, the Supreme Court "repeatedly has rejected claims of

standing predicated on 'the right, possessed by every citizen, to require that the

Government be administered according to law[.]'" *Valley Forge Christian Coll.*, 454 U.S.

at 482-83 (quoting *Fairchild v. Hughes*, 258 U.S. 126, 129 (1922) (citations omitted)).

"Such claims amount to little more than attempts 'to employ a federal court as a forum in

which to air . . . generalized grievances about the conduct of government.'" *Id.* at 483

(quoting *Flast v. Cohen*, 392 U.S. 83, 106 (1942)). Plaintiff's allegations that he was

injured because any Defendant ignored his complaints therefore fail to plead a

cognizable injury in fact. *See Lujan*, 504 U.S. at 560.

> ### 2.     Plaintiff fails to assert a plausible violation of his First Amendment right to petition and/or right to access of courts (Rule 12(b)(6)).

Plaintiff bases his claims on Defendants' handling of his various complaints – *i.e.*,

the CCJD's and/or CJDRC's handling of his filings (e.g., they were not acted upon, were

dismissed, were not made public, and the entities did not recuse as requested), and the

dismissal of the CCRD discrimination charge. Although unclear, Plaintiff appears to

assert violations of his First Amendment right to petition, which also includes the right to

access the courts.[4] *Hudson v. Palmer*, 468 U.S. 517, 523 (1984).

---

[4] Although the Constitution references "free speech" and the "right . . . to petition" as separate rights, U.S. Const. amend. I, "the right to petition is cut from the same cloth as the other guarantees of [the First] Amendment, and is an assurance of a particular freedom of expression." *McDonald v. Smith*, 472 U.S. 479, 482 (1985). Given that Plaintiff focuses his allegations on handling of filings with various Defendant-entities,

"The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives . . . ." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011). But "the text of the First Amendment [does not] speak in terms of successful petitioning-it speaks simply of 'the right of the people . . . to petition the Government for a redress of grievances.'" *BE & K Const. Co. v. NLRB*, 536 U.S. 516, 532 (2002) (omission in original) (quoting U.S. Const. amend. I); *Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in [the Supreme] Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues.").

Applied here, nothing in the Complaint establishes that Plaintiff was precluded from filing his papers, a necessary requirement for such a claim. As to the CJDRC, Plaintiff alleges that that the CJDRC declined to publish his submissions, yet Plaintiff did submit comments and speak at the CJDRC rulemaking hearing, which is published in full on the CJDRC's website.[5] Further, there is no requirement under state law that public comments to a proposed rulemaking be published at all. § 13-5.3-107(2), C.R.S. requires the CJDRC to "allow for a period for public comment" but does not contemplate

---

Defendants analyze Plaintiff's assertions as raising his right to petition. *See also Schalk v. Gallemore,* 906 F.2d 491, 498 (10th Cir. 1990) (concluding that where a plaintiff's "right to petition is inseparable from her right to speak," the claims are "susceptible to the same disposition").

[5] *See* Oct. 3, 2025 Public Comment Hearing, https://ccjd.colorado.gov/judicial-discipline-rule-making-committee. This Court may take judicial notice of the existence and online availability of government documents. Fed. R. Evid. 201(b); *New Mexico ex rel. Richardson v. Bureau of Land Mgmt.*, 565 F.3d 683, 719 n.48 (10th Cir. 2009).

or require that any comments be published, and Plaintiff points to nothing conferring a right to have his comments published by the CJDRC. In any event, Plaintiff's CJDRC submissions included RFEs, which are required to be kept confidential under the Colorado Constitution. ECF No. 1-7, p. 8 ("To be perfectly clear, these public comments are dually filed as a Colo. RJD 12 request for evaluation (RFE) of judicial conduct as to the following justices, judges, private judges, and members of the [CJDAB]"); Colo. Const. art. VI, § 23(3)(g)(I) ("Prior to the commencement of formal disciplinary proceedings against any justice or judge, all papers filed with and proceedings before the commission on judicial discipline are confidential, and the giving of testimony before the commission is confidential.").

Likewise, Plaintiff makes no allegation that the CCJD denied him the opportunity to submit RFEs. Rather, Plaintiff acknowledges that his RFEs were submitted to the CCJD but appears to view the CCJD's dismissal of those RFEs as a denial of his rights. *See* ECF No. 1, ¶¶ 69-70. Though Plaintiff has a right to petition the CCJD for review regarding his theories about judicial misconduct, he is not entitled to any particular outcome. *See Minn. State Bd. for Cmty. Colls.*, 465 U.S. at 285; *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 819 (10th Cir. 2021) ("[C]ase law uniformly rejects the contention that the First Amendment guarantees any success when petitioning . . . .").

