# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

    Plaintiff,

v.

The COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.

    Defendants.

---

## PLAINTIFF'S REPLY IN SUPPORT OF HIS VERIFIED MOTION TO DISQUALIFY COUNSEL

---

Comes now the Plaintiff, Christopher S. P. Gregory, for himself, and by and through his counsel, and hereby tenders his Reply in Support of his Verified Motion to Disqualify the Office of the Colorado Attorney General, stating as follows:

## ARGUMENT

### I. STATE LAW REQUIRES THE ATTORNEY GENERAL TO PROVIDE LEGAL SERVICES IN ACCORDANCE WITH COLORADO LEGAL POLICIES.

Defendants' counsel argue that Colorado law requires them to represent the Defendants, citing §§ 24-31-101(1)(a), (m), 24-31-111, C.R.S. While this is accurate under normal circumstances, it is not without limitation.  C.R.S. § 24-31-111(3) mandates that legal services provided to state

agencies be rendered, "in accordance with the legal policies of the state…"  Subsection 5 further

provides:

> Whenever the attorney general is unable, has failed, or refuses to provide legal services to a state agency, as determined by the governor if the agency is in the executive branch, or by the chief justice if the agency is in the judicial branch, or by the state auditor if the agency is the office of the state auditor, the agency may employ counsel of its choosing to provide such legal services. Any expense incurred due to the employment of counsel pursuant to this subsection (5) is a lawful charge against appropriations for this purpose made by the general assembly to the department of law.

Colorado's legal policies regarding attorney conduct are contained in the Rules of

Professional Conduct, which provide, in pertinent part, at Rule 1.7:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

> The comments to the rule include:

> [2] Resolution of a conflict of interest problem under this Rule requires the lawyer to: 1) clearly identify the client or clients; 2) determine whether a conflict of interest exists; 3) decide whether the representation may be undertaken despite the existence of a conflict, i.e., whether the conflict is consentable; and 4) if so, consult with the clients affected under paragraph (a) and obtain their informed consent, confirmed in writing. The clients affected under paragraph (a) include both of the clients referred to in paragraph (a)(1) and the one or more clients whose representation might be materially limited under paragraph (a)(2).

[18] Informed consent requires that each affected client be aware of the relevant circumstances and of the material and reasonably foreseeable ways that the conflict could have adverse effects on the interests of that client. See Rule 1.0(e) (informed consent). The information required depends on the nature of the conflict and the nature of the risks involved. When representation of multiple clients in a single matter is undertaken, the information must include the implications of the common representation, including possible effects on loyalty, confidentiality and the attorney-client privilege and the advantages and risks involved. See Comments [30] and [31] (effect of common representation on confidentiality).

[20] Paragraph (b) requires the lawyer to obtain the informed consent of the client, confirmed in writing. Such a writing may consist of a document executed by the client or one that the lawyer promptly records and transmits to the client following an oral consent. See Rule 1.0(b). See also Rule 1.0(n) (writing includes electronic transmission). If it is not feasible to obtain or transmit the writing at the time the client gives informed consent, then the lawyer must obtain or transmit it within a reasonable time thereafter. See Rule 1.0(b). The requirement of a writing does not supplant the need in most cases for the lawyer to talk with the client, to explain the risks and advantages, if any, of representation burdened with a conflict of interest, as well as reasonably available alternatives, and to afford the client a reasonable opportunity to consider the risks and alternatives and to raise questions and concerns. Rather, the writing is required in order to impress upon clients the seriousness of the decision the client is being asked to make and to avoid disputes or ambiguities that might later occur in the absence of a writing.

[30] A particularly important factor in determining the appropriateness of common representation is the effect on client-lawyer confidentiality and the attorney-client privilege. With regard to the attorney-client privilege, the prevailing rule is that, as between commonly represented clients, the privilege does not attach. Hence, it must be assumed that if litigation eventuates between the clients, the privilege will not protect any such communications, and the clients should be so advised.

[31] As to the duty of confidentiality, continued common representation will almost certainly be inadequate if one client asks the lawyer not to disclose to the other client information relevant to the common representation. This is so because the lawyer has an equal duty of loyalty to each client, and each client has the right to be informed of anything bearing on the representation that might affect that client's interests and the right to expect that the lawyer will use that information to that client's benefit. See Rule 1.4. The lawyer should, at the outset of the common representation and as part of the process of obtaining each client's informed consent, advise each client that information will be shared and that the lawyer will have to withdraw if one client decides that some matter material to the representation should be kept from the other. In limited circumstances, it may be

appropriate for the lawyer to proceed with the representation when the clients have agreed, after being properly informed, that the lawyer will keep certain information confidential. For example, the lawyer may reasonably conclude that failure to disclose one client's trade secrets to another client will not adversely affect representation involving a joint venture between the clients and agree to keep that information confidential with the informed consent of both clients.

