**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

Plaintiff,

v.

The COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.

Defendants.

---

## OFFER OF PROOF—MARCH 26, 2026 HEARING

---

The Plaintiff, Christopher S.P. Gregory, for himself and through his counsel, Ingrid J. DeFranco makes the following offer of proof in anticipation of the Court's scheduled March 26, 2026 hearing. The Court failed to provide notice of its intent to set the March 26, 2026 hearing and issued its setting order on March 17, 2026. An agenda for the hearing was not provided until 4:19 p.m. on March 18, 2026. As part of this Agenda of Issues, the Court requires the Plaintiff to respond to an order to show cause as to why he should not be sanctioned for quoting the text of F.R.C.P. 55(a), "otherwise defend," in his application for and declaration supporting a default successfully entering against all Defendants in this case on February 23, 2026. The Agenda of Issues specifically requires that: "The parties shall be prepared to present evidence." The expectation of an evidentiary hearing is stated as to the Plaintiff's response to the order to show cause and the Plaintiff's Verified Motion to Disqualify Counsel.

According to D.C.COLO.LCivR 45.1, subpoenas "shall be served no later than seven days before the date specified in the subpoena." Without a hearing agenda or a pre-hearing order

setting deadlines for witness lists, exhibit lists, motions deadlines, and other pre-hearing disclosures, the Court has failed to provide the parties and the Plaintiff specifically with a reasonable or meaningful opportunity to participate in a full and fair hearing. Moreover, when the Plaintiff requested that the March 26, 2026 hearing be continued because of the impossibility of serving witnesses with subpoenas according to D.C.COLO.LCivR 45.1, Judge Vratil responded, as follows:

> First, plaintiff could have issued subpoenas on short notice and fully complied with the applicable rules. Second, and much more importantly, plaintiff has not identified a single witness who will be unavailable to testify without a subpoena. Finally, plaintiff bases his motion to disqualify counsel on the fact that the Colorado Attorney General is providing a defense to individual defendants under the Colorado Whistleblower Protection Act. This argument appears to present a legal issue which can be resolved on the face of the pleadings, without a need for fact witnesses. ECF No. 69.

Based upon the Court's Orders, the Plaintiff will participate in the March 26, 2026 hearing with the understanding and objection that the Court is denying him his basic due process rights to cross-examine adverse witnesses, to offer testimony, and to be represented by counsel. *Pointer v. Texas*, 380 U.S. 400, 405 (2005).

In order to preserve error for appeal and the pursuit of other extraordinary relief, including seeking Writs of Mandamus, the Plaintiff submits the following offer of proof as to the testimonial evidence he would present, if allowed to do so.

1. **Mary V. Sooter**--As an individually named Defendant and former Chair of the Colorado Commission on Judicial Discipline (the CCJD), Ms. Sooter would be cross-examined as to the disqualification of the Colorado Attorney General's Office (the COAG) as her personal attorney in this case. Specifically, Ms. Sooter would be cross-examined as to

why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Sooter can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the Colorado Commission on Judicial Discipline (the CCJD) while simultaneously advising Ms. Sooter and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Ms. Sooter would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Sooter would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Sooter was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Sooter would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

2. **Philip J. Weiser**-- As Colorado's Attorney General and the supervisory head of the COAG, Mr. Weiser would be cross-examined as to the conflicted representation that was simultaneously provided to the Plaintiff and the CCJD by AAG Gina Cannan, his subordinates roles in the Plaintiff's wrongful termination, his awareness of his subordinate Kristen Grooms's suppression of the Plaintiff's public comments as part of the judicial discipline rulemaking process, and his approval of the consolidated representation of all Defendants in this case, including himself personally. This cross-examination would include questioning Mr. Weiser as to why having the public resources of his office used to defend against allegations of public fraud and whistleblower retaliation by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Mr. Weiser would also be asked about the procedures that were followed and communications that occurred when a Special Assistant Attorney General (SAAG) was appointed to represent the Plaintiff in response to *Dees, et al. v. Hood, et al.*, 1:24-cv-00848-PAB-NRN (D. Colo). With regards to the issue of sanctions against the Plaintiff, Mr. Weiser would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Weiser would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties (through his subordinate attorneys) had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire

without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Mr. Weiser was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Weiser would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation. Finally, Mr. Weiser would be cross-examined as to why he has allowed the COAG to continue representing the individually named Defendants in this case when he is expressly and statutorily prohibited from doing so according to § 24-31-101(1)(m), C.R.S.

