1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-3361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

Plaintiff,

vs.

THE COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al,

Defendants.

----------------------------------------------------------------

REPORTER'S TRANSCRIPT

Motions Hearing

----------------------------------------------------------------

Proceedings before the HONORABLE KATHRYN H. VRATIL and the HONORABLE GWYNNE E. BIRZER, United States District Court for the District of Colorado, commencing on the 26th day of March, 2026, in Courtroom C203, United States Courthouse, Denver, Colorado.


APPEARANCES

For the Plaintiff:
INGRID J. DeFRANCO, Attorney at Law, PO Box 128, Brighton, CO 80601
AND
CHRISTOPHER S.P. GREGORY, The Gregory Law Firm LLC, 201 Coffman Street, Suite 1822, Longmont, CO 80502

For the Defendants:
NORA Q. PASSAMANECK, KATHARINE J. BROWN, and CLAYTON J. ANKNEY, Colorado Attorney General's Office, 1300 Broadway, Denver, CO 80203


Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room A259, Denver, CO 80294, (303)335-2358

Proceedings reported by mechanical stenography; transcription produced via computer.

2

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

P R O C E E D I N G S

(Proceedings commenced at 9:40 a.m.)

THE COURT:  Good morning, everyone.  I'm going to call case number 25-0901 [sic].  Will counsel enter their appearances in that case, please.

MS. DeFRANCO:  Good morning, Your Honor.  Ingrid DeFranco on behalf of Mr. Gregory, who appears to my right and is co-counsel.

THE COURT:  Thank you.

MR. GREGORY:  Good morning, Your Honor.  Christopher Gregory.

THE COURT:  Good morning.  And for the other parties?

MR. MARTIN:  Your Honor, Levi Martin for the United States.

THE COURT:  I'm sorry.  Oh.  I see you over here on the screen.  What was your name again?

MR. MARTIN:  Levi, L-E-V-I, Martin.

THE COURT:  Okay.  And you are representing?

MR. MARTIN:  The United States.

THE COURT:  Okay.  Thank you.  Go ahead.

MS. PASSAMANECK:  Your Honor, we are counsel in the 3361 action.

THE COURT:  Okay.  So, let me call that one next.  Those are the only attorneys who are appearing in 0190?  Okay.  Then let's call case number 25-cv-3361.  Appearances, please?

Kevin P. Carlin, RMR, CRR

3

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

MS. DeFRANCO:  Good morning, Your Honor.  Ingrid DeFranco on behalf of Mr. Gregory, who is my co-counsel.

THE COURT:  Thank you.

MR. GREGORY:  Good morning, Your Honor.

MS. PASSAMANECK:  Good morning, Your Honor.  Nora Passamaneck for the named defendants in the action.

THE COURT:  Okay.

MS. BROWN:  Good morning, Your Honor.  Katharine Brown, also on behalf of the defendants.

THE COURT:  Thank you.

MR. ANKNEY:  Good morning, Your Honor.  Clayton Ankney for the defendants as well.

THE COURT:  Okay.  Thank you.  I want to start by overruling plaintiff's motion to require counsel to appear, or alternatively to reset the hearing from today so that plaintiff can have a chance to go seek a writ of mandamus.  A couple reasons for that.  First of all, plaintiff complains about the improper reference in the notice -- the agenda for this hearing, which refers to case number 0190.  That reference is regrettable.  I own that.  I don't think it's material to the request that we vacate this hearing.  And it's not material to any of the underlying issues which we're going to take up this morning.

Also, plaintiff's own motion to vacate this hearing reveals more about that other case than anything that the

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

Court's agenda did.  So, I don't see how plaintiff is prejudiced in any way by the Court's disclosure in the agenda.

Second, plaintiff is raising for the third time, I think, his alleged inability to subpoena witnesses to testify here.  The Court has already addressed that issue on several occasions.  Plaintiff is merely rearguing matters I've already considered, and until last night, plaintiff did not identify a single witness that you were unable to procure for this hearing.

Apparently you didn't talk to the other side to see if any of them would be willing to testify voluntarily.  You haven't made any issues to subpoena anyone.  So, I think I will stand by what I said before.  You didn't identify any witnesses which you couldn't procure without the ability to subpoena them, and so I'm unmoved by this request at literally the 11th hour last night to vacate this hearing so that you could go file petition for a writ of mandamus to compel the presence of all counsel, all parties, and also Mr. Gross.

I would also add that at this point, we have fully briefed all of the issues in writing, and so I don't know that there is even a factual dispute on which we need to hear evidence.  I think the parties disagree about what inference should be drawn from the undisputed facts, but there's no -- there's no disputed fact that I'm aware of that will be served by a hearing -- a factual hearing here this morning.

The Court ordered the parties to be prepared to present

5

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

evidence.  That was an instruction which I gave before the issues were fully briefed.  At this point, I don't think that it's necessary to hear additional evidence, but if plaintiff does want to make a proffer, as he says in his motion, we can consider that at the appropriate time.

So, bottom line is plaintiff's request to require the presence of all counsel and all parties and Mr. Gross is untimely.  It's unwarranted.  There's no due process violation by going forward with this hearing today, and that's what we're going to do.  So, plaintiff's motion in that regard is overruled.

I'd like to start by just making a few preliminary comments.  I guess by way of introduction for myself, as you know, my name is Kathryn Vratil.  I sit in the District of Kansas.  I'm a senior judge there.  Previously I was a chief judge in that district.  I have served nine years on the Judicial Panel for Multidistrict Litigation.  I also served two terms on the Judicial Conference Committee on Judicial Conduct and Disability.  I currently serve on the Judicial Conference Committee on Case Administration and Court Management.

So, I've been on the court for 34 years.  I've had a lot of experience, but particularly a lot of experience in leadership with regard to managing complex litigation, managing litigation with lots of parties, and I've learned some lessons along the way.  One of them is that in cases like this, it's

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

really important to keep our eye on the bouncing ball, which is how to resolve this case consistently with Rule One, which is fair, just, and inexpensive. So, that is my overall -- overarching goal here. The other things we know from past experience is that a case like this requires very active court management and firm deadlines. So, that is what you can expect from me.

You can also expect that I will not be impressed or influenced or dissuaded by name-calling, by hyperbole directed at either the Court or opposing counsel or witnesses. I will not be dissuaded by threats of mandamus actions against me or the filing of ethical complaints. So, you can -- you do what you need to do in that regard, but unless and until the Tenth Circuit Court of Appeals tells me otherwise, I will continue to actively manage this case in the way that I see is appropriate.

So, on that subject, as you can see, Judge Birzer is with me. She's a very experienced magistrate judge in the District of Kansas, and we are going to jointly manage this case. Kind of at a mountaintop level, we will be dividing responsibility according to dispositive issues and non-dispositive issues. So, pretrial non-dispositive issues will come first to her, and I will deal with dispositive issues such as motions to dismiss and things like that.

She's going to talk to you in a moment, introduce herself, and also address some housekeeping matters, but I

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

forgot to mention one other thing you can expect from me.  And you can probably sense this already.  So, I am going to be -- since we're in the west, I'm going to use a cowboy analogy.  I will be riding the fences, vigilantly patrolling for compliance with Rule 11.  And specifically, I want to make sure that any motions, arguments, or positions which are taken or briefed here are consistent with the law, and are not being used to cause unnecessary delay, harassment, or needlessly increase the cost of litigation for the parties here.

So, as far as the agenda today -- so, as I said, first Judge Birzer will talk about housekeeping matters.  Then we will close these proceedings and take up case number 25-0190.  I think that will probably take about an hour.  Then we will move to case number 25-3361.  We will start with the motion to disqualify defense counsel, then move to the question of setting aside the entry of default in plaintiff's response to the order to show cause.  Then finally we will deal with billing restrictions.

As I said, I think really the factual issues are largely, if not entirely undisputed, and they're set forth in the briefing, which has now been complete.  So, I don't expect that we will need witnesses, but if you see that issue otherwise, please let me know.  Also, I'm not interested in readdressing things that are already fully covered in the briefs, because of time limits here this morning.

Kevin P. Carlin, RMR, CRR

8

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

We will be concluding this at 3 o'clock, if not earlier, and my goal here this morning is that we will leave with a plan of action for getting these cases rolling.  I don't think I've ever seen a case -- two cases which have been on file for so long with so little having been accomplished, and I don't say that in a complimentary way.  So, you know, I think both sides need to examine their own role in that, and understand that things will be going forward in a little bit different manner at this point.

So, with that, I will let Judge Birzer have the microphone.

