## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-03361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

      Plaintiff,

v.

The COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.

      Defendants.

---

### RESPONSE TO ORDER TO SHOW CAUSE—ECF NO. 82; EXHBITS 1 -7

---

The Plaintiff, Christopher S.P. Gregory, for himself and through his counsel, Ingrid J. DeFranco responds to this Court's respective March 24, 2026 Memorandum and Order and Order to Show Cause, and March 25, 2026 Memorandum and Order and Order to Show Cause as follows:

### Introduction

Plaintiff has brought two parallel actions that remain pending before this Court: *United States and the State of Colorado ex rel. Gregory, et al. v. Masias, et al.*, 1:25-cv-00190-KHV-GEB (D. Colo.) (Sealed) and *Gregory v. Colo. Jud. Discipline Rulemaking Comm., et al.*, 1:25-cv-03361-KHV-GEB (D. Colo.).

As part of previous case filings, the Plaintiff requested, following U.S. District Judge Daniel D. Domenico's recusal, that then-U.S. District Chief Judge Philip A. Brimmer communicate directly with U.S. Chief Justice John G. Roberts, Jr. to request the temporary assignment of a conflict-free Chief Circuit Judge and/or Circuit Justice to facilitate the

submission of a certificate of necessity and the assignment of a district judge from outside the

10th Circuit to hear the Plaintiff's cases.  28 U.S.C. § 292(d).  The Plaintiff's 28 U.S.C. § 144

Affidavit that caused Judge Domenico's recusal stated, in relevant parts:

> Integrity in the disqualification process and in the completeness of judicial disclosures of the grounds for disqualification is particularly important because the process of randomly assigning cases within the District is generally required to establish the public interest and/or necessity before the assignment of a case to a judge from outside the District or the 10th Circuit is considered. *See* 28 U.S.C. § 292(b) (Chief Circuit Judge authorized to temporarily assign district judges within circuit between districts "in the public interest"), (d) (Chief Justice authorized to temporarily assign district judges from alternative circuits upon "certificate of necessity" presented by receiving circuit's Chief Circuit Judge or assigned Circuit Justice); *see also Marshall v. Bacon*, 24-2076, 2025 WL 369436, at *8 (10th Cir. Feb. 3, 2025) (only Chief Circuit Judge authorized to temporarily reassign district judges within circuit).
>
> It is concerning in the present case that Chief Circuit Judge Jerome A. Holmes was aware of the extraordinary circumstances involved yet has not ordered the temporary assignment of a conflict free district judge within the Circuit or submitted a certificate of necessity to have a district judge from another circuit temporarily assigned. Chief Circuit Judge Holmes further ignored Affiant's request to have the related judicial discipline complaint against Judge Domenico heard by an alternate Judicial Council according to 10th Cir. JCR 26.
>
> The present case is further complicated by the fact that Associate U.S. Supreme Court Justice Neil Gorsuch is the assigned Circuit Justice for the 10th Circuit. Justice Gorsuch and Judge Domenico have close personal connections through their mutual membership in the Federalist Society as well as their mutual past work as adjunct faculty at the University of Colorado School of Law. *Compare* https://fedsoc.org/bio/neil-gorsuch *and* https://fedsoc.org/bio/danieldomenico.
>
> In order to avoid reassignment of this case to another district judge with personal bias or prejudice against Affiant and in favor of one of Defendants, it is necessary for Chief Judge Philip A. Brimmer

(through direct communication with U.S. Supreme Court Chief Justice John Roberts and/or the 10th Circuit Executive) to request the temporary assignment of a conflict-free Chief Circuit Judge and Circuit Justice to determine the re-assignment of this case according to 28 U.S.C. § 292(b), (d).

* * *

This Affidavit has been filed in a timely manner, is accompanied by a certificate of counsel attesting to its good faith submission, and is in the form required by 28 U.S.C. § 144. Accordingly, the re-assignment of this matter to a conflict-free district judge is mandatory and should occur automatically without District Judge Daniel D. Domenico proceeding any further. Judge Domenico's disqualification should occur immediately, without any opportunity for the Defendants to file a response or to otherwise litigate this Affidavit and further delay reassignment of this case. The extraordinary circumstances presented through the present proceedings also support District Court Chief Judge Philip A. Brimmer requesting, through U.S. Supreme Court Chief Justice John Roberts, the temporary assignment of an alternate 10th Circuit Chief Judge and an alternate 10th Circuit Justice to assign a conflict-free district judge from an alternate circuit to hear this case. *See* 28 U.S.C. $ 292(d).  *Gregory*, ECF No. 26, p. 3 fn. 1, p. 36.

