# House State, Civic, Military, & Veterans Affairs Committee— March 12, 2026 Hearing on SB26-084

**Rep. Clifford**

One more time. Third time is the charm. The committee will come back to order. Maybe. Aha, and we are back. So as much as I dislike having to say, Representative Willford, if you will please begin from the beginning on Senate Bill 84.

**Rep. Willford**

Thank you very much, Mr. Chair. Thank you members for your patience. Second time, I hope will be the charm. So, House Bill, I'm sorry not House bill. Senate Bill 84 came directly out of the Legislative Audit Committee. This bill would amend statute to state that when an entity discloses information to the State Auditor during the course of a fraud investigation, this disclosure, by itself, does not waive an otherwise valid claim of privilege, confidentiality, or other protection held by the entity making the disclosure, including a claim of attorney client privilege. We take a moment and talk about why the bill is necessary. A state agency may request that the Office of the State Auditor conduct or participate in a fraud investigation resulting from allegations received by the OSA through its Fraud Hotline. According to statute, when this occurs, the State Auditor has access to all of the information maintained by the agency that is directly related to the scope of the investigation. Statute also states that any information that the OSA receives during the course of a fraud investigation must be kept confidential by the OSA. However, there is a risk that state agencies may not be willing to provide information to the OSA that would be necessary for the investigation, that would fall under attorney client or some other type of privilege, out of a concern that providing the information would be considered a waiver of that privilege. This bill makes clear that providing this type of information would not, by itself, constitute a waiver of that privilege. I do want to acknowledge that we have individuals from the Office of the State Auditor here for questions only. If you have any specific questions, that you would like to ask them.

**Rep. Clifford**

Members, are there any questions for the sponsor? Representative Espinoza.

**Rep. Espinoza**

Thank you. I have a question you may not be able to answer, but my lawyer brain is going to the other way, which is has been vetted by the Attorney General? Because I'm not sure that us putting it into statute necessarily protects an individual's attorney client privilege.

**Rep. Clifford**

Representative Wilford,



**Rep. Willford**

Thank you very much, Mr. Chair, I would love to bring that up during the witness testimony phase. Staff from the State Auditor's Office that's been working on this policy to answer that specific question for you.

**Rep. Clifford**

Are there any other questions for the sponsor? Seeing none. Thank you. We will now go to witnesses. I have one witness signed up, and it sounds like we're going to have another. Let's bring up Mr. Christopher Gregory. And then, just for the sake of time, if any other witnesses for this bill would like to come forward, you may take a seat. Mr. Gregory, you may begin. Your microphone, if you don't mind.

**Rep. Clifford**

Thank you. Mr. Chair. Good afternoon, committee members. I'm Christopher Gregory, and I'm testifying in my individual capacity in opposition to Senate Bill, 26-84. I testify today with the background of having personally investigated and sought accountability for the ongoing Colorado Judicial Scandal in my roles as a member, Vice-Chair, Chair, and Executive Director of the Colorado Commission on Judicial Discipline. I regard the historic public censure of former Chief Justice Nathan B. Coats and the passage of Amendment H by a 73% majority of voters in 2024 as my greatest accomplishments as an attorney and as a public servant. From experience, I'm familiar with the unethical tactics that are being used by Governor Jared Polis, Attorney General Phil Weiser, the Justices of the Colorado Supreme Court, and other public officials to conceal a more than 25-year pattern of public resources being misused to conceal serious judicial, attorney, and official misconduct. Senate Bill 26-84 legitimizes the worst of these unethical tactics by allowing those investigated for public fraud to hide behind arbitrary claims of governmental privilege and confidentiality in order to conceal material evidence. This same unethical tactic was used to undermine the Office of the State Auditor or the OSA's prior findings of occupational fraud and accompanying referrals to law enforcement. Through their control over the OSA's 2019 to 2022 Fraud Hotline investigation of the State Court Administrator's Office, the Justices and Attorney General Weiser were able to delay reporting to law enforcement, to apply redactions to the OSA's February 4, 2022 Fraud Hotline report, and then to withhold the full report from the public and other regulatory authorities. The concealment of material information, in turn, caused the statute of limitations to expire with no accountability for the wrongdoing verified by the OSA. SB 26-84 silences whistleblowers and victims by allowing wrongdoers to control whether evidence of public fraud is ever disclosed to law enforcement or to the public. The solution, however, is simple. I ask that this committee vote down Senate Bill 26-84 and instead introduce the draft resolution, the draft joint resolution, which I have submitted to refer the ongoing Colorado Judicial Scandal to conflict-free federal law enforcement and for the appointment of another State's Attorney General to impartially represent the interests of the State of Colorado.

