# Colorado House of Representatives—Floor Debate March 20, 2026: Second Reading of SB26-084

**Rep. Zokaie**

Mr. Schiebel, please read the title to Senate Bill 84.

**George Schiebel**

Senate Bill 84 by Senators Weissman and Frizell, also representatives Brooks and Wilford concerning the preservation of privileges for certain state entities in connection with information made available to the Office of the State Auditor and the performance of its statutorily prescribed duties related to the state's fraud hotline.

**Rep. Zokaie**

Representative Willford.

**Rep. Willford**

Thank you, Madam Chair. I move Senate Bill 84.

**Rep. Zokaie**

To the bill.

**Rep. Willford**

Senate Bill 84 comes directly from the Legislative Audit Committee and passed the Senate unanimously. It is a straightforward, good government bill that helps ensure that the State Auditor's staff can do their job effectively when investigating tips submitted through the state's Fraud Hotline. When state agencies cooperate with an investigation, they may need to share sensitive legal information. Things like attorney client communications or internal deliberations. This bill simply clarifies that providing that information to the State Auditor does not waive those legal privileges. Without this clarification, agencies may hesitate to fully cooperate out of concern that sharing information with the Auditor could expose them in other legal contexts. This bill removes that uncertainty and ensures that the Legislative Audit Committee and the Office of the State Auditor have access to the information they need to investigate potential fraud, waste, and abuse. This bill is about transparency, accountability and making sure our oversight tools work as intended. And, I respectfully ask for your yes vote on Senate Bill 84.

**Rep. Zokaie**

Representative Brooks.



PLAINTIFF'S EXHIBIT

7

**Rep. Brooks**

Madam Chair, thank you. Not to spoil the bipartisan moment that we shared here not too long ago. But, I do want to just clear up some confusion for members, because I've had this question several times. I just had this question not more than a minute ago or so. I do understand that my name is on this bill. It was on at origination, as my colleague described. This is a Legislative Audit bill, one that is more assigned rather than anything. Because through the legislative audit committee process, you're not actually sitting through testimony. You're not sitting through what we understand is a traditional committee process. So, I was on the Bill. As I learned more about it, I started to have concerns about this particular piece of legislation. I have been removed from the Bill.  As a permission slip that I received from the Speaker. Just wanted to clarify that for any of the confusion with my name still remain remaining on it. But I am removing myself from this particular policy. Thank you.

**Rep. Zokaie**

Is there any further discussion on Senate Bill 84? Representative Luck.

**Rep. Luck**

Thank you, Madam Chair. I think the best way to do this is probably to move an amendment. So, I move amendment L.002, and ask that it be displayed

**Rep. Zokaie**

That is a proper motion. One moment. And the amendment is before us. Please proceed.

**Rep. Luck**

Thank you, Madam Chair. In committee, a gentleman came and gave testimony. He further submitted other information to members of the committee. And part of that informational packet was this amendment language. That he has asked us to run in order to close the potential for harm that he sees. I'm going to read to you his testimony. There are some others who are going to get up and talk to you about other things that he has said, but this way you have some understanding, hopefully, of what the issue is. Thank you, Madam Chair. Good afternoon committee members. I am Christopher Gregory, and I am testifying in my individual capacity in opposition to Senate Bill 26-084. I testify today with the background of having personally investigated and sought accountability for the ongoing Colorado Judicial Scandal. In my roles as a member, Vice Chair . . .

**Rep. Zokaie**

Members, if you can please take your conversations to the side. We are having a hard time hearing our speaker.

**Rep. Luck**

Thank you, Madam Chair. In my roles as a member, Vice-Chair, Chair, and Executive Director of the Colorado Commission on Judicial Discipline, I regard the historic public censure of former Chief Justice

Nathan B. Coats and the passage of Amendment H by a 73% majority of voters in 2024 as my greatest accomplishments as an attorney and as a public servant. From experience, I'm familiar with the unethical tactics that are being used by Governor Jared Polis, Attorney General Phil Weiser, the Justices of the Colorado Supreme Court, and other public officials to conceal a more than 25-year pattern of public resources being misused to conceal serious judicial, attorney, and official misconduct. Senate Bill 26-084 legitimizes the worst of these unethical tactics by allowing those investigated for public fraud to hide behind arbitrary claims of governmental privilege and confidentiality in order to conceal material evidence. This same unethical tactic was used to undermine the Office of the State Auditor's prior findings of occupational fraud and accompanying referrals to law enforcement. Through their control over the OSA's 2019-2022 Fraud Hotline investigation of the State Court Administrator's Office, the Justices and Attorney General Weiser were able to delay reporting to law enforcement, to apply redactions to the OSA's February 4, 2022 Fraud Hotline Report, and to then withhold the full report from the public and other regulatory authorities. The concealment of material information, in turn, caused the statute of limitations to expire with no accountability for the wrongdoing verified by the OSA. Senate Bill 26-84 silences whistleblowers and victims by allowing wrongdoers to control whether evidence of public fraud is ever disclosed to law enforcement or to the public. The solution, however, is simple. I ask that this committee vote down Senate Bill 84 and instead introduce the draft joint resolution, which I have submitted to refer the ongoing Colorado judicial scandal to conflict-free federal law enforcement and for the appointment of another state's attorney general to impartially represent the interests of the State of Colorado. That was his testimony in committee. As I mentioned, he also sent this amendment language in order to tighten up this bill in hopes of solving the problems that he sees in this space. I encourage further conversation with respect to this amendment, and will likely be up soon.

