**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-03361-KHV-GEB

CHRISTOPHER S.P. GREGORY,

      Plaintiff,

v.

The COLORADO JUDICIAL DISCIPLINE RULEMAKING COMMITTEE, et al.

      Defendants.

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
DEFENDANTS' MOTION TO DISMISS**

---

Comes now the Plaintiff, Christopher S.P. Gregory, by and through his counsel, and for

himself, and hereby tenders his Response in Opposition to the Defendants' Motion to Dismiss,

stating as follows:

i

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

ARGUMENT.......................................................................................................................2

I.    THE COMPLAINT PLAUSIBLY PLEADS CLAIMS AGAINST EACH
DEFENDANT...................................................................................................................2

    A.    The Complaint Satisfies Rule 8 as to Each Named Defendant. ....................................2

    B.    The State Entities Are Properly Named for Prospective Injunctive Relief....................3

    C.    Absolute Immunity Does Not Shield Retaliatory or Obstructive Conduct.....................4

II.    THE PLAINTIFF'S FEDERAL CLAIMS ARE PLAUSIBLY-PLED. ............................5

    A.    Plaintiff Has Article III Standing...................................................................................5

    B.    The Plaintiff Has Pled a Facially-Plausible First Amendment Claims. .........................6

    C.    The Plaintiff Has Plausibly Pled Due Process and Equal Protection Claims..................8

    D.    The Conspiracy Allegations Are Facially-Plausible As Pled.........................................9

    E.    The § 1985(2) and § 1985(3) Claims Are Facially Plausible as Pled. ..........................10

    F.    Qualified Immunity Does Not Apply on The Facts of This Case.................................11

III.    THE PLAINTIFF'S MANDAMUS CLAIMS ARE PROPERLY COGNIZABLE.....12

IV.    IV.    THE PLAINTIFF'S STATE LAW CLAIMS SURVIVE DISMISSAL. .............13

    A.    The CFCA Retaliation Claim Is Not Barred by the CGIA. ........................................13

    B.    The CGIA Notice Requirement Does Not Apply to the CFCA Claim.........................14

    C.    The Unjust Enrichment Claim Is Cognizable...............................................................14

V.    MR. GREGORY'S SIXTH CLAIM SURVIVES BECAUSE THE SUBSTANTIVE
CLAIMS SURVIVE. ......................................................................................................15

CONCLUSION.................................................................................................................15

CERTFICATE OF SERVICE .........................................................................................16

**INTRODUCTION**

The Motion to Dismiss asks this Court to bury — at the pleading stage, without a single deposition or document request — claims of misconduct that are not disputed in any meaningful sense. Former Chief Justice Nathan Coats has already admitted, under oath, and in published judicial discipline proceedings, that he and the other Justices knowingly concealed the $2.66–2.75 million Masias Contract and the related Masias Memo from the Office of the State Auditor (OSA) as it performed a federally required audit. *Matter of Coats*, 2023 CO 44, ¶¶ 4(9)–(14), (20)–(23), 6. The Attorney General's own lawyers possessed the Masias Memo in 2019, acknowledged its materiality to the OSA investigation in writing, and said nothing for eighteen months. ECF No. 1 ¶ 63. It is publicly documented — through coordinated press statements and internal email chains — that the Justices and their co-conspirators collaborated on a damage-control strategy when the concealment finally became public. *Id.* ¶ 64.

Against that backdrop, the Defendants now argue that the Complaint is too vague, that state entities are immune, and that a number of other doctrines bar relief. However, those arguments do not grapple with what the Complaint actually alleges: that the Plaintiff, the official whose job it was to investigate the Justices where wrongdoing was probable, was fired in retaliation for doing that job; that his subsequent complaints were systematically suppressed by officials who had every incentive to suppress them; and that the bodies charged with receiving those complaints were deliberately staffed with conflicted appointees to ensure the outcome. These are not generalized grievances. They are specific injuries inflicted on a specific person by identifiable actors exercising governmental power.