The Complaint's assertions directed to the CCRD's dismissal of his charge of discrimination ("Charge") and the subsequent denial of Plaintiff's request for appeal also fail. *See* ECF No. 1, ¶¶ 5, 75, 91. By the Complaint's own allegations, Plaintiff was not

20

prevented from bringing this Charge, and the facts establish that the CCRD properly dismissed it for lack of jurisdiction. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (A denial of access claim requires a plaintiff to allege "a 'nonfrivolous,' 'arguable' underlying claim," either anticipated or lost, and the official acts which prevented or are preventing the plaintiff from bringing the claim.). The closure letter, attached to the Complaint, properly explained that Plaintiff failed "to assert any actionable claim of a violation of Colorado's employment anti-discrimination statute" because the Charge did not include any allegations that Plaintiff was discriminated against based on membership in a protected class as required by § 24-34-402(1)(a)(I), C.R.S., or was discriminated against for opposing any practice made a discriminatory or an unfair employment practice by CADA as required by § 24-34-402(1)(e)(IV), C.R.S. *See* ECF No. 1-10, p. 8. Moreover, the Charge was "barred as untimely per C.R.S. § 24-34-403" because Plaintiff filed the Charge more than 300 days after his termination on January 19, 2024. *See id.* pp. 8, 12-19 (undated, but referring to events occurring in 2025). Under these facts, Director Sullivan properly carried out her responsibility to dismiss the Charge for lack of jurisdiction, without deciding the merits. 3 CCR 708-1, Rule 10.5(C)(3); s*ee Agnello v. Adolph Coors Co.*, 689 P.2d 1162, 1164–65 (Colo. App. 1984) (noting that the Director satisfies her statutory obligations by determining "that the unfair or discriminatory practice either does not in fact exist, or has been eliminated").

In sum, Plaintiff has not asserted a plausible First Amendment violation.

**3.    Plaintiff fails to assert a plausible retaliation claim (Rule 12(b)(6)).**

Throughout the Complaint, Plaintiff asserts that the Defendants "retaliated" against him. ECF No. 1, ¶¶ 3, 10, 12, 67, 74, 76. Although the alleged "retaliation" lacks specificity, Plaintiff may be attempting to assert a First Amendment retaliation claim based either on his termination or the handling of his filings. Either way, the Complaint fails to allege a plausible claim.

The Complaint includes no allegations regarding his termination, much less facts suggesting that his termination was in retaliation for any protected speech. *See Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (outlining elements for First Amendment claim against a government employer). Indeed, all the speech outlined in the Complaint occurred after his termination. And if based on his post-employment speech, Plaintiff has not alleged that Defendants took any adverse action against him that would "chill a person of ordinary firmness from continuing to engage in [that] activity." *Foley v. City of Loveland*, 2025 WL 2613739, at *6 (D. Colo. Sep. 10, 2025) (outlining elements and describing adverse actions as including threats of legal action, as well as "allegations of physical and verbal intimidation"). Rather, by all accounts it appears that Plaintiff continues to raise his various grievances. *See* ECF No. 1, ¶¶ 66 (reports to federal officials), 69 (submission to OSA Fraud Hotline), 71-72 (RFEs submitted to CCJD and to CJDRC); ECF No. 1-7, pp. 33-36 (May 1, 2025 op-ed), pp. 37-38 (June 15, 2025 Denver Gazette op-ed), pp. 39-41 (July 24, 2025 op-ed), p. 51 (May 3, 2025 email to Colorado senators), pp. 52-53 (May 5, 2025 email to Colorado

22

Senators), pp. 54-56 (emails to Colorado senators). Plaintiff has therefore failed to assert a First Amendment retaliation claim.

### 4.    Plaintiff's references to other violations of law all fail (Rule 12(b)(6)).

Plaintiff's references to other violations under the umbrella of § 1983 all fail for various reasons:

**Equal protection:** The Complaint asserts the legal conclusion that Plaintiff was denied equal protection under the law. *See, e.g.*, ECF No. 1, ¶¶ 78 (alleging Defendants interfered with Plaintiff's federal rights of "equality of justice," "fundamental fairness," and "equal protection under the law"), 81 (alleging "intent to deny the Plaintiff the equal protection of the laws"), 83 (alleging "Defendants conspired to deprive Plaintiff of equal protection of the laws"). Missing from the Complaint, however, are any allegations making the necessary "threshold showing" that he was "'treated differently from others who were similarly situated to [him].'" *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)).