Defendants' counsel ignore these highly-problematic rules, suggesting that they are trumped by the Attorney General's statutory authority. They are not: the statutes mandate that legal services be provided in conformity with these rules.

The Attorney General is, himself, a defendant in this case, and while many of his interests may align with other defendants', they are not co-extensive, particularly given his present gubernatorial campaign. The AAGs do not suggest that they have complied in any measure with their responsibilities to inform their clients fully of the perils of common representation, to inform any individual client of how his or her own interests may be compromised by those of another common client, or to seek the informed consent of each of their clients to those conflicts. Particularly given the malpractice which has occurred by causing and allowing a default to enter and the Plaintiff's expressed willingness to stipulate to setting aside the default on an individual basis provided that the AAG's conflicted representation is addressed, Rule 1.4 required that the AAGs inform their clients of the default and seek an informed consent and waiver from each.

> (a) A lawyer shall:
> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter;
> (4) promptly comply with reasonable requests for information; and
> (5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

When, as here, it appears that the Office of the Attorney General, or its attorneys, cannot, consistent with Colorado's legal policies, provide legal services, there is a statutory provision which assures each defendant of counsel. Indeed, the office did precisely that with regard to Mr. Gregory. It provided independent counsel, because it could not proceed with conflicted representation.

II.    **THE OFFICE OF THE ATTORNEY GENERAL POSSESSES PRIVILEGED INFORMATION PROVIDED BY MR. GREGORY WHICH IT MAY NOT USE AGAINST HIM, BUT WOULD OTHERWISE BE COMPELLED TO USE IN DEFENSE OF ITS COMMON OR INDIVIDUAL CLIENTS.**

Defendants' counsel erroneously assert that Mr. Gregory has identified no rules of professional conduct which they have violated or would violate by continuing common representation. They assert that Mr. Gregory's "interactions with Mr. Combs were limited to Plaintiff requesting an appointment of a SAAG based on a conflict perceived by Plaintiff." However, Mr. Gregory's communications with Mr. Combs were not simply limited to advising him that he needed separate counsel. He was necessarily obliged to provide sufficient information to enable Mr. Combs to make a determination of whether separate counsel was warranted (in compliance with Colorado's legal policies), and did so. In the process, he made Mr. Combs aware that a number of Combs's current common clients had violated his rights and behaved unlawfully, in material particulars, which he may not set forth here without waiving his claim of privilege. Moreover, and significantly, when Mr. Gregory requested the opportunity to provide input concerning selection of a SAAG (otherwise contemplated as the sole determination of the represented party), Mr. Combs denied the request and proceeded to directly appoint Andrew

Ringel of Hall and Evans, LLC, as Mr. Gregory's counsel.  Mr. Combs denied Mr. Gregory the right to counsel of his choosing as contemplated by § 24-31-111(5), C.R.S.

In circumstances where a former client's communications are not at issue, an attorney must, consistent with his duty of advocacy, use damaging information against the opposing party and in support of his client(s).  Here, the Assistant Attorneys General cannot satisfy their duty of advocacy and, but have provided no assurances that they are aware of this.  Indeed, they argue that there was no attorney-client relationship between Mr. Gregory and Mr. Combs – and they also argue that any privilege has been waived – but they have not, apparently, advised their clients of this limitation on their ability to provide vigorous advocacy, nor sought their informed consent. Additionally, the AAGs unlawfully coerced the seizure of all of Mr. Gregory's records created while he served as Executive Director of the Colorado Commission on Judicial Discipline.  It is critical to recognize that the Atty. Gen.'s Office had an attorney-client relationship with Mr. Gregory personally, as the CCJD's Executive Director, prior to his wrongful termination.  Indeed, AAG and Defendant Gina Cannan advised Mr. Gregory as the CCJD's General Counsel on Mr. Gregory's efforts to develop personnel rules to protect himself against retaliation while simultaneously representing CCJD Chair and Defendant Mindy Sooter and CCJD Vice-Chair James Carpenter as they sought to retaliate against and terminate Mr. Gregory's employment.  The Atty. Gen.'s Office is now representing Ms. Cannan and AAG and Defendant Alison Kyles for their part in Mr. Gregory's wrongful termination, the misuse of state funds to offer Mr. Gregory a non-disclosure agreement, and the coercive seizure of Mr. Gregory's records as Executive Director.

-6-

Further, Defendants' counsel do not address the fact that two of the attorneys who have entered their appearance in this case made themselves necessary witnesses when they permitted default to enter. The Defendants must present evidence of non-culpability in any attempt to lift the default. The meritorious defense prong is a legal question, and does not necessarily require evidence, but the issue of culpability is one of fact, for which evidence is required. Mr. Gregory, as the party opposing the motion, is entitled to cross-examine the witnesses who offer testimony of non-culpability, and may not be compelled, consistent with due process, to "confront" a motion which is not even verified.