3. **Jared Polis**-- As Governor of the State of Colorado, Mr. Polis would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Mr. Polis would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Polis would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Mr. Polis was informed that the Plaintiff would

consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Polis would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

4. **Maria Berkenkotter**--As a justice of the Colorado Supreme Court, Justice Berkenkotter would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Berkenkotter would be cross-examined as to whether she and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Berkenkotter would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Berkenkotter was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Berkenkotter would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

5. **Susan Blanco**-- As the Justice appointed by Governor Jared Polis to replace Justice Melissa Hart on the Colorado Supreme Court, Justice Blanco is not individually named as a defendant in this case. Nevertheless, as a member of the Colorado Supreme Court and a judicial officer, Justice Blanco has administrative authority that includes overseeing the legal representation of the Colorado Supreme Court as an institution. Justice Blanco would be cross-examined as to why using the public resources of the COAG to defend against (rather than prosecute) allegations of public fraud by the individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Justice Blanco would be cross-examined as to whether she has been informed of the Plaintiff's Verified Motion to Disqualify Counsel as it relates to the COAG's continuing representation of the State of Colorado and, specifically, the Colorado Supreme Court in these proceedings. With regards to the issue of sanctions against the Plaintiff, Justice Blanco would be cross-examined as to whether she and the other Justices were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Blanco would be cross-examined to confirm her awareness and the awareness of the Justices that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Blanco was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Blanco

would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individual Justices consenting to continuing representation of the Colorado Supreme Court as an institutional defendant. Finally, Justice Blanco would be cross-examined tends to her knowledge of the Plaintiff's request that the Colorado Legislature refer the overall Colorado Judicial Scandal to conflict-free federal law enforcement and to direct the Colorado State Auditor to appoint another state's attorney general as a SAAG capable of impartially representing the interests of the State of Colorado (apart from the personal interests of the Justices, Governor Polis, Attorney General Weiser, and the other individually named Defendants).

6. **Brian D. Boatright**--As a justice of the Colorado Supreme Court, Justice Boatright would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Boatright would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Boatright would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice

Boatright was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Boatright would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

7. **Richard Gabriel**-- As a justice of the Colorado Supreme Court, Justice Gabriel would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Gabriel would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Gabriel would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Boatright was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Gabriel would be further asked whether the COAG

has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

8. **Melissa Hart**--As a former justice of the Colorado Supreme Court, Justice Hart would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Hart would be cross-examined as to whether she and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Hart would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Hart was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Hart would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation. The Plaintiff would specifically cross-exam Justice Hart as to the reasons for her taking a personal leave of absence and, then, resigning from the Colorado Supreme Court on December 19, 2025. Justice Hart would

be cross-examined as to whether her knowledge of the Plaintiff's federal attorney discipline complaint filed against her and her husband, DOJ-Denver Office Civil Division Chief Kevin Traskos, and the public filing of the present action contributed to her leave and resignation. Finally, the Plaintiff would inquire whether Justice Hart's husband, Mr. Traskos, had informed her of the existence and substance of the Plaintiff's parallel sealed case, 1:25-cv-00190-KHV-GEB.

9. **William Hood, III**-- As a justice of the Colorado Supreme Court, Justice Hood would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Hood would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Hood would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Hood was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Hood would be further asked whether the COAG has individually

obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

10. **Monica Márquez**-- As a justice of the Colorado Supreme Court, Justice Márquez would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Márquez would be cross-examined as to whether she and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Márquez would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Márquez was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Márquez would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation. Finally, Justice Márquez testified to the Colorado Legislative Joint Judiciary Committee on January 21, 2026 as part of the Colorado Judicial Department's SMART Act presentation. Justice Márquez would be

cross-examined as to her awareness of the contents of the Plaintiff's "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel; Exhibits 1-11" when she testified. The cross-examination will inquire as to why Justice Márquez failed to disclose the merits of the more than 25-year ongoing pattern of public fraud in public corruption described in the Affidavit.