COURT MJ:  I don't think so.  I think I can talk loud enough to be on the record.  Good morning, Counsel.  I'm Gwynne Birzer, as has been stated a couple times here, but I've served the District of Kansas as a magistrate judge for 11 years.  And during that time, I have managed discovery from general to complex discovery.  Judge Vratil and I have worked together on MDL matters, and I presided over, you know, lots of complex cases.  So, I do understand litigation that is truly complex versus litigation that is made to be complex.  And so I'm not saying that I'm going to zero in on that as this case goes forward, but I do understand the difference here.

Prior to serving on the bench, I did practice in criminal and civil law, but civil law I did medical malpractice litigation and just other civil litigation matters.  So, I will

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

say that I do look forward to working with you folks on this case, but in terms of housekeeping, I would just say that the culture that I would kind of like to set in this case is to give you all the ability to -- through the conduct of discovery to, you know, gather information so that you can fully and fairly try and defend this case here.

So, what I'm planning to do today or sometime after today is enter an omnibus order in this case that will hopefully get us there. And then I did want to kind of get your opinion on -- in some cases, I will set -- schedule monthly conferences in the event discovery comes up. And so we will get our calendars, and we will schedule it -- schedule, you know, get the dates down so that we don't have any conflicts and we don't have any problems. Everyone, you know, is expected to be there, and then we just kind of decide, you know, issues before they crop up.

And so I wanted to kind of get your thoughts on, you know, how you feel about blocking out your calendars. I think the omnibus order that I'd like to enter will take care of a lot of these things, but not always. So, in terms of the rules, I have reviewed the -- your local rules. This omnibus order is going to deviate slightly from those rules, and I would like to start with provision 5.3, which directs deposition notices and discovery subpoenas are not, you know, filed -- you know, we're going to suspend that.

Kevin P. Carlin, RMR, CRR

10

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

The filing of these notices and subpoenas, I think will assist me in -- because I'd like to monitor the progress. When parties ask for additional time to conduct discovery, I'd like to be able to look at the docket and see what has been done. And I'm expecting that we will continue to move along, but all the other provisions in Rule 5.3 will remain in effect.

In terms of Colorado local rule 7.1, the duty to confer pursuant to that rule prior to filing a motion is terminated, but I do have some exceptions with regard to discovery disputes. And so one of those is unless the moving party -- the attorney for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.

I mean, I want to say that I think that you have tried to confer in this case. I'm not sure that I agree that it has been meaningful and within the spirit of the rules, and I am going to expect that. I'm not going to -- you know, we won't get to -- get to a motion if you folks email back and forth and send letters back and forth with accusations, you know, against each other. That's not within the spirit of the local rules.

I want you to pick up the phone and call each other and try to talk. You know, even if you don't do phone anymore, you do Zoom, whatever you do, but I'm expecting meaningful conferrals before you bring disputes to the Court. I can help you. We can put our heads together to resolve them. Sometimes

Kevin P. Carlin, RMR, CRR

11

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

we just cannot resolve everything.  Okay?  But you just can't, and you do need the Court's assistance, and I'm willing to do that.  Okay?

Every certification required by Rule 26(c) and 37 and this rule related to the efforts of the parties to resolve discovery or disclosure disputes must be described with particularity and the steps you've taken, you know, all of you, Counsel, to resolve the disputes in issue, because I want to be able to know what you've done in order to resolve the disputes.

And again, you know, the rules call for reasonable efforts to confer, and again, that means more than emailing, you know, or, you know, just passing paper back and forth.  I mean, we've done enough of that in this case.  So, we have to get off the paper.  And that's what I want us to do.

In addition to the duty to confer prior to filing any motion to resolve a discovery dispute, you must contact my chambers for a premotion conference.  Okay?  And before -- with regard to the premotion conference before filing any disputed discovery related motion and after satisfying your duty to confer, and making reasonable efforts to do that, the party intending to file the discovery-related motion must contact -- must contact me.

And typically what I would do is ask you folks to put together a joint statement.  I mean, you can do them individually if we think that we have to do that.  I'm not going

Kevin P. Carlin, RMR, CRR

12

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

to push you together all the time, because I do understand litigation, but I would -- and a lot of instances I will have you do a joint statement of your dispute so that I could have it all in one -- in one pleading and we can decide it together. Okay?

No disputed discovery-related motion material or argument shall be filed until we've had this premotion conference, because the idea is to not -- to -- for us not to file motions. Now, if we have to, we have to, but I'd like us to try to resolve things so that we don't have what we have now. Okay? All right. And so that's 7.1.

And then, let's see. Consistent with Rule 37 of the local rules, discovery-related motions, they should be and must be in this instance accompanied by copies of the notices of the depositions, the portions of the interrogatory requests, so whatever the discovery is related to. Motions directed at subpoenas should be accompanied by a copy of the subpoena in dispute. Don't just send the motion. I mean, I'd like to be able to look at the motion, if it's a 30(b) issue or something like that. I want to see the topics so that we can kind of cut to the chase.

In terms of time for filing discovery-related motions, they must be filed within 30 days of the default or service of the response, objection, and so on and so forth. I may deny any motion filed after that 30-day period as untimely unless you can

Kevin P. Carlin, RMR, CRR

13

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

demonstrate diligence in attempting to resolve that specific discovery dispute.  Because sometimes you're still conferring about it.  Conferring can be ongoing.  I do understand that.  And so I want to be able to recognize that, but if you're late, you're late.  Okay?

Let's see.  Regarding 7.1(d), the time to file responses, this is where I'm going to be deviating from your local rules, because I don't want motion practice to drag out, because if we don't move, the case can't move.  And so dispositive -- and in terms of dispositive and similar motions for judgments on -- motions to dismiss, for judgment on the pleadings, motions to remand, transfer, or just those kinds of things, you're going to have -- responses to those motions should be filed within 14 days.  Okay?  Your local rule says 21 days, but you're going to cut it off so we can get going.  After the motion is served, replies must be filed within seven days.  Okay?  Other motions, like responses to all other motions, they should be filed within seven days after the motion is served.  Replies, you will have five days to do that.  Okay?

In terms of discovery-related motions, principal briefs in support of or in response to discovery-related motions, they must not exceed ten pages, and replies, we can keep those to three pages.  You know, just in reviewing the motions here, you know, they've been within a reasonable aspect, you know, to me, so I don't think that that's going to be a huge issue, but it

Kevin P. Carlin, RMR, CRR

14

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

could be.  In terms of summary judgment motions, principal briefs in support of and/or in response, they can't exceed 40 pages, and replies are 15 pages.

And so I think that's kind of the long and short of it. There's going to be some additional things in an omnibus order, but I wanted to just make sure that you have the highlights of that.  So, again, I'm going to want to keep the case moving.  I don't want to be held hostage by a lot of motion practice.  So, to the extent that we can resolve disputes informally, I hope that we can do that.  If we can't, we can't, but if we have to resort to paper, we're going to move.  Okay?

Again, I said before that I wanted to kind of get your impression on whether or not you feel at this stage that it's necessary for us to get our calendars and just set, you know, just motion -- I mean, just monthly settings, and I would think, like, once a month, like maybe the third Friday, for example, of every month at 9 o'clock in the morning.  And if there are disputes you have, you will have a certain period of time to bring them to me so that I can review them and conduct the necessary research that I would need to do to handle the matter, or if you don't think that there's -- it's not necessary, then you would let me know like within 48 hours before.

We don't need -- you know, we don't have any disputes. We want to keep working, which is ideally what I want you folks to do is to be able to keep working, instead of preparing to be

Kevin P. Carlin, RMR, CRR

15

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

in front of me on issues that are stalling the case.

MS. DeFRANCO:  Your Honor, were you contemplating that those conferences would be remote?

COURT MJ:  We can start there, but, you know, if I have to come here, you know, then I have to -- you know, then I will come here.  But I am contemplating that they would be remote.

MS. DeFRANCO:  Thank you.

COURT MJ:  Thank you for your question.  Any other questions?

THE COURT:  Okay.  Thank you, Judge Birzer.  At this point, we're going to seal the courtroom and address case number 25-cv-190.  So, only the parties should be here, and the doors will be locked.  The transcript of the proceedings will be sealed also.  This will probably be about an hour at the most.  So, please stay close.

(Recess at 10:03 a.m., until 10:54 a.m.)

THE COURT:  So, just for the record now, we are resuming case number 25-3361.  And as I mentioned before, we're going to start with the plaintiff's motion to disqualify counsel.  Judge Birzer will be presiding over this, so go ahead.