The Plaintiff also expressly requested the conflict free assignment of a district judge from outside the 10th Circuit through related judicial discipline complaints contemporaneously filed against Chief Judge Holmes and Judge Domenico.

"In the public interest," Chief Circuit Judge Holmes has the authority under 28 U.S.C. § 292(a) to reassign the underlying cases to a district judge from another district within the 10th Circuit. Judge Holmes refused to exercise this authority. Moreover, under 28 U.S.C. § 292(d), Chief Circuit Judge Holmes has discretion to submit a "certificate of necessity" to request that Chief Justice John Roberts reassign the underlying cases to a district judge from outside of the 10th Circuit. Judge Holmes, has likewise, refused to exercise this discretion and/or to disqualify himself from exercising his authority and discretion under 28 U.S.C. § 292(a), (d). For reasons that also remain unclear, Chief Circuit Judge Holmes and the 10th Circuit Judicial Council have not requested that Chief Justice John Roberts transfer Judicial Complaint Nos.

> 10-25-90048 and 10-25-90070 to another judicial council as
> allowed under 10th Cir. JCR 26.  *Gregory*, ECF No. 31-3, pp. 8-9,
> pp. 18-19.

The Plaintiff would note that despite his repeated requests for the judicial discipline proceedings to be transferred to an alternate circuit's judicial council and his more recent request for direct referral of such proceedings to the Judicial Conference of the United States according to 28 U.S.C. § 354(b)(2)(B), Circuit Judge Harris L. Hartz issued an order dismissing the Plaintiff's previously filed judicial discipline complaints and holding in "abeyance" the additional judicial discipline complaints (including a complaint against Judge Hartz and the unidentified members of the 10th Circuit Judicial Council) appended to the Plaintiff's 28 U.S.C. § 455(b)(1) Affidavit, ECF Nos. 79, 79-1 through 79-7.  Exhibit 1, p. 5.  Again, the Plaintiff asserts that the refusal of Judge Hartz and the other members of the 10th Circuit Judicial Council to identify and disqualify themselves is a valid basis for judicial discipline under Canons 1, 2(A)-(B), 3(A)(2), 3(A)(4), 3(B)(4), 3(B)(6), 3(C)(1)(a)-(d), 3(D) of the Code of Conduct for United States Judges.

The necessity for appointing a conflict-free Chief Circuit Judge and/or Circuit Justice itself arose from 10th Circuit Chief Judge Jerome A. Holmes's refusal to disqualify himself from ancillary judicial discipline complaints that the Plaintiff filed against both Judge Domenico and Chief Judge Holmes.  Rather than honor the Plaintiff's request for conflict-free temporary judicial assignments outside the District of Colorado following Judge Domenico's recusal, the Court returned the Plaintiff's cases to the Clerk of Court for random assignment to judges within the District of Colorado.  After initial reassignment to Senior U.S. District Judge R. Brooke Jackson, who exercised his senior prerogative to return the cases, the cases were assigned to U.S. District Judge Gordon P. Gallagher.  *Gregory*, ECF Nos. 37 and 38; *Ex rel. Gregory*, ECF Nos.

67 and 71.  Once Judge Gallagher was assigned to the cases, the Plaintiff successfully obtained

entries of default as to all the Defendants in *Gregory*.  *Gregory*, ECF No. 46.  In circumstances

that now appear highly suspect, Judge Gallagher issued no order to recuse himself from the

Plaintiff's cases, and included no reasons for him doing so as required by D.C.COLO.LCivR

40.1.  Instead, the Plaintiff's cases were directly and personally reassigned to U.S. Senior District

Judge Kathyrn H. Vratil of the District of Kansas by 10th Circuit Chief Judge Jerome A. Holmes.