**Rep. Clifford**
Thank you. I understand you're here for questions only, is that correct? So, this is Ms. Shiroff. Am I saying that correctly? Please state your name for the record, anyone that you represent. And I know that Representative Espinoza had a question.

**Kate Shiroff**
Yeah, thank you. Vice-Chair. Kate Shiroff. I'm a manager with the State Auditor's Office and the head of the Fraud Hotline.

**Rep. Clifford**
Okay, would you like to also be recognized for questions, if you'll just state your name and anyone that you represent for the record, and then we'll go into the questions.

**Jenny Page**
Thank you, Mr. Chair, so I'm also with the Office of the State Auditor. I'm the Director of Communications, Jenny Page.

**Rep. Clifford**
Thank you very much. Ms. Page. Committee, are there questions for this panel of witnesses? Representative Espinoza.

**Rep. Espinoza**
Thank you, Mr. Vice Chair. So my question, you heard to the sponsor of the bill. But what is the level of working with the Attorney General with regard to, especially, whether the statute can override the obligations and professional responsibility with regard to confidentiality of attorney client privilege information.

**Rep. Clifford**
Ms. Shiroff.

**Kate Shiroff**
Thank you, Mr. Chair and Representative Espinoza. We've been in contact with the Attorney General's Office. They're not taking a position against this bill, they are saying that, depending on the circumstances, they may not disclose information during an investigation. This might not help them get over that kind of bar for confidentiality and maintaining attorney client privilege, but it could help us in some situations. And so we think that this bill could only help us in the future, if this situation comes up.

**Rep. Clifford**
Members? Representative Luck.

- 3 -

**Rep. Luck**

Thank you, Mr. Chair. I have one question for you, ma'am, and then I have some questions for Mr. Gregory. So, can I just ask my first question? I didn't catch your name. I'm sorry.

**Rep. Clifford**

Ms. Shiroff.

**Kate Shiroff**

Shiroff. Thank you.

**Rep. Clifford**

Thank you. Yes.

**Rep. Luck**

Thank you. So, I'm not really understanding the process by which this all takes place. So, if I can guess and speculate here for a second. Does it work such that the State Auditor's Office asks an agency for information in order to do its work. The agency says this is privileged, and that leaves the State Auditor not really knowing what to do with that. And so then if this bill passes, then you can ask for that information, be given that information, and it still be deemed like, somehow you're brought into the relationship such that it's still privileged and you can't then disclose it to us, but then it goes towards your recommendations or your review of a matter. Is that how this is contemplated to work?

**Rep. Clifford**

Ms. Shiroff.

**Kate Shiroff**

Thank you. Representative Luck, so this is solely for the Fraud Hotline. So, if we get a report of occupational fraud to the Fraud Hotline, statute requires us to refer that complaint to the agency involved and ask if they want to investigate it, or if they want our help investigating it. If they determine that they want our help in investigating it, and honestly, it doesn't happen very often. Mostly agencies want to investigate their own reports of occupational fraud and give us the report at the end of their investigation. But if they do ask for our help in that investigation, then we participate in the investigation. And so in this case, if not having this availability, has, will, or would impede or delay an investigation. And has in the past. That is as much information as I can share with you, because the investigations are fully confidential and s. And we can't even release the the results of the investigation to the public under statute. And so it's just to help us proceed with the investigation.

**Rep. Clifford**

Representative Luck.

- 4 -

**Rep. Luck**

Thank you, Mr. Chair, and thank you for that answer. That's very helpful. Mr. Gregory, can you help me? You are pointing to things that have been hidden. You're pointing to your own experience with this whole system. Can you just give a deeper dive into what you're concerned about?