**Rep. Zokaie**
Representative Bradley. Brandi Bradley. Yes, got it.

**Rep. Bradley**
Thank you, Madam Chair. I stand in strong support of this amendment. We had a gentleman who was very deeply involved. And thankfully, he sent us all his points, and he sent us all his testimony. And he came to the Capitol. And he provided testimony from up north. And this is a real problem. And if this goes through without this amendment, this is going to be a significant problem to the whistleblowers of Colorado. And so I'm going to read through so my caucus understands what this bill will do and why this amendment is so very important. This bill is presented as a necessary change to encourage greater access to governmental information as part of a Fraud Hotline investigation. If the reservation of claims of privilege and confidentiality is in fact necessary, it can be accomplished through a much simpler amendment of the Fraud Hotline statute. Instead, the purposes of this bill are far more nefarious and will only legitimize how the Justices of Colorado Supreme Court, in concert with Attorney General Phil Weiser, have used broad claims of governmental privilege and confidentiality to prevent the disclosure of material information and evidence as part of the OSA's 2019-2022 investigation of the sole source $2.6 to $2.75 million quid pro quo contract for silence with former Colorado State Court Administrator's

Office Chief of Staff, Mindy Masias. Boy, that was a lot of words. Sorry. These claims of privilege and confidentiality were used to delay reporting to law enforcement and to control the substance of the OSA's final February, 4, 2022 Fraud Hotline Report through redactions or otherwise. Despite the OSA finding examples of occupational fraud and referring the matter to the Second Judicial District Attorney's Office, the delays and censorship by those subject to investigation caused the statute of limitations to expire. And that's where the problem lies. The control. Because all of these things were redacted, and then by the time they got the information, the limitations had expired. The control exerted by the Justices and the AG's office over the Masias investigation was a textbook example of obstruction of justice. In its existing form, this bill will only allow those who are being investigated to control the evidence and impair the OSA's ability to exercise independent and impartial judgment. This bill will only further silence whistleblowers and victims--who we certainly sit here and say that we try to support--while maintaining the problematic enforced culture of silence that exists within the Colorado State Government. There is a pending federal lawsuit that addresses the enforced culture of silence within the Colorado Judiciary and Colorado State Government. Gregory v. Colorado Judicial Discipline Rulemaking Committee, et al. As named defendants in that case, Governor Jared, Polis, Attorney General Phil Weiser, and the Justices failed to respond in a timely manner and are apparently avoiding their obligations to address the merits of this case. A default is entered against all the Defendants. Until and unless the default is set aside, liability is proven and the allegations in the complaint are deemed admitted. One of the allegations raised in Gregory is that our Governor abused his appointment powers to stack the Colorado Commission on Judicial Discipline and other judicial oversight authorities to facilitate retaliation against the Plaintiff, Christopher Gregory, who had previously served as a member, Vice-Chair, Chair, and Executive Director of the CCJD. Governor Polis's retaliatory actions against Mr. Gregory satisfy the elements of the crime of Attempt to Influence a Public Servant. Incidentally, this is the same crime that former Mesa County Clerk Tina Peters and our former senator here were both convicted of, with disproportionate sentencing outcomes. Tina Peters is serving a nine year prison term. While the previous senator received probation notwithstanding her use of public funds to intimidate her staff and the fabrication of evidence. Governor Polis's recent overtures of being willing to commute Tina Peters's remaining prison sentence are nothing more than a blatant effort to ingratiate himself with the Trump Administration. So, that's why this amendment is so important--to protect the whistleblowers and the victims of our State. It's a fair amendment, and we ask for an aye vote. Thank you.

**Rep. Zokaie**
Representative Bottoms.

**Rep. Bottoms**
Thank you, Chair. I want to start off by saying I don't think the sponsors of the bill first realized the full impact of this. But I don't think they have nefarious intentions. I think the result becomes that. So, after we heard some of this testimony, I've been getting emails for quite a few months from some of the people that testified in committee about this. So, after committee, I went and talked to some of the people that were involved. And, specifically, Mr. Gregory that had made some of these complaints. And

- 4 -

his complaint basically was this. If this bill gets passed, it actually hinders we the people, from from having legitimate investigation and recourse into corruption in judicial settings.