1

**ARGUMENT**

I.     **THE COMPLAINT PLAUSIBLY PLEADS CLAIMS AGAINST EACH
DEFENDANT.**

A.   **THE COMPLAINT SATISFIES RULE 8 AS TO EACH NAMED DEFENDANT.**

Defendants invoke *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th
Cir. 2007), for the proposition that a complaint must specify what each defendant did, when, and
how it caused harm. The Complaint does exactly that. It devotes nearly forty paragraphs — ¶¶ 13–
52 — to identifying each Defendant's specific role in the judicial oversight structure and
explaining how each used that role to participate in the suppression of evidence and the retaliation
against Plaintiff. The remaining factual allegations tie specific Defendants to specific acts:

•   **Attorney General Weiser** personally consulted with then-Chief Justice Coats "in
consultation with the Attorney General" after receiving the OSA's Fraud Hotline complaint, then
joined the decision to withhold the Masias Memo. ECF No. 1 ¶ 61.

•   **Defendant Sooter** publicly confirmed before the Colorado Senate Judiciary Committee
that the CCJD dismissed Plaintiff's RFE without disqualification — the precise procedural failing
Plaintiff had flagged. *Id.* ¶ 70.

•   **Defendant Sullivan** denied Plaintiff's civil rights appeal to the Colorado Civil Rights
Commission without disclosing what record, if any, she transmitted to the Commission —
depriving the Commission of the information it needed to exercise independent review. *Id.* ¶ 75.

•   **Defendants Grooms and Cannan**, as assigned counsel to the CJDRC and CCJD
respectively, facilitated the refusal to publish Plaintiff's public comments and the rejection of his
disqualification demands. *Id.* ¶¶ 29, 34.

2

• The **Justice Defendants** — Berkenkotter, Boatright, Gabriel, Hart, Hood, Márquez, and Samour — coordinated the issuance of synchronized public statements on February 4 and 8, 2021, designed to minimize their exposure while continuing to withhold material information, and collectively exercised their appointment powers to install conflicted officials across every judicial oversight body. *Id.* ¶¶ 64, 68.

When a scheme is conducted through a coordinated exercise of official positions, "group pleading" fairly reflects the nature of the alleged conduct. *Bledsoe v. Carreno*, 53 F.4th 589, 608 (10th Cir. 2022) (reversing dismissal of complaint alleging collective suppression of evidence). The Tenth Circuit has made clear that the degree of specificity required scales to the plaintiff's realistic access to information at the pleading stage — before discovery — and that a complaint survives if the inference of each defendant's involvement is plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1193 (10th Cir. 2012). Here, the allegations are not merely plausible; they are corroborated by stipulated judicial discipline findings. *Matter of Coats*, 2023 CO 44, ¶ 6.

### B.   THE STATE ENTITIES ARE PROPERLY NAMED FOR PROSPECTIVE INJUNCTIVE RELIEF.

While the Defendants are correct that the Eleventh Amendment bars damages claims against the CSC, CCJD, and CJDRC as arms of the State, the Plaintiff does not seek damages from those entities. He named each one solely to obtain prospective injunctive relief — the restructuring of conflicted appointment processes and his reinstatement as Executive Director. ECF No. 1 ¶¶ 13–15, 79.

Under *Ex parte Young*, 209 U.S. 123, 159–60 (1908), a federal court may enjoin state officers from continuing to violate federal law, and that relief does not constitute a suit against the State. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012 (citing *Verizon*

*Md. Inc. v. Pub. Srev. Comm'n of Md.,* 535 U.S. 635, 645 (2002)). The constitutional defects Plaintiff identifies, including viewpoint-discriminatory suppression of speech in a constitutionally-mandated rulemaking process, retaliation for federally protected whistleblowing, and systematic denial of access to impartial tribunals, are ongoing violations of federal law. Prospective relief to cure those violations falls squarely within *Ex parte Young*'s domain.  Moreover, § 1983 authorizes relief against state officials acting in their official capacities, with the entity named as a nominal defendant for that purpose. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) ("official-capacity actions for prospective relief are not treated as actions against the State. *Kentucky v. Graham,* 473 U. S. 159, 167, n.14 (1985)". Dismissal of the entity defendants is unwarranted.