**Fourteenth Amendment/due process:** It is not clear what actions Plaintiff alleges violated his due process rights, and the Complaint does not indicate whether it was his substantive or procedural due process rights that were violated. Under either theory, "a plaintiff must first establish that a defendant's actions deprived plaintiff of a protectible property [or liberty] interest.'" *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). The Complaint does not identify a protected property interest, does not allege Plaintiff was deprived of that property interest, and does not allege how each

23

Defendant's actions caused that deprivation. And if based on his continued employment at CCJD, Plaintiff does not cite a state-law source establishing that his at-will position as Executive Director was a protected property interest. S*ee* § 13-5.3-103(2)(b), C.R.S. ("The executive director serves at the pleasure of the commission."); *see also Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion.").

Further, with respect to a procedural due process claim, the Complaint fails to identify what process, if any, Plaintiff was due that he did not receive, which is necessary for such a claim. *See Petersen v. Garcia*, 2023 WL 3023017, *12 (D. Colo. Apr. 20, 2023) (dismissing procedural due process claim because the plaintiff failed to articulate what process he was due and deprived of); *L.J. ex rel. Johnson v. Parker Pers. Care Homes, Inc.*, 2014 WL 5812339, *4 (D. Colo. Nov. 10, 2014) (dismissing procedural due process claim because the complaint did "not specify any process or procedure that was insufficient" or that the defendants failed to follow).

**Fifth Amendment:** Aside from referring to the Fifth Amendment, ECF No. 1, ¶ 78, the Complaint does not offer any basis for such a claim. Regardless, "[t]he Due Process Clause of the Fifth Amendment applies only to action by the federal government while the Due Process Clause of the Fourteen[th] Amendment applies to actions by state governments." *Koessel v. Sublette Cnty. Sheriff's Dep't*, 717 F.3d 736, 748 n.2 (10th Cir. 2013).

**FCA (31 U.S.C. §§ 3729 et seq.):** Although Plaintiff references the FCA in Claim 1, he cannot utilize § 1983 as a vehicle to assert such a claim. In general, § 1983 does

24

not provide a basis for suit "[w]hen the remedial devices provided in a particular Act are sufficiently comprehensive." *Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 20 (1981); *City of Ranco Palos Verdes v. Abrams*, 544 U.S. 113, 121-22 (2005) ('[I]n all of the cases in which we have held that § 1983 *is* available for a violation of a federal statute, we have emphasized that the statute at issue . . . *did not* provide a private judicial remedy (or, in most of the cases, even a private administrative remedy) for the rights violated."). The FCA's comprehensive scheme to remedy retaliation in violation of the FCA precludes an FCA claim under § 1983. *See* 31 U.S.C. § 3730(h)(1)-(3) (providing a cause of action for retaliatory actions, specific forms of relief, the appropriate venue for a claim, and three-year statute of limitations); *Graham v. Kan. City Area Transp. Auth.*, 2023 WL 12198578, *4 (W.D. Mo. July 26, 2023) ("[T]he FCA's comprehensive remedial scheme demonstrates Congress' intent to prohibit plaintiffs from relying on § 1983 to enforce their rights under the FCA.").

Further, Plaintiff has failed to state an FCA claim because he does not allege that any Defendant took any action prohibited by 31 U.S.C. § 3729(a)(1) or that he complied with any of the requirements for a private person to bring an FCA claim. *See* 31 U.S.C. §§ 3730(b)(1-2); *Crumbley v. Fowler*, 2021 WL 4864479, at *1 (D.N.M. Oct. 19, 2021). Nor has Plaintiff asserted an FCA retaliation claim because all of his filings occurred after he was terminated as Executive Director of the CCJD, meaning that his termination was not for engaging in any conduct arguably protected by the FCA. *See* 31 U.S.C. § 3730(h).

**Violations of state law:** Section 1983 only provides a cause of action for violations of the United States Constitution and federal law, not the state Constitution or state statutory law. *See, e.g., D.L. v. Unified Sch. Dist. No. 497*, 596 F.3d 768, 776 (10th Cir. 2010) ("§ 1983 affords a remedy for violations of federal law and does not provide a basis for redressing violations of *state* law.") (internal quotation omitted). Further, save for one inapplicable exception,[6] "Colorado does not have a statutory cause of action to address violations of the Colorado Constitution." *Sandberg v. Englewood*, 727 F. App'x 950, 964 (10th Cir. 2018). As a result, Plaintiff's § 1983 claims for alleged violations of article II and article V of the Colorado Constitution and the CFCA (to the extent raised as part of Count I) fail.