The witnesses argue that they cannot be disqualified, because they are not necessary witnesses at trial, but they are mistaken. Mr. Gregory's claims are predicated on the knowing and intentional misconduct of the defendants over a number of years, and their refusal to receive or confront his complaints, or attempts to check their abuses, except to retaliate, and, as he has made clear, the deliberate decision to permit default to enter was a calculated action to avoid responding to his Complaint, or otherwise engaging the uncomfortable averments therein, and, fundamentally, more of the same. He intends to present that theory at trial, and will call the AAGs involved in order to establish the continual pattern of conduct by the Office of the Attorney General.

Finally, Defendants' counsel argue that they cannot **all** be disqualified, because Mr. Combs's conduct cannot be imputed to them. This is accurate, but not the issue. Certainly, the two witnesses could be ethically walled off from the case, and that is the typical practice. However, that device cannot serve its purpose here. Their boss's conduct is at issue, their chief is a defendant in this case, and they cite no case suggesting that when the chief is disqualified, his deputies are free to conduct business as usual. Mr. Gregory would not, were circumstances different, oppose

an ethical wall. However, when the decisionmaker, who is responsible for the actions of his

deputies, is a defendant, an ethical wall is impossible. It cannot serve its purpose. With no

practical means of walling off General Weiser, the office cannot continue to represent the

Defendants.

### III.    THE OFFICE OF THE ATTORNEY GENERAL IS STATUTORILY PROHIBITED FROM REPRESENTING THE INDIVIDUALLY NAMED DEFENDANTS IN RESPONSE TO MR. GREGORY'S ALLEGATIONS OF WHISTLEBLOWER RETALIATION.

The most objective basis for the disqualification of the Office of the Attorney General,

however, is that it is statutorily prohibited from defending public servants against alleged

violations of the Colorado Whistleblower Protection Act (the CWPA). As Mr. Gregory  noted in

his  motion to disqualify, a CWPA claim is included in his parallel sealed case, Case No. 25-cv-

00190.  At least some of the individually-named Defendants' violations of the CWPA have already

been pled, and Mr. Gregory has the right to amend his sealed complaint in Case No. 25-cv-00190

to add all of the individually-named Defendants in this case.  § 24-31-101(1)(m), C.R.S.[1]

---

[1] § 24-31-101(1)(m), C.R.S. states:

> Upon request of any employee in the state personnel system, shall represent such employee in any civil action or administrative proceeding instituted against such employee, either in the employee's official or individual capacity if the action or proceeding arises out of performance of the employee's official duties as determined by the attorney general and if the action or proceeding has not been brought by the state personnel director or the appointing authority of the employee seeking dismissal or other disciplinary action; except that the attorney general shall not represent any such employee in an action brought under section 24-50.5-105[(the CWPA)][.]

**CONCLUSION**

Wherefore, because the Office of the Attorney General is mandated by statute to provide legal services in accordance with Colorado legal policies, and cannot do so, because the office possesses privileged information which creates a conflict of interest, because at least two of the office's employees were directly responsible for the retaliation against Mr. Gregory and his conflicted representation as Executive Director, because two of the office's deputies have made themselves necessary witnesses, because its chief is a defendant in this case who is necessarily disqualified and cannot be walled off, and because § 24-31-101(1)(m), C.R.S. mandates disqualification, the office is necessarily disqualified and must withdraw. Mr. Gregory's motion to disqualify the office should be granted.

Respectfully submitted this 25th day of March, 2026

/s/ Ingrid J. DeFranco

**Ingrid J. DeFranco, esq.**
Law Office of Ingrid J. DeFranco, PLLC
P.O. Box 128
Brighton, CO 80601
Telephone: (303) 641-6812
Email: Ingrid.DeFranco@gmail.com
Attorney for Plaintiff Christopher S.P. Gregory

/s/ Christopher S.P. Gregory

**Christopher S.P. Gregory, Esq.**
The Gregory Law Firm, LLC
201 Coffman St., #1822
Longmont, CO 80502

-9-

Telephone: (970) 648-0642
E-mail: cspgregory@thegregorylawfirm.net
*Pro Se* Attorney for Plaintiff
Christopher S.P. Gregory

## CERTIFICATE OF SERVICE

I certify that on March 25, 2026, I filed the above filing via email to the Clerk of the Court, who will docket it in CM/ECF. CM/ECF will send notification of this filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

/s/ Ingrid J. DeFranco

Ingrid J. DeFranco

Case No. 1:25-cv-03361-KHV-GEB     Document 85     filed 03/25/26     USDC Colorado
pg 11 of 11