11. **Carlos Samour**-- As a justice of the Colorado Supreme Court, Justice Samour would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Justice Samour would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Justice Samour would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys knowingly allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff. The Plaintiff would further inquire whether Justice Samour was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Justice Samour would be further asked whether the COAG has individually

obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

12. **Clayton Ankney**-- With regards to the issue of sanctions against the Plaintiff, Mr. Ankney would be cross-examined as to whether he or his colleagues advised the individually named Defendants of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Ankney would be cross-examined to confirm his awareness that the parties had agreed to extending the answer deadline to February 16, 2026, but that he and his colleagues allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Brown or her colleagues informed the individually-named Defendants that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Brown would be further asked whether she and her colleagues have individually obtained Colo. RPC 1.4 waivers from individually-named Defendants consenting to continuing representation. If such waivers have been obtained, the Plaintiff would separately request that they be produced.

13. **Ingrid Barrier**--As an individually named Defendant, a former COAG employee, a current Colorado Department of Public Safety employee, and a current CCJD member, Ms. Barrier would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Barrier would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition

of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Barrier can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the Colorado Commission on Judicial Discipline (the CCJD) while simultaneously advising Ms. Barrier and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Ms. Barrier would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Barrier would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Barrier was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Barrier would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

14. **Michael H. Berger**—As a not yet individually named defendant, a former Colorado Court of Appeals Judge, a senior judge, and a member of the CJRDC, Judge Berger would be cross-examined as to the disqualification of the COAG as his prospective

personal attorney in this case and as the attorney for the CJRDC as an institutional defendant. Specifically, Judge Berger would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Berger would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Berger would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Berger was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Berger would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

15. **David Beller**--As an individually named Defendant and a member of the Colorado Judicial Discipline Rulemaking Committee (the CJDRC), Mr. Beller would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Mr. Beller would be cross-examined as to why using the public resources of

the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Mr. Beller would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Beller would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Mr. Beller was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Beller would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

16. **Jill Brady**--As an individually named Defendant, a current 4th Judicial District Court Judge, and the current CCJD Vice-Chair, Judge Brady would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge Brady would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's

Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Judge Brady can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the Colorado Commission on Judicial Discipline (the CCJD) while simultaneously advising Judge Brady and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Judge Brady would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Brady would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Brady was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Brady would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

17. **Katherine J. Brown**--With regards to the issue of sanctions against the Plaintiff, Ms. Brown would be cross-examined as to whether she or her colleagues advised the individually named Defendants of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally,

Ms. Brown would be cross-examined to confirm her awareness that the parties had agreed to extending the answer deadline to February 16, 2026, but that she and her colleagues allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Brown or her colleagues informed the individually-named Defendants that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Brown would be further asked whether she and her colleagues have individually obtained Colo. RPC 1.4 waivers from individually-named Defendants consenting to continuing representation. If such waivers have been obtained, the Plaintiff would separately request that they be produced.

18. **Gina Cannan**--As an individually named Defendant, a current COAG employee, the CCJD's assigned general counsel, and the Independent Ethics Commission's assigned Counsel, Ms. Cannan would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Cannan would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud and retaliation by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Cannan can testify to the conflicted representation that was provided by the COAG when she provided legal counsel to the Plaintiff as Executive Director of the Colorado Commission on Judicial Discipline (the CCJD) while simultaneously advising the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. Additionally, Ms. Cannan can be

questioned as to her coercive actions (in concert with AAG Alison Kyles) used to unlawfully seize the Plaintiff's records as Executive Director of the CCJD. With regards to the issue of sanctions against the Plaintiff, Ms. Cannan would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Cannan would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Cannan was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Cannan would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

19. **James Carpenter**--As an individually named Defendant, the former Chief of Staff for Governor Bill Ritter, a professional lobbyist, and the current CCJD Chair, Mr. Carpenter would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Mr. Carpenter would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S.