COURT MJ:  Counsel, first, the record should note that counsel is present as previously appearances were entered.  In reviewing this matter, I've looked at the parties' briefing with exhibits.  Mr. Gregory and Ms. DeFranco, I reviewed your reply

16

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

as quickly as I could. I will let you know that, but I think I understand. I've also reviewed Tenth Circuit case law on just the issue of disqualification generally. Apparently I'm not picking up. The CRSs that are relevant here, the revised statutes of Colorado, that there's some Colorado law on conflict of interest, the Colorado rules of professional conduct, and some Tenth Circuit law on that. Some Colorado law on misconduct and, you know, just the choice of counsel. And then the rules that I've looked at specifically were 1.7, 1.10, 3.7, and 8.4.

And so, I mean, I don't know all of the ins and outs, I will just be up front, about the Dees case, but I know what has been indicated in the briefing. And so I do -- I do have some questions, you know, Mr. Gregory, for you, as we, you know, just kind of proceed. So, did Mr. Combs or anyone from the Colorado AG's office ever enter an appearance on your behalf in the Dees case?

MR. GREGORY: No, they did not, Your Honor. The issue was they had contacted me to provide me with counsel because I was being sued in my official capacity as executive director after being terminated from that position. It was through that conversation, and I explained the conflicts that existed --

COURT MJ: All I want to know is did anyone ever enter an appearance on your behalf?

MR. GREGORY: They did not.

COURT MJ: Okay. And so then once you were served in

Kevin P. Carlin, RMR, CRR

17

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

the Dees case, who did you contact -- you can be seated if you're comfortable. You know, stand, seated, whatever. Who did you contact regarding representation? Was it Mr. Combs? I felt like that's who it was.

MR. GREGORY: Your Honor, I guess just to clarify these facts, so it wasn't -- I wasn't served by Ms. Dees. I was contacted by Mr. Combs, because he had received the service of process on behalf of, I think, all of the state defendants in that case. And it was because of that that he contacted me, and through our conversation realized there was a conflict and need to appoint counsel, and that's why Andrew Ringel was then appointed, but there were issues with that.

COURT MJ: All right. But you did request a special assistant AG to represent you; right? And/or did you?

MR. GREGORY: It was through my conversation with Mr. Combs in which I explained the problems that had been involved in my termination, that I think he was the one that said we need to use the SAG process under 2431 --

COURT MJ: So, then no, you didn't request anyone? It just came up -- you didn't specifically request anyone? It came up through the conversation?

MR. GREGORY: Mr. Combs made that recommendation. I then responded that I wanted input in that appointment decision, and that wasn't allowed. They essentially picked Mr. Ringel and appointed him on my behalf.

Kevin P. Carlin, RMR, CRR

18

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

COURT MJ:  Okay.  So, just so that we -- just as succinctly and concisely as you can, what was the subject matter, you know, in the Dees case?  I mean, I understand to the extent that it's alluded to in the briefing, but tell me -- because I guess you -- you can see where this is going.  I'm just trying to figure out, is it substantially related to the issue at hand?  And so what was the subject matter in that case?

MR. GREGORY:  The difficulty with that case is it's a pro se litigant, and sort of a -- I don't know, a scattershot approach.  The complaint was actually dismissed for failure to comply with Rule Eight, failure to claim a clear statement of the claims in that case.  But what it related to me as was that Ms. Dees had complained that her Judicial Discipline complaints were improperly, you know, denied.  And the actual original complaint that I think she had submitted was denied by my predecessor, and I had just engaged in conversations with her, you know, affirming those denials or the like.  But she only sued me.  She didn't sue the rest of the Commission on Judicial Discipline or its former executive director William Campbell. It was odd in that respect.

COURT MJ:  So, it's just -- so, I'm struggling to see how -- you know, how that case is related to this case.  You know, and it being in violation of the rules that you cite here. So, can you help me draw the similarities here?

MR. GREGORY:  So, the similarity is the substance of

Kevin P. Carlin, RMR, CRR

19

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

Ms. Dees' allegations are that she is being denied due process, or, you know, her right to access to the courts and disciplinary process because of some wrongdoing in those systems. Some of the defendants are judges. Some of them are attorneys, but as it relates to the Commission on Judicial Discipline, she is saying that, you know, somehow our process was broken, and she was denied the opportunity to be heard there.

That relates to exactly what I'm saying in this lawsuit, which is when I have gone to the Judicial Disciplinary Commission to make my own complaints, to participate in the rulemaking process by way of public comments. I have been denied the opportunity to be heard, to have any sort of conflict-free entity reassigned to consider those complaints. So, I think my case is a bit better pled than Ms. Dees', but that's the overlap.

COURT MJ: So, in your conferral correspondence, you know, I had a chance to review that as well with defense counsel regarding the motion to set aside a default in your request for disqualification of the Colorado Attorney General defendants. It seemed to me that it was your position that the defendants had not shown good cause to set aside default under Rule 55. However, is it your position that the disqualification of the AG would be good cause to set the default aside?

I mean, I just -- and then in your motion to disqualify, you state that, and I'm going to quote, the

Kevin P. Carlin, RMR, CRR

20

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

non-disqualification of defendants' counsel is the principal reason for the entry of default.  So, it appears to me, I can't help but wonder that you have sought default strategically, you know, as leverage for the attorney general to not object to your demand if they withdraw as counsel.  And, you know, you can't do that.  But that's the way it appears to me.

MR. GREGORY:  Your Honor, it's -- it's stated in those correspondences, and actually in the prior ones, we had continually, you know, raised this issue of disqualification asking to meet and confer on that particular issue.  And the point is, you know, in that exchange, we never had a meaningful meeting and conferral as to these disqualification issues.

And when I am saying that the default entered because of the disqualification issue, my point is that's what we should have been meeting and conferring about, and had we had that meaningful meeting and conferral, there could have been, you know, all sorts of discussions about extending the answer deadlines, you know, just doing something so that this case could move forward in a conflict-free way, but we weren't given the respect of, you know, just having that conversation.

And instead, if you look at that meeting and conferral, it's the Attorney General's office always coming back and saying, you need to talk to us about your motion to dismiss and its merits, but we won't talk to you about the merits of disqualification.  That's my frustration, and that's, you know,

Kevin P. Carlin, RMR, CRR

21

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

essentially why the application for entry of default was lodged, was we did not have the legitimate conversation that we should have been having that whole time.

COURT MJ:  You also argue that the attorney general is precluded from using the resources of their office to represent public employees named as defendants in actions brought under the Whistleblower Act, and I saw the footnote where you include in your complaint the seal -- the parallel case that we have that includes the claim for violation of, you know, the Whistleblower's Act, and the possibility of refiling that claim into the present case.  But you say that the AG is statutorily prohibited from its continued representation.

So, I mean, can you explain to me how -- how this argument -- I mean, it just seems premature.  And again, I mean, all of these arguments that you're making, they seem to be used as leverage here.  And, I mean, I think, you know, everyone has an interest in, you know, whatever pleadings are going to be filed, you know, and -- and that -- that we start to get to this case on the merits, but -- but it just -- it just seems that there's, you know, leverage.

And I will be talking to the defendants as well, but I'm just trying to understand that -- and I mean, it just, again, seems like leverage to get them to not object to you having them off the case.

I mean, you don't -- I mean, you're suing -- you don't

Kevin P. Carlin, RMR, CRR

22

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

get to pick who you have as counsel.  You don't get to pick, you know, the things that you're wanting to have here.  And I mean, you argue that their interests are not aligned.  I'm not sure that -- that that's an interest that you should raise.  And I can't help but feel that, you know, you're in everyone else's lane except your own.  You know, I mean, you've got -- you've got things that you've gotta prove.  This is your burden here.

And you're trying to -- it seems like, you know, your attempts to stack the parties here is getting us away from the merits of the case.  I mean, I have those questions.  I'm not necessarily being accusatory, but as I read the briefing, I can't help but have these questions.

MR. GREGORY:  Your Honor, if you look at this case and even the other case, I mean, what you will see is the inherent problem from the beginning of both has been conflicts of interest.  And all I am asking for is that we have conflict-free representation of the interests of the State of Colorado.  This is an odd situation where you have the Attorney General's office, which is charged with enforcing Colorado's fraud and public corruption laws, standing in the shoes of its public officials and others who are accused of such fraud and such corruption.  There is an inherent problem with that.