The orders and notations in both cases read, as follows:

> CASE REASSIGNED. Pursuant to the provisions of Title 28,
> United States Code § 292(b ), and with the approval of Chief Judge
> Philip A. Brimmer, this case is reassigned to United States District
> Judge Kathryn H. Vratil of the District of Kansas. All future
> pleadings should be designated as 25-cv-00190-KHV. (Text Only
> Entry) (agarc,) (Entered: 02/27/2026).  *Ex rel. Gregory*, ECF No.
> 72.
>
> CASE REASSIGNED. Pursuant to the provisions of Title 28,
> United States Code § 292(b), and with the approval of Chief Judge
> Philip A. Brimmer, this case is reassigned to United States District
> Judge Kathryn H. Vratil of the District of Kansas. All future
> pleadings should be designated as 25-cv-03361-KHV. (Text Only
> Entry) (agarc,).  *Gregory*, ECF No. 48.

Shortly after the Reassignment Order, additional orders and notations were entered in both cases

to further directly assign the cases to U.S. Magistrate Judge Gwynne E. Birzer.  Those orders and

notations similarly stated:

> Magistrate Judge Assignment. Pursuant to the order entered in 26-
> mc-00038, and with the approval of the Chief Judge, this case is
> reassigned in the referral capacity to Magistrate Judge Gwynne E.
> Birzer of the District of Kansas. All future pleadings should be
> designated as 25-cv-00190-KHV-GEB. (Text Only Entry) (agarc)
> (Entered: 03/03/2026).  *Ex rel. Gregory*, ECF No. 73.
>
> Magistrate Judge Assignment. Pursuant to the order entered in 26-
> mc-00038, and with the approval of the Chief Judge, this case is

> reassigned in the referral capacity to Magistrate Judge Gwynne E.
> Birzer of the District of Kansas. All future pleadings should be
> designated as 25-cv-03361-KHV-GEB. (Text Only Entry) (agarc,).
> *Gregory*, ECF No. 49.

Critically, the actual assignment orders were not filed into either of the Plaintiff's cases and Plaintiff was not provided notice that 10th Circuit Chief Judge Holmes had directly and personally assigned Judge Vratil to the cases.  Exhibit 2 (Vratil Assignment Order) and Exhibit 3 (Birzer Assignment Order).  Only after Judge Vratil issued an order to show cause as to why the Plaintiff should not be sanctioned for quoting F.R.C.P. 55(a) ("otherwise defend") in his application for entry of default and its supporting declaration did press reporting reveal Chief Judge Holmes's direct involvement and the existence of his reassignment order.  Michael Karlik, *Federal Judge to Consider Sanctioning Ex-Colorado Judicial Discipline Director*, COLORADO POLITICS, March 19, 2026.  Had the Plaintiff known of Chief Judge Holmes's direct involvement, the Plaintiff would have immediately objected to Judge Vratil and Magistrate Birzer's assignments.

After learning of Chief Judge Holmes's direct assignment of Judge Vratil, the Plaintiff preserved error for appeal by filing his Motion for Judicial Disqualification Pursuant to 28 U.S.C. § 455 and his "Affidavit of Judicial Bias or Prejudice According to 28 U.S.C. § 455(b)(1) and Certificate of Counsel; Exhibits 1-9" first into *Gregory* and, then, into *Ex rel. Gregory*.  *See, e.g.. United States v. Brinkworth,* 68 F.3d 633, 639 (2d Cir. 1995) ("A party ***must*** bring a disqualification motion 'at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such a claim.'") (emphasis added); *see also In re Rafter Seven Ranches L.P.*, 414 B.R. 722, 740 (B.A.P. 10th Cir. 2009) ("[T]he Tenth Circuit has held that an

appellant waives bias argument on appeal if the appellant failed to timely move for disqualification under 28 U.S.C. § 455.").

The Plaintiff emphasizes that he followed procedures equivalent to those required for seeking judicial disqualification according to 28 U.S.C. § 144. Those requirements include attestation by both the Plaintiff and his co-counsel that the assertions in his Affidavits were factually true, based upon personal knowledge, and that the requests for judicial disqualification were being made in good faith.