**Rep. Clifford**

Mr. Gregory.

**Rep. Clifford**

Thank you and thank you, Representative Luck. I think the simplest way to identify this issue is just to give the specific example. And I don't know how many members of this committee are familiar with the Colorado Judicial Scandal that happened number of years ago. It's still happening, in my opinion. But what had happened with the Fraud Hotline in particular was that as this $2.66-$2.75 million sole source contract, which I don't think you can categorize as anything other than a bribe, was approved by the Colorado Supreme Court. As that was happening, and the entire Colorado Supreme Court approved this thing. There was a fraud complaint made to the Fraud Hotline, and the Justices went ahead and approved this contract anyway. Well, what came out after two years was that the Attorney General's Office, the Justices, other attorneys. They had concealed a material fact or a big part of the evidence, which was there was a memo that was generated by the Chief of Staff, who was the subject of this whole thing, Mindy Masias. And through that memo, she was negotiating this contract. But that memo described instances in which she was instructed to cover up misconduct, destroy evidence. And that critical information was withheld from the State Auditor as part of not only the Fraud Hotline, but the State Auditor has to do a single statewide audit every year. It's an ongoing, continuous thing. It is a condition of receiving federal funding. And both the Court and the AG's Office knew that this evidence was material to that single statewide audit as well as the Fraud Hotline, but concealed it and didn't provide it to the State Auditor or to me, in my role at that time, which was Chair of the Colorado Commission on Judicial Discipline--the regulatory authority above judges. And that particular act is in many ways, federal crimes. There's big problems with that. But what ended up happening through how the state audit Fraud Hotline process played out, was that the Justices that they got to control that investigation. And it's, I think, a fundamental problem with the Fraud Hotline. It is that the agencies and the individuals that may be subject to the investigation get to control the investigation itself. And through that control, there were all these arguments that everything was privileged or confidential. And it harkens back to executive privilege and things that kind of came up in the Nixon Administration, oddly enough. But through these assertions of these things, the other regulators, we didn't get access to these records. Law enforcement wasn't provided access to records that were indicative of fraud, and the State Auditor's ability to communicate with law enforcement was effectively postponed. And it was postponed long enough that by the time there was finally a referral to law enforcement to charge the people involved with probably a number of felonies, including facts that you know came with findings of occupational fraud. The State Auditor, because I think it was the Justices and the AG's Office had redacted portions of the State Auditor's report. By the time it went to the district attorney's office, they didn't have enough

time to file charges and the statute of limitations expired. It is almost a classic example of obstruction of justice. And my concern with this bill is not that it says these things aren't waived. We already have that in the False Claims Act, which says that people can come forward with confidential information. There's a process for it, but if the defendant later on wants to assert that privilege, they can. What this bill is doing is it's legitimizing these bogus claims of attorney client privilege between government and their attorneys, and also just this amorphous confidentiality that would relate to deliberative process or that sort of thing. That's the real ill of this bill.

**Rep. Clifford**
Members, we are out of time for questions for this panel, but I know that there were other hands up. I want to be gracious about that. Considering, is there anybody else that needs to get something in here? I will entertain it. Yes.

**Rep. Espinoza**
Thank you, Mr. Chair. I was actually able to use this time to look at the statute that we're looking at. And I'm confused as to why this is necessary in that the Auditor's general statute already says that documents and information in the Auditor's control are not public and shall not be released. They maintain the confidentiality that they have when they're received by the Auditor. And I believe even in the subsection with regard to the Hotline, it says all work papers prepared or maintained by the State Auditor must be held strictly confidential by the State Auditor and not for public release. So, I'm curious as to why this is even necessary. As I read the statute, it seems as if it is already protected under the statutory language that we have on the books.

**Rep. Clifford**
Ms. Page.

**Jenny Page**
Thank you, Mr. Vice Chair. So, right now there's still ambiguity regarding client attorney privilege, and there have been some questions that have come up in the past during fraud investigations regarding the extent to which agencies feel like they're waiving privilege because they're giving us information. And so, this audit committee bill is merely to clarify that just because an agency provides us information doesn't mean that they are automatically waiving their privilege.