**Rep. Zokaie**
Representative Bottoms, I just want to make sure you are speaking to L.002.

**Rep. Bottoms**
Yes.

**Rep. Zokaie**
Okay, please proceed.

**Rep. Bottoms**
So, after the committee, I went and investigated on my own some of this. Some of the claims that were brough. And then actually dug deeper into this. That this has already been turned over to the DOJ, that there are formal complaints about this on many, many different levels. And, as I began to talk to some different lawyers that were involved. I talked to some of the complainants. And some of the pieces of the case of the corruption with our judicial system. This was said to me by a few different people. And this is why this amendment is necessary. Actually, what I would like to see is the entire bill go away, because it's going to cause major, major problems. But this is what I was told by a handful of people that are involved directly with this case. That has been presented to the DOJ--that this is probably going to go down as the biggest corruption case in the history of Colorado. As this is all being uncovered, and the DOJ is actively involved right now with this. I saw many of the many of the pieces of evidence, and I walked through this for quite a while directly dealing with this. Now, as I started off, I'm not trying to put this on the on the back of the bill sponsors. I don't think they know what's going on here. I don't think they know the bigger picture. But it wouldn't take long to be brought up to speed on the bigger picture. And so I do think this amendment is necessary. But I think in the bigger picture, let's take this bill off the table and let's go back to the investigation. Let's go back to the DOJ. Let's go back to some of the claims of the corruption case that's involved with this. And let's not put this bill as a messy, little, tiny, little messy piece right in the middle of this very big investigation. And guys, we're not talking a little bit of corruption and fraud. We're talking to the tune of $33 to $35 billion worth of corruption and fraud. This bill doesn't understand the bigger picture. And when you're stepping into this. And I'm just saying very politely to our bill sponsors, I think you need to back off on this. Pull this bill away and let this flower out before this bill, this little bill gets in and causes some problems that will have to be adjudicated later as part of a major, major corruption case involving our justice in the State of Colorado, including the Supreme Court in the State of Colorado. And all of this can be found and talked to if you want to investigate this, with the lawyers, with the DOJ, and with a gentleman to start the conversation named Christopher Gregory. This is where we need to start with this. So, I just suggest yes on the amendment, pull the bill. Just pull the bill. This is pretty important right at this moment.

**Rep. Zokaie**

Is there any further discussion on L002? Rep. Willford.

**Rep. Willford**

Thank you very much, Madam Chair. And thank you to my colleagues for engaging in this robust conversation. I do really appreciate it. The claims that were made by the gentleman in committee have been investigated by at least five different bodies who are independent of the Judiciary. Nothing in this bill will negatively impact whistleblowers. Investigations can still happen. This bill simply ensures that the audit. Or, I'm sorry, State Auditor, is able to fully complete investigations.nd people will talk to her and her team, because they're not going to get in trouble for talking to her. Like, we need to be able to have these conversations to get to the bottom of what is happening. And this bill will allow us to do that. So, I would ask for a no vote on this amendment.

**Rep. Zokaie**

Is there any further discussion on L.002? Seeing none. The question before us is its passage. All those in favor, say, aye. All those opposed, no. The nos have it. L2 is lost. To the bill. Representative Luck.

**Rep. Luck**

Thank you, Madam Chair. I know that another member is asking for an amendment. And so I'm going to just . . . Actually, would it be possible, Madam Chair, just to go into a brief recess? Or would you mean rather me just talk?

**Rep. Zokaie**

Representative Luck. I'm not going to put us in a recess at this time.

**Rep. Luck**

All right, wonderful. Then I guess I will just talk to this bill. Some other information that actually was brought forward by that same gentleman in committee, includes this case. Sorry, I need some water. So, I should have been speaking on this with respect to that amendment, but I think it's important, maybe to read into the record this article about this federal investigation into Colorado. It says on Monday, April 28, 2025 Colorado Politics reported that the Colorado commission tasked with disciplining state judges has dismissed a significant anonymous complaint alleging a long standing conspiracy to conceal judicial misconduct. This decision emerged during a state Senate Judiciary Committee meeting hearing focused on confirming the reappointments of Mindy Sooter and Jim Carpenter, who serve as Chair and Vice Chair of the Commission on Judicial Discipline. The complaint, which spans 330 pages and includes over 3,100 pages of supporting documents, was filed anonymously in October. It claims a comprehensive conspiracy involving various judicial figures aimed at hiding years of alleged misconduct, including lying, retaliation, and improper use of public funds. Former Commission on Judicial Discipline Director Christopher Gregory, who had previously urged federal investigators to look into the matter, testified at the hearing highlighting the need for further inquiry into the allegations.