### C.  ABSOLUTE IMMUNITY DOES NOT SHIELD RETALIATORY OR OBSTRUCTIVE CONDUCT.

The Defendants invoke absolute quasi-judicial immunity for Director Sullivan and the CCJD members and staff based on their handling of Plaintiff's RFEs. But *Forrester v. White*, 484 U.S. 219, 229 (1988), forecloses that argument: immunity "is justified and defined by the functions it protects and serves, not by the person to whom it attaches."  When the actions at issue are "not the type generally assigned to" that office, qualified immunity is presumed.  *Id.* (citing *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 432 n.4 (1993)).  A judge who demotes or terminates an employee acts administratively and receives no immunity, even though the same judge would be immune for deciding a case. *Forrester*, *supra,* 484 U.S. at 229–30.

The Plaintiff's claims against the CCJD Defendants do not rest on disagreement with their adjudicative conclusions. Rather, they arise from the CCJD Defendants' participation in his wrongful termination as Executive Director, their creation of a hostile work environment, their

blackballing of him from future employment, and their refusal to disqualify themselves from reviewing his complaints — all acts taken in their administrative and supervisory capacities, not in the exercise of quasi-judicial judgment. ECF No. 1 ¶ 91. None of those acts carries absolute immunity, because they are not within the judicial process. *See Guttman v. Khalsa*, 446 F.3d 1027, 1033 (10th Cir. 2006).

Director Sullivan's immunity defense is equally unavailing. The Tenth Circuit in *Wilhelm v. Continental Title Co.*, 720 F.2d 1173, 1178 (10th Cir. 1983), extended immunity to the CCRD Director for acts squarely within the investigative process — receiving complaints, making probable cause findings, and conducting conciliation. Plaintiff's claim rests on something different: Director Sullivan denied his appeal to the Civil Rights Commission while failing to transmit any record to the Commission, thereby ensuring the Commission could not exercise independent review. That is not adjudication. It is obstruction of the very process immunity was designed to protect. *Cf. Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (immunity unavailable for conduct that a reasonable official would recognize as unlawful).

## II.    THE PLAINTIFF'S FEDERAL CLAIMS ARE PLAUSIBLY-PLED.
### A.   PLAINTIFF HAS ARTICLE III STANDING.

The Defendants' standing argument turns on a deliberate mischaracterization: they describe the Plaintiff as a "private citizen" complaining about the government's failure to prosecute others. *Motion* at 16–18. He is not. He was the Executive Director of the CCJD — the official statutorily charged with investigating the very misconduct he reported. He was fired from that position on January 19, 2024, in retaliation for doing his job. ECF No. 1 ¶ 12. He suffered the loss of his position, and employment. He suffered suppression of RFEs he personally submitted. He suffered the denial of his civil rights appeal. He suffered exclusion from a constitutionally-

mandated public process.  Each of these is a concrete, particularized, injury which affects him "in a personal and individual way." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016).

Cases like *Leeke v. Timmerman*, 454 U.S. 83 (1981), bar standing where a plaintiff's only injury is the government's failure to prosecute a third party.  Here, Mr. Gregory's injuries are categorically different: he was the target of the retaliation, not merely a bystander dissatisfied with how someone else's case was handled. *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014) (public employee's retaliatory termination constitutes concrete, personal injury sufficient for Article III standing).  As the Tenth Circuit noted, official misconduct is "undoubtedly of interest to the community." *Id.* at 1166.  That Mr. Gregory also contends the official misconduct harms the public, does not dilute his personal stake.

### B.   THE PLAINTIFF HAS PLED A FACIALLY-PLAUSIBLE FIRST AMENDMENT CLAIMS.

The Defendants argue that because the Plaintiff was permitted to file his documents and speak at the October 3, 2025 hearing, no First Amendment violation occurred. *Motion* at 18–21. This argument conflates the right to speak with immunity from retaliation and prior restraint.  The First Amendment's protection does not end once words have left a speaker's mouth, and the rights of speech and petition share "substantial common ground". *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 388 (2011).