B.    **Claims 1-3 (42 U.S.C. §§ 1983, 1985, 1986) fail to plausibly allege a conspiracy (Rule 12(b)(6)).**

For each of Plaintiff's federal claims, Plaintiff alleges that Defendants engaged in a conspiracy to deny Plaintiff his constitutional rights. ECF No. 1, ¶¶ 78 (Defendants "conspired to deprive Plaintiff of rights secured by the Constitution and laws of the United States."); 81 ("Plaintiff was subjected to a conspiracy orchestrated by [the individual] Defendants [ ], which aimed to impede, hinder, obstruct, or defeat the due course of justice in the State of Colorado . . . ."); 85 (referring to conspiracy allegations in ¶ 81).

---

[6] Colorado permits a cause of action against a "peace officer" for violations of article II of the Colorado Constitution, *see* § 13-21-131, C.R.S., which does not apply here. *See* § 24-31-901(3), C.R.S. (defining "peace officer").

Beyond these bare legal conclusions, the Complaint includes no factual allegations suggesting a conspiracy. For §§ 1983 and 1985 actions, a plaintiff must allege "a combination of two or more persons acting in concert and an allegation of a meeting of the minds, an agreement among the defendants, or a general conspiratorial objective." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227-28 (10th Cir. 2010), *abrogated on other grounds by Torres v. Madrid*, 592 U.S. 306 (2021) (citations omitted). In turn, a § 1986 claim requires Plaintiff to establish his § 1985 claim. *See Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985) (affirming dismissal of § 1986 claim because "the § 1986 claim is dependent upon the existence of a valid claim under § 1985"). Because "[c]onclusory allegations of conspiracy are insufficient" to support any of these claims, they should be dismissed. *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 533 (10th Cir. 1998).

**C.    Claim 2 (§§ 1985(2) and (3) conspiracy) fail for additional reasons (Rule 12(b)(6)).**

Beyond the failure to allege a conspiracy, the Complaint fails to allege facts supporting the additional elements of either a § 1985(2) or (3) claim.

"To establish a conspiracy claim under 42 U.S.C. § 1985(2), a plaintiff must prove three elements: (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 (10th Cir. 2014). "[A] claim fails when the complaint does not allege either that the defendant's actions in some way were designed to intimidate or deter the plaintiff from appearing in a judicial proceeding, [ ] or to injure a person for appearing in court." *Id*. at 1114 (citing *Glass v.*

27

*Pfeffer*, 849 F.2d 1261, 1265 (10th Cir. 1988), and *Haddle v. Garrison*, 525 U.S. 121, 125 (1998)). Plaintiff has not alleged that any Defendant engaged in any action for the purpose of either deterring Plaintiff from testifying in court or retaliating against him because of his testimony.

"To state a claim under § 1985(3), [a plaintiff] must show (1) a conspiracy; (2) to interfere with his rights because of racial or class-based animus; (3) an act in furtherance of the conspiracy; and (4) a resulting injury." *Avery v. Wade*, 2022 WL 17544077, *2 (10th Cir. 2022) (citing *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993)). Plaintiff has not alleged that any Defendant conspired to interfere with his rights because of racial or class-based animus. *See id.* (affirming dismissal where Complaint "doesn't explain how Wade, along with the unnamed defendants, conspired to interfere with his rights because of racial or class-based animus.").

**D.      Claim 3 (§ 1986) fails for additional reasons (Rule 12(b)(6)).**

"Along with establishing a § 1985 conspiracy, a plaintiff asserting a § 1986 claim must show (1) the defendant had knowledge of the conspiracy, (2) the defendant had the power to prevent or aid in preventing the commission of a violation of § 1985, [and] (3) the defendant neglected or refused to prevent the violation, and (4) a violation of § 1985 occurred." *Ganzy ex rel. J.G. v. Douglas Cnty. Sch. Dist. RE-1*, 744 F. Supp. 3d 1187, 1192-93 (D. Colo. Aug. 8, 2024).

The Complaint alleges only that Defendants "had knowledge of the conspiracy and had the power to prevent or aid in preventing the commission of the wrongs conspired to be done," but "neglected or refused to do so." ECF No. 1, ¶¶ 88-89. These

28

allegations are wholly conclusory and fail to plausibly allege the elements of a § 1986

claim against any Defendant.