Moreover, Mr. Carpenter can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising Mr. Carpenter and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Mr. Carpenter would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Carpenter would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Mr. Carpenter was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Carpenter would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation. Finally, Mr. Carpenter testified to the Colorado Legislative Joint Judiciary Committee on January 21, 2026 as part of the CCJD's SMART Act presentation. Then, on February 9, 2026, Mr. Carpenter testified before the Colorado Senate Judiciary Committee in support of Governor Jared Polis’s appointment of Bob Gardner to the CCJD. Mr. Carpenter would be cross-examined as to his awareness of the contents of the Plaintiff's "Affidavit of

Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel; Exhibits 1-11" when he testified. The cross-examination will inquire as to why Mr. Carpenter failed to disclose the merits of the more than 25-year ongoing pattern of public fraud in public corruption described in the Affidavit.

20. **Nancy Cohen**--As an individually named Defendant and a member of the CJDRC, Ms. Cohen would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Cohen would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. Cohen would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Cohen would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Cohen was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Cohen would be further asked whether the COAG has

individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

21. **Daniel M. Combs**—As the lead counsel in this case for the COAG, Mr. Combs would be cross-examined as to his prior receipt of attorney-client information from the Plaintiff and the procedures that were followed and communications that occurred when a Special Assistant Attorney General (SAAG) was appointed to represent the Plaintiff in response to *Dees, et al. v. Hood, et al.*, 1:24-cv-00848-PAB-NRN (D. Colo). Mr. Combs can respond to questions as to the conflicts involved in providing representation to individually-named Defendants, who include other former and current COAG employees within the COAG. Such conflicts are particularly acute regarding AAG Gina Cannan and AAG Alison Kyles, who were directly responsible for the coerced seizure of the Plaintiff's records as Executive Director of the CCJD. Mr. Combs can be questioned as to the problems with the COAG controlling and not returning material evidence relevant to the Plaintiff's claims in both the present case and the sealed *qui tam* case. The Plaintiff would also cross-examine Mr. Combs as to the COAG's strategy of intimidation and threats relied upon to suppress public access to the Plaintiff's 28 U.S.C. § 144 Affidavit filed in this case. Additionally, the Plaintiff would cross-examine Mr. Combs as to the COAG's opposition to the Plaintiff's requests for District Judge Daniel D. Domenico's recusal and for the Plaintiff's cases to be re-assigned to a district judge from outside the 10th Circuit. With regards to the issue of sanctions against the Plaintiff, Mr. Combs would be cross-examined as to whether he or his colleagues advised the individually named Defendants of the COAG's malpractice in failing to answer or "otherwise defend"

this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Combs would be cross-examined to confirm his awareness that the parties had agreed to extending the answer deadline to February 16, 2026, but that he and his colleagues allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Mr. Combs or his colleagues informed the individually-named Defendants that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Combs would be further asked whether he and his colleagues have individually obtained Colo. RPC 1.4 waivers from individually-named Defendants consenting to continuing representation. If such waivers have been obtained, the Plaintiff would separately request that they be produced.

22. **Bryan Fields**-- As the Chief of the US DOJ-Denver Office Transactional Organized Crime and Money-Laundering Section, Mr. Fields would be cross-examined as to why he refused to communicate with the Plaintiff after an initial October 19, 2023 conversation in which the Plaintiff discussed the overall Masias Controversy and the need for further Federal investigation. At that time, the Plaintiff was still employed as the Executive Director of the CCJD. Additionally, the Plaintiff would cross-examine Mr. Fields as to the reasons why the US DOJ-Denver Office did not disqualify itself at the outset and transfer the Masias investigation to another office because of the marital relationship between Civil Division Chief Kevin Traskos and then-Justice Melissa Hart. The Plaintiff would further inquire as to who made the no file decision and the decision to close the investigation into the Colorado Judicial Scandal.