Beyond that, what we have here is the law says that in a certain type of representation, it's just not even possible for the Attorney General to provide that.  It's this

Kevin P. Carlin, RMR, CRR

23

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

understanding that if a whistleblower has been retaliated against, which is analogous to what you have under the False Claims Act, and what I am raising as my claim, it is inappropriate to pit that whistleblower against the power and the force of the Government to vindicate, you know, what has happened to them.

THE COURT:  Can I ask a question here?  Are you talking about count 41 that you moved over into --

MR. GREGORY:  Correct.

THE COURT:  So, I will just cut to the bottom here, cut to the chase.  It looks to me like you, quote/unquote, severed that from this case, moved it over to this case to require disqualification of the attorney general's office.

MR. GREGORY:  If that's, you know, what it looks like, it's essentially a similar claim as the whistleblower protection act, which would require that disqualification.

THE COURT:  So, why not leave it in case number 0190 where it was, and didn't create a problem?

MR. GREGORY:  Because in case 190, there was a dismissal order.  And if you look at the statute that relates to this retaliation claim under the False Claims Act -- Colorado False Claims Act, 24-31-1204(a), that's what defines this retaliation claim.  It specifically says in the statute that it's separate and independent and can be separated from the false claim qui tam type case.

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

THE COURT:  Don't you think it kind of reeks that you only moved over one of your individual cases, and it happens to be the one that would disqualify the Attorney General?

MR. GREGORY:  I don't know what the appearances look like.

THE COURT:  I'm telling you what it looks like.  Do you think it reeks?  That's my question.

MR. GREGORY:  It doesn't -- I think that's an opinion.  It doesn't reek.  It essentially is trying to vindicate what that statutory provision was intended to do, which is protect those that are being retaliated against from having the whole force of the Government come to defend the wrongdoers.  There's --

THE COURT:  You have that exact same claim in two cases now.

MR. GREGORY:  No, I don't.

THE COURT:  Yes, you do.

MR. GREGORY:  Well, yeah.  I guess until -- I've requested the dismiss -- if necessary, I will request the dismissal in the other case of that claim.  That was what was intended by severing it.

THE COURT:  Sorry.  I didn't mean to distract.  Go ahead.

COURT MJ:  I guess this would be a good time, because I would -- I guess I'm going to move to something else, because

25

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

I want to talk about the necessary witnesses at trial piece of this, but I do want to give the defendants an opportunity to respond to the arguments that you make here.  And so, Ms. Passamaneck?

            MS. PASSAMANECK:  Would you like me to take the podium?

            COURT MJ:  If you want to sit and pull the mic down, that's fine too.

            MS. PASSAMANECK:  Okay.  Excellent.  In terms of Mr. Combs and the discussions that he had with Mr. Gregory, I just heard Mr. Gregory say that the purpose of that was to provide counsel to Mr. Gregory.  It was not the creation of an attorney-client relationship regarding the facts of this case. I also heard him describe that both actions involved complaints about judicial misconduct.  That's kind of the same thing as saying, well, we both have First Amendment claims.  They're not related to the same nucleus of facts.

            So, to me those are two different things.  I will also notice in terms of the strategy of bringing this motion to disqualify, Mr. Combs put in a notice of appearance in November of 2025.  This motion to disqualify was not brought until March, after default was entered.  This delay suggests strategy of kind of creating this leverage.  Motions to disqualify should be brought promptly, because if there is an issue, it should be dealt with immediately.  This delay suggests there really wasn't

Kevin P. Carlin, RMR, CRR

26

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

an issue to begin with.

So, I don't believe there was a creation of attorney-client privilege, a relationship regarding the facts of this case. And even if Mr. Gregory believed that some form of relationship was created by him sharing information, it wasn't regarding facts of this case. And so for that reason, there hasn't been any type of conflict that would be a basis for Mr. Combs' disqualification, much less disqualification of the entire Attorney General's office.

COURT MJ: Well, but in his reply, you know, he, you know, you know, Mr. Gregory did provide additional information. Again, you know, I read it as best I could, because I got it at the 11th hour, but he does provide additional information that enlarged his conversations with Mr. Combs. And according to Mr. Gregory, it appeared to be more than just requesting counsel. What do you say to that?

MS. PASSAMANECK: So, I believe that conversation, in looking at what he said about that, was a discussion to determine who would be representing Mr. Gregory. And this is only taking what he said. And again, I also read it at the 11th hour. That does not in and of itself create an attorney-client privilege, and the scope of that conversation was for purposes of determining who should be representing Mr. Gregory.

COURT MJ: But he also says that he made Mr. Combs aware of a number of the current common clients that had

27

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

violated his rights and behaved unlawfully.  And I get sharing with him or venting, you know, with Mr. Combs about, you know, his lack of trust and that, but, you know, obviously he can't state for -- in the motion, because of his duties, and his obligation to his duties, but I mean, there was more -- it did allude to the fact that there may have been more conversation. What do you say to that?

MS. PASSAMANECK:  I think that scope of that conversation was still in terms of determining a relationship and representation.  It wasn't the creation of attorney-client relationship, and he hasn't identified any facts, because his complaints about the process, the judicial nomination process, the misconduct proceedings, are documented in public complaints, public statements that he's made.  There hasn't been any identification of information that Mr. Combs would have been given that would create a basis for some prejudice to Mr. Gregory here by having Mr. Combs represent the Attorney General -- the defendants in this case.

COURT MJ:  Were you planning on -- were either of you planning on presenting some evidence today?  Because I think, you know, just to kind of get to the meat of this, you know, I don't mind placing, you know, Mr. Gregory on the stand under oath to kind of figure out what those conversations were.  I'm not suggesting that you do that, but I am open to that.

MR. GREGORY:  Your Honor, I mean, just to, I guess

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

clarify one part of the chronology here, that conversation with Mr. Combs happened prior to the filing of any of these lawsuits. It was the fall of 2024. And that is in the correspondence that was provided. That said, at the outset of the hearing today, in order to preserve our record on appeal, I had submitted a offer of proof as to where I would have asked questions of witnesses if given the opportunity with the ability to serve those witnesses with subpoenas seven days prior to the hearing. So, just, I guess, to put that on the record.

THE COURT: I have not seen the offer of proof or anything like that.

MS. PASSAMANECK: It was filed at 9:39 a.m. this morning. It's about 50 pages long.

THE COURT: Was it after the hearing started?

MR. GREGORY: Correct, Your Honor.

THE COURT: Okay. So, that's not very helpful, but we will print it out. Is it -- since you filed it, what is your offer of proof on this subject?

MS. DeFRANCO: I will let Mr. Gregory -- I just wanted to apologize to the Court. Mr. Gregory sent that to me early this morning, and I couldn't get -- I couldn't get it into the system. And he ultimately ended up doing it when we got here. So, I apologize that it was that late.

COURT MJ: And, Mr. Gregory, even when this case was called, you could have notified the Court that you had just

29

25-cv-3361-KHV-GEB      Motions Hearing      03-26-2026

filed a document.  And this is the kind of thing that cannot happen as we go through the conduct of discovery in this case. I mean, if you're going to rely on a proffer of information that you're going to state before this Court, you should have let us know that early on when this case was called.  Why didn't you do that?

MR. GREGORY:  Your Honor, I thought that the notice was provided in the motion that was filed yesterday that I would be offering this offer of proof.  I do apologize.  I'm happy to make those explanations in the future.  I did not realize that -- and it's referenced in the motion, and filing it wasn't --

THE COURT:  Just for the record, I'm not going to consider anything in the offer of proof which was not submitted to the Court in a timely fashion.  So, you've made your record. Do with it what you want, but I'm not considering anything which is in there.  If you have matters which you would like to testify to, you can offer that testimony, and that would be preferable to an offer of proof.  In fact, I would say it would be much better than an offer of proof.

MR. GREGORY:  And I'm happy to testify to my conversations with Mr. Combs, if that's what the Court would desire.

COURT MJ:  So, are you prepared to examine Mr. Gregory on the conversation?  Just -- and it's -- just so we don't have

Kevin P. Carlin, RMR, CRR

30

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

to guess about it.  I mean, you know, this helps us know the nature of the conversation, and this helps us know --

MS. PASSAMANECK:  I understand, Your Honor.  If Your Honor would prefer that testimony, I am happy to examine Mr. Gregory.  Or since it is his burden, that is something that I think Ms. DeFranco would go first, and then I would cross examine.  I will say, again, I don't think -- I feel like this has been a bit of a moving target.  He provided his motion to begin with where he said this conversation, and now we're starting to hear more -- we filed our opposition saying what you've provided isn't sufficient to show, you know, a relationship.