Rather than consider the Plaintiff's Motions and Affidavits according to the standards ordinarily applied according to 28 U.S.C. §§ 455 and 144, Judge Vratil categorically rejected the Plaintiff's sworn assertions that Chief Judge Holmes has demonstrated personal bias or prejudice by refusing to disqualify himself from the related judicial disciplinary proceedings. *Gregory*, ECF No. 83; *Ex rel. Gregory*, ECF No. 89. Similarly, Judge Vratil did not address the fact that Chief Judge Holmes proceeded to directly assign her to Plaintiff's cases notwithstanding the Plaintiff having expressly requested that Chief Judge Brimmer communicate directly with Chief Justice Roberts to facilitate the conflict-free assignment of the cases to a district judge from outside the 10th Circuit. It is Chief Judge Holmes's conflicted exercise of his appointment powers to directly assign Judge Vratil to the Plaintiff's cases that requires disqualification, vacating this Court's orders following the assignment, and the conflict-free reassignment of the cases to a district judge from outside the 10th Circuit. *See McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1260-1261 (5th Cir. 1983). Moreover, Judge Vratil rejected Plaintiff's sworn assertions that she was depriving the Plaintiff of his due process rights to a full and fair hearing, as probative of circumstances that raise reasonable questions regarding Judge Vratil's ability to

be fair and impartial.   Magistrate Judge Birzer issued separate orders denying the Plaintiff's

requests for her disqualification based upon Chief Judge Holmes's underlying and unnoticed

assignment of Plaintiff's cases to Judge Vratil (which was accompanied by Chief Judge Brimmer

also directly designating Magistrate Birzer "with the concurrence of the Honorable John W.

Broomes, Chief Judge of the District of Kansas."). *Gregory*, ECF No. 49; *Ex rel. Gregory*, ECF

No. 73; Exhibit 3.  Like Judge Vratil's orders, Magistrate Birzer's orders offer no justification or

explanation of why the Court withheld the material information that Chief Judge Holmes had

issued the order directly assigning Judge Vratil to Plaintiff's cases.  *Gregory*, ECF No. 83; *Ex

rel. Gregory*, ECF No. 89; Exhibit 2.  Ultimately, in overt retaliation for the Plaintiff's having

filed his Motions for Judicial Disqualification and his supporting Affidavits, Judge Vratil

proceeded to issue orders to show cause in both cases why the Plaintiff should not be sanctioned

for seeking her disqualification.  *Gregory*, ECF No. 82; *Ex rel. Gregory*, ECF No. 88.

Specifically, Judge Vratil has ordered the Plaintiff to show cause why his motions for

disqualification are not made for "an improper purpose, such as to harass, cause unnecessary

delay, or needlessly increase the costs of litigation in this case."  As with Judge Vratil's prior

order to show cause, the order to show cause regarding the Plaintiff's Motions for Judicial

Disqualification has been reported in the press.  Michael Karlik, *Federal Judge Considers

Second Round of Sanctions Against Ex-Colorado Judicial Discipline Director*, COLORADO

POLITICS, March 25, 2026.

 As sworn to and as further certified by his co-counsel, the Plaintiff maintains that the

statements contained in his Motions for Judicial Disqualification and his supporting Affidavits

are true, accurate, and made in good faith consistent with his obligations as a *pro se* attorney and

his co-counsel's joint obligations under F.R.C.P. 11(b).  There is no basis for this Court to have issued its orders to show cause or, prospectively, to impose sanctions on the Plaintiff for his having necessarily preserved error by raising legitimate grounds that mandate self-enforcement of this Court's judicial disqualification obligations under 28 U.S.C. § 455.  There can be no contumely in counsels' acting as necessary, in compliance with existing law and procedure, to preserve and protect a client's constitutional and statutory rights.

With this Court's denial of the Plaintiff's Motions for Judicial Disqualification and other adverse rulings, the recourse is to petition for mandamus relief as explained in his "Plaintiff's Motion to Require Counsel to Appear or, Alternatively, to Reset March 26 Hearing."  *Gregory,* ECF No. 86.  An understanding of the factual context, however, is necessary to fully explain the inappropriateness of this Court's orders to show cause.