**Rep. Clifford**
Just to check, do we have any members that have another committee that we have to get to? You do. Okay. My apologies. Okay, we are out of time for questions for this panel of witnesses. I have called for all witnesses at this point. Is there anyone else in the room that's wishing to testify on this bill? The witness testimony phase is closed. Sponsors, amendments?

**Rep. Willford**

- 6 -

I don't have any amendments.

**Rep. Clifford**

Committee. Any amendments? Seeing none. The amendments phase is closed. Sponsor wrap up.

**Rep. Willford**

I'll start by moving the bill. Mr. Chair, I move Senate Bill 084, to the Committee of the Whole with a favorable recommendation.

**Rep. Carter**

Second.

**Rep. Clifford**

Seconded by Rep. Carter. Please explain or please wrap up.

**Rep. Willford**

Yep. So, I absolutely appreciate the conversation that just happened here between the witness and the Office of the State Auditor. And I will say that I would not, as a member of the Legislative Audit Committee bring forward a bill like this, if it wasn't absolutely necessary to ensure that the State Auditor has and her office and her employees, for that matter, have the statutory clarity that they need in order to move forward with necessary audits. So, I do ask for your yes vote. And if there are any questions that members do have before we move on to second reading, I'm happy to make sure that we get those questions answered for you.

**Speaker 1**

Thank you, members, brief comments. Representative Bottoms.

**Rep. Bottoms**

Thank you, Chair. I would like to have some discussion, a little bit about the resolution that Mr. Gregory was talking about. I just read down through it. It seems pretty solid and not picking on the audit committee. I have nothing against them, but I kind of leaning the way representative Espinoza said this. It doesn't appear this is a major thing forward. But I do believe, if we've got this kind of corruption and I believe I've seen some of that. When my first year here, when the Chief Justice got up and explained how they had investigated themselves and found themselves to be innocent, that always concerns me. And so obviously that was different circumstances. So yeah, I'd like to have some of the bigger conversation, a little bit about the resolution.

**Rep. Clifford**

Representative Froelich.

**Rep. Froelich**

Thank you, Mr. Chair. Thank you, Chair Willford. As I mentioned to you, I just have general heartburn about the Judicial Department and lack of transparency. So, I'll be a respectful no.

**Rep. Clifford**

Representative Bradley.

**Rep. Bradley**

Thank you, Mr. Chair. I too get a little heartburn when we have somebody who went through this process and feels like this bill will silence whistleblowers and victims by allowing wrongdoers to control whether evidence of public fraud has ever disclosed law enforcement or to the public. I feel like we just had a bill just a minute ago that was trying to bring forward some ways to prevent fraud in our state. I too have read over the resolution and would like to have more conversations about that, and appreciate him coming to testify.

**Rep. Clifford**

Representative Espinoza.

**Rep. Espinoza**

And I just want to put on the record. I'm sorry that I didn't have this conversation in advance, because I didn't pull the whole statute in terms of this issue. And I wish we had had the Attorney General's Office here and if they're not weighing in. I, just as an attorney, have some concerns over whether this is an appropriate action for us to take, so I will be respectful no today.

**Rep. Clifford**

Are there any further comments from the committee? Seeing none. Ms. King, please poll the committee.

**Comm. Staff**

Representatives. Bottoms.

**Rep. Bottoms**

No.

**Comm. Staff**

Bradley.

**Rep. Bradley**

No.

**Comm. Staff**

Carter.


**Rep. Carter**

Yes.


**Comm. Staff**

Espinoza.


**Rep. Espinoza**

No.


**Comm. Staff**

Feret.


**Rep. Feret**

Yes.


**Comm. Staff**

Froelich.


**Rep. Froelich**

No.


**Comm. Staff**

Luck.


**Rep. Luck**

No.


**Comm. Staff**

Nguyen.


**Comm. Staff**

Valdez.


**Rep. Nguyen**

Yes.

- 10 -

**Rep. Valdez**
Yes.

**Comm. Staff**
Willford.

**Rep. Willford**
Yes.

**Comm. Staff**
Mr. Chair.

**Rep. Clifford**
Yes.

**Rep. Clifford**
That bill passes six to five. You're on the way to the Committee of the Whole. Thank you.