Senators were taken aback when it was revealed that the Commission had dismissed the complaint without publicly addressing its contents. Senate committee members, including Senator Lisa Frizell and Senator John Carson, expressed a desire to delay the vote on the re-appointments to gather more information on the serious issues raised by Gregory's testimony. Gregory warned the committee about a persistent scheme of public corruption that he claims has been ongoing since the scandal first came to light in 2019. He alleged that former Chief Justice Nathan Ben Coats was involved in approving a controversial contract aimed at maintaining silence regarding judicial misconduct. This contract, which Gregory referred to as a contract for silence, has been a focal point of the scandal since early 2021. During the hearing, Gregory emphasized the importance of a federal investigation, stating that the issues at hand are significant and warrant a thorough review. He articulated concerns about conflicts of interest within the state's judicial system, particularly noting that a senior member of the Department of Justice's Denver Office is married to Colorado Supreme Court Justice Melissa Hart. Despite his efforts to engage with federal authorities, Gregory claimed he faced obstacles and was ultimately ignored by the Denver DOJ Office. Senator Julie Gonzalez, a Democrat from Denver, mentioned that she had read the entire complaint and found it deeply troubling. She described it as holding a mirror to the institution, reflecting missed opportunities for accountability. The complaint suggests that high ranking officials, including members of the Colorado Supreme Court and the Attorney General's Office, have been involved in actions to obstruct investigations and conceal evidence of misconduct. The Commission Director Anne Mangiardi stated that the anonymous nature of the complaint limited the Commission's ability to provide updates or comments on its status. Despite the serious allegations. Sooter and Carpenter were reappointed by Governor Jared Polis, which has raised concerns among some legislators. Gregory, who was dismissed from his position in January of 2024, claimed his termination was in retaliation for his commitment to integrity and accountability within the judicial system. He argued that the Commission's previous handling of complaints has been inadequate, emphasizing the need for reforms that go beyond the measures already implemented through Proposition H, which aim to change the disciplinary framework for judges in Colorado. The controversy has intensified calls for oversight and reform within the Colorado Judicial Department. Gregory pointed out that the Commission has historically handled only a few complaints each year, but that number has surged since the media began reporting on the ongoing scandal. I will leave it there.

**Rep. Zokaie**
Representative Espinoza.

**Rep. Espinoza**
Thank you, Madam Chair. And I'm so glad that the podium is working, because I don't look quite as short. Thank you very much. I move L.007.

**Rep. Zokaie**
That is a proper motion. Would you like us to display it?

**Rep. Espinoza**

Yes, I ask that it be properly displayed.

**Rep. Zokaie**

And it is displayed, please proceed.

**Rep. Espinoza**

Thank you, Madam Chair. And thank you sponsors for bringing this bill forward on behalf of the Department. I want to explain about the amendment. The amendment is fairly simple. It strikes two words "by itself" that are modifying clauses in the bill that's written. And the concern is by having those two words in the bill, it would undermine the purpose and intent of what the Auditor is trying to do. The Auditor is attempting to make sure that if she needs information from a department, that that department cannot hide behind attorney client privilege, or that, more importantly, that their attorneys cannot violate their attorney-client obligation not to violate privilege by virtue of not having this protection. So by adopting this rule, we are allowing attorneys who are representing agencies within the government to say, we can release this information without causing our attorney client privilege to be broken. And, therefore, that information can go to the Auditor. So that was the intent and purpose of the bill. Some people have asked why I voted no in committee, and the reason I voted no in committee was twofold. The first question being, this larger issue of whether there was an exception that would swallow the rule. Because it's a clever attorney who would read the "by itself" and say, I don't know what that means, and so therefore I'm not going to release the information. But, secondarily, the larger question of whether attorneys would just say, you don't have authority as a State to waive that because it's a judicial privilege. Subsequent to the committee meeting, I did meet with Judiciary. And they have no problem and indicated, as long as we pass this statute, we could, in fact, allow attorneys to do this. But then we needed to address the second issue, just making sure we close that loophole. So, this amendment closes any potential loophole that might exist and ensures that agency counsel will feel confident to do exactly what we're asking, which is to allow the Auditor to have this information. We don't want any circumstance as what my good colleagues from the other side have been describing happened in the past. And that's why the Auditor has asked us to clarify and close this hole. I encourage a yes vote.

**Rep. Zokaie**

Representative Willford.

**Rep. Willford**

Thank you very much, Madam Chair. Members, I do believe that this is a good way to close that loophole, as you just heard, and ask for an aye vote.

**Rep. Zokaie**

Is there any further discussion on amendment L.007? Seeing none. The question before us is its passage. All those in favor, say, aye, All those opposed, no. The ayes have it. L7 passes. To the bill. Is there any

- 9 -

further discussion on Senate Bill 84? Seeing none. The question before us is its passage? All those in favor, say, aye. All those opposed, no. The ayes have it. Senate Bill 84 passes.