Three distinct First Amendment violations are alleged. *First*, Mr. Gregory's termination was retaliatory. The Complaint alleges he was fired on January 19, 2024, because of his protected reporting of judicial misconduct — speech that occurred throughout his tenure as Executive Director and before. ECF No. 1 ¶¶ 3, 12. *Second*, Defendants imposed a prior restraint on Plaintiff's participation in the CJDRC rulemaking process by refusing to accept and publish his

public comments into the record while accepting others' comments. *Id.* ¶¶ 71–73. Colorado's Constitution **mandates** public participation in that process. Colo. Const. Art. VI, § 23(3)(k)(I). Selective exclusion of a speaker based on the content or viewpoint of his submission is a textbook First Amendment violation. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828–29 (1995). *Third*, the coordinated refusal of every oversight body to consider the Plaintiff's complaints or grant disqualification, a refusal that has continued uninterrupted since October 2024 — constitutes an ongoing chill on protected speech with actual, documented adverse consequences. *See, e.g.; Nielander v. Bd. of Cty. Comm'rs*, 582 F.3d 1155, 1165 (10th Cir. 2009) (retaliation claim cognizable where adverse action would deter a person of ordinary firmness from continuing to engage in protected activity (citing *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000)).

Concerning the retaliation claim, specifically, the Defendants observe that Mr. Gregory's post-termination speech has continued. *Motion* at 22–23. The test is not whether retaliation ultimately silenced the plaintiff, but whether the adverse action *would deter* a person of ordinary firmness. *Nielander*, 582 F.3d at 1165. His termination from his position, and his employment, unquestionably meet that test. His reports to federal law enforcement, the OSA Fraud Hotline, and the 10th Circuit, all made outside his official duties as Executive Director, are protected under *Thomas v. City of Blanchard*, 548 F.3d 1317, 1322 (10th Cir. 2008), which held that a public employee's report of misconduct outside the chain of command is constitutionally-protected speech beyond the reach of *Garcetti v. Ceballos*, 547 U.S. 401 (2006).

7

C.  **THE PLAINTIFF HAS PLAUSIBLY PLED DUE PROCESS AND EQUAL PROTECTION CLAIMS.**

The Defendants contend that Mr. Gregory identifies no protected property interest and alleges no differential treatment. Both contentions are erroneous.

**Due process**: the CFCA expressly prohibits termination in retaliation for reporting suspected false claims. § 24-31-1204(8), C.R.S.  A statutory prohibition against a particular "cause" for discharge creates a legitimate expectation, cognizable as a protected property interest, that the employee will not be discharged on that basis. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985).  Furthermore, Mr. Gregory's due process claim extends beyond his employment, to include the systematic denial of access to an impartial tribunal, through the deliberate stacking of every oversight body with conflicted appointees, and implicates a recognized liberty interest in receiving a fair hearing.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (due process requires recusal when risk of adjudicatory bias is substantial).  "It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." Murchison, supra, at 136[1]." *Id.*

**Equal protection**: the Complaint alleges that the Plaintiff's submissions were excluded from the CJDRC record while other participants' submissions were accepted. ECF No. 1 ¶¶ 71–73.  No rational basis exists for that differential treatment. Under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a "class-of-one" theory is cognizable when the plaintiff was intentionally treated differently from others similarly situated, with no rational basis for the distinction.  This is precisely what Plaintiff alleges.

---

[1]  *In re Murchison,* 349 U. S. 133, 136 (1955).

The Defendants contend that Mr. Gregory identifies no protected property interest and alleges no differential treatment. Both contentions are erroneous.

**Due process**: the CFCA expressly prohibits termination in retaliation for reporting suspected false claims. § 24-31-1204(8), C.R.S.  A statutory prohibition against a particular "cause" for discharge creates a legitimate expectation, cognizable as a protected property interest, that the employee will not be discharged on that basis. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–39 (1985).  Furthermore, Mr. Gregory's due process claim extends beyond his employment, to include the systematic denial of access to an impartial tribunal, through the deliberate stacking of every oversight body with conflicted appointees, and implicates a recognized liberty interest in receiving a fair hearing.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 876 (2009) (due process requires recusal when risk of adjudicatory bias is substantial).  "It is axiomatic that "[a] fair trial in a fair tribunal is a basic requirement of due process." Murchison, supra, at 136[2]." *Id.*

**Equal protection**: the Complaint alleges that the Plaintiff's submissions were excluded from the CJDRC record while other participants' submissions were accepted. ECF No. 1 ¶¶ 71–73.  No rational basis exists for that differential treatment. Under *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000), a "class-of-one" theory is cognizable when the plaintiff was intentionally treated differently from others similarly situated, with no rational basis for the distinction.  This is precisely what Plaintiff alleges.