> **E.      Claims 1-3: Individually named Defendants are entitled to qualified immunity (Rule 12(b)(6)).**

"The doctrine of qualified immunity protects government officials from liability for

civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v.*

*Callahan*, 555 U.S. 223, 231 (2009) (internal quotation omitted). Qualified immunity is

an immunity from *suit*, rather than a mere defense to liability. *Serna v. Colo. Dep't of*

*Corr.*, 455 F.3d 1146, 1150 (10th Cir. 2006). The doctrine "gives government officials

breathing room to make reasonable but mistaken judgments," and "protects all but the

plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563

U.S. 731, 743 (2011) (internal quotation omitted).

Courts in the Tenth Circuit use a two-part test to analyze whether a plaintiff has

overcome a defendant's qualified immunity defense: (1) whether the alleged facts make

out a violation of constitutional right, and (2) whether the right was clearly established at

the time of the alleged misconduct. *Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir.

2019). A plaintiff must satisfy both prongs of the inquiry to overcome qualified immunity.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). In addition, where

qualified immunity is asserted at the pleading stage, the Tenth Circuit requires a plaintiff

to allege defendant-specific facts showing how each individual defendant violated a

clearly established constitutional right. *Pahls*, 718 F.3d at 1225; *Robbins v. Oklahoma*,

519 F.3d 1242, 1249-50 (10th Cir. 2008).

As described above in Sections I(A) and (B), the Complaint fails to allege any defendant-specific facts showing what each individual defendant did to Plaintiff, and further falls well short of stating a plausible claim that any named Defendant acted in a way that violated Plaintiff's constitutional or statutory rights. It follows that Plaintiff has not alleged that any such violated right was clearly established at the time of the misconduct. Indeed, he has not identified and cannot identify any clearly established law holding that a state official violates the First Amendment, the Due Process Clause, or the Equal Protection Clause by declining to act on requests, declining to publish submissions, or declining to adopt requested remedial measures in discretionary administrative or rulemaking contexts. Supreme Court precedent makes clear that the rights to speak and petition do not require government officials to listen to, respond to, or act upon an individual's communications. *Minn. State Bd. for Cmty. Colls.*, 465 U.S. at 285. Likewise, to the extent Plaintiff's theory depends on an asserted entitlement to compel government enforcement action or disciplinary proceedings, courts have long held that private citizens generally lack a judicially cognizable interest in the prosecution or non-prosecution of others and analogous enforcement decisions. *Leeke*, 454 U.S. at 85-86; *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1566-67 (10th Cir. 1993). The individually named Defendants are therefore entitled to qualified immunity.

F.    **Claim 5: Plaintiff's request for writs of mandamus fails as a matter of law (Rules 12(b)(1) and (b)(6)).**

Plaintiff seeks writs of mandamus and prohibition under 28 U.S.C. § 1651, the All Writs Act, "to restore the integrity of Colorado's constitutional systems of judicial selection, retention, and discipline." ECF No. 1, ¶¶ 9, 93. Specifically, he seeks writs of

30

mandamus against the CJDRC, CCJD, Attorney General, and Governor "requiring the removal of conflicted officials with further requirement that the respective offices, boards, commissions, and committees are recomposed through conflict-free processes," *id.* ¶ 93, and reinstatement of Plaintiff as CCJD Executive Director, *id*. at p. 33. He also seeks writs of prohibition "to prevent further conflicted rulemaking by the CJDRC and to prevent [the Governor] from making additional conflicted judicial appointments." *Id.* Such relief should be denied for two reasons.

First, this Court lacks subject matter jurisdiction to issue the requested writs because the All Writs Act is "not a source of subject-matter jurisdiction." *United States v. Denedo*, 556 U.S. 904, 913 (2009). Rather, "[a]ny writ sought under the Act must be one that is necessary to preserve the Court's *existing* jurisdiction or orders." *Khdir v. Gonzales*, 2007 WL 3308001, at *4 (D. Colo. Nov. 6, 2007) (emphasis added). And while "[f]ederal writs of mandamus may issue against state officials to enforce federal rights in extraordinary circumstances, [a plaintiff] must bring an *action* with jurisdiction to enforce those federal rights with the writ of mandamus as the extraordinary *remedy*." *United Sovereign Ams., Inc. v. Nelson*, 762 F. Supp. 3d 523, 527 (N.D. Tex. Jan. 15, 2025) (emphasis in original; citation omitted).