23. **Robert Gardner**--As an individually named Defendant, a former Colorado State Senator, and a current CCJD member, Mr. Gardner would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Mr. Gardner would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Mr. Gardner would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Gardner would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Mr. Gardner was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Gardner would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation. Finally, Mr. Gardner testified to the Colorado Legislative Joint Judiciary Committee on January 21, 2026 as part of the CCJD's SMART Act presentation. Then, on February 9, 2026, Mr. Gardner testified before the Colorado

Senate Judiciary Committee as part of his confirmation hearing. Mr. Gardner would be cross-examined as to his awareness of the contents of the Plaintiff's "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel; Exhibits 1-11" when he testified. The cross-examination will inquire as to why Mr. Gardner failed to disclose the merits of the more than 25-year ongoing pattern of public fraud in public corruption described in the Affidavit.

24. **Sara Garrido**--As an individually named Defendant, a current Jefferson County Court Judge, and a current CCJD member, Judge Garrido would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge Garrido would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Judge Garrido can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising Judge Garrido and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Judge Garrido would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Garrido would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that

the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Garrido was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Garrido would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

25. **Kirsten Grooms**--As an individually named Defendant, a current COAG employee, and the CJDRC's assigned general counsel, Ms. Grooms would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Grooms would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud and retaliation by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Grooms can testify to her advising the CJDRC to reject / refuse to publish the Plaintiff's public comments as to proposed rule changes, which is the primary basis for the Plaintiff's civil rights claims in the present case. With regards to the issue of sanctions against the Plaintiff, Ms. Grooms would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Grooms would be cross-examined to confirm her awareness and the

awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Grooms was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Grooms would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

26. **Jeremy Gross**--Mr. Gross is the Special Assistant U.S. Attorney assigned in the Plaintiff's parallel sealed *qui tam* case. Mr. Gross would be cross-examined as to his refusal to complete the customary initial relator interview with the Plaintiff and to otherwise coordinate an investigation of the public fraud alleged in the Plaintiff's complaint within the DOJ and through the assistance of the FBI. Additionally, Mr. Gross can respond to why he has sought the dismissal of claims in the sealed *qui tam* case without first having the opportunity to investigate the case in conjunction with a another state's attorney general appointed as a SAAG and capable of impartially representing the interests of the State of Colorado. The Plaintiff will further question Mr. Gross as to his opposition to the mandated disqualification of District Judge Daniel D. Domenico from the Plaintiff's cases, the government's position and opposition regarding the Plaintiff's pending FRCP 59(e) motion, and Mr. Gross's present opposition to Plaintiff's request for assignment of his cases to a district judge from outside of the 10th Circuit. The Plaintiff

will directly question Mr. Gross as to whether he had any conversations with President Donald J. Trump's personal attorney, Peter Ticktin, or with U.S. DOJ—Denver Office Civil Division Chief Kevin Traskos.

27. **James Hartmann**-- As an individually named Defendant, a former 19th Judicial District Court Chief Judge, a senior judge, and a former member of the CJDRC, Judge Hartmann would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Judge Hartman would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Hartmann would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Hartmann would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Hartmann was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Hartmann would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the

other individually-named Defendants consenting to continuing representation. Finally, Judge Hartmann could respond with the reasons and timing of his resignation from the CJDRC.

28. **Amanda Hollander**--As an individually named Defendant and a member of the CJDRC, Ms. Hollander would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Hollander would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. Hollander would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Hollander would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Hollander was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Hollander would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

29. **Alison Kyles**-- As an individually named Defendant and a current COAG employee, Ms. Kyles would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Kyles would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud and retaliation by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Kyles can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the Colorado Commission on Judicial Discipline (the CCJD) while simultaneously advising the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. Additionally, Ms. Kyles can be questioned as to her coercive actions (in concert with AAG Cannan) used to unlawfully seize the Plaintiff's records as Executive Director of the CCJD. With regards to the issue of sanctions against the Plaintiff, Ms. Kyles would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Kyles would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Kyles was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis,

if the COAG were willing to address the need for disqualification of counsel. Ms. Kyles would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