And I just come back and reply, he still hasn't provided details, and now he's going to provide it again.  He's getting multiple bites at the apple here.  And again, we are happy to, you know, kind of go with the flow here with whatever the Court would like.  I don't think testimony is necessary given that, again, this motion is untimely, and looking at the facts he's already proffered this isn't sufficient.  But if the record needs to be made --

COURT MJ:  If you elect not to, that's fine.  I just, you know, I just -- I wanted to be able to fully consider this situation and get to what the conversation was.

MS. PASSAMANECK:  Right.  No.  I -- understood, and Mr. Combs is not here, so I think if there is a factual issue,

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

that is something that we could present later.  But again, I don't even think we need to get to this question of what precisely was said, whether there is just a factual dispute about that, and whether it is sufficient to create a conflict that would disqualify either Mr. Combs, or frankly the entire Attorney General's office.

COURT MJ:  Mr. Gregory, I see you standing, but let me let them complete their argument, and I will come back to you.  Everybody is going to get a chance to say what they need to say here, so we don't -- to minimize us writing any more after this hearing.  So, you can continue.

MS. PASSAMANECK:  That was all I had to say on the testimony part, and why I don't believe it's necessary for this purpose.  The one item I did not address was the Whistleblower Act.  I'm happy to address that, or I can wait until after we decide the issue of testimony.

COURT MJ:  Okay.  Did you have a -- Mr. Gregory, did you have a comment with regard to testimony?

MR. GREGORY:  I did, Your Honor.  As far as the testimony, I can just generally make the offer of proof, which is in my conversation with Mr. Combs, I did raise my concerns.  When he first called me, I had kind of inquired whether someone was actually suing on my behalf.  I was surprised that he had contacted me.  But I detailed to him that there was this background that I had been wrongfully terminated through my

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

employment, and it was getting into the details and the substance of that, the people involved, that Mr. Combs came back and said, well, we're going to need to appoint a special assistant attorney general for you in this case.

Beyond that, you will see in the motion itself, the exhibits of that correspondence that I pulled from my email back, you know, when it happened, there is an indication that these were substantive conversations I was having with Mr. Combs. And probably the most critical fact in all of this, as the people are trying to, I guess, characterize this as it wasn't an attorney-client relationship, it was just the selection of counsel, the real problem was I kept asking for input in who was going to be appointed as my counsel in that case, particularly given that I expressed to Mr. Combs that I did have interest as far as a prospective lawsuit, and that I needed those to be protected.

And despite my request for that input, participation in that selection process, it was denied, and the Attorney General's office just went ahead and appointed Andrew Ringel of Hall & Evans as my SAG in that case.

COURT MJ: So, this is the Dees case that you're talking about, and I will -- you're having all of these conversations about you and your relationship or lack of relationship with the defendants during another case? I mean, is that what you're -- because, I mean, I --

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

MR. GREGORY:  No.  I was bringing up the conflict that existed between the Attorney General's office and me, and how that would impact the Attorney General's office representing me in the Dees case.  And that was the reason that they, you know, determined a SAG needed to be appointed.  However, the point of conflict between us at that time was I wanted to say, just as I had as an executive director in selecting the SAG who would be representing us.  Because this did happen previously twice that we had gotten a special assistant attorney general appointed to investigate the Coats matter.  And then when there was intimidation and retaliation from the Office of Attorney Regulation Counsel, SAG David Kaplan was appointed to represent me, the commissioners -- yeah -- me and the judge and attorney commissioners in responding to what was essentially a attorney discipline complaint brought by Attorney Regulation Counsel.

MS. PASSAMANECK:  If I may?

COURT MJ:  You may.

MS. PASSAMANECK:  One point from his testimony that I don't think was quite clear, I would like to point out, Mr. Gregory left the position of executive director in January of 2024.  This conversation with Mr. Combs was post termination about an action that was filed that named him very clearly about obtaining representation, and not looking into claims based on some ongoing conspiracy that Mr. Gregory believed had occurred during his employment.

Kevin P. Carlin, RMR, CRR

34

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

In terms of the -- and he also noted that there was a dispute about who would represent him.  That is not part of the attorney-client relationships.  That's about figuring out who should be representing him given that, again, similar to the Attorney General's relationship in representing public officials in their duties and obligations as part of their job, that was why a SAG was provided.  And if you look at the regulation, there's no requirement or no obligation that an individual has the right to choose who represents them when it's part of their public duties.

COURT MJ:  Yeah.  I mean, that is true, Mr. Gregory.  How does the input on the special assistant, you know, raise and -- you know, a relationship?  I mean, I -- I --

MR. GREGORY:  It's the vindication of my right to have conflict-free counsel appointed to represent me in this circumstance.  And the fact that I wasn't given that input is reflective of this larger problem.  How can the Attorney General himself be using his office to defend him against an allegation of public fraud or official misconduct without a conflict as far as what the actual institutional interest of the State of Colorado would be?

COURT MJ:  Any additional comments?

MS. PASSAMANECK:  Unless Your Honor has any questions or would like me to address the Whistleblower Act.

COURT MJ:  So, with regard to them being necessary

Kevin P. Carlin, RMR, CRR

35

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

witnesses at trial, I presume that you anticipate, because your reply says so, but I just want to confirm, do you anticipate calling any defense counsel of record and other attorneys in the Colorado Attorney General's Office at trial?  I mean, I saw your reply, and it looks like there is some individuals that you intend to, so is that the -- are those the ones?  I mean, I haven't seen your proffer.  I don't know about that.  But who exactly -- you know, is it more people than you identified previously?

MR. GREGORY:  I don't think -- I mean, it's -- it's defense counsel would be witnesses, and it's pretty much what we put in our reply and our motion where that conflict is.

COURT MJ:  And so what kind of evidence do you -- would you expect them to testify to at trial?

MR. GREGORY:  To the extent in some of these meetings and conferrals there has been threats made, intimidation, that would all relate to my retaliation claim.  And so that evidence would -- you know, would kind of apply there.  Also, I think, if you take a step back and you look at what this complaint actually contains, it's the Attorney General's office that has provided this advice that my public comments, my speech should be disregarded, not published into the public record, and essentially that I am subject to censorship, and that would, again, bring folks in as necessary witnesses if this matter went to trial on the merits.

Kevin P. Carlin, RMR, CRR

36

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

COURT MJ:  So, the evidence that you expect defense counsel to testify would be regarding threats, regarding this censorship issue, I mean, that you claim, you know, exists in this case.  At this point, before we get into discovery, just so that I kind of have an idea of -- are you aware of any other witnesses or any other, you know, documentary evidence that could be used to support, you know, your arguments about this at trial?

MR. GREGORY:  I don't, you know, quite know.  I think I've been comprehensive in who I've listed as the defendants and who I have -- you know, who I've listed well in this offer of proof and other documents as, you know, who might be a witness at trial.  However, one thing I do want to emphasize, part of the censorship that has been occurring is occurring before this Court.  It's -- the Attorney General's making these motions and requests to suppress my filings of documents that should be matters of public record, thus delaying and providing some opportunity to ignore the facts that I'm bringing to the attention of the Court, but more importantly, that I'm trying to bring attention to the public as well.

COURT MJ:  So, is it possible that other witnesses or documentary evidence to support your arguments might come to light in the course of discovery?  I mean, I'm just trying to kind of get a handle on --

MR. GREGORY:  Yes, there is, Your Honor.  And it's as

Kevin P. Carlin, RMR, CRR

37

25-cv-3361-KHV-GEB     Motions Hearing    03-26-2026

simple as, you know, I think as the question as to whether or not the State Auditor's office had communicated information to the AG's office, and that caused the suppression of the section 144 affidavit.  But again, these things, you know, would deserve some inquiry through the discovery process, and we're not going to know with any great certainty what the witness list is going to look like until we get into that discovery a bit further.

MS. PASSAMANECK:  I have grave concerns about any discovery in this litigation advice that would obviously be privileged.  What you heard just now is speculation about what may or may not have occurred, which isn't the basis for disqualification.  He's also stated that the attorneys on the record -- the attorneys sitting here at this table have made threats.  Keep in mind, Your Honor, that he has filed IEC complaints against the attorneys at this table, has asserted that we have committed crimes in litigating this case, and that's just not the basis of the claims here.  We are just trying to litigate this case, Your Honor.  And I don't think that's a basis for -- the accusations being made just aren't a basis for disqualification.  I think they're a basis for intimidation.

COURT MJ:  Mr. Gregory, I will give you the final word.