### Question Presented

Whether submitting a motion for judicial disqualification according to 28 U.S.C. § 455(b)(1) which is supported by a truthful and otherwise formally sufficient affidavit according to 28 U.S.C. § 144 provides a legitimate basis for a *sua sponte* order to show cause and sanctions against the filing party according to F.R.C.P. 11(c)(3).

### Factual Background

The Plaintiff filed *Ex rel. Gregory* on January 17, 2025.  Following the filing of the case, almost all judicial officers within the District of Colorado voluntarily disqualified themselves through exercise of the senior judge prerogative or by complying with D.C.COLO.LCivR 40.1 and issuing a recusal order stating the reasons for the active judge or magistrate judge's disqualification.  Indeed, then-Chief Judge Philip A. Brimmer recused himself on the basis of having a personal friendship with former U.S. Attorney Robert Troyer, who conducted one of the "independent" investigations into the propriety of the Masias Contract, which is the core factual

issue in both *Gregory* and *Ex rel. Gregory*.  *Ex rel. Gregory*, ECF No. 48.  In contrast to the recusals of his colleagues, Judge Daniel D. Domenico refused to disqualify himself despite the Plaintiff repeatedly and consistently raising grounds for Judge Domenico to do so.  It was only after the Plaintiff filed his 28 U.S.C. § 144 Affidavits and additional judicial discipline complaints against Judge Domenico and Circuit Chief Judge Jerome A. Holmes, that Judge Domenico did, finally, recuse himself.

As the Plaintiff has explained, despite the express requests for the conflict-free assignment of a district judge from outside the 10th Circuit (including the disqualification of Chief Circuit Judge Holmes from the assignment process), then-Chief Judge Brimmer and Chief Circuit Judge Holmes surreptitiously proceeded to apparently remove randomly assigned U.S. District Judge Gordon P. Gallagher and to directly assign U.S. District Judge Kathyrn H. Vratil with the further designation of U.S. Magistrate Judge Gwynne E. Birzer.  Although the Plaintiff provides far more detail in his underlying Motions for Judicial Disqualification and his supporting 28 U.S.C. § 455(b)(1) Affidavits, the circumstances of Judge Vratil's appointment are themselves sufficient to mandate recusal and the reassignment of the Plaintiff's cases to a district judge and the concurrent designation of a magistrate judge both from outside the 10th Circuit.

Although alluded to in the Plaintiff's court filings prior to the March 26, 2026 hearing, the contextual chronology of the Plaintiff's public advocacy to the Colorado General Assembly, in filing a complaint with the Denver Judicial Discipline Commission, and in submitting a letter regarding Colorado Supreme Court Justice Richard L. Gabriel's conduct to the American Inns of Court is relevant to the grounds for the Plaintiff's Motion for Judicial Disqualification.  On March 12, 2026, the Plaintiff submitted written testimony and also appeared in-person before the

Colorado House State, Civic, Military, and Veterans Affairs Committee.  Exhibits 4 and 5.

While the Plaintiff testified to the House Committee, Denver County Court Presiding Judge

Karen Lombardi emailed the Plaintiff a letter dismissing his previously filed judicial discipline

complaint without the complaint being referred to the Denver Judicial Discipline Commission.

Exhibit 6.  On March 15, the Plaintiff then submitted his letter regarding Justice Gabriel to the

Minoru Yasui Inn of Court's membership committee.  *Gregory*, ECF No. 79-8.  On March 20,

2026, as part of the Colorado House of Representatives' debate on second reading of SB26-084,

multiple Representatives supported the reasons for the Plaintiff's opposition to SB26-084.

Exhibit 7.  Ultimately, 22 Representatives and 2 Senators voted against SB26-084, which has

nevertheless now passed both Chambers and is now awaiting Governor Jared Polis's signature.

The Plaintiff joined in the U.S. Government's request to continue the scheduled March

26, 2026 hearing specifically because the short notice of the hearing effectively deprived the

Plaintiff of his due process rights to a full and fair hearing with opportunities to secure the

presence of witnesses, to cross examine witnesses, to present testimonial evidence, and to receive

the effective assistance of counsel.  Judge Vratil denied the request to continue the hearing and

instead proceeded to issue the adverse orders that the Plaintiff had anticipated in his Motion for

Judicial Disqualification and his supporting 28 U.S.C. § 455(b)(1) affidavits.  The Plaintiff

further preserved the record of error for review on appeal by filing an Offer of Proof at the

beginning of the March 26, 2026 hearing.  *Gregory*, ECF No. 87.