---

[2]  *In re Murchison,* 349 U. S. 133, 136 (1955).

### D.    THE CONSPIRACY ALLEGATIONS ARE FACIALLY-PLAUSIBLE AS PLED.

The Defendants characterize the conspiracy allegations as conclusory. *Motion* at 26–27. A Section 1983 conspiracy requires a plausible inference of "a meeting of the minds or agreement among the defendants." *Brooks v. Gaenzle*, 614 F.3d 1213, 1227–28 (10th Cir. 2010)(citing *Salehpoor v. Shahinpoor*, 358 F.3d 782, 785, 789 (10th Cir. 2004)).   "A plaintiff may plead an agreement by alleging direct or circumstantial evidence, or a combination of the two," but allegations of direct evidence, that are adequately detailed, are sufficient alone. *West Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 99 (3rd Cir. 2010) cert. denied, 132 S. Ct. 98, 181 L. Ed. 2d 26 (2011).

Here, the circumstantial evidence is unusually strong.  Internal Judicial Department email chains document real-time coordination among the Justices, Attorney General Weiser's office, and other named Defendants in crafting synchronized public statements. ECF No. 1 ¶ 64.  Former Chief Justice Coats consulted with Attorney General Weiser before responding to the State Auditor in a manner that concealed the Masias Memo. *Id.* ¶ 61. Every single oversight body including the CCJD, the CJDRC, and the Colorado Civil Rights Division, responded to Mr. Gregory's complaints with uniform, unexplained dismissal. *Id.* ¶¶ 69–75.   Further, the appointment of conflicted officials across all these bodies occurred in a coordinated pattern that cannot plausibly be attributed to coincidence. *Id.* ¶ 68. Taken together, as they must be at this stage, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007), these facts plausibly establish a meeting of the minds.

### E.    THE § 1985(2) AND § 1985(3) CLAIMS ARE FACIALLY PLAUSIBLE AS PLED.

The Defendants misread 42 U.S.C. § 1985(2).  The statute contains distinct clauses. The first targets conspiracies to intimidate witnesses in federal court.  The second, which the Plaintiff invokes, addresses conspiracies "for the purpose of impeding, hindering, obstructing, or defeating,

10

in any manner, the due course of justice in any State." 42 U.S.C. § 1985(2).  The Supreme Court has confirmed that the second clause extends beyond federal proceedings and requires no racial animus.  *Kush v. Rutledge*, 460 U.S. 719, 724 (1983).  The Defendants' conspiratorial obstruction of the CCJD's constitutionally established judicial discipline process — a quasi-judicial proceeding created by the Colorado Constitution — falls squarely within the second clause.

The Complaint alleges that the conspiracy targeted not only Mr. Gregory individually but the entire class of whistleblowers and regulators who reported the Justices' misconduct. ECF No. 1 ¶ 3.  *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971), requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."  Courts have extended this beyond race to other constitutionally-cognizable classes. *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (Plaintiff pastor brought a claim that defendants conspired to deprive him of his right to freedom of religion, and that, as a member of a religious group, he was a member of a cognizable class. The 10th Circuit held he had not made a sufficient showing, citing *Griffin*).  Whether government whistleblowers constitute such a class is a question of fact and law that should be resolved on a developed record, not at the pleading stage. Because the § 1985(2) second-clause claim requires no class-based animus and is independently sufficient, it also independently supports the § 1986 claim. *Brown v. Reardon*, 770 F.2d 896, 907 (10th Cir. 1985).

F.   QUALIFIED IMMUNITY DOES NOT APPLY ON THE FACTS OF THIS CASE.

The individually named Defendants claim qualified immunity. *Motion* at 29–30.  To defeat qualified immunity at the pleading stage, a plaintiff must allege facts showing (1) a constitutional violation and (2) that the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Both requirements are met here.