Here, the only causes of action for Plaintiff's federal question claims are §§ 1983, 1985, and 1986, *see* ECF No. 1, ¶ 9, none of which authorizes federal courts to award mandamus relief. Although § 1983 "is a remedial vehicle for raising claims based on the violation of constitutional rights," *Brown v. Buhman*, 822 F.3d 1151, 1162 n.9 (10th Cir. 2016), "[§] 1983 plaintiffs may sue individual-capacity defendants only for money

31

damages and official-capacity defendants only for injunctive relief." *Montoya*, 662 F.3d at 1161 n.5 (citation omitted). But "a writ of mandamus is not an injunction for a host of reasons" – namely, "one is a legal remedy and one is equitable, they each operate in different contexts, serve different aims, and arise from different historical backgrounds, etc." *Nelson*, 762 F. Supp. 3d at 528 (citations omitted). And by their express terms, §§ 1985 and 1986 authorize only "an action for the recovery of damages occasioned by such injury or deprivation." 42 U.S.C. § 1985(3); *see also* 42 U.S.C. § 1986 (creating liability "for all damages caused by such wrongful act").

Second, mandamus is an "extraordinary remedy" that will "issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988) (quotation omitted). "To grant mandamus relief, the court must find: (1) a clear right in the plaintiff to the relief sought; (2) a plainly defined and preemptory duty on the part of the defendant to do the action in question; and (3) no other adequate [available] remedy[.]" *Wilder v. Prokop,* 846 F.2d 613, 620 (10th Cir. 1988). And while a "district court can compel the defendants to exercise their discretion, it cannot dictate how that discretion is to be exercised." *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 501 (10th Cir. 1991) (citations omitted).

Here, the mandamus relief that Plaintiff seeks is to ensure that certain Colorado "offices, boards, commissions, and committees are recomposed through conflict-free processes." ECF No. 1, ¶ 93. But the provisions of the Colorado Constitution that confer appointive powers on the Governor and Attorney General are solely discretionary because their appointments are not made subject to confirmation by the General

Assembly or judicial review. Indeed, the Colorado Supreme Court has long recognized that certain gubernatorial appointments involve the exercise of executive discretion and judgment, and are not subject to review by courts in quo warranto proceedings to unseat the appointee as not having practical experience required by statute. *See People ex rel. Duncan v. Scott*, 307 P.2d 191, 193 (Colo. 1957) ("Executive action may be questioned or controlled by the courts only when such action is ministerial in character, and requires the exercise of neither judgment nor discretion."). This Court should reach the same conclusion and dismiss Plaintiff's requests for mandamus relief.

## III.    Plaintiff's state law claims (Claims 4, 6) must be dismissed.

If the Court dismisses Plaintiff's federal claims, it may decline to exercise jurisdiction over the remaining state law claims for violation of the CFCA (Claim 4) and disgorgement (Claim 6). *See Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011). If the Court chooses to address them, however, multiple independent reasons also exist for dismissal.

### A.    Plaintiff's state law claims are barred by the Eleventh Amendment and the Colorado Governmental Immunity Act (Rule 12(b)(1)).

Two independent jurisdictional doctrines bar Plaintiff's state law claims – Eleventh Amendment sovereign immunity and the Colorado Governmental Immunity Act ("CGIA"), §§ 24-10-101 to -120, C.R.S.

First, as the Supreme Court has explained in *Pennhurst State Sch. & Hosp. v. Halderman*, "a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment when – as here – the relief sought and ordered has an impact directly on the State itself." 465 U.S. 89, 106 & 117 (1984); *Cf. Denver Bible Church v.*

33

*Azar,* 494 F. Supp. 3d 816, 841 (D. Colo. 2020) (holding that "the federalism principles described in *Pennhurst* . . . bar federal courts from enjoining state officials' actions under state law"). This bar exists because "[a] federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 106.

Second, these claims are foreclosed by the CGIA because they sound in tort and do not fall under an applicable waived area under the CGIA, § 24-10-106(1), C.R.S., and because Plaintiff did not timely file a notice of claim as required by the CGIA, § 24-10-109(1), C.R.S.

The CGIA bars Plaintiff's state law claims because under the CGIA, public entities and public employees are "immune from liability in all claims for injury that lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant," unless the injury is among those for which sovereign immunity has been expressly waived. §§ 24-10-106(1) (immunity for public entities), 118(1), C.R.S. (immunity for public employees for injuries arising out of acts or omissions occurred during the performance of duties and within the scope of their employment, unless the act or omission was willful and wanton). Where the CGIA applies, the court does not have subject-matter jurisdiction over the claims and must dismiss under Rule 12(b)(1). *Fogg v. Macaluso*, 892 P.2d 271, 276-77 (Colo. 1995); *see also Guardado v. City & Cnty. of Denver*, 2025 WL 1703531, *3 (10th Cir. June 18, 2025) (affirming Rule 12(b)(1) dismissal of CGIA claim where plaintiff failed to establish CGIA waived area applied).