30. **Bryon Large**-- As an individually named Defendant, the Colorado Presiding Disciplinary Judge, and a member of the CJDRC, Judge Large would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Judge Large would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Large would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Large would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Large was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Large would be further asked whether the COAG has individually obtained Colo. RPC

1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

31. **Anne Mangiardi**--As an individually named Defendant, a former COAG employee, a member of the CJDRC, and the CCJD's current Executive Director, Ms. Mangiardi would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Mangiardi would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. Mangiardi would be cross-examined as to whether she and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Mangiardi would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Mangiardi was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Mangiardi would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation. Finally,

Ms. Mangiardi testified to the Colorado Legislative Joint Judiciary Committee on January 21, 2026 as part of the CCJD's SMART Act presentation. Then, on February 9, 2026, Ms. Mangiardi testified before the Colorado Senate Judiciary Committee in support of Governor Jared Polis's appointment of Bob Gardner to the CCJD. Ms. Mangiardi would be cross-examined as to her awareness of the contents of the Plaintiff's "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 144 and Certificate of Counsel; Exhibits 1-11" when she testified. The cross-examination will inquire as to why Ms. Mangiardi failed to disclose the merits of the more than 25-year ongoing pattern of public fraud in public corruption described in the Affidavit.

32. **Colin McDonald**--Mr. McDonald is the recently confirmed First Assistant Attorney General in charge of the newly created Justice Department's National Fraud Enforcement Division. On January 1, 2026, the Plaintiff communicated directly with Mr. McDonald to inform him of the Colorado Judicial Scandal and the overall claims of public fraud alleged in the Plaintiff's pending actions. The Plaintiff did not receive any response. The Plaintiff would cross-examine Mr. McDonald as to why there has been no response to his repeated reports of public fraud, notwithstanding that such reports have been submitted to multiple federal agencies and to Mr. McDonald personally.

33. **Caitlin McGovern**--Ms. McGovern is a Special Agent assigned to the FBI's Denver Office. Starting in April 2024, Ms. McGovern received reports of fraud from the Plaintiff, including the Plaintiff's anonymously filed October 20, 2024 request for evaluation (RFE) of judicial conduct. Ms. McGovern would be cross-examined as to

why the FBI has taken no action in response to the Plaintiff's reporting of public fraud and the more recent filing of the sealed *qui tam* case.

34. **Bonnie McLean**--As an individually named Defendant, a current 18th Judicial District Court Judge, and a former CCJD member, Judge McLean would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge McLean would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Judge McLean can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising Judge McLean and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Judge McLean would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge McLean would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge McLean was informed that the Plaintiff would consider stipulating to setting aside the

default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge McLean would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

35. **Colleen McManamon**--As an individually named Defendant, a member of the Colorado Judicial Discipline Adjudicative Board (the CJDAB), and a member of the CJDRC, Ms. McManamon would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. McManamon would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. McManamon would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. McManamon would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. McManamon was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms.

McManamon would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

36. **Kristen Mix**-- As an individually named Defendant, a former U.S. Magistrate Judge, a member of the CJDAB, and a member of the CJDRC, Judge Mix would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge Mix would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Mix would be cross-examined as to whether she and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Mix would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Mix was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Mix would be further asked whether the COAG has individually

obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

37. **Reed Owens**--As an individually named Defendant, a 5th Judicial District Court Judge, and a current CCJD member, Judge Owens would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Judge Owens would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Owens would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Owens would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Owens was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Owens would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

38. **Nora Quinto Passamaneck**—Ms. Passamaneck entered her appearance as counsel of record for the individual Defendants on March 23, 2026. Because Ms. Passamaneck was aware of the Plaintiff's motion to disqualify counsel and its grounds at the time of her entry of appearance, the Plaintiff would cross-examine Ms. Passamaneck as to the reasons for her entry into this case.