MR. GREGORY:  Your Honor, I primarily submit on what we've provided you in the briefs.  I think everything is

Kevin P. Carlin, RMR, CRR

38

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

documented there, including the threats that I referenced as far as the meetings and conferrals.  But again, I mean, this just comes back down to there has not been an honest discussion about how this representation is in any way fair, is in any way, you know, going to allow us to get at the facts if this case were to move forward to trial with the Attorney General's office representing the individual defendants.

COURT MJ:  But, I mean, you're the one that precludes that from happening.  I mean, we get a proffer of what your evidence will be at the 11th hour --

THE COURT:  13th hour.  Excuse me.

COURT MJ:  Okay.  And as the defendants have indicated, you know, I mean, motions -- that is correct.  Motions to disqualify should be filed immediately.  I mean, you can't, you know, have ire because, you know, things didn't go your way, and then want to disqualify everybody, and then pick and choose who you want to have as -- you know, as defense counsel in this case.

And so I mean, I -- I am inclined to find that your allegations -- quite frankly, they are insufficient to establish, you know, representation by the defendants or adversely affected, and that it affects the integrity of the judicial process.  I intend to write a formal written motion -- I mean written memorandum and order on this, because you folks went through the trouble of briefing it, but I'm going to deny

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

your request.

I just -- this is not -- I just -- this is -- this is strategy, you know -- you know, Mr. Gregory, this is improper. You know, the way that you have structured the filing of the pleadings in this case, the allegations that you make, and your characterizations, I think are improper. I'm going to deny your motion.

MR. GREGORY: One point, Your Honor? If you look back at the correspondence that is provided as part of this briefing, this issue of attorney disqualification was raised early in time, and it has continued for months.

COURT MJ: But that's not the only thing. That's not the only thing here. It's -- it's a collective.

MR. GREGORY: I didn't delay in raising this issue, is the point that I'm making.

COURT MJ: I understand.

THE COURT: All right. Anything further on that issue?

MS. PASSAMANECK: No, Your Honor.

THE COURT: Okay. Let's talk about the motion to set aside the default judgment in this case. So, the facts here basically are undisputed. They're very well spread on the record from both parties' point of view. I don't see any need for further evidence. The only real issue is whether defendant acted -- whether defendants' conduct was culpable. And I will

40

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

ask you -- you know, I assume that no one is going to get on the stand and testify that they acted culpably, because that would be inconsistent with everything else that they have filed here.

So, this is a classic case where we have no direct evidence of the state of mind.  This comes from jury instructions.  We tell this to the jury all the time.  We don't have any direct evidence about what a party's state of mind is.  So, we have to look to circumstantial evidence, which is what did the party do?  What did the party not do?  What did the party say?  What did the party not say?  And from that, which in this case is undisputed, we can make reasonable inferences about what the person's state of mind was.

So, when I look at the record in this case, it seems clear to me that defendant did not engage in culpable conduct in failing to file an answer in this case.  The circumstances were very confused.  By the time the clerk entered default, defendant had actually filed a motion to strike the application for default.  So, I'm not quite sure how this made it through the clerk's office, but whatever.  It was a four-day delay.

It had no impact on the overall administration of this lawsuit, which had been pending -- I don't have that date of filing right in front of me, but probably for a year at that point.  And I would say that most of the responsibility for the delay was because of plaintiff.  And so, you know, I think plaintiff tries to extort concessions through the meet and

Kevin P. Carlin, RMR, CRR

41

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

confer process, which is why we -- I'm not going to follow that anymore in this case. It's a source of contention and satellite litigation.

So, bottom line, the delay was short. It would not materially delay the overall course of this litigation, and defendant has presented colorable defenses. Defendants do not need to show that they're entitled to judgment on those defenses at this point, but they have made a colorable showing, which is sufficient for my purposes here today, and I think we are all aware that there is a very strong preference for deciding cases on the merits instead of by default.

I mean, I can't help but note that to the extent there's culpability, I think Mr. Gregory just told us that the reason he filed it is because defendants wouldn't talk to him about recusing from the case. That's not a professional, ethical, acceptable use of pleadings under Rule 11. So, the motion to set aside the default is sustained. Defendants have filed a motion to dismiss, and you need to respond to that within the time, 14 days from when it was filed. And we will take that up in due course.

We also have the issue of defendants' amended motion to restrict the affidavit of judicial bias or prejudice according to 28 USC Section 144, and require plaintiff to file future documents under level one restrictions in the first instance.

So, I guess I have one question for you, Mr. Gregory.

Kevin P. Carlin, RMR, CRR

42

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

I read this in probably ten different pleadings, you to say you don't have any obligation to keep any information confidential that you learned when you were in your job as executive director, because you have a First Amendment duty and right to speak out.  There is not a single case that you have cited in any of your claims which -- and arguments which waives the First Amendment rights against the valid interest of the State of Colorado in preserving the integrity of the judicial discipline process.  What am I to make of that?  Because I could overrule your request simply on that basis.

MR. GREGORY:  And, Your Honor, I think you're mischaracterizing what I have in those filings.

THE COURT:  Okay.  Then tell me.

MR. GREGORY:  If you look at the affidavit itself, it explains that I'm not saying that I have no confidentiality obligation to any information that I have learned as executive director.  There is an exception that is provided by Rule 6.5 of the Colorado Rules of Judicial Discipline if there are circumstances where it is necessary to disclose information in order to protect the function of that disciplinary system, essentially protect the public from judicial misconducts or the like, if there is judicial misconduct as part of the disciplinary system itself.  Not only, you know, do I have a right to report that, and report that publicly or otherwise, but I have a duty to do so.

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

And that's my entire argument. You look at the affidavit itself, what I am saying is that this information is showing that there is times when judges have known information that they should have themselves reported to Judicial Discipline, that appropriate action should have been taken. It was concealed, and that created, you know, essentially what's an ongoing 25-year pattern of misconduct.

THE COURT: What's 6.5?

MR. GREGORY: It's the -- it determines disclosures of information from the commission.

THE COURT: I thought that applied only to existing employees and staff of the commission, and it wouldn't -- let's pull it up and see.

MR. GREGORY: 6.5 would be right in conjunction with 3.5 that says the rules essentially apply to everyone, whether they're a former participant or current person. And again, this would go to, you know, essentially the core of what this case is about. If all of the sudden we're going to distinguish that just because I'm wrongfully terminated, I all of the sudden cannot disclose all the things that are going wrong, I don't see how that in any way provides an exception to my First Amendment rights as what the procedural rights would be.

THE COURT: So, this is a big problem in a lot of your arguments. You make representations concerning the law as if they are self evident. For example, that going to -- ahead with

Kevin P. Carlin, RMR, CRR

44

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

today's hearing would be a violation of your constitutional rights to due process.  Going ahead -- preventing you from publicizing this information to the public would be a violation of your First Amendment rights.

You never cite any authority.  You don't cite any authority that the Colorado State Auditor has authority to accept service of process.  You have the -- you seem to live in kind of a make believe world where your wishes come true just by writing them down in paper and submitting them to the Court. And so read me the language from 6.5 which authorizes you to speak.

MR. GREGORY:  Sorry.  The internet is not cooperating.

THE COURT:  I can read it.  Are you talking about --

MR. GREGORY:  Subsection D, I believe.

THE COURT:  Subsection D?  I don't see a subsection D.

MR. GREGORY:  One moment.

MS. BROWN:  Your Honor, I do have a printed copy of the rule, if that would help?

THE COURT:  That would be great.

MS. BROWN:  May I approach?

THE COURT:  Sure.

MR. GREGORY:  Yeah.  If you look at page 27 of my affidavit, footnote 11, and as I explain in it, although informal discipline is generally confidential, affiant has an absolute privilege to make this disclosure according to Colorado

Kevin P. Carlin, RMR, CRR

45

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

Rule of Judicial Discipline 6.5(d) for the following purposes. Subpart one, the disclosure of records and proceedings are reasonably necessary for the commission or the executive director to fulfill the commission's constitutional mandate under Rule 1(b), and/or, item two, and this is the one that would apply more broadly, is that the disclosures are in the interest of justice or public safety.

And you can also see, you know, Colorado's constitutional section 23, subpart (3)(G)(i), which recognizes an absolute privilege in reporting judicial misconduct through the judicial disciplinary system. That also has to be understood in the context of -- I believe it's Article 13 of the Colorado Constitution, which recognizes impeachment along with the Judicial Discipline process as being two separate things, where if necessary, the legislature would also be privy to the same absolutely privileged reporting judicial misconduct. Contrary to the categorization, I do reference the law directly in the affidavit.