During the March 26, 2026 hearing, and consistent with the Plaintiff's allegations of

personal bias or prejudice, both Judge Vratil and Magistrate Birzer were overtly hostile and

engaged in repeated *ad hominem* attacks against the Plaintiff and his co-counsel.  This hostility

was reported in the press with direct quotations now available through the transcripts that the

Plaintiff requested following the hearing.  Michael Karlik, *Federal Judges Rebuke Ex-Colorado*

*Judicial Discipline Director for Conduct in Lawsuit*, COLORADO POLITICS, March 26, 2026;

*Gregory*, ECF No. 91; *Ex rel. Gregory*, ECF No. 93.  Among other comments made by Judge

Vratil on the record, was a renewed threat to order the Plaintiff be sanctioned for having moved

for the disqualification of counsel and for opposing the Defendants' motion to set aside the

default.  Judge Vratil stated:

> I mean, I can't help but note that to the extent there's culpability, I
> think Mr. Gregory just told us that the reason he filed it is because
> defendants wouldn't talk to him about recusing from the case.
> That's not a professional, ethical, acceptable use of pleadings under
> Rule 11. So, the motion to set aside the default is sustained.
> *Gregory*, ECF No. 91, p. 41:12-17.

### Analysis

F.R.C.P. 11(b) defines the limited circumstances in which it is appropriate for the court or

a party to seek sanctions against an attorney.  F.R.C.P. 11(b) states:

> **Representations to the Court.** By presenting to the court a
> pleading, written motion, or other paper--whether by signing,
> filing, submitting, or later advocating it--an attorney or
> unrepresented party certifies that to the best of the person's
> knowledge, information, and belief, formed after an inquiry
> reasonable under the circumstances:
>
> **(1)** it is not being presented for any improper purpose, such as to
> harass, cause unnecessary delay, or needlessly increase the cost of
> litigation;
>
> **(2)** the claims, defenses, and other legal contentions are warranted
> by existing law or by a nonfrivolous argument for extending,
> modifying, or reversing existing law or for establishing new law;

-12-

> **(3)** the factual contentions have evidentiary support or, if
> specifically so identified, will likely have evidentiary support after
> a reasonable opportunity for further investigation or discovery; and
>
> **(4)** the denials of factual contentions are warranted on the evidence
> or, if specifically so identified, are reasonably based on belief or a
> lack of information.

F.R.C.P. 11(c)(3) further provides:

> ***On the Court's Initiative.*** On its own, the court may order an
> attorney, law firm, or party to show cause why conduct specifically
> described in the order has not violated Rule 11(b).

The Court's power to initiate a sanctions process by issuing an order to show cause is

limited by the purposes of the Federal Rules of Civil Procedure and a judge's ethical obligations

to maintain fairness and impartiality without appearances that a judge is harassing, intimidating,

or retaliating[1] against an attorney or litigant.  Ultimately, it is the judge's responsibility to ensure

the ***just*** determination of every action and proceeding before the Court.  F.R.C.P. 1.

In this case, the Plaintiff and his co-counsel have done nothing more than legitimately

exercise their procedural rights by 1) seeking entries of default after the Defendants all failed to

answer or file a responsive pleading before the ***mutually agreed*** deadline had expired and by 2)

presenting verified grounds for the disqualification of the Defendants' counsel and the judicial

officers directly assigned to the Plaintiff's cases.  As sworn to and certified by the Plaintiff and

his co-counsel, the factual and legal assertions made in the Plaintiff's affidavits supporting

disqualification and other court filings related to the disqualification of counsel and judicial

disqualification are truthful, accurate, and made in good faith "to the best of the person's

---

[1] Canon 3(B)(4) of the federal Code expressly prohibits a judge from retaliating against parties,
litigants, and court staff who make reports of judicial misconduct: "A judge should not retaliate
against those who report misconduct."

-13-

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances."