11

It has been clearly established for decades that: (1) a government employer may not discharge a public employee for speech on matters of public concern, *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); (2) officials may not selectively suppress speech in a government-created forum based on viewpoint, *Rosenberger*, *supra,* 515 U.S. at 829; and (3) Regulations or practices which unjustifiably obstruct the availability of the right of access to the courts are actionable under the civil rights statutes. *Procunier v. Martinez*, 416 U.S. 396 (1974).

No reasonable official could have believed in 2024, after decades of decisions establishing these principles, that firing a whistleblower-regulator, stacking judicial oversight bodies with conflicted loyalists, and uniformly suppressing Mr. Gregory's resulting complaints was constitutionally permissible. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity was designed to protect reasonable mistakes, not brazen retaliation against the official charged with holding the retaliators accountable.

### III. THE PLAINTIFF'S MANDAMUS CLAIMS ARE PROPERLY COGNIZABLE.

The Defendants contend that this Court lacks jurisdiction to issue writs of mandamus and that the relief sought is impermissibly discretionary. *Motion* at 30–33. Both arguments fail.

Mr. Gregory does not rely on the All Writs Act as an independent jurisdictional grant; he relies on 28 U.S.C. § 1331 and the constitutional and statutory provisions that Defendants have violated. The All Writs Act, 28 U.S.C. § 1651, supplies the remedy within that existing statutory jurisdiction. *United States v. Denedo*, 556 U.S. 904, 911 (2009) ("[T]he All Writs Act is not a source of subject matter jurisdiction" but enables courts to "issue writs necessary or appropriate in aid of their . . . jurisdiction").

12

With regard to the discretion argument, mandamus does not compel how discretion is exercised, but it does compel officials to discharge ministerial duties they have no lawful authority to refuse. *Marathon Oil Co. v. Lujan*, 937 F.2d 498, 500–01 (10th Cir. 1991). The duties at issue here have a ministerial character. Once it is established, as the public record already demonstrates, that specific officials obtained their positions through a conflicted appointment process, and that those officials faced and continue to face irreconcilable conflicts of interest in reviewing the Plaintiff's complaints, the duty to remove them and reconstitute the relevant bodies is not discretionary. It is compelled by the Colorado Constitution's guarantee of an independent judicial discipline process. Colo. Const. Art. VI, § 23(3). A court that cannot compel compliance with clear constitutional mandates, even in extraordinary circumstances, would be one that could not do equity at all. *Marbury v. Madison*, 5 U.S. 137, 168–69 (1803).

## IV.    IV.    THE PLAINTIFF'S STATE LAW CLAIMS SURVIVE DISMISSAL.

### A.    THE CFCA RETALIATION CLAIM IS NOT BARRED BY THE CGIA.

Defendants argue that Plaintiff's CFCA claim "lies in tort" and is therefore barred by the CGIA. Mot. at 33–37. The Colorado Governmental Immunity Act bars claims that "lie in tort or could lie in tort." § 24-10-106(1), C.R.S. The Colorado Supreme Court has drawn a clear distinction between claims rooted in the common-law breach of a general duty of care — which lie in tort — and claims rooted in a distinctly statutory, non-tortious duty. *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1003–04 (Colo. 2008).

The CFCA's anti-retaliation provision, § 24-31-1204(8), C.R.S., creates a cause of action that has no common-law analogue: it expressly protects the act of reporting suspected false claims against government entities. The General Assembly modeled this provision on 31 U.S.C. §

13

3730(h) of the federal False Claims Act, a statute courts uniformly treat as imposing a distinctly statutory obligation outside the CGIA's tort-barring reach. *Cf. Elder v. Williams*, 477 P.3d 694, 702 (Colo. 2020) (CADA retaliation claims do not lie in tort and are not barred by CGIA). The CFCA belongs to the same category.

The Defendants' effective-date argument also misses the point. The Masias Contract, the conduct giving rise to the false claims, need not have occurred after the CFCA's August 10, 2022 effective date. What the statute requires is that the ***retaliatory conduct against Plaintiff*** occur while the CFCA was in force. Plaintiff's termination occurred on January 19, 2024, eighteen months after the CFCA became effective. ECF No. 1 ¶ 12. The statute's text is unambiguous: retaliation against one who seeks "to stop" a false claim is prohibited. § 24-31-1204(8)(b), C.R.S. Plaintiff's entire tenure as Executive Director from August 2022 through January 2024 was spent doing exactly that.