34

All Defendants are either state entities or public employees under the CGIA. *See* §§ 24-10-103(5) (defining "public entity" to include the state and judicial department of the state), 103(7) (defining "state" to include "every executive department, board, commission, committee, bureau, and office"), 103(4)(a), C.R.S. (defining "public employee" to mean "an officer, employee, servant, or authorized volunteer of the public entity, whether or not compensated, elected, or appointed"); *see also, e.g., BNC Metro. Dist. No. 1 v. BNC Metro. Dist. No. 3*, 573 P.3d 129, 136 (Colo. App. 2025) (applying CGIA to claims against members of the board of directors of a special district).

Moreover, to the extent Plaintiff's claims are understood, they lie in tort or could lie in tort because Plaintiff's alleged injury arises out of tortious conduct and/or the breach of a duty recognized in tort law. *See Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003-04 (Colo. 2008); *see also Bakes v. Denver Health & Hosp. Auth.*, 572 P.3d 146, 149 (Colo. App. 2025) (internal quotation omitted), *cert denied* 2025 WL 3232756 (Colo. Nov. 17, 2025) ("[T]he CGIA encompasses claims arising from the breach of a general duty of care, as distinguished from contractual relations or a distinctly non-tortious statutorily-imposed duty."); *Cf. Elder v. Williams*, 477 P.3d 694, 702 (Colo. 2020) (claims asserting violation of CADA do not lie in tort).

Claim 4 is essentially a whistleblower claim challenging alleged wrongful termination, harassment, intimidation, and related wrongdoing from public officials in retaliation for Plaintiff's alleged good faith efforts "in furtherance of a potential cause of action" or stopping false claims. ECF No. 1, ¶ 91. Similar whistleblower claims have been found to fall within the scope of the CGIA. *See State Pers. Bd. v. Lloyd*, 752 P.2d

35

559, 563 (Colo. 1988) (holding that claims brought under the Whistleblower Act, §§ 24-50.5-101 to -107, C.R.S., fall under the CGIA because the Act reflected "the General Assembly['s] crea[tion of] a noncontractual, statutory action for retaliatory discharge that is tortious in nature"); *Bakes*, 572 P.3d at 150-51 (claims against public entities arising under the Health Care Worker Protection Act (HCWPA), § 8-2-123, C.R.S., fall within the scope of the CGIA). Moreover, the subparts of Plaintiff's CFCA retaliation claims lie in tort or could lie in tort, even when considered individually. *See, e.g., Holland v. Bd. of Cnty. Comm'rs*, 883 P.2d 500, 508 (Colo. App. 1994) (barring claim of retaliatory discharge, "a common law tort"), *Bakes*, 572 P.3d 146, 151 (wrongful discharge claim subject to the CGIA); *Harp v. Dep't of Hum. Servs.*, 932 F. Supp. 2d 1217, 1235-36 (D. Colo. 2013) ("A defamation claim is based upon tort theory" and subject to the CGIA); *Falcon Broadband, Inc. v. Banning Lewis Ranch Metro. Dist. No. 1*, 474 P.3d 1231, 1238-39 (Colo. App. 2018) (dismissing claims for tortious interference with contract and civil conspiracy—"clearly tort claims"—under the CGIA); *Lynne v. Field*, 2019 WL 13575165, at *2 (Colo. App. Feb. 7, 2019) (citing to Colorado Supreme Court and appellate cases holding that fraud, defamation, intentional interference with prospective business, and abuse of process are tort claims barred by the CGIA). And Plaintiff's disgorgement claim (Claim 6) is based on the same alleged tortious conduct, ECF No. 1, ¶¶ 71, 98, and therefore should be dismissed under the CGIA. *See Robinson*, 179 P.3d at 1007-08 (unjust enrichment claim premised on tortious conduct barred by the CGIA).

36

Finally, even if Plaintiff could assert a tort claim permitted under the CGIA, he does not allege that he provided written notice of any claim to the Attorney General within 182 days of discovering the injury as required by § 24-10-109(1), C.R.S. Compliance with the notice requirement is a jurisdictional prerequisite to suit, *Maestas v. Lujan*, 351 F.3d 1001, 1014 (10th Cir. 2003), and is an additional basis for dismissal.