39. **Meredith Patrick Cord**--As an individually named Defendant, a current El Paso County Court Judge, and a current CCJD member, Judge Patrick Cord would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge Patrick Cord would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Patrick Cord would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Patrick Cord would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Patrick Cord was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for

disqualification of counsel. Judge Patrick Cord would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

40. **Kate Shimroff**-- Ms. Shimroff is the Legislative Audit Manager in charge of the Colorado State Auditor's Fraud Hotline. Ms. Shimroff would be cross-examined as to whether the OSA has disclosed otherwise confidential information relating to the Plaintiff's Fraud Hotline complaints to the Defendants. Moreover, Ms. Shimroff can testify to the OSA's refusal to discuss the Plaintiff's request for Colorado State Auditor Kerri Hunter to appoint another state's attorney general as a SAAG through her authority under § 24-31-111(5), C.R.S.

41. **Aubrey C. Sullivan**--As an individually named Defendant and Executive Director of the Colorado Division of Civil Rights, Ms. Sullivan would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Sullivan would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. Sullivan would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Sullivan would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to

extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Sullivan was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Sullivan would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

42. **Edward P. Sullivan**--Mr. Sullivan is a Senior Litigation Counsel assigned to the US DOJ's Public Integrity Section. In October 2023, the Plaintiff spoke with Mr. Sullivan and discussed the overall Masias Controversy. Mr. Sullivan referred the Plaintiff to Bryan Fields in the US DOJ-Denver Office. Although the Plaintiff would later inform Mr. Sullivan of his retaliatory termination and other information, Mr. Sullivan did not respond to communications following the initial exchange. The Plaintiff would cross-examine Mr. Sullivan as to who is responsible within the DOJ and the FBI for deliberately disregarding the Plaintiff's reports of public fraud.

43. **Courtney Sutton**--As an individually named Defendant and a current CCJD member, Ms. Sutton would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Sutton would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S.

With regards to the issue of sanctions against the Plaintiff, Ms. Sutton would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Sutton would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Sutton was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Sutton would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

44. **Jeff Swanty**--As an individually named Defendant, a 19th Judicial District Court Judge, a member of the CJDAB, and a member of the CJDRC, Judge Vigil would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Judge Vigil would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Vigil would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's

malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Vigil would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Vigil was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Vigil would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

**45. Peter Ticktin**-- Mr. Ticktin is President Donald J. Trump’s personal attorney and is currently representing former Mesa County Clerk Tina Peters, who is currently seeking a commutation of her prison sentence from Governor Jared Polis. The Plaintiff would cross-examine Mr. Ticktin as to whether he has had any conversations with SAUSA Jeremy Gross, Civil Division Chief Kevin Traskos, or other individuals in which he was asked to stop or otherwise prevent further investigation into the Plaintiff’s allegations of public fraud and public corruption through the DOJ, the FBI, or any other Federal agency.

46. **Emily Tofte Nestaval**--As an individually named Defendant and a current CCJD member, Ms. Tofte Nestaval would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Tofte Nestaval would be

cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Ms. Tofte Nestaval would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Tofte Nestaval would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Tofte Nestaval was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Tofte Nestaval would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

47. **Kevin Traskos**—Mr. Traskos is the Civil Division Chief of the U.S. DOJ—Denver Office. Mr. Traskos is also former Justice Melissa Hart's husband. Mr. Traskos would be cross-examined as to his receipt of the complaint and other filings in the parallel sealed *qui tam* case, 1:25-cv-00190-KHV-GEB (D. Colo.). Specifically, Mr. Traskos would be cross-examined as to whether he has violated the seal in the parallel qui tam

case, including providing information of its existence and contents to his wife. The Plaintiff will directly question Mr. Traskos as to whether he had any conversations with President Donald J. Trump's personal attorney, Peter Ticktin, with the intent of undermining the Plaintiff's cases. Additionally, the Plaintiff will cross-examine Mr. Traskos as to why (with his marital relationship to Justice Hart) the US DOJ-Denver Office did not disqualify itself when the Colorado Judicial Scandal /Masias Controversy was first investigated by the FBI in 2020. Moreover, the plaintiff will cross-examine Mr. Traskos as to who in his office were involved in making no file decisions and closing the investigation into the Masias controversy.