THE COURT: If you look at Rule 6.5 as a whole, I mean, the default position is that all records and information are confidential, but that when the commission has determined that there's a demonstrated need to notify an appropriate government agency, including law enforcement, in order to protect the public or the judiciary or to further the administration of justice, the commission can authorize the

Kevin P. Carlin, RMR, CRR

46

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

disclosure of information.  And so that's under section (d)(2).  And under section (g), the commission can also find that information that's become generally known to the public and in the interest of justice should be publicly disclosed.  It seems fairly self evident that nothing in Rule 6.5 authorizes a former employee of the commission to reveal confidential information.

MR. GREGORY:  There isn't any confidential information that's being revealed here.  What I am reporting is that there is judicial misconduct that has happened in addition to anything that happened before the commission itself.  We dealt with this same issue in a case matter of Kiesnowski, in which it began with a private disciplinary outcome, and then the judge, despite that private disciplinary outcome, committed further judicial misconduct, making, you know, what had happened previously relevant to his ultimate sanction, but also to the gravity of the judicial misconduct that continued to occur.

THE COURT:  So, did you get a chance to review -- so, the United States filed a redacted copy of the attachments to your affidavit, and it's highlighted parts of your affidavit which it says disclosed information that you acquired through your employment at the commission.  Did you see that?

MR. GREGORY:  Yes.  I saw the redactions.  I disagree that any of those redactions apply to any sort of confidential information here.  The fact that I am a witness to judicial misconduct, whether that happened in the realm of, you know, me

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

acting as an executive director or even as a commission member, doesn't change the fact that I have an obligation to make sure that that judicial misconduct is addressed.

THE COURT:  Okay.  So, here is what we're going to do, because again, this is -- this example of really inadequate way of teeing up the issue, how do you think we should decide whether the information which the United States Government has highlighted is information which you acquired in the course of your employment?  How should we decide that?  Just take your word for it?  Take the Government's word for it?

MR. GREGORY:  It's the state government, Your Honor. I'm not understanding -- the Court can make a determination as to whether or not, you know, this information -- you know, there would be any claim of confidentiality to it.  But again, I mean, it's reporting fraud.  It's reporting a crime.  It's reporting, you know, that sort of thing, and would clearly, my understanding of the First Amendment, fit within what that protects.

THE COURT:  Okay.  So, how would the Court -- when you say the Court can figure this out, how would I look at the information which is in your affidavit and know where you got that information?

MR. GREGORY:  It doesn't matter, Your Honor.  I am not disclosing a record of the commission.  I am disclosing my personal knowledge.

Kevin P. Carlin, RMR, CRR

48

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

THE COURT:  Okay.  So, here is what we're going to do.
I think this argument is frivolous based on the authority which
you have cited so far.  So, I'm going to sustain -- let me --
Mr. Martin, do you have anything you want to weigh in on this?

MR. MARTIN:  Your Honor, I don't think that the United
States has a position on this.

THE COURT:  Okay.  So, I'm going to sustain -- yes?

MS. PASSAMANECK:  Apologies, Your Honor.  This is
state government confidential information.  So, if Ms. Brown --

THE COURT:  Are you the ones that filed the affidavit?
I'm sorry.  The highlighted -- I'm sorry.  I got confused there.
So, what would you like to say on this point?  Go ahead.

MS. BROWN:  Thank you very much.  The only point I
would like to make is there are two colors on the proposed
redactions which we filed.  Orange redactions are the
information that we believe should be held confidential under
Colorado Constitution and related rules regarding Judicial
Discipline.  We believe that is the information that Mr. Gregory
learned about during the course and scope of his either
membership with the commission or service as executive director.

There are also red-shaded highlights.  That is for
Federal Judicial Discipline.  We filed that before Your Honor's
order, which came through on Tuesday, I believe, of this week.
So, we're happy to remove those redactions in light of that
order, and refile a new copy, if that would be helpful.

Kevin P. Carlin, RMR, CRR

49

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

THE COURT:  Okay.  So, I think what we need to do here is sustain the motion to -- so, we're going to restrict the affidavit, and we will place under restrictions the part which you claim resulted from his employment.  And if you disagree with that, then it's on you to come in and file a motion to lift those restrictions, because I think they've made a prima facie showing that you're releasing confidential information.  You can come in and move to lift those restrictions, and you can cite cases which talk about how we weigh the First Amendment obligations.  You can brief Rule 6.5 and lay out a more fulsome explanation for your position that you have an unrestricted right to talk about judicial misconduct.

MR. GREGORY:  And, Your Honor, I guess my concern here is that, you know, as you had put in your prior order, the ability to disclose complaints on the plaintiff's part, it was put into my briefing, that *Ramirez* case sort of allows this. Whatever this restriction is, I want to make sure that the Court is saying that it is as narrowed as possible.

Part of the prejudice that's happened thus far is that this document which explained the basis for Judge Domenico's recusal from this case has not been available to the public. And the longer that that goes on, there is a harm in essentially the censorship that's happened with it.

THE COURT:  I don't see any harm, because number one, it's moot, because he's off the case.  Number two, how is the

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

public harmed by not knowing what was in the affidavit that is -- has led to his recusal?

MR. GREGORY:  It's part of the briefing, and I forget which of these many motions.  It's in there.  I think it was the original response to the motion to restrict that was overruled by the Court, or denied by the Court, and then on the amended one.  But in that briefing, I had explained the importance of open courts, the ability to have these proceedings not occur in secret, but so that the public could view them and have informed opinions.

All of that said, my concern is that this affidavit, parts of it that are unobjectionable, need to be released immediately.  And if we are going to, you know, brief these other things, this issue of where I learned of information and whether or not that, you know, makes it confidential or not, I'm happy to engage in that process, but we do need an order releasing the seal on this affidavit as soon as possible.

THE COURT:  Okay.  Well, that's not going to happen, because did you hear me?  I said we're going to sustain the motion to restrict it.  So, they're going to restrict the part which they claim is information which you obtained by virtue of your employment.  They will unrestrict the part that deals with federal judicial complaints.  So, that will be available.

In the future, any time you file any information on the same or similar types of claims, you will file it with a level

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

one restriction in the first instance.  And I will deal with those on a prompt basis like I did with the -- with the emergency motion yesterday.

We can place things under seal for a very short period of time just to give a chance for the parties to evaluate, but we are not going to engage in this weaponization of the privilege process and the confidentiality process and make satellite litigation over the level of restrictions, because most of the stuff that you're trying to make public doesn't even relate to the underlying issues.  You're just trying to use your pleadings as a vehicle to dump a bunch of stuff in the public record.  I don't know why.  I don't know what your motives are for doing that, but that's what it looks like you're doing.

Nobody is a bigger fan than me of transparent, open courts.  I have probably denied more motions to seal than any other judge in the District of Kansas.  It's almost a article of faith that it's a very, very, very high burden to get something under seal.  But in those situations, I'm not dealing with somebody who took a job, agreed to certain conditions and ethical obligations, and then left the job and decided that those rules didn't apply anymore.

So, I need to have a thorough briefing of why you think you have a constitutional right to reveal this information.  And if we have to have a hearing, and I hope we don't, because that is a big distraction from where we're trying to get in this

52

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

case, but we will do it if we have to.  But it's on you to prove the negative.  Prove that you did not get this information through your employment.

MR. GREGORY:  And, Your Honor, I am happy to make that briefing, but as far as this Court's order, I want some clarity so that I am not in a position where I am disobeying the Court's order.  Are you specifically saying that, you know, if there is an issue as to information in a document, if it was learned in my employment, I guess, as executive director, there needs to be a level one restriction, but that's the limit of it?

We are not, you know, all of the sudden turning, you know, this court into, you know, essentially a bureau of censorship where everything that I'm filing is, you know, going to be filed restricted, and then, you know, we get to figure out what -- where they object, and where they don't?

THE COURT:  You don't need to restrict the oral history of Judge Kane.  We don't need to restrict your application to sit on the Supreme Court.  A lot of stuff that you attached to the most recent rounds include things that have nothing to do with the underlying motions.  And so it looks to me like you're just using some of your affidavits and motions as a big document dump.

MR. GREGORY:  Well, I guess to that latest affidavit, is there anything in there specifically that could be argued as being subject to restriction?  I'm having a hard time --

Kevin P. Carlin, RMR, CRR

53

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

THE COURT:  Well, they filed an emergency motion to restrict information regarding Colorado State Judicial Disciplinary investigations you learned about as an employee. And so yes, I guess there is.  Do you want to identify it for Mr. Gregory?