The Plaintiff (as an attorney) and his co-counsel have fully complied with F.R.C.P. 11(b) in every filing that they have submitted to this Court.  There was no rational basis for this Court to issue its orders to show cause according to F.R.C.P. 11(c)(3) and there is likewise no rational basis for this Court to impose sanctions against the Plaintiff and his co-counsel according to F.R.C.P. 11(c).

<strong><u>Conclusion</u></strong>

The Plaintiff has been repeatedly ordered to show cause why he should not be sanctioned for exercising his procedural rights to preserve his constitutional rights, to ensure that the merits of his claims are responded to in a timely manner, and that these proceedings are both fair and impartial with a full opportunity to be heard.  In this context, fairness and impartiality mean that both the government (which is charged with investigating and prosecuting violations of the law) and this Court perform their respective functions without personal bias or prejudice.

Throughout this case, the Plaintiff has sought to expeditiously address the merits of his claims but has been obstructed by the other parties and the Court.  District Judge Daniel D. Domenico's persistent refusal to disqualify himself despite the evidence of his personal bias and prejudice ultimately proven through the Plaintiff's 28 U.S.C. § 144 Affidavits unnecessarily delayed the proceedings in *Ex rel. Gregory* for over seven months and in *Gregory* since Judge Domenico's assignment on October 24, 2025.  *Gregory*, ECF No. 6.  In *Ex rel. Gregory*, this Court's refusal to enforce the U.S. Attorney General's statutory obligations under 31 U.S.C. § 3730(a) to "diligently investigate" has prevented any formal discovery from happening.  In

-14-

*Gregory*, this Court's recent decision to vacate the default entered against all Defendants without affording the Plaintiff a legitimate opportunity to cross-examine witnesses, to present testimony, or to be effectively represented by counsel has only enabled the Defendants' efforts to delay and avoid their obligations to respond to the merits of the Plaintiff's claims. The overt retaliation and intimidation that is occurring through this Court's now repeated *sua sponte* issuance of orders to show cause why the Plaintiff should not be sanctioned for having successfully obtained entry of the defaults in *Gregory* and for raising issues of judicial disqualification is, likewise, enabling harassment of the Plaintiff, causing unnecessary delay, and is needlessly increasing the costs of litigation.

The actions of this Court and the other parties do not conform with the purposes and objectives of F.R.C.P. 11(b) or F.R.C.P. 1, which provides:

> These rules govern the procedure in all civil actions and proceedings in the United States district courts . . . ***They should be construed, administered, and employed <u>by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding</u>.***

The Plaintiff's conduct throughout his cases has consistently conformed to the requirements of F.R.C.P. 11(b) and the intent of F.R.C.P. 1. The Plaintiff and his co-counsel expressly deny Judge Vratil's accusation that the Plaintiff's Motions for Judicial Disqualification and his supporting Affidavits were submitted for "an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the costs of litigation in this case."

**WHEREFORE**, the Plaintiff respectfully requests that this Court discharge its orders to show cause (*Gregory*, ECF No. 82 and *Ex rel. Gregory*, ECF No. 88) and to reconsider its

accompanying orders denying the Plaintiff's Motions for Judicial Disqualification According to

28 U.S.C. § 455.

Dated: April 3, 2026

/s/ Ingrid J. DeFranco
**Ingrid J. DeFranco, esq.**
Law Office of Ingrid J. DeFranco, PLLC
P.O. Box 128
Brighton, CO 80601
Telephone: (303) 641-6812
Email:  Ingrid.DeFranco@gmail.com
Attorney for Plaintiff Christopher S.P. Gregory

/s/ Christopher S.P. Gregory
**Christopher S.P. Gregory, Esq.**
The Gregory Law Firm, LLC
201 Coffman St., #1822
Longmont, CO 80502
Telephone: (970) 648-0642
E-mail: cspgregory@thegregorylawfirm.net
*Pro Se* Attorney for Plaintiff
Christopher S.P. Gregory

CERTIFICATE OF SERVICE

       I certify that on April 3, 2026, I filed the above filing via email to the Clerk of the Court, who will docket it in CM/ECF. CM/ECF will send notification of this filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

/s/ Ingrid J. DeFranco
Ingrid J. DeFranco