### B.    THE CGIA NOTICE REQUIREMENT DOES NOT APPLY TO THE CFCA CLAIM.

The CGIA's 182-day notice requirement, § 24-10-109(1), C.R.S., is a condition precedent to suits that lie in tort. *Maestas v. Lujan*, 351 F.3d 1001, 1014 (10th Cir. 2003). Because the CFCA claim does not lie in tort, the notice requirement does not apply.  Even if it did, the appropriate remedy for a notice deficiency at the pleading stage is leave to amend, not dismissal with prejudice. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) (dismissal with prejudice is a harsh remedy that should be reserved for cases of egregious failure to comply with court rules).

### C.    THE UNJUST ENRICHMENT CLAIM IS COGNIZABLE.

The Defendants argue that Mr. Gregory has not adequately alleged the elements of unjust enrichment. *Motion* at 38.  The Complaint alleges that the Defendants, acting in their individual capacities through the abuse of official positions, are receiving state-funded legal defense.  If those

14

Defendants are ultimately found individually liable, the State's expenditure of funds to defend their individual misconduct constitutes a benefit retained under circumstances that equity will not permit. *Martinez v. Colo. Dep't of Human Servs.*, 97 P.3d 152, 159 (Colo. 2003). The claim is plead in the alternative, pursuant to Federal Rule of Civil Procedure 8(d)(2), which expressly authorizes inconsistent alternative claims. The Defendants' citation to § 24-30-1510(3)(a), which authorizes the State to pay defense costs, addresses the State's authority, not the equity of requiring reimbursement from individuals found to have abused the positions that triggered that authority.

## V.     MR. GREGORY'S SIXTH CLAIM SURVIVES BECAUSE THE SUBSTANTIVE CLAIMS SURVIVE.

The Defendants argue that Mr. Gregory's Sixth Claim, for equitable relief, is not a stand-alone claim and falls with the substantive claims. *Motion* at 38–39. While equitable relief is a remedy, not an independent cause of action, because the substantive claims survive dismissal for the reasons argued above, the equitable relief sought in the Sixth Claim remains properly before the Court. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326–27 (2015) ("[T]he ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action."). The prospective structural relief the Plaintiff seeks - reconstitution of conflicted oversight bodies through conflict-free processes - is well within this Court's equitable power and is necessary to prevent continuing harm.

## CONCLUSION

For the reasons set forth herein, this Court should deny the Defendants' Motion to Dismiss in its entirety. The Complaint identifies specific actors, specific acts, specific injuries, and specific

15

legal violations.  The misconduct it describes has previously been proved, in part, by stipulated judicial discipline findings.  The constitutional and statutory rights Mr. Gregory invokes are clearly established. The relief he seeks:  reinstatement, structural reform, and accountability for individual wrongdoers, is precisely what federal courts exist to provide when state officials abuse their authority to shield themselves from scrutiny.

In the alternative, if this Court identifies any deficiency in the pleading, the Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2). Leave should be freely granted when, as here, there is no suggestion of bad faith, undue delay, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Respectfully submitted this 9th day of April, 2026

/s/ Ingrid J. DeFranco
Ingrid J. DeFranco, Esq.
Law Office of Ingrid J. DeFranco
P.O. Box 128
Brighton, CO 80601
Telephone: (303) 641-6812
Email: Ingrid.DeFranco@gmail.com
Attorney for Plaintiff Christopher S.P. Gregory

/s/ Christopher S.P. Gregory
Christopher S.P. Gregory, Esq.
The Gregory Law Firm, LLC
201 Coffman St., #1822
Longmont, CO 80502
Telephone: (970) 648-0642
Email: cspgregory@thegregorylawfirm.net
Pro Se Attorney for Plaintiff

## CERTFICATE OF SERVICE

I certify that on April 9, 2026, I filed the above filing via email to the Clerk of the Court, who will docket it in CM/ECF. CM/ECF will send notification of this filing to any party who has entered an appearance in this matter to the e-mail addresses provided in CM/ECF.

16

<u>**/s/ Ingrid J. DeFranco**</u>
**Ingrid J. DeFranco**