**B.    Claim 4 (CFCA) fails to state a cognizable claim (Rule 12(b)(6)).**

In support of his CFCA claim, Plaintiff asserts that individual-capacity Defendants "retaliated against Plaintiff for lawful acts done in furtherance of a potential cause of action and/or stopping what Plaintiff reasonably believes to be false claims/violations under the Colorado False Claims Act." ECF No. 1, ¶ 91. Plaintiff fails to assert a plausible claim for several reasons.

First, although the CFCA protects individuals from retaliation for bringing CFCA claims and/or attempting to stop CFCA violations, § 24-31-1204(8), C.R.S., the Complaint is devoid of factual allegations, as opposed to legal conclusions. Missing from the Complaint are any allegations specifying what actions by any Defendant constituted what Plaintiff reasonably believed was a false claim, much less any connection between such a claim and any allegedly retaliatory action. *See Nasious*, 492 F.3d at 1163 (dismissing complaint under Rule 8(a) for failure to explain how his rights were violated under various laws or by whom).

Moreover, Plaintiff *cannot* base this claim on the Masias contract being a false claim. It was allegedly executed on or before June 3, 2019, and became public in July 2019, ECF No. 1, ¶¶ 61, 62, but the CFCA did not become effective until over three

37

years later on August 10, 2022. *See* § 24-31-1204, C.R.S. (2022) (added by Colo. Sess. Laws 2022, Ch. 394, § 2 (H.B. 22-1119), eff. Aug. 10, 2022). The Masias contract, which predated the CFCA, could not have constituted a false claim under a law that did not yet exist. And because the CFCA was non-existent at the time of the Masias Contract, as a matter of law any action taken by Plaintiff could not have been in furtherance of an effort to stop a violation, or what he believed to be a violation, of § 24-31-1203, C.R.S.

### C. Claim 7 (unjust enrichment) fails to state a cognizable claim (Rule 12(b)(6)).

Plaintiff fails to assert facts to plausibly allege an unjust enrichment claim. Plaintiff appears to argue that Defendants' state-funded representation in this litigation confers an unjust benefit on them. He has not alleged, however, that (1) at his expense, (2) any particular named Defendant received a benefit of any kind, (3) under circumstances that would make it unjust for any Defendant to retain the benefit without paying. *DCB Const. Co., Inc. v. Cent. City Dev. Co.*, 965 P.2d 115, 119-20 (Colo. 1998) (stating elements). Nor could Plaintiff ever plausibly assert facts to support such a theory, as Colorado law authorizes the State to pay for the defense of liability claims arising under federal law and the CGIA. § 24-30-1510(3)(a), C.R.S.

### IV. Claim 6 (equitable relief) is not a stand-alone claim (Rule 12(b)(6)).

As outlined above, all of Plaintiff's substantive claims fail for numerous independent reasons. The Complaint's remaining claim for equitable relief is not a substantive claim, as even the Complaint acknowledges. *See* ECF No. 1, ¶ 96 (reciting for this claim Plaintiff "does not ask the court to imply a new cause of action"); *see also*

38

*Kashef v. Wells Fargo Bank, N.A.*, 2018 WL 2047466, at *5 (N.D. Cal. May 2, 2018) (dismissing claims for equitable relief where substantive claims were dismissed); *Aguilar v. WMC Mortg. Corp.*, 2010 WL 185951, at *4 (D. Nev. Jan. 15, 2010) ("Because we dismiss the substantive claims underlying Plaintiffs' request for equitable relief, we need not address Plaintiffs' request for rescission and declaratory relief independently.").

## CONCLUSION

As described above, this Court lacks jurisdiction over several of Plaintiff's claims, and Plaintiff fails to state any plausible claim for relief. Defendants respectfully ask the Court to dismiss the Complaint.

Respectfully submitted this 18th day of March 2026.

PHILIP J. WEISER
Attorney General

s/ Clayton J. Ankney
*Daniel M. Combs*
*Katharine Brown*
First Assistant Attorneys General
*Clayton J. Ankney*
Second Assistant Attorney General
Civil Litigation and Employment Law
Colorado Department of Law
1300 Broadway, 10th Floor
Denver, Colorado  80203
Telephone:  720-508-6000
Email:  Dan.Combs@coag.gov;
Katharine.Brown@coag.gov;
Clayton.Ankney@coag.gov

*Attorneys for Defendants*