48. **Stefanie Trujillo**--As an individually named Defendant and the current CCJD Secretary, Ms. Trujillo would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Ms. Trujillo would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Ms. Trujillo can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising Ms. Trujillo and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Ms. Trujillo would be cross-examined as to whether her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or "otherwise defend" this

action by filing a timely motion under F.R.C.P. 12. Additionally, Ms. Trujillo would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Ms. Trujillo was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Ms. Trujillo would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

49. **MaryAnn Vielma**--As an individually named Defendant, a current Adams County Court Judge, and the former CCJD Secretary, Judge Vielma would be cross-examined as to the disqualification of the COAG as her personal attorney in this case. Specifically, Judge Vielma would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by herself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Judge Vielma can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising Judge Vielma and the other Commissioners to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Judge Vielma would be cross-examined as to whether

her and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Judge Vielma would be cross-examined to confirm her awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Vielma was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Vielma would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from her and the other individually-named Defendants consenting to continuing representation.

50. **Vincente Vigil**--As an individually named Defendant, a 19th Judicial District Court Judge, a member of the CJDAB, and a member of the CJDRC, Judge Vigil would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Judge Vigil would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. With regards to the issue of sanctions against the Plaintiff, Judge Vigil would be cross-examined as to whether he and the other individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely

motion under F.R.C.P. 12. Additionally, Judge Vigil would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Judge Vigil was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Judge Vigil would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

51. **Jeffrey M. Walsh**--As an individually named Defendant, a member of the CJDRC, and the CCJD's Special Counsel, Mr. Walsh would be cross-examined as to the disqualification of the COAG as his personal attorney in this case. Specifically, Mr. Walsh would be cross-examined as to why using the public resources of the COAG to defend against allegations of public fraud by himself and the other individually-named Defendants does not itself meet the definition of "occupational fraud" under Colorado's Fraud Hotline statute, § 2-3-110.5(1)(d), C.R.S. Moreover, Mr. Walsh can testify to the conflicted representation that was provided by the COAG when AAG Gina Cannan provided legal counsel to the Plaintiff as Executive Director of the CCJD while simultaneously advising the Commissioners and Mr. Walsh to facilitate the wrongful and retaliatory termination of Plaintiff's employment. With regards to the issue of sanctions against the Plaintiff, Mr. Walsh would be cross-examined as to whether he and the other

individually named Defendants were advised of the COAG's malpractice in failing to answer or “otherwise defend" this action by filing a timely motion under F.R.C.P. 12. Additionally, Mr. Walsh would be cross-examined to confirm his awareness and the awareness of the other individually named defendants that the parties had agreed to extending the answer deadline to February 16, 2026, but that the COAG's attorneys allowed even that agreed deadline to expire without first seeking a further extension from the Plaintiff.. The Plaintiff would further inquire whether Mr. Walsh was informed that the Plaintiff would consider stipulating to setting aside the default on an individual basis, if the COAG were willing to address the need for disqualification of counsel. Mr. Walsh would be further asked whether the COAG has individually obtained Colo. RPC 1.4 waivers from him and the other individually-named Defendants consenting to continuing representation.

Dated: March 26, 2026

/s/ Ingrid J. DeFranco
**Ingrid J. DeFranco, esq.**
Law Office of Ingrid J. DeFranco, PLLC
P.O. Box 128
Brighton, CO 80601
Telephone: (303) 641-6812
Email: Ingrid.DeFranco@gmail.com
Attorney for Plaintiff Christopher S.P. Gregory

/s/ Christopher S.P. Gregory
**Christopher S.P. Gregory, Esq.**
The Gregory Law Firm, LLC
201 Coffman St., #1822
Longmont, CO 80502
Telephone: (970) 648-0642
E-mail: cspgregory@thegregorylawfirm.net
*Pro Se* Attorney for Plaintiff
Christopher S.P. Gregory

CERTIFICATE OF SERVICE

I certify that on March 26, 2026, I filed the above filing via email to the Clerk of the Court, who will docket it in CM/ECF. CM/ECF will send notification of this filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

/s/ Ingrid J. DeFranco
Ingrid J. DeFranco