MS. BROWN:  Yes, Your Honor.  We would like to make a brief record on that.  As the Court can imagine, the pleadings in this case are many and voluminous.  Mr. Gregory's exhibits for that particular affidavit exceeded 500 pages.  On their face, we had concerns that there was information in there particularly with regard to Federal Judicial Discipline issues, and now we understand the Court's position on that.

At the time, we were sort of required to essentially drop everything, skim the motions, skim the exhibits, understand there's likely something in here that could be confidential, file the emergency motion so we would have time to digest, which is the -- was the intent behind our ask for the level one restriction in the first place, and we appreciate that.

However, after we had time to really sit with the documents, identify the history that occurred, and really compare the Colorado Judicial Discipline that was referenced in those pleadings against what has been made public, we do not think any longer that there are confidential materials in there, and we are happy to withdraw that emergency motion.  But I do think it goes to show why this is necessary.

Kevin P. Carlin, RMR, CRR

54

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

THE COURT:  Okay.  Well, you should have told us that at the beginning.  We could have saved some time.

MS. BROWN:  I apologize.

THE COURT:  So, that motion is moot.  But we have the original motion, which was to deal with the attachments to the original affidavit of judicial bias which was lodged against Judge Domenico, and so we need to deal with the ones there. You're going to redact, and that will be fine.  Well, plaintiff should redact and refile.  So, we will keep the -- let's see. How should we do this?  Keep the original under -- put it totally under seal, and you can file a revised affidavit in support of that, which has limited redactions?  How do you want to do that?

MR. GREGORY:  Your Honor, I disagree that any of the information in that affidavit is confidential.  If anyone should have the obligation to submit the redacted copy, it's the AGs, because they're saying these are the things that we think are sensitive.  The rest of it all can go out, and we can argue over whether the redactions that they have requested are, you know, in fact confidential information or not, and the decision can be made there.  But it should not be my burden to go through there and self censor or whatever, I guess, is being proposed here.

THE COURT:  So, I mean, I think they've made a prima facie case that this is information which you received, so the burden of coming forward with evidence really is on you to show

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

that you didn't get it, that you accessed the information from some source independent of your work as executive director, and/or that the First Amendment allows you to disseminate the information even if it is confidential under Colorado law. So, that's on you.

MR. GREGORY: And I can make that motion, but it's on them if they want redactions. And you had put this in your order yourself that that should be narrowly tailored to the information that they are asserting is sensitive. The rest of it should be public immediately.

THE COURT: Didn't I just ask you how we should do that mechanically?

MR. GREGORY: Yeah. That they refile, you know, the redactions --

THE COURT: It's not their affidavit. They're not going to refile it. That's what I'm trying to get you to understand. How do we mechanically get an affidavit filed with appropriate redactions, which would be the ones that they have highlighted as derivative of your employment with -- as executive director?

MR. GREGORY: Your Honor, I don't understand. If they're the ones that are objecting to the substance of the affidavit, then --

THE COURT: You know what? I think we will just keep the entire affidavit under seal if we can't figure out a way for

56

25-cv-3361-KHV-GEB     Motions Hearing    03-26-2026

you to have a conversation with even the Court about what's the best way to get the administrative aspects sorted out.  It's not their burden.  It's your affidavit.

MR. GREGORY:  Your Honor, they have explained that they color coded this stuff in three ways.

THE COURT:  Two ways.

MR. GREGORY:  Or two ways, and one of the color codings, you know, would I guess describe what their objections are.  It's fine to apply those redactions.  But it was my understanding that they are now going to remove the other redactions and resubmit this affidavit with just the redactions that they're asking for on this particular issue.  When the Court has that, it should be fine for the Court to go ahead and just publish that updated redaction.  I don't think that this is any reason to get into an argument.

THE COURT:  It's your affidavit.  If you want it to be -- I'm going to keep the original affidavit sealed.  Okay?  If you want any part of it to be released, you look at the highlighting that they have done.  You refile it with the limited redactions.  I don't know why this is so -- you think this is so unreasonable, and it's just a clerical thing, because it's your affidavit.  You have possession of the original document.  Why can't you just refile it with appropriate redactions?

MR. GREGORY:  We can.  We will just note, you know,

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB     Motions Hearing     03-26-2026

what -- we will note -- it's fine.

THE COURT:  Okay.  I'm sorry.  What?

MR. GREGORY:  That's fine.  We will go through, apply their redactions on the particular issue, file that, ask for its immediate publication, and then do a separate brief to challenge those redactions.

THE COURT:  Okay.  You don't need to file a motion to ask for anything.  Just do what I asked you to do, which is file an affidavit with the agreed redactions that we've discussed today.  Okay?

MR. GREGORY:  Okay.

THE COURT:  You can just redact it.  You don't need anything else.

MR. GREGORY:  Okay.

THE COURT:  Okay.  The other thing is I understand you want a bright line rule about what you must file under restrictions and what you can't.  And since you don't agree that there's any information that you acquired during your employment that would be subject to redactions, we will just say any time you make an argument that involves a state or federal judge, it automatically gets filed under level one restrictions, and then we will sort it out.

Because we're not going to have this conversation about this and hold endless hearings about the source of your information.  Okay?  Especially when the information is not

Kevin P. Carlin, RMR, CRR

58

25-cv-3361-KHV-GEB   Motions Hearing   03-26-2026

relevant to the underlying issues.  So, we will look at the pleadings that you're filing.  We will look at the attachments. They will be filed under restriction if they involve state or federal judges, and if the attachments are relevant, then we will decide whether they need to be made available publicly or not.

MS. DeFRANCO:  Your Honor, I understand.  Just for clarification, if the -- if Mr. Gregory names a state or federal judge about whom there was some suggestion of misconduct, and only them; correct?

THE COURT:  Why would there be any need to discuss federal or state judges at all?

MS. DeFRANCO:  I don't know.

THE COURT:  I don't either.  Let's just start out with making it real easy, because Mr. Gregory is kind of talking out both sides of his mouth when he's talking about what he knew and how he got the information.  So, I know this seems overbroad and maybe too restrictive, but we can address it later if that's how it turns out.  I just am not going to keep entertaining these arguments which are really of no consequence when we haven't even briefed the legal issues.  So, anything that mentions a state or federal judge, just file it under level one restriction.

So, we -- I'm going to take under advisement plaintiff's response to the order to show cause why he shouldn't

Kevin P. Carlin, RMR, CRR

59

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

be sanctioned with regard to the motion to set aside the entry

of default.  With that, is there anything else that we need to

address today?

MR. ANKNEY:  Your Honor, Clayton Ankney.  We would

like to seek leave from the Court to file a motion to stay

discovery pending the resolution of our motion to dismiss.

Would that be acceptable?

THE COURT:  Why do you want to file a motion?  Can we

just talk about it here?

MR. ANKNEY:  Yeah.  We actually can.

THE COURT:  Are you listening to what we're trying to

portray here?

MR. ANKNEY:  Yes, Your Honor.  The individual capacity

defendants in the motion to dismiss raised the issue of

qualified immunity, and the state entities and the official

capacity defendants also raised the issue of sovereign immunity.

Both qualified immunity and sovereign immunity are a defense not

only to liability, but also to having to be sued and/or go

through the burden of discovery.  So, on that basis, we have --

to stay discovery pending the resolution.

THE COURT:  Any objection?

MR. GREGORY:  Yes, Your Honor.  I mean, the whole

debate in this case is the dragging on for too long, and we

don't have any answer to the merits of the claims.  The motion

to dismiss is itself part of that dilatory tactic.  There is a

Kevin P. Carlin, RMR, CRR

25-cv-3361-KHV-GEB    Motions Hearing    03-26-2026

need to move forward in this case.  If the default is being set aside, then we need to be able to engage in discovery.

THE COURT:  So, I will grant the stay of discovery. Your response will be due in 14 days, and we will make it a high priority to make -- to give you a prompt ruling on that. There's no material prejudice in delaying discovery until after that time, especially given the number of defendants and multitude of claims.  But if we deny any part of the motion to dismiss, Judge Birzer will be in immediate touch with you all, and scheduling a conference to organize discovery and submit depositions and so forth.  All right.  Well, I don't think we have anything else that we need to take up.  Thank you all, and we will be in touch.  Court is in recess.

(Proceedings concluded at 12:13 p.m.)

Kevin P. Carlin, RMR, CRR

REPORTER'S CERTIFICATE

I, KEVIN P. CARLIN, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true, and correct transcript.

Dated this 3rd day of April, 2026.

_____
Kevin P. Carlin, RMR, CRR
Official Court Reporter

Kevin P. Carlin, RMR, CRR