FILED
United States Court of Appeals
Tenth Circuit

DEC 01 1995

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

TERRY LYNN NICHOLS,

Petitioner,

v.

WAYNE E. ALLEY, District Judge,

Respondent.

UNITED STATES OF AMERICA,

Real Party in Interest.

No. 95-6341

ON PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA
(D.C. No. CR-95-110-A)

Submitted on the briefs:*

Michael E. Tigar, Austin, Texas, Ronald G. Woods, Houston, Texas, and D. Kate Rubin, Oklahoma City, Oklahoma (Adam Thurschwell, Of Counsel), for Petitioner.

Patrick M. Ryan, United States Attorney, Jerome A. Holmes, Assistant U.S. Attorney, Joseph H. Hartzler, Larry A. Mackey, and Sean Connelly, Special Assistant U.S. Attorneys, Oklahoma City, Oklahoma, for Real Party in Interest.

Harry F. Tepker, Jr., Norman, Oklahoma, for Respondent.

* After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. The motion for oral argument is therefore denied and the case ordered submitted on the briefs.

PLAINTIFF'S
EXHIBIT
2

Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.

PER CURIAM.

On April 19, 1995, a bomb exploded at the Alfred P. Murrah Federal Building in Oklahoma City. The explosion destroyed the Murrah Building, killed 169 people, injured many others, and caused extensive damage in the surrounding vicinity. The explosion inflicted massive damage (upwards of $1,000,000) to the United States Federal Courthouse, which is located one block south of the Murrah building. Over one hundred windows shattered and were blown out. The explosion caused substantial damage to interior ceilings, walls, and fixtures. The explosion decimated the glass doors at the entrance to the courthouse. District court chambers located on the third and fourth floors along the north side of the courthouse, including Judge Alley's third floor chambers and courtroom, were heavily damaged. Flying glass damaged woodwork and furniture in Judge Alley's courtroom. Parts of the ceiling collapsed in Judge Alley's chambers. Plaster ceiling tiles fell from the office ceilings and light fixtures were dislodged and left hanging. The skylight in Judge Alley's courtroom shattered, covering the courtroom floor in an inch of broken glass.

Although Judge Alley lost no family or friends in the bombing, the explosion slightly injured a member of his staff, and injured other court personnel. Some court personnel and employees had friends or relatives who were injured or killed in the Murrah

building explosion. It is likely that other court personnel and two judges would have been severely injured had they been at their desks.

Timothy McVeigh and Terry Nichols were charged by grand jury indictment with the bombing. The indictment charges defendants with a total of eleven counts of violating the laws of the United States: one count of Conspiracy to Use a Weapon of Mass Destruction in violation of 18 U.S.C. § 2332a; one count of the Use of a Weapon of Mass Destruction in violation of 18 U.S.C. §§ 2332a and 2(a) & (b); one count of Destruction by Explosive in violation of 18 U.S.C. §§ 844(f) and 2(a) & (b); and eight counts of First Degree Murder in violation of 18 U.S.C. §§ 1114, 1111 and 2(a) & (b).

Mr. McVeigh filed a motion for recusal of the presiding judge, the Honorable Wayne E. Alley, who had been randomly assigned to the case. Thereafter, Mr. Nichols filed his own recusal motion, arguing additional bases for recusal not presented by Mr. McVeigh. By order dated September 14, 1995, Judge Alley denied both recusal motions. Mr. Nichols then filed a petition for writ of mandamus with this court, seeking disqualification of all judges of the Western District of Oklahoma (including Judge Alley) or, in the alternative, an order directing Judge Alley to permit discovery and hold an evidentiary hearing regarding the factual bases for disqualification issues raised in the recusal motion. Thus, this matter is before us as an original proceeding in the nature of mandamus.

An order denying a motion to recuse is interlocutory and is, therefore, not immediately appealable. Lopez v. Behles (In re American Ready Mix, Inc.), 14 F.3d 1497, 1499 (10th Cir.), cert. denied, 115 S. Ct. 77 (1994). It is established in this circuit, however, that mandamus is an appropriate vehicle by which to challenge a district court's denial of a recusal motion. Id.; United States v. Cooley, 1 F.3d 985, 996 n.9 (10th Cir. 1993)(collecting and comparing cases). Although a district court's denial of a motion to recuse is reviewed for an abuse of discretion, Maez v. Mountain States Tel. & Tel., Inc., 54 F.3d 1488, 1508 (10th Cir. 1995), because we are reviewing the district court's order by means of mandamus, the higher standard dictated by that writ governs our review, In re American Ready Mix, 14 F.3d at 1501. Mandamus is available only upon a showing of a clear and indisputable right to relief. Weston v. Mann (In re Weston), 18 F.3d 860, 864 (10th Cir. 1994). A petitioner seeking mandamus relief must demonstrate a clear abuse of discretion, or conduct by the district court amounting to a usurpation of judicial authority. Mallard v. United States District Court, 490 U.S. 296, 309 (1989). "To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek . . . ." Id.

Mr. Nichols argues that Judge Alley's recusal is mandated by 28 U.S.C. § 455(a), which states that a judge "shall disqualify himself in any proceeding in which his impartiality might

reasonably be questioned."[1] In order to "promote public confidence in the integrity of the judicial process," the statute was broadened in 1974 by replacing the subjective standard with an objective test. Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 858 n.7 (1988). "[W]hat matters is not the reality of bias or prejudice but its appearance." Liteky v. United States, 114 S. Ct. 1147, 1154 (1994). Given the statutory parameters, we must determine "'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" Cooley, 1 F.3d at 993 (quoting United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992)(further quotation omitted)); see also Maez, 54 F.3d at 1508; United States v. Greenspan 26 F.3d 1001, 1005 (10th Cir. 1994); Hinman v. Rogers, 831 F.2d 937, 939 (10th Cir. 1987).

> The goal of section 455(a) is to avoid even the appearance of partiality. If it would appear to a reasonable person that a judge has knowledge of facts that would give him an interest in the litigation then an appearance of partiality is created even though no actual partiality exists because the judge does not recall the facts, because the judge actually has no interest in the case or because the judge is pure in heart and incorruptible.

Liljeberg, 486 U.S. at 860 (quotation omitted). In applying this objective standard, the initial inquiry is whether a reasonable factual basis exists for questioning the judge's impartiality. Cooley, 1 F.3d at 993. We are limited in this regard to outward manifestations and reasonable inferences drawn therefrom. Id.

---

[1] Mr. Nichols also urges recusal based on actual bias and prejudice under 28 U.S.C. §§ 144 & 455(b)(1). In light of our disposition under § 455(a), we do not reach these remaining statutory arguments.

"In applying § 455(a), the judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue." Id.

Having stated what § 455(a) is intended to accomplish and the standards for analyzing a recusal motion under that statute, we now note the cautions that must accompany our analysis. The statute "'must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice.'" Id. (quoting Franks v. Nimmo, 796 F.2d 1230, 1235 (10th Cir. 1986)(further quotation omitted)). Neither is the statute intended to bestow veto power over judges or to be used as a judge shopping device. Greenspan, 26 F.3d at 1006; Cooley, 1 F.3d at 993. Further, we are mindful that a judge has as strong a duty to sit when there is no legitimate reason to recuse as he does to recuse when the law and facts require. Greenspan, 26 F.3d at 1005; In re American Ready Mix, Inc., 14 F.3d at 1501; Hinman, 831 F.2d at 939.

We begin our application of the legal standards to these facts by recognizing that cases within § 455(a) are extremely fact driven "and must be judged on [their] unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." United States v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995). As a starting point, in Cooley this court compiled a nonexhaustive list of various matters not ordinarily sufficient to require § 455(a) recusal:

> (1) Rumor, speculation, beliefs, conclusions, innuendo, suspicion, opinion, and similar non-factual matters; (2)

> the mere fact that a judge has previously expressed an opinion on a point of law or has expressed a dedication to upholding the law or a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense; (3) prior rulings in the proceeding, or another proceeding, solely because they were adverse; (4) mere familiarity with the defendant(s), or the type of charge, or kind of defense presented; (5) baseless personal attacks on or suits against the judge by a party; (6) reporters' personal opinions or characterizations appearing in the media, media notoriety, and reports in the media purporting to be factual, such as quotes attributed to the judge or others, but which are in fact false or materially inaccurate or misleading; and (7) threats or other attempts to intimidate the judge.

1 F.3d at 993-94 (citations omitted). We are faced with none of those circumstances here. Neither do we have a case in which a judge is threatened and the judge determines that recusal is at least one of the movant's objectives. Greenspan, 26 F.3d at 1006. Further, all of the reasons Mr. Nichols asserts for recusal under § 455(a) arise from extra-judicial sources, a consideration the Supreme Court recently held should be a factor in our analysis. The Court held, however, that acquisition of alleged bias or prejudice from extra-judicial sources is neither a necessary nor sufficient condition for § 455(a) recusal. Liteky, 114 S. Ct. at 1157.

Needless to say, there is no case with similar facts to which we can look for guidance in our application of the law to the facts in this case. Both the government and Judge Alley, in his invited response to the mandamus petition, point to several cases in which courts have held that the situation was not such that a judge's impartiality might reasonably be questioned. Those cases are all legally sound, strong authority for the general principles for which they are cited. Unfortunately, however, they do not

particularly aid our analysis because, as we stated previously, our determination in this case is extremely fact driven, and all those cases, in addition to those uncovered by our own research, are factually inapposite. If the question of whether § 455(a) requires disqualification is a close one, the balance tips in favor of recusal. United States v. Dandy, 998 F.2d 1344, 1349 (6th Cir. 1993), cert. denied, 114 S. Ct. 1188 (1994).

In light of the settled principle that a judge has as strong an obligation not to recuse when the situation does not require as he has to recuse when it is necessary, we commend Judge Alley for his integrity in upholding what he sees as his clear judicial duty. There is certainly no allegation here of judicial impropriety; Judge Alley has conducted himself and these proceedings with true professionalism. Were the standard by which we must judge this case a subjective one, we could end our discussion here. But our task is to address the objective requirements of § 455(a).

The government maintains that no reasonable person could have a basis for questioning the judge's impartiality. We disagree. We conclude based on the extraordinary circumstances of this case that a "reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." Cooley, 1 F.3d at 993. Judge Alley's courtroom and chambers were one block away from the epicenter of a massive explosion that literally rocked downtown Oklahoma City, heavily damaged the Murrah building, killed 169 people, and injured many others. The blast crushed the courthouse's glass doors, shattered numerous windows, ripped

plaster from ceilings, dislodged light fixtures, showered floors with glass, damaged Judge Alley's courtroom and chambers, and injured a member of his staff, as well as other court personnel and their families. Based on these circumstances, we conclude that a reasonable person could not help but harbor doubts about the impartiality of Judge Alley. Because Judge Alley's "impartiality might reasonably be questioned" in the instant case, 28 U.S.C. § 455(a) mandates recusal.

Based on the extraordinary facts of this case, we further conclude that Mr. Nichols has satisfied the demanding standard for mandamus relief and has established a clear and indisputable right to relief. See Mallard, 490 U.S. at 309; In re Weston, 18 F.3d at 864. Further, Mr. Nichols has no adequate alternative means to obtain the relief he seeks. See Mallard, 490 U.S. at 309. Consequently, we hold that Mr. Nichols has discharged his burden of proving he is entitled to a writ of mandamus.

As the Fifth Circuit concluded in Jordan, "[p]ublic respect for the judiciary demands this result." 49 F.3d at 157. The effect of our decision today may, indeed, be to "bar trial by [a] judge[] who ha[s] no actual bias and who would do [his] very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way justice must satisfy the appearance of justice." Id. (quotation omitted). In reaching this result, we have considered the totality of the circumstances and looked to the future of this case. United States v. Ritter, 540 F.2d 459, 464 (10th Cir.), cert. denied, 429 U.S. 951 (1976). We have also balanced the possible questioning

of impartiality by a reasonable person against the relative ease of replacing Judge Alley with an available judge from a very large pool of judges outside the State of Oklahoma.

Finally, we have considered and reject as meritless all other arguments raised. The petition for writ of mandamus solely as it pertains to the named respondent is GRANTED, and the matter is referred to the Chief Judge for the Tenth Circuit for reassignment. See Texaco v. Chandler, 354 F.2d 655, 657 (10th Cir. 1965), cert. denied, 383 U.S. 936 (1966).[2]

SO ORDERED.

---

2 Petitioner's request to file a reply brief is denied. The Petitioner's motion to supplement the record is denied.

RECEIVED
United States Court of Appeals
Tenth Circuit

NOV 6 1995

PATRICK FISHER
Clerk

No. 95-6341

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

FILED
United States Court of Appeals
Tenth Circuit

NOV 6 1995

PATRICK FISHER
Clerk

TERRY LYNN NICHOLS,

Petitioner-Defendant

v.

THE HONORABLE WAYNE E. ALLEY

Respondent.

ON PETITION FOR A WRIT OF MANDAMUS
TO THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

BRIEF FOR THE UNITED STATES

PATRICK M. RYAN
United States Attorney
Western District of Oklahoma

JEROME A. HOLMES
Assistant U.S. Attorney

JOSEPH H. HARTZLER
LARRY A. MACKEY
SEAN CONNELLY
Special Assistant U.S. Attorneys
Western District of Oklahoma

897194

## TABLE OF CONTENTS


QUESTION PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. The Crime And Its Effects . . . . . . . . . . . . . . . 1

2. The Indictment And Recusal Proceedings . . . . . . . 3

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. THIS COURT HAS AUTHORITY TO REVIEW THE MANDAMUS PETITION AT LEAST AS CLOSELY AS IT WOULD REVIEW A RECUSAL ISSUE RAISED ON APPEAL FROM A FINAL JUDGMENT . . . . . . . . . . . . . . . . . 9

II. JUDGE ALLEY IS NOT DISQUALIFIED AS A MATTER OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . 13

A. Judge Alley Has Not Been Shown To Harbor Actual Bias Or To Have Personal Knowledge Of Disputed Facts . . . . . . . . . . . . . . . . . . 15

B. A Reasonable Person Would Not Question Judge Alley's Appearance Of Impartiality . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES

**CASES:**


Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813 (1986) . . . 14

Alexander v. Primerica Holdings, Inc., 10 F.3d 155 (3d Cir.1993) . . . . . . . . . . . . . . . . . . . . . 12

Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33 (1980) . . . . . . . . . . . . . . . . . . . . . 10

Bank of Nova Scotia v. United States, 487 U.S. 250 (1988) . . . . . . . . . . . . . . . . . . . 12

Bell v. Chandler, 569 F.2d 556 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . 9

Berger v. United States, 255 U.S. 22 (1921) . . . . . . . . . . 15

Del Vecchio v. Illinois Department of Corrections, 31 F.3d 1363 (7th Cir. 1994), cert. denied, 115 S. Ct. 1404 (1995) . . . . . . . . . . 14, 17

Harris v. Champion, 15 F.3d 1538 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 13

In re Faulkner, 856 F.2d 716 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . 10, 17

In re IBM Corp., 45 F.3d 641 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . 12

In re New Mexico Natural Gas Antitrust Litigation, 620 F.2d 794 (10th Cir. 1980) . . . . . . . . . . . . . . . . 18

In re School Asbestos Litigation, 977 F.2d 764 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . 10, 11

Liteky v. United States, 114 S. Ct. 1147 (1994) . . . 10, 13, 19

Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488 (10th Cir. 1995) . . . . . . . . . . . . 10, 15

Mayberry v. Pennsylvania, 400 U.S. 455 (1971) . . . . . 17, 18

Texaco, Inc. v. Chandler, 354 F.2d 655 (10th Cir. 1965), cert. denied, 383 U.S. 936 (1966) . . . . . . . . . 9, 10, 12

Ungar v. Sarafite, 376 U.S. 575 (1964) . . . . . . . . . . . 18

United States v. Balistieri, 779 F.2d 1191 (7th Cir. 1985), cert. denied, 475 U.S. 1095 (1986) . . . . . . . . . . . . . 11

United States v. Brown, 539 F.2d 467 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . 15

United States v. Bushert, 997 F.2d 1343 (11th Cir. 1993), cert. denied, 115 S. Ct. 652 (1994) . . . . . . . . . . . . . 11

United States v. Cooley, 1 F.3d 985 (10th Cir. 1993) . . . . . . . . . . . . . . . . . 9, 11, 15

United States v. Couch, 896 F.2d 78 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . 14

United States v. El-Gabrowny, 844 F. Supp. 955 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . 13

United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . 10, 18

United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert. denied, 474 U.S. 908 (1985) . . . . . . . . . . 16

United States v. Jordan, 49 F.3d 152 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . 17

United States v. Lovaglia, 954 F.2d 811 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Nobel, 696 F.2d 231 (3d Cir. 1982), cert. denied, 462 U.S. 1118 (1983) . . . . . . . . . . . . . 17

United States v. Poludniak, 657 F.2d 948 (8th Cir. 1981), cert. denied, 455 U.S. 940 (1982) . . . . . . . . . . . . . 16

United States v. Rosen, 929 F.2d 839 (1st Cir.), cert. denied, 502 U.S. 819 (1991) . . . . . . . . . . 11

United States v. Schaff, 948 F.2d 501 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES AND RULES:**


18 U.S.C. § 844(f) . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1111 . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 1114 . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 2332a . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 144 . . . . . . . . . . . . . . . . . . 4, 5, 6, 13

28 U.S.C. § 455 . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 455(a) . . . . . . . . . . . . . . . . 6, 9, 13, 15

28 U.S.C. § 455(b)(1) . . . . . . . . . . . . . . 6, 13, 15

28 U.S.C. § 1651 . . . . . . . . . . . . . . . . . . . . . 9

Fed. R. App. P. 21(b) . . . . . . . . . . . . . . . . . . . 11

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | | |
|---|---|---|
| **TERRY LYNN NICHOLS,**<br>**Petitioner-Defendant,** | ) | |
| **v.** | ) | **No. 95-6341** |
| **THE HONORABLE WAYNE E. ALLEY,**<br>**Respondent.** | ) | |

**BRIEF OF THE UNITED STATES RESPONDING TO MANDAMUS PETITION**

**QUESTION PRESENTED**

Whether the district court should have disqualified itself: a) because of its relationship to victims of the crime; or b) because the court itself was a victim of the crime.

**STATEMENT**

1. The Crime And Its Effects.

On April 19, 1995, at 9:02 a.m., a massive truck bomb exploded in front of the Alfred P. Murrah Federal Building. The bomb destroyed the building, killed 169 persons, injured scores more, and caused extensive damage throughout downtown Oklahoma City.

The United States Courthouse is one block south of the Murrah Building site. The "impact of the bomb heavily damaged parts of the Courthouse including the chambers of some of the judges." The bomb "shattered" many Courthouse windows and "destroyed" glass doors. In addition, "[m]any offices suffered the loss of plaster ceiling tiles and some light fixtures were dislodged by the impact." The "Courthouse remains in a state of partial disrepair," and it is expected that repair costs will total more than $1 million. Docket Entry ("D.E.") 311: Order Denying Recusal at 4-6; see also D.E. 222: McVeigh Recusal Motion with exhibits.

Courthouse personnel and their loved ones suffered tragic loss and injuries. The infant daughter of a Clerk's Office staff member was killed, and the son of a law clerk severely injured, at the day care center in the Murrah Building. The Court Clerk, who was in the Murrah Building at the time, was injured. Court staff have participated in programs "designed to aid in the emotional healing after the bombing." D.E. 311: Order Denying Recusal at 5-6.

The "personal office" of Judge Alley "was not severely damaged [by the bomb], but other parts of [his] chambers had collapsed ceilings." D.E. 311: Order Denying Recusal at 5. In addition, Judge Alley's courtroom "suffered significant damage" as a result of the bombing. Id. at 15. None of Judge Alley's "personal property was destroyed or damaged except for minor nicks to two or three items." D.E. 187: Notice to Counsel at 3.

Judge Alley suffered no personal injury, and indeed was home in Norman at the time of the bombing. One member of his personal staff suffered "some superficial scratches and bruises" but "[s]he did not require and did not seek any medical attention." Judge Alley "lost no family or friends in the bombing, and attended no funerals." As a result of the bombing, Judge Alley was forced to postpone "four brief proceedings (no trials) [that he] had set for April 19, 20, and 21." Judge Alley left Oklahoma on April 22 on a previously-scheduled trip. He explained: "By the time I returned on May 2, my office had been cleaned up and was functional, and my staff was in place. We were ready to do business." D.E. 187: Notice to Counsel at 1-3.

2. The Indictment And Recusal Proceedings.

On August 10, 1995, a federal grand jury in the Western District of Oklahoma charged defendants Timothy McVeigh and Terry Nichols with the bombing. The indictment contains eleven criminal counts: conspiring to use a weapon of mass destruction (18 U.S.C. § 2332a); using a weapon of mass destruction against persons (id.); destroying a federal building by explosive (18 U.S.C. § 844(f)); and eight counts of first degree murder (18 U.S.C. §§ 1114, 1111). The case was assigned randomly to the Honorable Wayne E. Alley, one of at least two Western District judges who had decided not to recuse themselves. D.E. 311: Order Denying Recusal at 4-5.

On August 14, 1995, in response to ex parte "interrogatories" that defendant McVeigh had filed with all Western District judges prior to indictment, Judge Alley issued a "Notice to Counsel." D.E. 187. The "Notice" provided some of the information requested by McVeigh but added that "not all the information sought from me is appropriate." Id. at 1. For example, Judge Alley explained that "whether members of my staff attended funerals of persons killed on April 19, 1995 or were friends of decedents or injured persons is none of my business." Id. Judge Alley added that he had "not asked them about these personal matters and [did] not intend to." Id.

Judge Alley advised that he "intend[ed] to conduct a trial in a fair, objective and dignified manner in full realization that the rights of all parties should be scrupulously observed." D.E. 187: Notice to Counsel at 3. The "Notice" concluded that Judge Alley

"kn[e]w of no reason whatsoever that would be a basis for self-recusal pursuant to 28 U.S.C. § 455." Id. It added that "[o]f course, this notice is not intended to foreclose submission of a motion for recusal supported by Affidavit and Certificate of Good Faith pursuant to [28 U.S.C.] § 144." Id.

On August 22, 1995, defendant McVeigh formally moved for Judge Alley's recusal. D.E. 222. McVeigh's counsel, who submitted exhibits and documents depicting bomb-related damage to the Courthouse in general and to Judge Alley's courtroom and chambers in particular, disclaimed "th[e] view" that "the Court harbors actual bias against Mr. McVeigh" but instead brought "this motion under the standards that call for recusal if a reasonable, non-judicial observer would harbor doubts about the Court's ability to be impartial on the basis of all the relevant facts and circumstances." Id. at 3 n.1. Defendant Nichols filed his own recusal motion on August 23, 1995. D.E. 229. Nichols, unlike McVeigh, argued that Judge Alley was disqualified for having both actual and apparent bias. Id.

The United States responded to the defense recusal motions on September 8, 1995. D.E. 295. The United States took the position that recusal was not "required as a matter of law for either actual or apparent bias" but that judges from the Western District of Oklahoma nonetheless should "recuse themselves voluntarily." Id. at 1. The response explained that "[i]t is of paramount importance that the nation have complete confidence in the integrity of the verdict ultimately reached in this case, and that partisan

detractors not be permitted -- however wrongly -- to raise questions about judicial fairness." Id. Moreover, it was "equally important that any such verdict be a final one" not subject to "second-guess[ing]" by a later reviewing court. Id. The response added that Judge Alley's "[f]ailure to recuse could cause delay, uncertainty and unwarranted focus on a matter that is collateral to the overriding issue of these defendants' guilt or innocence." Id. at 1-2. It was "[f]or those reasons," and "not because the law mandate[d] recusal," that the United States urged voluntary recusal. Id. at 2.

On September 14, 1995, Judge Alley entered an order refusing to disqualify himself. D.E. 311. Judge Alley noted what he called the government's "unusual brief, in which it is argued correctly that no legal basis for recusal is presented but that all judges in this district should nevertheless voluntarily recuse so as to avoid extraneous issues in the case and the mere possibility of an erroneous reversal later." Id. at 4. Judge Alley rejected this "recommendation" as "improvident," explaining that the recusal motions, "in common with all other motions and objections, call for rulings on the basis of the law as derived from the Constitution, statutes, and precedent in cases." Id.

Judge Alley held that he had no actual bias requiring recusal under 28 U.S.C. §§ 144 or 455(b). D.E. 311: Order Denying Recusal at 7-11. Judge Alley wrote that Nichols, the only defendant to file a procedurally sufficient affidavit under § 144, "present[ed] no evidence of personal bias" but instead based his claim on "a non

sequitur" and "naught but speculation, conjecture and accusation." Id. at 8-9. Even "[l]ooking beyond Mr. Nichols' affidavit," Judge Alley "still f[ou]nd no basis for recusal" on the ground of actual bias. Id. at 10. Judge Alley described the "basic allegations" as "essentially that the Court harbors bias against Mr. Nichols because of the damage caused to and in the United States Courthouse and surrounding areas." Id. Given that there were "no allegations of any manifestation whatsoever of bias by [him] against Mr. Nichols," and that there was no case finding actual bias where "the judge made no statements or rulings or other demonstrations that admitted or implied bias or prejudice," Judge Alley concluded that to recuse himself for actual bias would set "a shattering precedent." Id. at 10-11. Judge Alley further found that he had no "personal knowledge of [any] disputed evidentiary facts" that would require recusal under 28 U.S.C. § 455(b)(1). Id. at 11-13.

Judge Alley then turned to 28 U.S.C. § 455(a), which embodies "concern ... for the appearance of impartiality, not the reality." D.E. 311: Order Denying Recusal at 14. Judge Alley explained that he was required to "undertake an objective inquiry into the factual allegations of the parties, analyzing how things appear to the well informed thoughtful observer rather than to a hypersensitive or unduly suspicious person." Id. at 15 (citations and quotations omitted). Judge Alley denied having any "personal or collegial relationship" with any deceased bombing victim that would create an appearance problem. Id. at 16. While "one member of [his] staff sustained a minor injury ... not requir[ing] any medical

treatment," Judge Alley found that "a reasonable citizen would not question impartiality as to these defendants on the basis of [his] daily contact with this individual." Id. at 16 (emphasis in original).

Judge Alley further concluded that his impartiality could not reasonably be questioned based on the bomb-related damage to his courtroom and chambers. D.E. 311: Order Denying Recusal at 15-16. Although Judge Alley's courtroom "suffered significant damage," this damage "presented little or no impediment to operations within chambers." Id. Judge Alley explained that he had planned to be out of town beginning April 22, 1995 in any event, and bomb-induced continuances of matters scheduled for the preceding three days were "insignificant." Id. at 16. According to Judge Alley, he had "experienced greater loss of courtroom time because of water leaks and utility failures." Id. Moreover, Judge Alley explained, "damage to property is not emotionally tantamount to friendship with the victim of a murder" that a Fifth Circuit case had found not to require recusal. Id. (citing United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert. denied, 474 U.S. 908 (1985)).

Judge Alley held that "[a]ll told, the allegations of bias and the appearance of lack of impartiality presented by the defendants are lacking." D.E. 311: Order Denying Recusal at 18. The "hundreds of cases reviewed by" Judge Alley were said to all "share a common thread, a thread missing in this matter." Id. According to Judge Alley, "[i]n each case where recusal was mandated, the presiding judge had taken some action, made some comment, or had

some substantial relationship with the parties or witnesses, such that a reasonable person knowing all the facts would question the judge's impartiality." Id. Judge Alley concluded that "recusal in this matter is not grounded in statute, and is not called for under the circumstances presented here." Id. at 19. He added: "Preparing for and trying this case will be a difficult task in the coming months, and I cannot merely ask another judge to shoulder the burden when the law does not require that." Id.

Judge Alley set May 17, 1996 as the trial date and designated Lawton, Oklahoma as the place of trial. D.E. 311: Order Denying Recusal at 19-21. Judge Alley explained that he was moving the case from the usual Western District location because the "United States Courthouse in Oklahoma City is too close to the bombing target, the Murrah Building," and because "[j]ury selection from a pool in the Oklahoma City area would be chancy." Id. at 20. Judge Alley added that "[m]otions for a change of venue are not foreclosed by this designation...." Id. Because Judge Alley "want[ed] the proceedings in this case to move without unnecessary delay," he "encourage[d] the parties to file for mandamus as quickly as they can, if this is the route they choose to follow." Id. at 19 n.3.

## ARGUMENT

**I. THIS COURT HAS AUTHORITY TO REVIEW THE MANDAMUS PETITION AT LEAST AS CLOSELY AS IT WOULD REVIEW A RECUSAL ISSUE RAISED ON APPEAL FROM A FINAL JUDGMENT.**

Nichols' petition is based on the All Writs Act, which provides: "The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This Court has held that "a district judge's refusal to disqualify under [28 U.S.C.] § 455(a) may be challenged on direct appeal following conviction as well as by use of mandamus." United States v. Cooley, 1 F.3d 985, 996 n.9 (10th Cir. 1993); accord Bell v. Chandler, 569 F.2d 556, 559 (10th Cir. 1978) ("[t]here is no question but that a mandamus petition may be used to force the disqualification of a district court judge") (citing cases).

An en banc opinion in which the Tenth Circuit issued a writ disqualifying the trial judge explains:

> The jurisdiction of this court to take action to guarantee a fair and impartial trial is no longer open to question. Upon an adequate showing, this court has held that it has the power and inescapable duty, whether under the allwrits statute, 28 U.S.C. § 1651, or under its inherent powers of appellate jurisdiction, to effectuate what seems to us to be the manifest ends of justice.

Texaco, Inc. v. Chandler, 354 F.2d 655, 657 (10th Cir. 1965) (quoting cases), cert. denied, 383 U.S. 936 (1966). Consistent with these statements, this Court has fully reviewed mandamus petitions challenging recusal decisions, without ever suggesting that the legal analysis might have been different had the context

been an appeal from a final judgment. See Nichols' Br. 5-6 (citing cases); accord In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988).

This Court's review of mandamus petitions challenging recusal decisions is not inconsistent with the Supreme Court's suggestion that discretionary trial court decisions are rarely the proper subject of mandamus review. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35-36 (1980). While the nominal standard of review is abuse of discretion, Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488, 1508 (10th Cir. 1995), this Court in practice has closely scrutinized recusal decisions. See, e.g., United States v. Greenspan, 26 F.3d 1001, 1006-1007 (10th Cir. 1994); Texaco, Inc. v. Chandler, 354 F.2d at 657. Such careful review is appropriate because this is a unique issue on which a district judge must evaluate his own appearance and because the issue so critically affects the public perception of justice. The Supreme Court has explained, moreover, in language leaving no room for suggestion that a trial court has discretion not to recuse itself: "Quite simply and quite universally, recusal [is] required whenever 'impartiality might reasonably be questioned.'" Liteky v. United States, 114 S. Ct. 1147, 1154 (1994).

Review is also appropriate, even if recusal decisions are discretionary, because mandamus is available to remedy trial court decisions "amounting to a judicial usurpation of power." Allied Chemical, 449 U.S. at 35. An erroneous recusal denial, unlike most other pretrial rulings, can be described categorically as a usurpation of power. Cf. In re School Asbestos Litigation, 977

F.2d 764, 778 (3d Cir. 1992) ("[i]nterlocutory review of disqualification issues on petitions for mandamus is both necessary and appropriate to ensure that judges do not adjudicate cases that they have no statutory power to hear"). Moreover, unlike most other rulings, recusal decisions involve not only the rights of the parties but also the interest of "the public at large." Cooley, 1 F.3d at 996 n.9 (citing In re School Asbestos Litigation, 977 at 777-778). As the Third Circuit opinion cited favorably by this Court in Cooley explains, "interlocutory prevention of harm to the public perception of the judicial system is preferable to the partial cure of that harm on final appeal." In re School Asbestos Litigation, 977 F.2d at 777 n.12.[1]

---

[1] McVeigh has chosen not to seek mandamus review of his recusal challenge. That generally would be his prerogative under the law of this Circuit. See Cooley, 1 F.3d at 996 n.9; contra United States v. Balistieri, 779 F.2d 1191, 1204-1205 (7th Cir. 1985) (section 455(a) challenges may only be reviewed on pretrial mandamus), cert. denied, 475 U.S. 1095 (1986). The Federal Rules of Appellate Procedure, however, do not allow a defendant who raised a recusal issue in the district court to sit by idly without consequence while his codefendant pursues that same issue in the Court of Appeals. Instead, Fed. R. App. P. 21(b) provides: "All parties below other than the petitioner shall also be deemed respondents for all purposes." McVeigh has been served with all appellate pleadings and is on full notice of the proceedings in this Court. If McVeigh has chosen not to join in Nichols' petition, then he is properly considered by Rule 21(b) to be a respondent. In either event, McVeigh should not be heard later to complain about any mandamus ruling by this Court because any ruling as to codefendant Nichols will also be "law of the case" as to McVeigh. Cf. United States v. Schaff, 948 F.2d 501, 506 (9th Cir. 1991) (ruling on a codefendant's earlier appeal is law of the case as to the same issue raised later by a codefendant); accord United States v. Bushert, 997 F.2d 1343, 1355-1356 (11th Cir. 1993), cert. denied, 115 S. Ct. 652 (1994); United States v. Rosen, 929 F.2d 839, 842 n.5 (1st Cir.), cert. denied, 502 U.S. 819 (1991).

Not only are recusal decisions subject to mandamus review but such decisions arguably may be more freely reviewed prior to trial than they would be on appeal from a final judgment. A conviction may be overturned only for prejudicial "error," and "a federal court may not invoke supervisory power to circumvent the harmless-error" rule. Bank of Nova Scotia v. United States, 487 U.S. 250, 254 (1988). In contrast, this Court and others reviewing recusal decisions before trial have cited the All Writs Act and "inherent powers of appellate jurisdiction" to "effectuate what seems to us to be the manifest ends of justice." Texaco, Inc. v. Chandler, 354 F.2d at 657; see also In re IBM Corp., 45 F.3d 641, 645 (2d Cir. 1995) (issuance of a writ disqualifying the judge was "reenforced by our responsibilities in the exercise of our supervisory authority over the administration of justice in the district courts"); Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 167 (3d Cir. 1993) ("irrespective of the requirements of § 455(a), we have supervisory authority to order this case reassigned to another district court judge").

## II. JUDGE ALLEY IS NOT DISQUALIFIED AS A MATTER OF LAW.

There are three sources upon which a federal judge can be disqualified as a matter of law from presiding over a particular case. First, a judge harboring actual bias against a party is disqualified under 28 U.S.C. §§ 144 and 455(b). Section 144 provides, in pertinent part, that "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." A similar provision is found in 28 U.S.C. § 455(b)(1), which disqualifies a judge who "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." These provisions deal with actual bias rather than simply its appearance. Harris v. Champion, 15 F.3d 1538, 1571 (10th Cir. 1994); United States v. El-Gabrowny, 844 F. Supp. 955, 959 (S.D.N.Y. 1994).

Second, a judge is disqualified under 28 U.S.C. § 455(a), the broadest of all recusal provisions, where there exists a reasonable appearance of bias. Section 455(a) provides that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." See generally Liteky v. United States, 114 S. Ct. at 1153-1154 ("Subsection (a) ... was an entirely new 'catch-all' recusal provision" requiring disqualification grounds "to be evaluated on an objective basis, so

that what matters is not the reality of bias or prejudice but its appearance") (emphasis in original).

Finally, there are cases in which recusal is mandated as a matter of constitutional due process. The "Due Process Clause may sometimes bar trial by judges who have no actual bias" where the circumstances are such that they "would offer a possible temptation to the average judge to lead him not to hold the balance nice, clear and true." Aetna Life Insurance Co. v. Lavoie, 475 U.S. 813, 825 (1986) (citations and internal punctuation omitted). The Supreme Court has never applied this appearance standard to require disqualification as a matter of constitutional due process of a judge who lacks some real stake, usually financial, in the outcome of the proceeding. See Del Vecchio v. Illinois Department of Corrections, 31 F.3d 1363, 1372 (7th Cir. 1994) ("When the Supreme Court talks about the 'appearance of justice,' it is not saying that bad appearances alone require disqualification [as a matter of due process]; rather, it is saying that when a judge is faced with circumstances that present some actual incentive to find one way or another or a real possibility of bias, a court need not examine whether the judge actually was biased") (internal quotations omitted), cert. denied, 115 S. Ct. 1404 (1995). Although Nichols argues that the Due Process Clause requires disqualification (Br. 29-32), that issue need not be reached because "section 455 establishes a statutory disqualification standard more demanding than that required by the Due Process Clause." United States v. Couch, 896 F.2d 78, 81 (5th Cir. 1990) (citing cases).

A. Judge Alley Has Not Been Shown To Harbor Actual Bias Or To Have Personal Knowledge Of Disputed Facts.

Contrary to Nichols' claim (Br. 11-18), Judge Alley has not been shown to harbor actual bias against these defendants. The present case is a far cry from those in which actual bias has been found. E.g., Berger v. United States, 255 U.S. 22 (1921) (judge's remarks exhibited actual prejudice against German Americans); United States v. Brown, 539 F.2d 467, 468 (5th Cir. 1976) (judge used racial epithet showing bias against African American defendant). Nor, again contrary to Nichols' claim (Br. 18-20), is Judge Alley disqualified under 28 U.S.C. § 455(b)(1), which prevents trial before a judge who has "personal knowledge of disputed evidentiary facts concerning the proceeding." See generally D.E. 311: Order Denying Recusal at 11-13. In any event, Nichols recognizes that "[i]f this Court decides that Judge Alley's and other Western District judges' continuing participation in this case would cause a reasonable person to question their impartiality within the meaning of 28 U.S.C. § 455(a), then it need not reach [any] other bases for disqualification." Br. 11 (citing Cooley, 1 F.3d at 995-996). It is to this issue that we now turn.

B. A Reasonable Person Would Not Question Judge Alley's Appearance Of Impartiality.

Judge Alley is disqualified under 28 U.S.C. § 455(a) if "a reasonable person armed with the relevant facts would harbor doubts about the judge's impartiality." Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488, 1508 (10th Cir. 1995) (citing cases). Nichols contends that all Western District of Oklahoma

judges are disqualified under this standard: 1) because they knew victims; and 2) because the bomb damage extended to the federal courthouse. Br. 20-29. In our view, neither of these grounds requires recusal under section 455(a).

1. Courts have held that recusal is not required even where there is a much closer relationship between the judge and a murder victim than has been shown to exist in this case -- where Judge Alley "lost no family or friends in the bombing, and attended no funerals." D.E. 189: Notice to Counsel at 3. For example, in denying recusal, Judge Alley relied heavily on United States v. Harrelson, 754 F.2d 1153, 1164-1166 (5th Cir.), cert. denied, 474 U.S. 908 (1985), where the Fifth Circuit held that Judge Sessions properly presided over a trial involving the murder of a fellow judge for whom Judge Sessions served as an honorary pallbearer and eulogist. See also United States v. Lovaglia, 954 F.2d 811, 817 (2d Cir. 1992) (section 455(a) did not require recusal of judge who as private lawyer incorporated, and had close personal relationship with the principals of, a corporate crime victim because the judge's "relationship with the [principals] ended seven or eight years prior to sentencing, because [the judge] had no specific knowledge of the contested facts, and because the [principals'] allegations were not outcome-determinative"); United States v. Poludniak, 657 F.2d 948, 953-954 (8th Cir. 1981) (reasonable person would not question impartiality where victim was Senator through whom judge was attempting to obtain increased court funding), cert. denied, 455 U.S. 940 (1982).

Cases requiring recusal based on a relationship between the judge and victim have involved a much closer personal relationship than has been shown to exist here. In United States v. Jordan, 49 F.3d 152, 157-158 (5th Cir. 1995), the court held that recusal was required where the district judge had a "long, close, and multi-faceted friendship" with a lawyer who had been victimized by the defendant. In United States v. Nobel, 696 F.2d 231, 235-236 (3d Cir. 1982), cert. denied, 462 U.S. 1118 (1983), the court held that the trial judge should have recused himself under section 455(a) where he was a shareholder of the insurance company that had been victimized by defendant's fraudulent scheme. Cf. In re Faulkner, 856 F.2d 716, 721 (5th Cir. 1988) (trial judge ordered recused where "a relative with a close personal relationship to the judge ha[d] been an important participant in key transactions forming the basis of indictment").

2. Nor is recusal ultimately required because the effects of the bombing carried over to the courthouse, courtroom and chambers in which the Court conducts official business. It can be stated as a general matter that "a judge should not preside in a case in which he was the victim of a crime." Del Vecchio, 31 F.3d at 1392 (Easterbrook, J., concurring) (discussing Mayberry v. Pennsylvania, 400 U.S. 455 (1971)). This general rule, however, has not been applied categorically. Rather, the issue turns on whether the crime is such as would be expected to cause a judge to lose the "calm detachment necessary for fair adjudication." Mayberry, 400 U.S. at 465. Compare id. at 466 (judge who was target of "highly

personal aspersions, even 'fighting words'" should not have presided at subsequent contempt trial because "[i]nsults of that kind are apt to strike at the most vulnerable and human qualities of a judge's temperament") (internal quotations omitted) with Ungar v. Sarafite, 376 U.S. 575, 584 (1964) (lawyer's conduct was "disruptive, recalcitrant and disagreeable," but was not "an insulting attack upon the integrity of the judge carrying such potential for bias as to require disqualification").

This Court recently held that a district judge should have recused himself under section 455(a) after learning that the defendant had made death threats against the judge and his family. United States v. Greenspan, 26 F.3d 1001, 1005-1007 (10th Cir. 1994). Not only do death threats have a real potential for causing a judge to lose the "calm detachment necessary for fair adjudication" (Mayberry, 400 U.S. at 465), but Greenspan stressed that "[t]he judge obviously took the threat very seriously, and chose to accelerate court procedures in order to reduce the risk to him and his family as he perceived it." 26 F.3d at 1007.

On the other hand, there are cases in which any injuries suffered by a judge are too trivial to require recusal. For example, In re New Mexico Natural Gas Antitrust Litigation, 620 F.2d 794 (10th Cir. 1980) held that a judge's status as a natural gas consumer was too insubstantial to require his recusal from a case challenging natural gas price fixing.

Judge Alley was not present in Oklahoma City at the time of the bombing, and any damage to court facilities affected him only

in an official, and not a personal, capacity. Judge Alley deemed the bomb's effects upon his conduct of court business less significant than disruptions caused him by "water leaks and utility failures." D.E. 311: Order Denying Recusal at 16. There is no reason to believe a judge affected only in his official capacity by a crime directed at another target would be unable to preside fairly and impartially. Nichols suggests that it makes no difference that Judge Alley was only affected in his official capacity (Br. 8 & n.5), given the Supreme Court's view that "[b]ias and prejudice [are] not divided into the 'personal' kind, which is offensive, and the 'official' kind, which is perfectly all right." Liteky, 114 S. Ct. at 1154. The point of Liteky, however, is simply that bias and prejudice of any form are improper, while the issue here is the antecedent one of whether there exists any apparent bias or prejudice. In evaluating this issue, it is quite relevant that Judge Alley was affected by the crime not personally but rather only in his capacity as a United States judge.

Judge Alley's recusal is not mandated by law. We nonetheless recognize that the facts of this case are unique. We know of no other case addressing the question whether a district judge may preside at the trial of defendants who are alleged to have damaged his chambers, his courtroom, and the courthouse, and who are alleged to have injured court personnel. For this reason, we ask that the Court evaluate the recusal matter at least as rigorously as it would in a post-conviction appeal so that the matter is decided now once and for all as law of this case.

## CONCLUSION

For the above reasons, Judge Alley's recusal is not mandated as a matter of law.

Respectfully submitted,

PATRICK M. RYAN
United States Attorney

JOSEPH H. HARTZLER
LARRY A. MACKEY
Special Assistant U.S. Attorneys

JEROME A. HOLMES
Assistant United States Attorney

SEAN CONNELLY
Special Assistant U.S. Attorney

210 West Park Avenue
Suite 400
Oklahoma City, Oklahoma 73102
(405) 231-5281

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of November 1995, two copies of the foregoing Brief were served by Federal Express upon:

(1) The Honorable Wayne E. Alley
United States District Court
for the Western District of Oklahoma
United States Courthouse Room 3102
Oklahoma City, OK 73102

(2) Harry F. Tepker, Esq.
University of Oklahoma Law Center
Norman, OK 73019
Counsel for The Honorable Wayne E. Alley

(3) Michael E. Tigar, Esq.
Ronald G. Woods, Esq.
D. Kate Rubin, Esq.
1620 Mid-America Tower
20 North Broadway
Oklahoma City, OK 73102
Counsel for Terry Lynn Nichols

(4) Stephen Jones, Esq.
Robert Nigh, Esq.
Richard Burr, Esq.
114 East Broadway, Suite 1100
P.O. Box 472
Enid, OK 73702-0472
Counsel for Timothy James McVeigh

SEAN CONNELLY
Special Assistant U.S. Attorney

No. 95 - 6341

RECEIVED
United States Court of Appeals
Tenth Circuit

NOV -6 1995

PATRICK FISHER
Clerk

# The United States Court of Appeals for the Tenth Circuit

FILED
United States Court of Appeals
Tenth Circuit

NOV 6 1995

PATRICK FISHER
Clerk

TERRY LYNN NICHOLS,

*Petitioner*,

*vs.*

THE HONORABLE WAYNE E. ALLEY,

*Nominal Respondent*.

THE UNITED STATES OF AMERICA,

*Real Party in Interest*

ON PETITION FOR WRIT OF MANDAMUS

MEMORANDUM ON BEHALF OF NOMINAL RESPONDENT,
THE HONORABLE WAYNE E. ALLEY, UNITED STATES DISTRICT JUDGE,
WESTERN DISTRICT OF OKLAHOMA, IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS;
AND MEMORANDUM OF AMICUS CURIAE
IN DEFENSE OF ORDER DENYING MOTIONS FOR RECUSAL

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

*For Nominal Respondent*

NOVEMBER 6, 1995

897167

No. 95 - 6341

# The United States Court of Appeals for the Tenth Circuit

TERRY LYNN NICHOLS,

*Petitioner*,

*vs.*

THE HONORABLE WAYNE E. ALLEY,

*Nominal Respondent.*

THE UNITED STATES OF AMERICA,

*Real Party in Interest*

ON PETITION FOR WRIT OF MANDAMUS

MEMORANDUM ON BEHALF OF NOMINAL RESPONDENT,
THE HONORABLE WAYNE E. ALLEY, UNITED STATES DISTRICT JUDGE,
WESTERN DISTRICT OF OKLAHOMA, IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS;
AND MEMORANDUM OF AMICUS CURIAE
IN DEFENSE OF ORDER DENYING MOTIONS FOR RECUSAL

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

*For Nominal Respondent*

NOVEMBER 6, 1995

**THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| TERRY LYNN NICHOLS,<br><br>*Petitioner*,<br><br>*vs.*<br><br>THE HONORABLE WAYNE E. ALLEY,<br><br>*Nominal Respondent.*<br><br>---<br><br>THE UNITED STATES OF AMERICA,<br><br>*Real Party in Interest* | **No. 95-6341** |

MEMORANDUM ON BEHALF OF NOMINAL RESPONDENT,
THE HONORABLE WAYNE E. ALLEY, UNITED STATES DISTRICT JUDGE, WESTERN DISTRICT OF OKLAHOMA IN RESPONSE TO PETITION FOR WRIT OF MANDAMUS

This memorandum is submitted in response to the invitation of this Court on October 17, 1995 and Rule 21 of the Federal Rules of Appellate Procedure.

The nominal respondent in this matter, the Honorable Wayne E. Alley, affirms that he has no personal interest in this case. He has no personal interest in retaining this case. He does not wish to participate personally as a party to this original proceeding in the nature of mandamus.

However, this original proceeding is a rare example of "widely scattered occasions when no party to an appeal from the District Court undertakes to support the decision under review." *United*

*States v. Haldeman*, 559 F.2d 31, 138 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933 (1977). After its considerable experience with mandamus proceeedings, the District of Columbia Circuit adopted the practice of appointing "an attorney as amicus curiae to defend [the district court's] decision" on such occasions. *Id.* at 139. In line with this model, the nominal respondent requests: (i) that this Court appoint Harry F. Tepker, Jr., as counsel amicus curiae for the purpose of presenting a memorandum, and if the Court deems it appropriate, an oral presentation in defense of the District Court's Order of September 14 denying defendants' motions for recusal; and (ii) that this Court grant leave to file the accompanying memorandum prepared by Professor Tepker.

Nominal respondent makes this request for three reasons.

1. This original proceeding presents important issues of statutory interpretation and judicial administration in the aftermath of the decision of the U.S. Supreme Court in *Liteky v. United States*, 114 S.Ct. 1147 (1994). In particular, the majority and concurring opinions in *Liteky* may persuade this Court that a clarification of its interpretation of 28 U.S.C. § 455(a) is appropriate.

2. This request is rooted in the hope that discussion of the issues will assist this Court in its consideration of the interesting and difficult issues of statutory interpretation posed by the motions of the defendants below, the recommendation of the government and applicable federal law. In particular, the proceeding presents an unusual situation because of the recommendation of the real party in interest, the United States, that the nominal respondent disqualify himself voluntarily, though federal law did not mandate such disqualification.

3. The nominal respondent suggests this approach to allow discussion from the perspective of the district court, but in a manner that should not alter the realities of the petition for a writ of mandamus in which the judge remains 'at most only . . . a nominal party with no real interest

in the outcome.'" *United States v. Haldeman*, 559 F.2d at 138 (quoting *United States v. King*, 482 U.S. 768, 772 (1973). In the words of the District of Columbia Circuit in *Haldeman*,

> The whole purpose [of appointing counsel amicus curiae to defend the order of the District Court] is to give the court the benefit of the District Judge's wisdom on the point at issue. In no sense is the judge placed in the position of a litigant, nor is his situation significantly different from what it is when the defense is undertaken by counsel for one who is already a party to the litigation.

*Id.* at 138-39.

The practice of permitting counsel as amicus curiae to present a discussion of the problem in this original proceeding should be preferable in form and substance to the situation in which a judge aligns himself or herself with one of the parties or uses the attorneys for one of the parties as the court's representative. *United States v. Haldeman*, 559 F.2d at 138 (rejecting the argument "that a judge participating in a case prior to a contested appeal should step out of post-appeal proceedings simply because counsel include one or more who endeavored to rescue the judge in this court" and distinguishing *Rapp v. Van Dusen*, 350 F.2d 806 (3d Cir. 1965) (en banc) (a judge represented on appellate review of his order by counsel for the successful parties should not sit in subsequent phases of the litigation)).

The nominal respondent agrees that this Court's immediate consideration of the issues posed by the petition for a writ of mandamus will materially advance the proceedings in the underlying case, so that either Judge Alley or a replacement judge may commence work on the substantive motions. They are piling up. To this end, Judge Alley encouraged the defendants to file a petition for a writ of mandamus as soon as possible, if they chose to seek review of the court's order by mandamus. Therefore, this Court's review of the respondent's order of September 14, 1995 is wholly appropriate

at this time.

DATE: November 6, 1995.

*Respectfully submitted,*

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

*For Nominal Respondent,*
*The Honorable Wayne E. Alley,*
*United States District Judge,*
*Western District of Oklahoma*

No. 95 - 6341

# The United States Court of Appeals for the Tenth Circuit

TERRY LYNN NICHOLS,

*Petitioner*,

*vs.*

THE HONORABLE WAYNE E. ALLEY,

*Nominal Respondent.*

THE UNITED STATES OF AMERICA,

*Real Party in Interest*

ON PETITION FOR WRIT OF MANDAMUS

MEMORANDUM OF AMICUS CURIAE
IN DEFENSE OF ORDER DENYING MOTIONS FOR RECUSAL

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

*For Nominal Respondent*

NOVEMBER 6, 1995

## TABLE OF CONTENTS

Interest of Amicus Curiae . . . . . 1

Questions Presented . . . . . 2

Factual Background . . . . . 3

Discussion . . . . . 11

I. Standard of Review . . . . . 11

II. The Government's recommendation was inconsistent with the Judge's equal obligation not to recuse when there is no legal cause to do so. . . . . . 13

III The Judge cannot be reasonably considered a victim of the Oklahoma City bombing. . . 17

IV. The petitioner-defendant failed to present facts sufficient to establish bias in fact. . . . . . 20

V. The impartiality of the Judge who has not suffered any personal loss or injury of a substantial nature cannot and will not reasonably be questioned. . . . . . 29

A. The petitioner-defendant's timely motion failed to establish personal bias or prejudice against the accused within the meaning of 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1). . . . . . 29

B. The petitioner-defendant failed to show that the judge has knowledge of disputed evidentiary facts concerning the criminal case. . . . . . 33

VI Judge Alley may preside over the criminal case without violating or endangering the petitioner-defendant's due process rights under the Fifth Amendment of the Constitution . . . . . 36

Conclusion . . . . . 39

Appendix: Order of the Honorable David L. Russell, U.S. District Judge, Denying Motions for Recusal (June 1, 1995).

**TABLE OF AUTHORITIES**

***Cases***

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155 (3d Cir. 1993) . . . . . . . . . . . . . . . 12, 30, 32

*Baskin v. Brown*, 174 F.2d 391 (4th Cir.1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Bell v. Chandler*, 569 F.2d 556 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 22

*Bridges v. California*, 314 U.S. 252 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Edwards v. United States*, 334 F.2d 360 (5th Cir. 1964), *cert. denied.*, 379 U.S. 1000 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*El Fenix de P.R. v. The M/Y Johanny*, 36 F.3d 136 (1st Cir. 1994) . . . . . . . . . . . . . . . . . . . . 30

*Frates v. Weinshienk*, 882 F.2d 1502 (10th Cir. 1989), *cert. denied,* 494 U.S. 1004 (1990) . . 26, 33

*Glass v. Pfeffer*, 849 F.2d 1261 (10th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Groden v. Random House, Inc.*, 61 F.3d 1045 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 32

*Harris v. Champion*, 15 F.3d 1538 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hinman v. Rogers*, 831 F.2d 937 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . 10, 11, 14, 22

*Hunter v. Delo*, 62 F.3d 271 (8th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*In re Allied-Signal Inc.*, 891 F.2d 967 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 11, 14, 16, 29

*In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307 (2d Cir.1988), *cert. denied sub. nom. Milken v. SEC*, 490 U.S. 1102 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 33

*In re Faulkner*, 856 F.2d 716 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*In re Hipp, Inc.*, 5 F.3d 109 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*In re International Business Machines Corp.*, 45 F.3d 641 (2nd Cir. 1995). . . . . . . . . . . . 11, 30

*In re International Business Machines Corporation*, 618 F.2d 923 (2d Cir. 1980) . . . . . . . 13, 36

*In re J.P. Linahan, Inc.*, 138 F.2d 650 (2d Cir. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*In re Larson*, 43 F.3d 410 (8th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Mason*, 916 F.2d 384 (7th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . 32

*In re United States*, 666 F.2d 690 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14, 15

*In the Matter of Sandahl*, 980 F.2d 1118 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988) . . . . . . . . . . . . . . . . . . . . . 29

*Liteky v. United States*, 114 S.Ct. 1147 (1994) . . . . . . . . . . . . . . . . . . . . . . 2, 10, 21, 23, 31, 35

*Maez v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d 1488 (10th Cir. 1995) . . 11, 30

*Northern Securities Co. v. United States*, 193 U.S. 197 (1904) . . . . . . . . . . . . . . . . . . . . . . . 33

*People Helpers Found., Inc. v. City of Richmond*, 12 F.3d 1321 (4th Cir. 1993) . . . . . . . . . . . 30

*Phillips v. ANR Freight Sys., Inc.*, 945 F.2d 1054 (8th Cir.1991), cert. denied, 113 S.Ct. 81 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Price Brothers Co. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir.), *cert. denied*, 454 U.S. 1099 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Tafero v. Wainwright*, 796 F.2d 1314 (11th Cir. 1986), *cert. denied*, 483 U.S. 1033 (1987). . 35, 37

*United States v. Coonce*, 961 F.2d 1268 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*United States v. Torkington*, 874 F.2d 1441 (11th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Antar*, 53 F.3d 568 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Barry*, 961 F.2d 260 (D.C. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*United States v. Alabama*, 828 F.2d 1532 (11th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985), *cert. denied*, 475 U.S. 1095 (1985).21

*United States v. Burger*, 964 F.2d 1065 (10th Cir. 1992), *cert. denied*, 113 S.Ct. 1854 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 22

*United States v. Calley*, 46 C.M.R. 1131 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Conforte*, 624 F.2d 869 (9th Cir. 1980), *cert. denied*, 449 U.S. 1012 (1980) 24, 31

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993) . . . . . . . . 10, 11, 14, 16, 24, 26, 29, 30, 32

*United States v. Couch*, 896 F.2d 78 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*United States v. Cuyler*, 584 F.2d 644 (3rd Cir. 1978), *cert. denied*, 440 U.S. 925 (1979). . . 25, 35, 37

*United States v. Edmond*, 52 F.3d 1080 (D.C. Cir.1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*United States v. El-Gabrowny*, 844 F.Supp. 955 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . 21, 25

*United States v. Gigax*, 605 F.2d 507 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*United States v. Greenough*, 782 F.2d 1556 (11th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*United States v. Grinnell Corp.*, 384 U.S. 563 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Haldeman*, 559 F.2d 31 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 24, 36

*United States v. Harrelson*, 754 F.2d 1153 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . 21, 22, 25, 35

*United States v. Jordan*, 49 F.3d 152 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 14, 30, 32, 33

*United States v. Lovaglia*, 954 F.2d 811 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Nobel*, 696 F.2d 231 (3rd Cir. 1982), *cert. denied*, 462 U.S. 1118 (1983). . . . 19

*United States v. Ritter*, 540 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 951 (1976) . . . . . . . 22

*United States v. Story*, 716 F.2d 1088 (6th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 35

*United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973)) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States v. Young*, 45 F.3d 1405 (10th Cir. 1995), *cert. denied*, 115 S.Ct. 2633 (1995). . 23

*Weatherhead v. Globe International, Inc.*, 832 F.2d 1226 (10th Cir. 1987) . . . . . . . . . . . . 11, 21

*Willner v. University of Kansas*, 848 F.2d 1020 (10th Cir.1988), *cert. denied*, 488 U.S. 1011 (1989). . . . . . . . . . . . . . 11

***Federal statutes***

28 U.S.C. § 144. . . . . . . . . . . . . . . . . . . . . . passim

28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . passim

***Other authorities***

BLACK'S LAW DICTIONARY (6th ed.) . . . . . . . . . . . . . . . . 18

OXFORD ENGLISH DICTIONARY (2d ed. 1989) . . . . . . . . . . . . . . 18

RANDOM HOUSE DICTIONARY OF THE ENGLISH LANUAGE (1968) . . . . . . . . . . 18

RESTATEMENT (SECOND) OF TORTS § 46 (1963-1964 Main Vol.) . . . . . . . . . . 18

WEBSTER'S NEW COLLEGIATE DICTIONARY (1976) . . . . . . . . . . . . . . 18

**THE UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

| | |
|---|---|
| TERRY LYNN NICHOLS,<br>*Petitioner*,<br><br>*vs.*<br><br>THE HONORABLE WAYNE E. ALLEY,<br>*Nominal Respondent.*<br><br>______________________________<br><br>THE UNITED STATES OF AMERICA,<br>*Real Party in Interest* | **No. 95-6341** |

MEMORANDUM OF AMICUS CURIAE
IN DEFENSE OF ORDER DENYING MOTIONS FOR RECUSAL

**INTEREST OF AMICUS CURIAE**

This original proceeding in the nature of mandamus involves the meaning of two statutory provisions governing judicial disqualification: 28 U.S.C. § 144 and 28 U.S.C. § 455. The nominal respondent in this proceeding, the Honorable Wayne E. Alley, United States District Judge, Western District of Oklahoma, requested the assistance of counsel to prepare an appropriate response to the petition for a writ of mandamus, as invited by this Court.

This memorandum is submitted, on condition that this Court grant the requests of the nominal respondent that: (i) this Court appoint counsel amicus curiae for the purpose of presenting this memorandum, and if the Court deems it appropriate, an oral presentation in defense of the District

Court's Order of September 14 denying defendants' motions for recusal; and (ii) this Court grant leave to file this memorandum.

This memorandum is submitted for this Court's consideration in the hope that discussion will assist this Court in its consideration of the interesting and difficult issues of statutory interpretation posed by the nature of this important case, defendants' motions for recusal, the recommendation of the government, and applicable federal law, including the recent decision of the U.S. Supreme Court in *Liteky v. United States*, 114 S.Ct. 1147 (1994). *See United States v. Haldeman*, 559 F.2d 31, 138-39 (D.C. Cir. 1976), *cert. denied*, 431 U.S. 933 (1977).

**QUESTIONS PRESENTED**

I

Whether federal law permits a federal district court judge to disqualify himself from presiding at a criminal trial at request of the United States, following defendants' recusal motions, to avoid criticism from partisan detractors, to avoid an issue on appeal and possible erroneous reversal of a conviction in an important case.

II

Whether a federal district court judge who suffers no personal injury or loss of a substantial nature as the result of a crime must disqualify himself from presiding at the trial of persons charged with the crime, when (i) the crime occurred when the judge was not present; (ii) the crime inflicted substantial damage on the chambers, the courtroom and the courthouse where the judge works, and (iii) the damage was cleaned up and substantially repaired before the judge's scheduled return to work on his trial docket.

III

Whether a federal district court judge who suffers no personal injury or loss of a substantial nature as the result of a crime must disqualify himself from presiding at the trial of persons charged with the crime, because the crime inflicted great injury and trauma on personnel working in the courthouse where the judge works and the adjacent community.

## FACTUAL BACKGROUND

This mandamus proceeding arises from the criminal case pending before the United States District Court for the Western District of Oklahoma concerning the April 19, 1995 bombing of the Alfred P. Murrah Federal Building in Oklahoma City. The indictment in this case charges two defendants — Timothy McVeigh and petitioner Terry Lynn Nichols (hereafter "the petitioner-defendant") — with eleven counts of violating federal statutes: one count of Conspiracy to Use a Weapon of Mass Destruction in violation of 18 U.S.C. § 2332a; one count of the Use of a Weapon of Mass Destruction in violation of 18 U.S.C. §§ 2332a and 2(a) & (b); one count of Destruction by Explosive in violation of 18 U.S.C. §§ 844(f) and 2(a) & (b); and eight counts of First Degree Murder, in violation of 18 U.S.C. §§ 1114, 1111 and 2(a) & (b) and 28 U.S.C. § 64.2(h).

The facts set forth by defendants in their motions before the district court and in the petition before this Court are largely undisputed. Also, these facts are consistent with the facts recited in Chief Judge Russell's order denying recusal during preindictment proceedings, as well as the order to be reviewed in this mandamus proceeding. In his response to defendants' motion to recuse, Judge Russell took judicial notice of certain facts:

> [T]he Federal Courthouse sustained significant damage from the explosion which occurred in front of the Alfred P. Murrah Federal Building; . . . windows in the

> Courthouse were shattered and blew into the building, slightly injuring a few court personnel and injuring at least one juror; . . . it is likely that other court personnel and two judges would have been severely injured had they been at their desks; . . . one law clerk's child, who was in the day care facility in the Murrah Building at the time of the explosion, was seriously injured; . . . the chambers and courtrooms of some of the judicial officers of this district were damaged and/or required cleanup work; and . . . some court personnel and employees had friends or relatives who were injured or killed in the Murrah Building explosion.

Order (June 1, 1995) at 2 [attached to this memorandum].

*Defendant's Interrogatories and the Response of Judge Alley.*

On August 2, 1995, counsel for defendant McVeigh submitted several interrogatories to the judges of this district so as to have an informed basis for possible recusal motions. Ex Parte Application and Supporting Brief to Submit Interrogatories to Judges (Aug. 2, 1995) [Appendix to Petition for Writ of Mandamus of Petitioner Defendant Terry Lynn Nichols (hereafter "Pet. App."), Ex. A (exhibit to the court's order)]. Subsequently, on August 10, 1995, the nominal respondent in this mandamus proceeding, the Honorable Wayne E. Alley (hereafter "the nominal respondent," "the judge" or "Judge Alley") was randomly assigned to preside over the case. The judge agreed that defense counsel's "unusual" proposal to submit interrogatories was appropriate for "this unusual case." Notice to Counsel at 1 [Pet. App. Ex. B].[1] Thus, in response to defense counsel's interrogatories, the Judge provided a narrative of his experiences on the day of the bombing:

> . . . On the morning of April 19, 1995 I was at my home in Norman, Oklahoma, preparing the Financial Disclosure Statement that I must file annually. Most of the documents containing the information needed for that form I keep at my home, not office. At about 8:45 a.m. I called my secretary at the office and asked her to FAX some additional documents to my wife's office in Norman. Perhaps forty-five

[1] The judge declined to seek personal information from his staff or the personnel working in the courthouse. "For example, whether members of my staff attended funerals of persons killed on April 19, 1995 or were friends of decedents or injured persons is none of my business. I have not asked them about these personal matters and do not intend to." Notice to Counsel at 1 [Pet. App. Ex. B].

> minutes later I went to her office. That is where and when I learned of the bombing.
>
> The first proceeding set for my hearing at the courthouse on April 19 was at 1:30 p.m. By 10:00 a.m., I had decided from news reports that no purpose would be served by my driving to Oklahoma City that afternoon. Instead, I called about to get as much information as I could about the status of my staff. This took some time, but I did learn that none of them had been injured, save some superficial scratches and bruises on one. She did not require and did not seek any medical attention.

Notice to Counsel at 1-2 [Pet. App. Ex. B].

Three days after the bombing, the judge left Oklahoma on a long-planned trip. The purpose of the trip was two-fold: First, the judge attended a military reunion in Charleston, South Carolina; second, he delivered a Law Day address at Fort Huachuca, Arizona. He returned as scheduled on May 2. At that time, in his words, "my office had been cleaned up and was functional, and my staff was in place. We were ready to do business." Notice to Counsel at 2 [Pet. App. Ex. B].

> The only docket effect of the bombing was that four brief proceedings (no trials) I had set for April 19, 20 and 21 were continued for a while. I later learned that one of these would have been continued in any event. As far as I know these continuances imposed no particular inconvenience upon the parties, and there was no inconvenience to me.

Notice to Counsel at 2 [Pet. App. Ex. B]. The judge also took care to disclose the facts necessary to assess his personal loss or suffering as the result of the bombing:

> None of my personal property was destroyed or damaged except for minor nicks to two or three items.
>
> I lost no family or friends in the bombing, and attended no funerals. No one on my staff lost any family members.

Notice to Counsel at 3 [Pet. App. Ex. B].[2] The judge then articulated his understanding of his duties

---

[2] In the subsequent order denying the defendants' motion to recuse, Judge Alley took notice of facts regarding courthouse damage in addition to those previously supplied by Chief Judge Russell.

> The impact of the bomb heavily damaged parts of the Courthouse including the chambers of some of the judges. My personal office was not severely damaged, but other parts of my chambers had collapsed ceilings. . . .
>
> . . . Partially as a result of the bomb and partially as part of asbestos abatement and

under the law:

> I assume that a defense to the indictment will not include any denial that the bombing occurred; my assumption is that the main issue is identification of alleged perpetrators. I regard the defendants as having benefit of the presumption of innocence, which will persist until such time if ever as a jury finds guilt beyond reasonable doubt. If a jury does not find guilt beyond reasonable doubt their verdict must be one of acquittal. I harbor no bias or prejudice against any defendant, have not had any conversation with any prosecutor or law enforcement officer about the facts of the case, and have several times expressed in private conversations that this case should not be prejudged. The case must be decided upon evidence presented at trial. In the one case in my judicial experience in which I did have an animosity toward one defendant, I recused myself without motion.
>
> I intend to conduct a trial in a fair, objective and dignified manner in full realization that the rights of all parties should be scrupulously observed.

Notice to Counsel at 3 [Pet. App. Ex. B]. The judge concluded:

> I know of no reason whatsoever that would be a basis for a self-recusal pursuant to 28 U.S.C. § 455. Of course, this notice is not intended to foreclose submission of a motion for recusal supported by Affidavit and Certificate of Good Faith pursuant to § 144.

Notice to Counsel at 3 [Pet. App. Ex. B].

*Defendants' Motions to Recuse and the Government's Response*

Both defendants filed timely motions for recusal of the assigned judge and all other judges of the Western District. On August 22, defendant McVeigh filed the initial motion arguing that the judge, "a longstanding member of the federal court community directly victimized by the bombing," could not "preside over the prosecution of those accused without giving at least the appearance of

---

> installation of sprinklers, the Courthouse remains in a state of partial disrepair. Many windows on the north side of the Courthouse were shattered, and the glass doors at the entrance to the Courthouse were destroyed. Many offices suffered the loss of plaster ceiling tiles and some light fixtures were dislodged by the impact.
>
> Defendants further allege that an atmosphere of hurt and hostility still permeates the federal courthouse in Oklahoma City and therefore animates all those working in the environment.

Order, United States v. Timothy James McVeigh and Terry Lynn Nichols (W.D. Okla., No. CR-95-110-A) (Sept. 14, 1995) (hereafter "Order Denying Motions for Recusal"), at 5-6.

partiality." Motion of Defendant Timothy James McVeigh for Recusal and Memorandum of Law, at 2-3 [Pet. App. Ex. D]. The motion also cited the effect of the bomb on the courthouse, the chambers of the Judge, and the adjacent community. *Id.* However, counsel for defendant McVeigh expressed "reluctance" to bring the motion "because it may imply that we have a view that the Court harbors actual bias against Mr. McVeigh. We do not have that view." *Id.* at 3 & n. 1.

On August 23, petitioner-defendant Nichols filed his own motion, which included allegations of actual bias based on 28 U.S.C. § 144[3] and 28 U.S.C. § 455(b)(1),[4] as well as an argument that the court should recuse itself pursuant to § 455(a)[5] because its impartiality could reasonably be questioned. Defendant Nichols' Motion for Recusal and Request for Discovery and Evidentiary Hearing, etc. (Aug. 23, 1995), [Pet. App. Ex. C]. In the alternative, counsel for petitioner-defendant asked for discovery and an evidentiary hearing regarding the motion for recusal. *Id.* at 28

The government responded by affirming that defendants' motions and accompanying affidavits and evidence provided no legal basis for recusal. The government added, however, that all judges

---

[3] 28 U.S.C. § 144 provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

[4] 28 U.S.C. § 455(b)(1) provides a judge "shall also disqualify himself in the following circumstances: (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding. . . ."

[5] 28 U.S.C. § 455(a) provides: "Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

in the Western District should voluntarily recuse themselves because "[i]t is of paramount importance that the nation have complete confidence in the integrity of the verdict ultimately reached in this case, and that partisan detractors not be permitted -- however wrongly -- to raise questions about judicial fairness." Brief of the United States in Response to Defense Recusal Motions (Sept. 8, 1995) at 1-2 [Pet. App. Ex. G].

*The Order Denying Defendants' Motion to Recuse*

On September 14, the court issued its order denying defendants' motions for recusal. The court noted that counsel for defendant McVeigh explicitly disclaimed the view that the Court harbored any prejudice against the accused. On this basis, the court ruled that there was no basis to grant defendant McVeigh's motion for recusal under § 144 or § 455(b)(1). Order Denying Motions for Recusal at 7, 10 [Pet. App. Ex. A].

The court found "nothing in Mr. Nichols's motion that requires recusal of the Court under § 144." Specifically, the court found that the petitioner-defendant had supplied no information of the judge's "statements or actions . . . from which any finding of bias or prejudice can be made." *Id.* at 9. Specifically, the court held:

> Because the bias must be specifically shown to be against the movant personally, deploring the alleged crime itself cannot be the kind of bias contemplated by the statute. The missing link is a showing why these environmental factors would result in a judicial bent to retaliate against these two defendants, who are presumed to be innocent.

*Id.* The court indicated that its "evaluation of Mr. Nichols's arguments under § 144 is equally applicable to the § 455(b)(1) bias and prejudice prong." *Id.* at 10. The court added:

> The basic allegations contained in the many exhibits filed are essentially that the Court harbors bias against Mr. Nichols because of the damage caused to and in the United States Courthouse and surrounding areas. Defendant makes no allegations of any manifestation whatsoever of bias by me against Mr. Nichols. No cases are cited, and

> I doubt that any exist, where recusal for actual bias was required when the judge made no statements or rulings or other demonstrations that admitted or implied bias and prejudice. In all the cases cited in support of recusal for actual bias, the judge had manifested it somehow. "Could be" will not suffice. Imagine what a shattering precedent this would be if a defendant could unilaterally reject the assigned judge by averring, "He is out to get me. He has never done or said anything to show it, but I simply believe that he is."

*Id.* at 10-11. Petitioner-defendant Nichols had also argued that the judge must disqualify based on § 455(b)(1) because of the judge's knowledge of disputed evidentiary facts. The court ruled that recusal was not proper because the evidentiary facts concerning the bomb, its effect on the Murrah building and on the court house were not disputed.

> [Petitioner-defendant] fails to specify, and I am unable to discern, what are the supposed disputed facts. *Ipse dixit* will not suffice. Defendants have entered pleas of "not guilty." The issue for trial is whether the named defendants committed the charged crimes. Damage caused by whoever committed the crime cannot, in reality, be questioned. To this end, the Court has previously reported to counsel that it has no "inside information" on the disputed facts of this case.

*Id.* at 13. Next, the court considered whether § 455(a) mandated recusal because the judge's impartiality might reasonably be questioned. First, the court summarized the applicable standards of law.

> In analyzing whether recusal is mandated under § 455(a), the Court must query "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality," . . . in other words, "whether a reasonable person perceives a significant risk that the judge will resolve the case on a basis other than the merits." . . . The Court must undertake an objective inquiry into the factual allegations of the parties . . . analyzing "how things appear to the well informed thoughtful observer rather than to a hypersensitive or unduly suspicious person." However, the factual allegations need not be taken as true, and judge is not limited to those facts presented by the challenging party. Section 455(a) would be skewed indeed if the hypothetical reasonable onlooker did not possess whatever information contraindicated recusal.

*Id.* at 14-15 (citations omitted). Applying the law to the essentially undisputed facts, the court concluded that recusal was neither mandatory nor appropriate:

> All told, the allegations of bias and the appearance of lack of impartiality presented by the defendants are lacking. The hundreds of cases reviewed by the Court all share a common thread, a thread missing in this matter. In each case where recusal was mandated, the presiding judge had taken some action, made some comment, or had some substantial relationship with the parties or witnesses, such that a reasonable person knowing all the facts would question the judge's impartiality. "'Partiality' does not refer to all favoritism, but only to such as is, for some reason, wrongful or inappropriate. Impartiality is not gullibility." *Liteky v. United States*[.]
>
> Although 28 U.S.C. § 455 was implemented to obviate the duty to sit, "there is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." I take it our court of appeals is, by this language, directing district courts to decide recusal motions as they decide all others - on the law. *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993) (quoting *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987)). I find that recusal in this matter is not grounded in statute, and is not called for under the circumstances presented here. Preparing for and trying this case will be a difficult task in the coming months, and I cannot merely ask another judge to shoulder the burden when the law does not require that.

*Id.* at 18-19. In a footnote, the court expressed concern that the case should proceed "without unnecessary delay." The judge "encourage[d] the parties to file for mandamus as quickly as they can, if this is the route they choose to follow." *Id.* at 19 n. 3.

## DISCUSSION

## I.

## STANDARD OF REVIEW

As this Court has held in many cases, the decision to recuse is committed to the sound discretion of the district judge. As a result, this Court reviews a judge's decision not to recuse on an abuse of discretion standard.[6] *United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993).[7] This practice is consistent with the approach of other federal courts of appeals in recusal cases[8] and in mandamus cases.[9]

---

[6] Observations on the appropriate standard of review are presented for two reasons. First, the Federal Rules of Appellate Procedure, FED. R. APP. PRO. 28(a)(6), (b)(4) and the rules of this Court, 10TH CIR. R. 28.2(b), require "a statement of the applicable standard of review" in briefs. Therefore, discussion seems appropriate in this memorandum. Second, the nominal respondent, who has no personal interest in remaining as the assigned judge, seeks appropriate review for institutional reasons. This case is of great precedential value for district judges.

[7] Maez v. Mountain States Telephone and Telegraph, Inc., 54 F.3d 1488, 1507 (10th Cir. 1995); United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992), *cert. denied*, 113 S.Ct. 1854 (1993); Willner v. University of Kansas, 848 F.2d 1020, 1023 (10th Cir.1988), *cert. denied*, 488 U.S. 1011 (1989); Weatherhead v. Globe Int'l., Inc., 832 F.2d 1226, 1227 (10th Cir. 1987); Hinman v. Rogers, 831 F.2d 937, 938 (10th Cir. 1987).

[8] *See, e.g.*, In re Allied-Signal Inc., 891 F.2d 967, 970 (1st Cir. 1989) (Breyer, J.)(quoting In re United States, 666 F.2d 690, 695 (1st Cir. 1981)) (this court of appeals will allow the district judge "a range of discretion" in making these determinations); United States v. Lovaglia, 954 F.2d 811, 814-15 (2d Cir. 1992) (recusal motions are committed to the sound discretion of the district court, and issue on appeal is whether the court abused its discretion).

[9] Despite consistent use of an abuse of discretion standard, a complete discussion of the standard of review requires note that some circuits have resisted use of mandamus as the preferred method in disqualification cases. *See, e.g.,* In re International Business Machines Corp., 45 F.3d 641, 642 (2nd Cir. 1995) (mandamus issued "[t]hough it is a rare case when a district judge's denial of a motion to recuse is disturbed by an appellate court and rarer still when such a denial is remedied on a petition for mandamus"); In re Larson, 43 F.3d 410, 412 (8th Cir. 1994) (mandamus should be used only in exceptional cases amounting to a judicial usurpation of power); In the Matter of Sandahl, 980 F.2d 1118, 1120 (7th Cir. 1992) ("Mandamus . . . is a discretionary writ; and the standard of review is narrower than in an ordinary appeal."); In re Allied-Signal Inc., 891 F.2d at 970 (Breyer, J.)(quoting In re United States, 666 F.2d 690, 695 (1st Cir. 1981)) (only if the district court's decision to sit "cannot be defended as a rational conclusion supported by reasonable reading of the record" will the appellate court insist upon disqualification). Judge Posner discussed reasons for resistance for the Seventh

"[T]here is no question but that a mandamus petition may be used to force the disqualification of a district court judge." *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978). As a whole, the cases seem to show that careful scrutiny of the facts and allegations is appropriate whenever an issue arises under 28 U.S.C. § 144 or 28 U.S.C. § 455, and it seems sensible in this unusual case for such review to occur now, rather than later. As the Third Circuit has written:

> Mandamus is a proper means for this court to review a district court judge's refusal to recuse from a case pursuant to 28 U.S.C. § 455(a), where the judge's impartiality might reasonably be questioned. . . . Virtually every court of appeals has recognized the necessity and propriety of interlocutory review of disqualification issues on petitions for mandamus "to ensure that judges do not adjudicate cases that they have no statutory power to hear." . . . "While review after final judgment can (at a cost) cure the harm to a litigant, it cannot cure the additional, separable harm to public confidence that section 455 is designed to prevent."

*Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 (3d Cir. 1993) (citations omitted).

In summary, the federal courts usually define the appropriate standard of review to emphasize two themes: a measure of deference to the sound discretion of the trial court; and recognition of need to act through a writ of mandamus in the rare, appropriate case.

> The question here is not whether the trial judge has abused his discretion but whether he could exercise any discretion because of a personal, extrajudicial bias which precludes dispassionate judgment. . . . This court has long since taken the position that there are "few situations more appropriate for mandamus than a judge's clearly wrongful refusal to disqualify himself."

---

Circuit:

> If clear right to relief ("clear and indisputable," as the cases sometimes say, . . . ) — the existence of a demonstrable injustice — is allowed to slide into mere right to relief, on the theory that disqualification cases usually turn on the interpretation of ethical standards rather than disputed facts and hence raise "legal" issues on which appellate courts do not defer to trial courts, mandamus will provide a route of appellate review functionally identical to the direct appeal of disqualification orders. A tendency in some cases, . . . it is resisted in others. . . . and we join the resisters. To avoid the collapse of mandamus into appeal, we hold that a litigant who seeks mandamus to set aside an order of disqualification must show that the order is patently erroneous.

In the Matter of Sandahl, 980 F.2d at 1121.

> A claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits. We conclude that we have the power to issue the writ but only if the petitioner has satisfied the burden of establishing that its right is "clear and indisputable."

*In re International Business Machines Corporation*, 618 F.2d 923, 926-27 (2d Cir. 1980) (citation omitted).

## II.

**THE GOVERNMENT'S RECOMMENDATION WAS INCONSISTENT WITH THE JUDGE'S EQUAL OBLIGATION NOT TO RECUSE WHEN THERE IS NO LEGAL CAUSE TO DO SO.**

In response to the defendants' motions to recuse, the United States affirmed that there was no legal duty for the judge to recuse, but that all judges of the Western District ought to voluntarily recuse anyway. Perhaps it is too strong to suggest that the issue of this case should be recast as whether the judge was authorized to recuse. To be sure, the amended § 455 eliminated a formal "duty to sit," once thought to obligate judges to resolve close questions on disqualification in favor of non-recusal. *Edwards v. United States*, 334 F.2d 360, 362 n.2 (5th Cir. 1964), *cert. denied,* 379 U.S. 1000 (1965). Nevertheless, the tenor of judicial discussion of 28 U.S.C. § 455 seems consistent: district judges are warned explicitly not to recuse except when there is just cause under law. In such circumstances, and despite personal considerations, the judge was surely obliged to regard the random assignment of so important a case as a duty call, an obligation imposed by law, and as a challenging task not to be shirked, given the dictates of professional commitment to the judicial office. As this Court has said, "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is." *United States v.*

*Cooley*, 1 F.3d at 994; *Hinman v. Rogers*, 831 F.2d at 939. *See also In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir.1988) (same), *cert. denied sub. nom. Milken v. SEC*, 490 U.S. 1102 (1989).

The government's recommendation also seems inconsistent with what this Court and all other federal courts have written about the objective test for evaluating recusal motions under § 455(a). First, the government suggested voluntary recusal so that "partisan detractors not be permitted -- however wrongly -- to raise questions about judicial fairness." But the federal courts "ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan,* 49 F.3d 152, 156 (5th Cir. 1995). Or, as then-Judge Breyer put it for the First Circuit, "[w]hen considering disqualification, the district court is not to use the standard of 'Caesar's wife,' the standard of mere suspicion." *In re Allied-Signal Inc.*, 891 F.2d at 970 (quoting *In re United States*, 666 F.2d 690, 695 n.* (1st Cir. 1981)).

The focus must be on whether objective, knowledgeable, disinterested members of the public would have fact-based concerns. *In re Allied-Signal Inc.*, 891 F.2d at 970. Ordinarily, media notoriety, press speculation or editorial criticism is not enough to require disqualification under § 455(a). *United States v. Cooley*, 1 F.3d at 994. The prospect of such criticism would also seem to be insufficient — particularly if sponsored by "partisan detractors" or rooted in theories and speculation that "are in fact false or materially inaccurate or misleading." *Id. See also United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir.1986) (press-created doubts not grounded in fact cannot require disqualification).

Also, the government's recommendation that the district court recuse seemed to emphasize a need to handle a "big case," an "important case," a "difficult case" differently than all others. If so,

the rationale is inconsistent with precedent and legislative intent underlying § 455. The following passage from Chief Judge Coffin's opinion in *In re United States, supra,* is both representative of existing precedent and pertinent to this case:

> [A] judge once having drawn a case should not recuse himself on a unsupported, irrational, or highly tenuous speculation; were he or she to do so, the price of maintaining the purity of appearance would be the power of litigants or third parties to exercise a negative veto over the assignment of judges. . . . [O]ur inquiry cannot stop with the questions: have a number of people thought or said that a judge should not preside over a given case? has the judge's failure to recuse himself been a subject of unfavorable comment in the media? or, would the judge have avoided controversy and the need for appellate review if he had stepped aside? Instead, we must conduct our review in accordance with ground rules designed to determine when the fear of partiality is real and strong enough to require disqualification.
>
> . . . . [D]isqualification is appropriate only if the facts provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality. Were less required, a judge could abdicate in difficult cases at the mere sound of controversy or a litigant could avoid adverse decisions by alleging the slightest of factual bases for bias. . . . This restricted mandate to disqualify is calculated to induce a judge to tread the narrow path between timidity and tenacity.

666 F.2d at 694-95. *See also, e.g., United States v. Lovaglia*, 954 F.2d 814-15 (judges should not avoid sitting on difficult or controversial cases). In this context, Judge Alley was justified in ruling that the government's recommendation was improvident. Though public confidence is a focus of concern when courts seek to ensure the appearance of justice, the law teaches the judge not to be unduly intimidated by mere prospect of criticism. After all, Judge Alley knows well that:

> Society's interest in criminal justice is not properly determined by media response or public opinion polls. As Justice Black once stated: "The very word 'trial' connotes decisions on the evidence and arguments properly advanced in open court. Legal trials are not like elections, to be won through the use of the meeting hall, the radio, and the newspaper." Any rule so simple and ineluctable that a given quantum of publicity bars trial would give over to media entrepreneurs the power to control prosecutions. The law does not countenance that.

*United States v. Calley*, 46 C.M.R. 1131, 1143 (1973) (Alley, J.) (quoting from *Bridges v.*

*California*, 314 U.S. 252, 271 (1941)).

Finally, the government's recommendation seems to ignore warnings that trial judges "must be alert to avoid the possibility that those who would question [their] impartiality are in fact seeking to avoid the consequences of [the judge's] expected adverse decision." *Id.* A judge faced with a motion to recuse must consider whether the motion is based on potential ulterior motives, even when the motives are legitimate and understandable:

> [T]he disqualification decision must reflect not only the need to secure public confidence through proceedings that appear impartial, but also the need to prevent parties from too easily obtaining the disqualification of a judge, thereby potentially manipulating the system for strategic reasons, perhaps to obtain a judge more to their liking.

*In re Allied-Signal Inc.*, 891 F.2d at 970. In proceedings below in this case, the papers presented by the petitioner-defendant candidly defended the motion to recuse as an appropriate way to confer a preemptory challenge in a capital case, as recommended in *United States v. Escobar*, 803 F. Supp. 611 (E.D.N.Y. 1992). Petitioner's Memorandum of Points and Authorities at 26-27 [Pet. App. Ex. C.] However, the legislative history and the cases articulating the prevailing understanding of § 455 confer no such right. As this Court has written:

> The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice. Congress expressed concern over abusive invocation of the statute by parties as a means of judge shopping, stating:
>
> > Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

*United States v. Cooley*, 1 F.3d at 993 (quoting H.REP. NO. 1453, 93d Cong., 2d Sess. 1 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355). In short, Congress intended to establish an objective

test for recusal in place of the idea that judges had a duty to resolve all doubts in favor of a duty to sit. Congress was equally clear about its desire that "the new test should not be used by judges to avoid sitting on difficult or controversial cases. . . . [E]ach judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision. Disqualification for lack of impartiality must have a *reasonable* basis." H.R.REP. NO. 1453, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 6351, 6355 (emphasis original).

## III

**THE JUDGE CANNOT BE REASONABLY CONSIDERED A VICTIM OF THE OKLAHOMA CITY BOMBING.**

The petitioner's legal theory in support of an order to recuse is not based on the judge's rulings, conduct or statements. Petitioner's theory rests almost exclusively on the argument that the judge was a victim. Petition for Writ of Mandamus and Brief in Support ["Petition"] at 7.

The petitioner's theory is easily tested by a simple analogy. Suppose a person working for one of the private enterprises near the bomb site is on vacation or otherwise absent with leave when the bomb explodes. The employee does not return for two weeks, and when she does, the considerable damage done to her workplace is cleaned up, at least to the point that she suffers little or no inconvenience in the performance of her job.

By any reasonable definition, this employee is not a victim of the crime. She probably does not confuse herself with those who were present at the horrific moment, unless she is unusually egocentric. She probably does not confuse her feelings of sympathy or empathy with the actual suffering of those who died, those who were injured and those who lost family or friends. And she

is correct, at least if standard definitions of the word "victim" are consulted.[10]

Of course, a second look reveals this hypothetical situation to be more than mere analogy. It is a simple and straightforward description of the judge's own status, except for the facts that four proceedings on motions docket were delayed and two or three items of personal property had "minor nicks." The key factor in the minds of most reasonable people is probably the fact that the judge was not present at the time of the crime, and the most relevant standards of tort law[11] seem to underscore

---

[10] Though different dictionaries differ in the details, the theme is consistent: A victim is a person who suffers personal injury or loss of a substantial nature. *See, e.g.*, OXFORD ENGLISH DICTIONARY (2d ed. 1989), vol. XIX at 607: (Victim: (i) "A person who is put to death or subjected to torture by another; one who suffers severely in body or property through cruel or oppressive treatment"; (ii) "[o]ne who is reduced or destined to suffer under some oppressive or destructive agency"; (iii) "[o]ne who perishes or suffers in health, etc., from some enterprise or pursuit voluntarily undertaken; (iv) "[i]n a weaker sense: One who suffers some injury, hardship or loss, is badly treated or taken advantage of, etc."); RANDOM HOUSE DICTIONARY OF THE ENGLISH LANUAGE (1968) at 1466 (Victim: "a person who suffers from a destructive or injurious action or agency; an accident victim; war victims"); WEBSTER'S NEW COLLEGIATE DICTIONARY (1976) at 1304 (Victim: "one that is acted upon and usu. adversely affected by a force or agent . . . one that is injured, destroyed or sacrificed under any of various conditions . . . one that is subjected to oppression, hardship or mistreatment . . ."). As might be expected, a "victim" in a legal sense probably requires some reference to the specific crime, tort or act of legal misconduct at issue. *See, e.g.*, BLACK'S LAW DICTIONARY (6th ed.) (Victim: "The person who is the object of a crime or tort, as the victim of a robbery is the person robbed. Person who court determines has suffered pecuniary damages as result of defendant's criminal activities; that person may be individual, public or private corporation, government, partnership, or unincorporated association.").

[11] According to the Second Restatement of Torts, liability for emotional distress caused by outrageous conduct usually is limited to persons who are "present at the time." The text of § 46 states:

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>> (b) to any other person who is present at the time, if such distress results in bodily harm.

RESTATEMENT (SECOND) OF TORTS § 46 (1963-1964 Main Vol.). The limitation is explained and justified in one of the comments accompanying § 46.

> The cases thus far decided . . . have limited . . . liability to plaintiffs who were present at the

the common sense of the issue.[12]

The few cases dealing with judicial disqualification also demonstrate that a judge must recuse, if she is a victim, but that a judge is a victim only if there is personal loss or suffering of a genuine and substantial character. The most obvious source of authority for this approach are the cases discussing a judge's financial or pecuniary interest in a case. *See United States v. Nobel*, 696 F.2d 231, 235-36 (3rd Cir. 1982) ("a judge presiding over a criminal action who holds stock in a corporate victim of the crime does not have a 'financial interest in the subject matter in controversy'"; nevertheless, a judge's substantial financial interest in the victim of a crime necessitated recusal under § 455(a)), *cert. denied*, 462 U.S. 1118 (1983).

The petitioner-defendant cites this Court's decision in *United States v. Greenspan*, 26 F.3d 1001 (10th Cir. 1994). It is an instructive case, but the lesson is only that judges who are authentic victims need to recuse. In that case, a trial judge received information that the defendant had made threats against his life and the lives of his family. As this Court explained, the "judge learned of an apparently genuine death threat made against him and against his family under circumstances that

---

> time, as distinguished from those who discover later what has occurred. The limitation may be justified by the practical necessity of drawing the line somewhere, since the number of persons who may suffer emotional distress at the news of an assassination of the President is virtually unlimited, and the distress of a woman who is informed of her husband's murder ten years afterward may lack the guarantee of genuineness which her presence on the spot would afford.

*Id.*, comment l.

[12] In the brief to this Court, petitioner-defendant points out that "one whose place of work is burglarized (or bombed) while she is on vacation is not less 'victimized' because of her absence." This is surely true, only if she owns the property and suffers substantial loss. In the hypothetical case of the burglary, her status as victim may be more persuasive and authentic if she either owns the property or she is the target of the burglar. In such a case, the inquiry should be which persons suffer the personal violation, the loss of security and privacy, associated with the burglary. Not every employee at every enterprise that suffers a break-in is going to regard herself as "a victim."

made it quite unlikely that the threat was intended as a device to obtain a recusal." *Id.* at 1007. Also, "[t]he judge obviously took the threat very seriously, and chose to accelerate court procedures in order to reduce the risk to him and his family as he perceived it." *Id.* In short, the judge was the target of a threat. He responded with judicial actions that were inappropriate. He believed he and his family faced continuing danger. Under such circumstances, any reasonable person given reliable information of danger would regard themselves as a victim. And any reasonable observer informed that the judge took action by an accelerated sentencing could reasonably conclude the judge's behavior reflected understandable bias and prejudice. Nothing like *Greenspan*'s facts exists in the case at bar to compel or justify recusal of a nonvictim, absent from the scene of crime, and never facing imminent harm from an apparently genuine murder threat.

## IV.

## THE PETITIONER-DEFENDANT FAILED TO PRESENT FACTS SUFFICIENT TO ESTABLISH BIAS IN FACT.

### *A. The petitioner-defendant's timely motion failed to establish personal bias or prejudice against the accused within the meaning of 28 U.S.C. § 144 and 28 U.S.C. § 455(b)(1).*

Only the petitioner-defendant alleges that the judge harbors actual bias against the accused. The defendant McVeigh explicitly disclaimed any view that the judge harbors actual bias against the accused; and the government, for its part, agreed. And even the petitioner-defendant presents arguments of "implied bias" rooted only in its theories that the judge must be deemed to be a victim of the bombing. In the papers below and in the brief before this Court, the petitioner-defendant makes no showing — other than its claim that Judge Alley is a victim — that Judge Alley harbors, much less that he has manifested, any actual bias or prejudice against the accused. "[R]ecusal is not

warranted absent specific instances of conduct indicating prejudice against a defendant." *United States v. Harrelson,* 754 F.2d 1153, 1165 (5th Cir. 1985). In this respect, this case is very much like *United States v. Antar,* 53 F.3d 568, 575 (3rd Cir. 1995):

> This case is different from those cases and also from nearly all the reported recusal cases we have come across. This is not a case where the district judge is accused of being biased in a personal way against a litigant. Nor is this a case where a judge's rulings are so indefensible that combined with particular comments they arguably demonstrate partiality . . ."

Petitioner-defendant's allegations of actual bias are premised on both applicable statutes, 28 U.S.C. § 144[13] and 28 U.S.C. § 455(b)(1).[14] Both statutes use identical language to require that a judge must recuse for "personal bias or prejudice." As a result, federal courts use the same legal standard to evaluate both § 144 and § 455(b)(1). *Liteky v. United States,* 114 S.Ct. at 1153; *United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir. 1985) (no reason to doubt that judicial interpretations of "personal bias or prejudice" under § 144 are equally applicable to § 455(b)(1)), *cert. denied,* 475 U.S. 1095 (1986)[15] Thus, the basic question is whether the petitioner-defendant's factual submissions are legally sufficient to mandate recusal for actual bias or prejudice. When testing a litigant's claim that a judge is biased, several standards apply:

First, the court need not accept theories, speculation, or opinion as true. Under § 144, a court

---

[13] The petitioner-defendant's timely motion satisfied all procedural requirements of § 144 as to the form and content of the affidavit. Order Denying Motions for Recusal at 7 [Pet. App. Ex. A]

[14] Section 455 is self-executing. The procedural requirements of § 144 do not apply. United States v. El-Gabrowny, 844 F.Supp. 955, 959 (S.D.N.Y. 1994).

[15] Many courts refer to differences between § 144 and § 455, and sometimes with the conclusion that § 455 is broader. Usually, the comparison refers to § 455(a), and its objective test for determining whether there are reasonable grounds to doubt a judge's impartiality. Weatherhead v. Globe International, Inc., 832 F.2d at 1227. "[Section] 455(b) is stricter than § 455(a) and is concerned with situations that may involve actual bias rather than § 455(a)'s concern with the public perception of the judicial process." Harris v. Champion, 15 F.3d 1538, 1571 (10th Cir. 1994). The issues related to § 455(a) are addressed *infra.*

must accept the truth of the facts alleged in the affidavit, but not the "conclusions, rumors, beliefs, and opinions" of the affiant. *Glass v. Pfeffer,* 849 F.2d 1261, 1267-68 (10th Cir. 1988); *Hinman v. Rogers,* 831 F.2d at 939; *United States v. Gigax*, 605 F.2d 507, 511 (10th Cir. 1979); *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir.1978). When assessing the affiant's inferences or theories, it must be remembered that courts construe a § 144 affidavit strictly against the party seeking recusal. *United States v. Ritter*, 540 F.2d 459, 462 (10th Cir.) (per curiam), *cert. denied,* 429 U.S. 951 (1976). Also, "there is a substantial burden on the moving party to demonstrate the judge is not impartial. *United States v. Burger*, 964 F.2d 1065, 1070 (10th Cir. 1992).

Second, the district court and the reviewing court judge the legal sufficiency of the affidavit, so that "if the facts give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment, the judge must recuse even though the statements may not accurately reflect the judge's state of mind." *Id.* at 511. Consistent with this principle — not in conflict, as petitioner-defendant suggests — this Court and other appellate courts have held that factual allegations give "fair support" when they would convince "a reasonable man . . . on the facts stated (in the affidavit) that the district judge had a special bias against defendant." *Bell v. Chandler*, 569 F.2d 556, 559 (10th Cir. 1978) (quoting *United States v. Thompson*, 483 F.2d 527 (3d Cir. 1973)); *see also United States v. Story*, 716 F.2d 1088, 1090 (6th Cir. 1983).

Third, the asserted bias must be personal, ". . . against him [the affiant]" *United States v. Grinnell Corp.*, 384 U.S. 563, 583 (1966). In this context, the argument of petitioner-defendant "incorporates a fundamental logical flaw," the same flaw noted by the appellate court in *United States v. Harrelson,* 754 F.2d 1153 (5th Cir. 1985). In that case, a trial judge had been a colleague of a murdered federal judge and an honorary pallbearer at the slain judge's funeral. He did not recuse

himself from the trial of the man accused of the murder. The Fifth Circuit scrutinized the trial judge's conduct on the bench in these terms:

> [W]hatever the relationship between the two judges was, it can at most have served to create a degree of hostility toward the actual killers. As such, it is entirely consistent both with a desire that those not guilty be acquitted and with one that the guilty be convicted. At all stages of the trial and to this day, appellants have vigorously maintained that they are not the guilty parties; we are unwilling to presume, in the absence of a far stronger showing than has been made here, that a reasonable person would entertain doubts that the careful and seasoned trial judge who sat in this case would prejudge their guilt.
>
> In short, Judge Sessions' conduct advanced by appellants as a basis for his recusal demonstrates only such behavior as one might expect of a civilized and honorable man upon the death of a colleague--and that whether or not he harbored any particular affection for him. As such, it falls far short of casting his impartiality in doubt to reasonable people.

*Id.* at 1166.

Fourth, the asserted bias must be "wrongful or inappropriate." The Supreme Court addressed this principle in *Liteky v. United States, supra,* as this Court indicated in *United States v. Young*, 45 F.3d 1405 (10th Cir. 1995), *cert. denied*, 115 S.Ct. 2633 (1995).

> Section 455(b)(1) specifically requires disqualification where the judge "has a personal bias or prejudice concerning a party, . . ." *Liteky* makes clear that this standard is not violated by every judicial predisposition; the pejorative nature of the terms "bias" and "prejudice" connotes a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate. . . . *Liteky* teaches that an opinion or disposition may be considered wrongful or inappropriate where it is undeserved, or because it rests upon knowledge that the subject ought not to possess, or because it is excessive in degree.

*Id.* at 1415 (citations omitted). The petitioner-defendant is probably correct when he asserts that the prohibited bias "need not rise to the level of an evil intent or animus" or even a focused "urge for revenge." Petition at 15, n. 12. On the other hand, it is difficult to specifically identify what "wrongful or inappropriate" disposition and opinion the petitioner-defendant attributes to Judge Alley. It must be more than sorrow; more than a sense that the bombing of innocents is an atrocious

crime; more than a commitment to following the law.

Specifically, a federal court should carefully scrutinize an allegation of actual bias to distinguish an "unfavorable disposition or opinion that is somehow wrongful or inappropriate," *Liteky*, 114 S.Ct. at 1155, from an expressed or presumed "dedication to upholding the law." *United States v. Cooley*, 1 F.3d at 993 & n. 4. As this Court has indicated, even an expression of "a determination to impose severe punishment within the limits of the law upon those found guilty of a particular offense" does not ordinarily constitute either actual bias or even an appearance of bias. *Id. See also United States v. Gigax*, 605 F.2d at 514; *United States v. Haldeman*, 559 F.2d 31, 134 n. 302 (D.C.Cir.1976), *cert. denied*, 431 U.S. 933 (1977). After all, "[j]udges take an oath to uphold the law; they are expected to disfavor its violation." *Cooley*, 1 F.3d at 993 n. 4.[16]

As then-judge Kennedy wrote in *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir. 1980), *cert. denied*, 449 U.S. 1012 (1980), the facts must show a judge has a strong emotion that subverts the sense of judicial duty:

> While bias or prejudice may spring from many sources . . . the negative bias or prejudice of the kind alleged here will disqualify only if it is an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes. It is an animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct, unless the attitude is somehow related also to a suspect or invidious motive such as racial bias or a dangerous link such as a financial interest, and only the slightest indication of the appearance or fact of bias or prejudice arising from these sources would be sufficient to disqualify.

---

[16] Among the cases cited by this Court in *Cooley* for this proposition were: United States v. Johnson, 537 F.2d 1170, 1175 (4th Cir.1976) (judge's statement that heroin distribution deserved severe punishment did not disqualify him from retrial); Baskin v. Brown, 174 F.2d 391, 394 (4th Cir.1949) ("A judge cannot be disqualified merely because he believes in upholding the law, even though he says so with vehemence."); Phillips v. ANR Freight Sys., Inc., 945 F.2d 1054, 1056 (8th Cir.1991) (recusal not required when judge voiced strong feelings about Title VII), *cert. denied*, 113 S.Ct. 81 (1992).

Petitioner-defendant's theories of "implied bias" are really recycled arguments that the judge is too sympathetic with the victims of this unusual and particular crime. In this respect, the trial judge's reply to similar arguments in *United States v. El-Gabrowny*, 844 F.Supp. 955, 961 (S.D.N.Y. 1994) deserves quotation here:

> Nor is El-Gabrowny's argument strengthened by the suggestion . . . that Israel has been cast by the government's theory of the case as the victim of the World Trade Center explosion, and therefore any ties to that country would be ties to a victim. The victims of the World Trade Center explosion were the six people it killed, the hundreds it injured, and the thousands who felt its effects in other ways. If it is the government's theory that that explosion was a protest against United States policy, then the victims were targeted as Americans, in particular people who worked in New York. If the logic of El-Gabrowny's position about a relationship to victims were accepted, a more fundamental reason for my recusal would be that I am an American, in particular a New Yorker. That, of course, would compel the disqualification of every judge on this Court, if not in this country, and gives away the basic illogic of El-Gabrowny's position.

These principles illuminate the meaning of the judge's explanation that "[a]llegations of general sorrow in the workplace do not translate into prejudice toward this particular defendant." They are not wrongful or inappropriate feelings. They are not personal bias against the defendant-petitioner. They are not excessive in degree merely because the defendant-petitioner says so. Again, as the judge suggests, "[t]he missing link is a showing why these environmental factors would result in a judicial bent to retaliate against these two defendants, who are presumed to be innocent." *Compare also United States v. Harrelson,* 754 F.2d 1153 (5th Cir. 1985) (judge cannot be presumed to be biased against accused who are presumed innocent) (discussed *supra*) with *United States v. Cuyler*, 584 F.2d 644, 647 (3rd Cir. 1978)(same), *cert. denied,* 440 U.S. 925 (1979) (discussed *infra*).

***B. The petitioner-defendant failed to show that the judge has knowledge of disputed evidentiary facts concerning the criminal case.***

Section 455(b)(1) also requires disqualification of a judge with "personal knowledge of

disputed evidentiary facts concerning the proceeding." It is not enough to show "mere familiarity with the defendant(s), or the type of charge, or kind of defense presented." *United States v. Cooley*, 1 F.3d at 994 (citing *Frates v. Weinshienk*, 882 F.2d 1502, 1506 (10th Cir. 1989), *cert. denied*, 494 U.S. 1004 (1990)).

In the proceedings below, the petitioner-defendant did little or nothing to explain which facts known to Judge Alley were disputed, and which disputed facts were material to the case. In the memorandum of points and authorities, the petitioner-defendant pointed to "daily, extrajudicial contact" between the judge and his staff "with persons and things that will be material issues at trial." This "contact" is "daily contact with evidentiary facts that will be disputed at Mr. Nichols' trial." Without explicit delineation of the factual conflicts contemplated, petitioner-defendant concludes:

> While the fact of the bombing itself is not disputed, the extent of the damage and the impact upon victims is expected to be a central focus of the government's case both on thequestion of guilt and in any capital or noncapital sentencing proceeding that would follow if Mr. Nichols were convicted of any of the charged offenses.

Petitioner-defendant Nichols' Memorandum of Points and Authorites, etc., p. 14 [Pet. App. Ex. C]. Petitioner-defendant never identifies what facts personally known to the judge will be disputed, as well as what disputes will be material to the trial of the case. The evidentiary facts of the bombing, as well as the evidentiary facts of the deaths and injuries to the true victims of the crime, and the damage to property, appear to be beyond authentic dispute, and the range of dispute would seem to minor, particularly in light of the submissions in this case, in which the defense appears to rely on the very fact of substantial damage to the courthouse as justification for recusal.

Before this Court, the petitioner-defendant offers what may be an elaboration — and perhaps a partial retreat: "[I]t is clear that the injury suffered by a member of Judge Alley's staff and the physical damage to Judge Alley's courtroom constitute relevant evidence that could be introduced

by the government. . . ." Petition at 19. Again, there is no delineation of the predicted factual *dispute*. Petitioner-defendant may be arguing that the undisputed facts are of disputed *significance*: "Any competent defense counsel would challenge the extent of the damage and the weight it should be given in a Guidelines calculation by the district judge. If a capital sentencing proceeding were to occur, defense counsel would be duty bound to argue the significance and weight of the this evidence as it relates to the jury's weighing of aggravating and mitigating factors in deciding whether to impose a sentence of death." *Id.* at 19-20. If defense counsel is correct in this interpretation — and disputes as to the significance of otherwise undisputed evidentiary facts requires recusal under § 455(b)(1) — the point needs clarification, because existing precedents do not say so. Moreover, such an interpretation would probably change the scope and impact of the statutory ground for recusal.

The plain and ordinary meaning of the text seems to require that the judge know something that he should not. The statute does not require recusal of a judge who has "contact," even "daily contact" with those who do have personal knowledge. And it does not require disqualification because of contact with potential witnesses. The test is actual personal knowledge, and, as the judge disclosed, he simply has "no 'inside information' on the disputed facts of this case." As a result, this case does not resemble those cases in which recusal has been required. *See United States v. Alabama*, 828 F.2d 1532, 1543-46 (11th Cir.1987) (holding recusal mandatory under § 455(b)(1) where trial judge's activities as civil rights litigator had involved him in "disputed evidentiary facts" important to pending desegregation cases), *cert. denied,* 487 U.S. 1210 (1988).

In proceedings below, petitioner-defendant pointed to a case that illustrates why recusal is not required here. In *Price Brothers Co. v. Philadelphia Gear Corp.*, 649 F.2d 416 (6th Cir.), *cert. denied,* 454 U.S. 1099 (1981), a trial judge specifically directed his law clerk to inspect the machine

that was the central focus of the litigation pending before the judge. The deliberate nature of the judge's order to inspect, the centrality of the information sought to the pending litigation and the fact that the case was to be tried to the judge without a jury all distinguish *Price Brothers* from a case in which the claim is general familiarity with undisputed facts and "daily contact" with some who might know something that might be disputed.

In his brief before this Court, the petitioner-defendant refers to *In re Faulkner*, 856 F.2d 716 (5th Cir. 1988), which also underscores why recusal is not appropriate here. In *Faulkner*, criminal defendants alleged that the judge spoke to his first cousin about transactions that were the subject of alleged criminal fraud. *Id.* at 718. Though the Fifth Circuit took care to conclude that there was "no indication of actual bias or prejudice on the part of [the judge] in regard to this case," *id.* at 720, the court issued a writ of mandamus for abuse of discretion, in part, because "through his personal conversations with his first cousin, a victim of the crime at issue, he obtained 'personal knowledge of disputed evidentiary facts concerning the proceeding' sufficient to disqualify him, under section 455(b)(1), from presiding further over this case." *Id.* The court emphasized "[p]erhaps even more importantly, [the cousin] communicated to the judge, substantially though maybe not extensively or in great detail, material facts and her opinions and attitudes regarding those facts." *Id.* In short, *Faulkner* seems inapposite, because the judge obtained prohibited information that was substantial, disputed, central *and* significant to the outcome of the case.

## V.

**THE IMPARTIALITY OF THE JUDGE WHO HAS NOT SUFFERED ANY PERSONAL LOSS OR INJURY OF A SUBSTANTIAL NATURE CANNOT AND WILL NOT REASONABLY BE QUESTIONED.**

### *A. This Court should order the judge to recuse himself only if it concludes that a reasonable, well-informed and disinterested person would harbor signficant, fact based doubts about the likelihood of a fair trial.*

According to 28 U.S.C. § 455(a), a federal judge or justice must "disqualify himself in any proceeding in which his impartiality might reasonably questioned." As many courts have noted, the language is ambiguous; it may be interpreted in many ways. The statute speaks of a judge's impartiality being "reasonably questioned," but it neither identifies who asks the questions nor defines what questions suffice. Moreover, the accumulated instructions of all federal courts ask that a district judge make a determination — sua sponte — without asking counsel, and without means to assess actual public opinion.[17]

Despite the ambiguities and abstractions of the statutory mandate, however, it is clear that Congress intended to establish an objective test for recusal. "The general language of [§ 455(a)] was designed to promote public confidence in the integrity of the judicial process by replacing the subjective ['in the opinion of the judge'] standard with an objective test." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 858 n. 7 (1988); *United States v. Cooley*, 1 F.3d at 992. As this Court has written:

> The standard is purely objective. The inquiry is limited to outward manifestations and reasonable inferences drawn therefrom. In applying the test, the initial inquiry is whether a reasonable factual basis exists for calling the judge's impartiality into question.

*United States v. Cooley*, 1 F.3d at 993. *In re Allied-Signal, Inc.*, 891 F.2d at 970. Moreover, §

---

[17] See footnote 23 *infra*.

455(a) applies to many varied and unpredictable cases. *United States v. Cooley*, 1 F.3d at 992. So, judge and reviewing court face great difficulties, because when precedent is consulted, "[u]nfortunately, but not surprisingly, no case is precisely on point; . . . each § 455(a) case is extremely fact intensive and fact bound, and must be judged on its unique facts and circumstances more than by comparison to situations considered in prior jurisprudence." *United States v. Jordan,* 49 F.3d at 157.

As a result, again not surprisingly, the federal courts of appeals have articulated the objective test of § 455(a) in terms that are sometimes subtly different and sometimes strikingly different. This Court has held that "[t]he basic test is whether a reasonable person armed with the relevant facts would harbor doubts about the judge's impartiality." *Maez v. Mountain States Telephone and Telegraph, Inc.*, 54 F.3d at 1507.[18] Most of the other circuits adopt some version of this test,[19] although a few insist that the questions must amount to "significant doubts"[20] or even conclusions.[21]

---

[18] *See also*: Franks v. Nimmo, 796 F.2d 1230, 1234 (10th Cir. 1986) (The test is what would "a reasonable person knowing all the relevant facts . . . think about [the judge's] impartiality?") (quoting United States v. Hines, 696 F.2d 722, 728 (10th Cir. 1982) and United States v. Ritter, 540 F.2d 459, 462 (10th Cir. 1976).

[19] For cases taking an approach similar to the "reasonable doubt" approach of the Tenth Circuit, *see, e.g.*, El Fenix de P.R. v. The M/Y Johanny, 36 F.3d 136, 141 (1st Cir. 1994) (whether facts of case provide objective, knowledgeable member of public with reasonable basis for doubting judge's impartiality); Alexander v. Primerica Holdings, Inc., 10 F.3d 155, 162 (3d Cir. 1993) (the test is whether there is "a reasonable factual basis for doubting the judge's impartiality?") (quoting House Report, reprinted in 1974 U.S.C.C.A.N. at 6351, 6355); People Helpers Found., Inc. v. City of Richmond, 12 F.3d 1321, 1325 (4th Cir. 1993) (whether reasonable person would have factual basis to doubt impartiality of judge); In re Hipp, Inc., 5 F.3d 109, 116 (5th Cir. 1993) (whether reasonable person, knowing all relevant circumstances, would harbor doubts about judge's impartiality). Likewise, the customary approach focuses on the predicted response of reasonable persons who are well-informed. *See, e.g.*, U.S. v. Barry, 961 F.2d 260, 263 (D.C. Cir. 1992) (whether informed observer would reasonably question judge's impartiality); In re International Business Machines Corp., 45 F.3d 641, 644 (2d Cir. 1995)("[T]he issue is whether a reasonable observer, fully informed as to the circumstances of the Judge's [actions] would question the Judge's ability fairly and impartially to decide [the case]").

[20] *See, e.g,* U.S. v. Torkington, 874 F.2d 1441, 1446 (11th Cir. 1989) (per curiam) (whether objective, disinterested lay observer, fully informed of facts underlying grounds on which recusal sought, would entertain

In a concurring opinion in *Liteky v. United States*, Justice Kennedy restated his understanding that "a high threshold is required" by § 455(a), though not quite so high as articulated by the *Liteky* majority for review of allegedly biased rulings and remarks by judges from the bench:

> [Section] 455(a) is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings. I think all would agree that a high threshold is required to satisfy this standard. Thus, under § 455(a), a judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute.
>
> * * * *
>
> The standard that ought to be adopted for all allegations of an apparent fixed predisposition, extrajudicial or otherwise, follows from the statute itself: Disqualification is required if an objective observer would entertain reasonable questions about the judge's impartiality. *If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely*, the judge must be disqualified.

*Liteky v. United States*, 114 S.Ct. at 1158, 1162 (Kennedy, J., concurring) (emphasis added). Justice Kennedy's concurring opinion was devoted to criticism of the majority opinion of Justice Scalia, which seemed to articulate an even higher threshold standard for disqualification, at least when the basis for recusal were rulings or statements from the bench, or attitudes and opinions developed during judicial proceedings.[22] In the passages quoted above, Justice Kennedy was offering his

---

significant doubt about judge's impartiality); U.S. v. Coonce, 961 F.2d 1268, 1283-84 (7th Cir. 1992) (whether "fully informed, objective observer would seriously doubt justice could be done in the case").

[21] *See, e.g.*, U.S. v. Conforte, 624 F.2d at 881 (Kennedy, J.) ("the test under either subsection (a) or (b) is the same, namely, whether or not given all the facts of the case there are reasonable grounds for finding that the judge could not try the case fairly"); In re International Business Machines Corp., 45 F.3d 641, 644 (2d Cir. 1995) ("[T]he issue is whether a reasonable observer, fully informed as to the circumstances of the Judge's [actions] would question the Judge's ability fairly and impartially to decide [the case]").

[22] In Liteky v. United States, 114 S.Ct. 1147, 1157 (1994), the U.S. Supreme Court ruled that a district court's adverse rulings, actions and comments are a basis for ordering disqualification based on 28 U.S.C. § 455 only in rare cases when the record reflects "such a high degree of favoritism or antagonism as to make fair judgment impossible." The courts of appeals seem to agree this "impossibility of fair judgment" test applies only

interpretation of a single, prevailing standard for § 455(a), whether the appearance of bias stemmed from extrajudical sources or not. This Court appeared to agree with Justice Kennedy's sentiments when it articulated the prinicple that careful scrutiny was appropriate even when the appearance of impartiality was at issue:

> Judicial gloss on the statute by way of various limitations stems from a necessary emphasis on the term "reasonably" in section 455(a). We have stressed that "section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice." . . . The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice. . . .
>
> Congress expressed concern over abusive invocation of the statute by parties as a means of judge shopping. . . .

*United States v. Cooley*, 1 F.3d at 993. Thus, this Court and the other circuits continue to demand careful examination of the relevant facts and, in so demanding, affirm Justice Kennedy conclusion that "a high threshold is required." Among the questions asked as part of § 455(a) analysis are these:

Does the judge appear to be "tainted?" *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 162 (3d Cir. 1993) (quoting *In re School Asbestos Litigation*, 977 F.2d 764, 776 (3d Cir.1992)).

Based on the record, would the outcome of this case "be shrouded [in] suspicion" if the Judge were to continue to preside? *Alexander v. Primerica Holdings, Inc.*, 10 F.3d 155, 163 (3d Cir. 1993) (quoting *In re School Asbestos Litigation*, 977 F.2d 764, 785 (3d Cir. 1992)).

"Whether the judge appears to have prejudged adversarial proceedings or to have placed

---

to cases in which the disqualification is based on the trial court's rulings or based on alleged bias developed during the course of proceedings. *Compare* United States v. Jordan, 49 F.3d 152 (5th Cir. 1995) ("impossibility of fair judgment test" does not displace § 455(a)'s "reasonable person standard") *with id.*, 49 F.3d at 160 & n. 3 (Garza, J., dissenting). *See also* Hunter v. Delo, 62 F.3d 271, 276 (8th Cir. 1995); Groden v. Random House, Inc., 61 F.3d 1045, 1053 (2d Cir. 1995) ("to warrant disqualification, opinions formed by a district judge must display a 'deep-seated favoritism or antagonism that would make fair judgment impossible'"); United States v. Edmond, 52 F.3d 1080, 1101 (D.C. Cir.1995).

himself in a position where it appears he will be forced to decide [an] adversary [proceeding] in [one party's] favor." *Frates v. Weinshienk*, 882 F.2d 1502, 1504 (10th Cir. 1989).

In summary, the Supreme Court and all federal appellate courts agree: with the enactment of § 455(a), Congress insisted on an objective standard rooted in a focused, sensitive and particularized assessment of facts and appearances, though it asks much of the judge — and this Court — to review these matters in the abstract with such ambiguous guidance, and admittedly in one of those "great cases like hard cases [that can] make bad law." *Northern Securities Co. v. United States*, 193 U.S. 197, 400-01 (1904) (Holmes, J.).

***B. A well-informed, objective observer would not question the judge's impartiality, because she would not worry — much less conclude — the judge experienced anything in the aftermath of the Oklahoma City bombing that would provoke a wrongful or inappropriate emotion that wound endanger a fair hearing.***

In essence, this Court must decide whether the public will have confidence in the integrity of the judicial system if the judge continues to preside over proceedings in the underlying criminal action. When assessing the impact of a particular case on public confidence, the courts "ask how things appear to the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *United States v. Jordan*, 49 F.3d 152, 156-57 (5th Cir. 1995); *In re Mason*, 916 F.2d 384, 386 (7th Cir.1990). Moreover, the test of § 455(a) "is an objective one which assumes that a reasonable person knows and understands all the relevant facts." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1313 (2d Cir.1988). So, this Court should assess the issue of public confidence based on the assumption that the reasonable member of the public knows and understands all these material facts:

- The judge is not a victim;
- The judge does not regard himself as a victim;

- And no reasonable person not present on April 19 and not suffering any personal loss or injury would believe themselves to be a victim;
- The courts distinguish between wrongful and inappropriate opinions and legitimate opinions, including those reflecting common sense and universal experience. In short, an opinion that bombing is wrong is neither wrongful, nor inappropriate.
- In proceedings below, neither defendant cited any misconduct, remark or ruling[23] reflecting any bias; and one of the defendants explicitly denied that the judge harbored a bias or prejudice against the accused.
- The issue is not whether a judge has an opinion about the crime, even a strong opinion. The issue is whether a judge would have overriding, emotional feelings rooted in a sense of personal loss, producing a wrongful, inappropriate, and personal bitterness that distorts judgment and impedes the performance of judicial duties.

When the facts and the issues are explained, it would be extraordinary for a reasonable, well-informed person to attribute such speculative and hypothesized wrongful attitudes to a judge with Judge Alley's experience. In essence, the petitioner-defendant is reduced to arguing that although almost no one in the position of the judge — or some other employee or worker on vacation on April 19 — would regard themselves as a victim, the public will leap to the conclusion that the judge will

[23] In the brief to this Court, petitioner-defendant responded to the judge's order — which pointed out that no ruling was questioned — by complaining that the Judge announced his tentative inclination not to recuse before motion and briefing by the parties. However, the judge's approach was appropriate in light of well-established principles. District judges should not put counsel on the defensive by seeking advice on recusal, because judge is obliged to reach her own determination and because such questions are "fraught with potential coercive elements." In re National Union Fire Ins. Co., 839 F.2d 1226, 1231 (7th Cir. 1988). *See also:* In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1311-12 (2d Cir. 1988) (judge should not solicit advice of counsel to determine whether to disqualify himself), *cert. denied*, 490 U.S. 1102 (1989); United States v. Kelly, 888 F.2d 732, 745 (11th Cir. 1989) (same).

be distracted from the judicial duty to be impartial at trial by self-centered emotions they could not imagine in themselves.

Apart from theories that the judge is a victim, the petitioner-defendant expresses fear because the judge has "daily contact" with those who suffered, and because he lives and works near the focal point of the shared memory of a community. Again, there is no dispute about the facts. The controversy is a matter of law. Contact with a crime victim is not sufficient to show judicial bias. *United States v. Story*, 716 F.2d 1088, 1091 (6th Cir. 1983) (no reasonable grounds to question the judge's impartiality, even though judge described defendant's actions defrauding a charity as "heinous" and victim was a charitable organization to which judge had contributed and for which he had served as a lawyer thirteen years earlier); *United States v. Cuyler*, 584 F.2d 644, 648 (3rd Cir. 1978) (due process does not require judicial disqualification because of contact with victim). Many cases demonstrate that expressed sorrow for victims of crime do not disqualify judges from subsequently presiding at trials of those accused of the same crimes. *United States v. Harrelson*, 754 F.2d 1153 (5th Cir. 1985); *Tafero v. Wainwright*, 796 F.2d 1314, 1322 (11th Cir. 1986), *cert. denied*, 483 U.S. 1033 (1987); *Cuyler*, 584 F.2d at 647, 648.

In *Liteky*, the Supreme Court reaffirmed the common concepts of prejudice and bias. As a result, this Court must ask whether the well-informed member of the public would expect or fear wrongful, inappropriate feelings. The difficult task is to separate the the petitioner-defendant's fears of a wrongful or inappropriate bias — fears based solely on his notions of theoretical victimhood — from the understandable, universal and justifiable condemnation of the act at the heart of the case. Just as a defendant is not entitled to a judge with an open-minded "gullibility" or a "child-like innocence," *Liteky* 114 S.Ct. at 1155 (quoting *In re J.P. Linahan, Inc.*, 138 F.2d 650, 654 (2d Cir.

1943) (Frank, J.), the defendant is not entitled to a judge without opinion on the criminality of detonating explosives in metropolitan streets. Neither federal statutes nor the Due Process Clause require a judge to abandon a common sense of justice.

## VI

**JUDGE ALLEY MAY PRESIDE OVER THE CRIMINAL CASE WITHOUT VIOLATING OR ENDANGERING THE PETITIONER-DEFENDANT'S DUE PROCESS RIGHTS UNDER THE FIFTH AMENDMENT OF THE CONSTITUTION.**

Ultimately, petitioner-defendant's argument that Judge Alley should disqualify himself rests entirely on the theory that he is a victim of the crime. If this Court agrees that the judge must be deemed a victim as a matter of law — and would, in effect, be a judge in his own case — Judge Alley concedes due process would require recusal. Otherwise, if petitioner-defendant's theories of victimhood are incorrect, there is no reason to fear violation of the Due Process Clause of the Fourteenth Amendment. Theoretically, a constitutional guarantee will override an inconsistent federal statute, and due process might force recusal in some case not governed by § 144 or § 455. *In re International Business Machines Corporation*, 618 F.2d 923, 932 n. 11 (2d Cir. 1980).

> Yet, it was to protect this [fair trial] guarantee that the recusal statutes were enacted, and it would be anomalous to hold that a claim under the statutes insufficient on its merits could nevertheless satisfy the constitutional standard. . . . [A]nything impinging on the constitutional right "would have more readily violated § 144 and § 455."

*Id.* (quoting *United States v. Haldeman*, 559 F.2d at 130 n.276.) In *United States v. Couch*, 896 F.2d 78, 80 (5th Cir. 1990), the appeals court noted that section 455 establishes a statutory disqualification standard more demanding than that required by the Due Process Clause. The court explained its view that due process principles are not implicated unless "appearance of impropriety

. . . rose to the level of a 'fundamental defect' resulting in 'a complete miscarriage of justice," *id.*, in these terms:

> The Due Process Clause requires a judge to step aside when a reasonable judge would find it necessary to do so. Section 455 requires disqualification when others would have reasonable cause to question the judge's impartiality. It is this additional, systemic concern for avoiding the appearance of impropriety that makes the section 455 standard for disqualification more demanding than that imposed by the Due Process Clause. At some point the two tests overlap. We conclude that it is this area of overlap that the Liljeberg court was referring to when it noted that the concern for public perceptions of judicial integrity has "constitutional dimensions."

*Id.*, at 82.

Due process was the focus in *United States v. Cuyler*, 584 F.2d 644 (3rd Cir. 1978). In that case, the court reaffirmed the circuit's "intention not to require disqualification where there is no substantial probability of unfairness." *Id.* at 648. Judge Higginbotham rejected the argument of a criminal defendant that he was deprived of his right under the Sixth and Fourteenth Amendments to a fair trial because state judge who presided at his trial had attended the funeral of petitioner's alleged murder victim. His explanation closely parallels the facts of the case at bar:

> [The judge's] acquaintance with the murder victim was not a close or personal one. He knew the detective only as a result of courtroom appearances. This acquaintance in and of itself would not indicate that [the judge] had a substantial interest in petitioner's conviction or sentence. Indeed, petitioner has not argued that this acquaintance alone would require disqualification.
>
> . . . . If a judge's relationship with the victim of a crime is not such a close one as to require disqualification, we believe it unlikely that attendance at a funeral two years before would, by itself, result in such an increased level of emotional involvement as to make prejudice likely and disqualification necessary. . . . It must be noted that, under these circumstances, the mere attendance at the funeral does not necessarily suggest an antagonism or bias towards the perpetrator of the act, but rather it is an expression of respect for a police officer killed in the line of duty. Finally, [the judge] was privy to no extra-judicial information concerning this petitioner. Thus, he had no reason, other than the evidence presented at trial, to believe that petitioner was guilty or innocent.

*Id.* at 647. *See also Tafero v. Wainwright*, 796 F.2d 1314, 1322 (11th Cir. 1986) (due process did

not require trial judge's recusal in capital case against person accused of murdering highway patrol officer, though judge was a former highway patrol officer and was allegedly overcome with emotion at funeral of the slain officer). In short, there is no reason to believe that the Due Process Clauses of the Constitution require a different approach than § 455 and no reason to believe that due process principles will be in danger, if Judge Alley continues to preside in the underlying case.

**CONCLUSION**

Though the issues and problems presented by this case are sensitive and important — and deserve this Court's attention — when compared with other judicial disqualification cases, discussion of the issues can proceed without rancor. Defense counsel's expressed concerns about the judge should be regarded as good-natured. They rest on undisputed facts. They include no accusation of evil intent or animus and no claim of unethical misconduct. Boiled to essentials, the arguments only allege the Judge is a decent human being too near tragedy. No one can take personal offense at that. The issue is simply whether the judge interpreted the law correctly.

The nominal respondent in this case recommends that this Court review the propriety of the district court's order of September 14 at this time. This Court should refuse to grant the petition for a writ of mandamus, if this Court is confident that the underlying case will be well and fairly tried, and only if this Court concludes that reasonable people will be equally confident.

*Respectfully submitted,*

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

*For Nominal Respondent*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

FILED

JUN - 1 1995

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY ______, DEPUTY

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
v. ) M-95-105-H
)
TERRY LYNN NICHOLS, )
)
Defendant. )

**O R D E R**

Before the Court is Defendant Terry Lynn Nichols' "renewed" motion for recusal of all judicial officers in this judicial district[1] and for disqualification of all attorneys employed in the office of the United States Attorney for this judicial district. To support his motion Defendant cites the same authorities cited in his prior motion for recusal and disqualification and requests that the Court take judicial notice, pursuant to F.R.Evid. 201, of six facts relating to the damage to the Federal Courthouse and the injuries to and deaths of relatives or friends of court personnel and of employees of the United States Attorney's office.

No affidavit stating facts and the reason for a belief that bias or prejudice on the part of this or all judicial officers of this district and certificate of counsel have been filed as required for disqualification under 28 U.S.C. § 144. Defendant's

---

[1] On May 17, 1995, Defendant filed a motion for recusal of United States Magistrate Judge Ronald L. Howland, only, and for recusal of all federal prosecutors resident in Oklahoma City. That motion was denied.

motion for disqualification under that section must therefore be denied.

The Court takes judicial notice of the facts that the Federal Courthouse sustained significant damage from the explosion which occurred in front of the Alfred P. Murrah Federal Building; that windows in the Courthouse were shattered and blew into the building, slightly injuring a few court personnel and injuring at least one juror; that it is likely that other court personnel and two judges would have been severely injured had they been at their desks; that one law clerk's child, who was in the day care facility in the Murrah Building at the time of the explosion, was seriously injured; that the chambers and courtrooms of some of the judicial officers of this district were damaged and/or required cleanup work; and that some court personnel and employees had friends or relatives who were injured or killed in the Murrah Building explosion. However, this judicial officer's chambers was undamaged with the exception that the window in my secretary's office was broken. I was not in Oklahoma City at the time of the explosion but was en route to Washington, D.C. No personal friends of mine were killed in the explosion. I did have friends who were in the Murrah Building at the time of the explosion and one was injured. None of my personal staff was injured as a result of the Murrah Building blast.

Might this Court's impartiality reasonably be questioned by an objective observer because of the Court's knowledge of the foregoing facts and circumstances from extrajudicial sources or

because of knowledge which an objective observer would reasonably expect me to have acquired from extrajudicial sources? See 28 U.S.C. § 455(a); Liteky v. United States, 510 U.S. ___, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994); Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). I think not. The foregoing facts alone do not provide a reasonable factual basis for calling this judicial officer's impartiality into question. See United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993). This Court is aware of no outward manifestations of an "uncommon interest" or "degree of personal involvement" in the subject matter of this case on my part, nor has any outward manifestation of impartiality been suggested, that would cause a reasonable person to harbor doubts as to my impartiality. See id., 1 F.3d at 993 & 995. Accord United States v. Harrelson, 754 F.2d 1153, 1165-1166 (5th Cir.) (judicial officer who was colleague of and honorary pallbearer for federal judge whom defendants were charged with conspiring to murder did not abuse his discretion in denying a § 455(a) motion for recusal; there were no specific instances of conduct indicating prejudice against the defendants which would cause a reasonable person, knowing all the circumstances, to harbor doubts about the court's impartiality), cert. denied, 474 U.S. 908, 106 S.Ct. 277, 88 L.Ed.2d 241 (1985). I am satisfied that I do not have and that there is no appearance that I have any interest in or relationship to this matter or to the Defendant or any bias or prejudice against the Defendant or in favor of the United States and that there is no other factor or

appearance of a factor which might cause my impartiality to reasonably be questioned. See Liteky, 510 U.S. at ___, 114 S.Ct. at ___, 127 L.Ed.2d at 486.

None of the circumstances listed in Section 455(b), 28 U.S.C. § 455(b) exist.

Defendant's motion for recusal of all federal judicial officers in this judicial district, treated as a motion for recusal or disqualification of this judicial officer, only, is denied. The motion insofar as it is directed to any other or all judicial officers of this judicial district is denied, without prejudice to reassertion, because it is premature and requires an individualized inquiry into the relevant facts and circumstances which might reasonably affect or create a basis for questioning each individual judicial officer's impartiality.

Defendant's motion for recusal or disqualification of all attorneys employed in the office of the United States Attorney for this judicial district is denied. Defendant has not suggested that any of such attorneys have testified or are likely to be called as witnesses to testify as to material facts, disputed or not, before the grand jury or in any other proceeding connected to this case, or that they possess information vital or even material to the defense which could not be obtained by other means or from other witnesses. See United States v. Troutman, 814 F.2d 1428, 1439-40 (10th Cir. 1987). Compare with United States v. Treadway, 445 F. Supp. 959 (N.D. Tex. 1978), cited by Defendant. The fact that employees of the United States Attorney's Office lost friends and

colleagues in the explosion is not a sufficient basis for concluding that allowing any attorney employed in the United States Attorney's Office from participating in this matter would create an appearance of impropriety. See United States v. Troutman, 814 F.2d at 1441-42. Cf. United States v. Bolton, 905 F.2d 319, 322 (10th Cir. 1990), cert. denied, 498 U.S. 1029, 111 S.Ct. 683, 112 L.Ed.2d 674 (1991).

Defendant Terry Lynn Nichols' renewed motion for recusal is **DENIED.**

**IT IS SO ORDERED this** 1st **day of June, 1995.**

David L. Russell
**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**

CERTIFICATE OF SERVICE

I certify that on the 6th day of November, 1995, a true and correct copy of

> Memorandum on Behalf of Nominal Respondent, The Honorable Wayne E. Alley, United States District Judge, Western District of Oklahoma in Response to Petition for Writ of Mandamus; and Memorandum of Amicus Curiae in Defense of Order Denying Motions for Recusal

was mailed, proper postage paid, to counsel for petitioner:

Michael E. Tigar
P.O. Box 160037
Austin, TX 78716-0037

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, TX 77007

D. Kate Rubin
Deputy Federal Public Defender
Suite 1620, Mid-America Tower
20 North Broadway
Oklahoma City, OK 73102

and to counsel for the real party in interest, the United States of America:

Patrick M. Ryan
United States Attorney
Western District of Oklahoma
210 W. Park, Suite 400
Oklahoma City, OK 73102

and to counsel for the co-defendant in the proceeding before the District Court:

Stephen Jones, Esq.
[for himself and Richard Burr and Robert Nigh]
114 East Broadway, Suite 1100
P.O. Box 472
Enid, OK. 73702-0472

HARRY F. TEPKER, JR.
OKLA BAR ASSN. NO. 10984
*University of Oklahoma Law Center*
*Norman, Oklahoma 73019*

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

**FILED**
United States Court of Appeals
Tenth Circuit

OCT 17 1995

**PATRICK FISHER**
Clerk

TERRY LYNN NICHOLS,

Petitioner,

v.

THE HONORABLE WAYNE E. ALLEY,

Respondent.

---

UNITED STATES OF AMERICA,

Real Party in Interest.

No. 95-6341

---

ORDER

---

This is an original proceeding in the nature of mandamus. Petitioner seeks an order directing the Honorable Wayne E. Alley to recuse himself from the criminal proceeding against Mr. Nichols, pending in the United States District Court for the Western District of Oklahoma as United States v. Timothy James McVeigh & Terry Lynn Nichols, No. CR-95-110-A. Mr. Nichols further requests that this court disqualify all other district judges of the Western District of Oklahoma.

892285

Upon consideration thereof, the United States, as the real party in interest, is directed to respond to the petition. The respondent judge is invited to respond to the petition if he is so inclined. Responses shall be filed within twenty days of the date of this order, with appropriate service on all parties.

Entered for the Court

PATRICK FISHER, Clerk

By Opal A. Carter
Deputy Clerk

**MICHAEL E. TIGAR**
ATTORNEY-AT-LAW
ADMITTED IN D.C. & N.Y. NOT ADMITTED IN TEXAS

P.O. BOX 160037 • AUSTIN, TEXAS 78716
(512) 461-4678 • FAX (800) 416-4260
CompuServe: 73174,2233
Fax from outside USA: (512) 328-2810

October 10, 1995

RECEIVED
United States Court of Appeals
Tenth Circuit

OCT 11 1995

PATRICK FISHER
Clerk

Patrick Fisher
Clerk
United States Court of Appeals
for the Tenth Circuit
Byron White U.S. Courthouse
1823 Stout Street
Denver, Colorado 80257

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

OCT 1 1 1995

**PATRICK FISHER**
**Clerk**

Nichols v. Alley, No. 95-6341

Dear Mr. Fisher:

Pursuant to Federal Rule of Appellate Procedure 28(j), Petitioner informs the Court of the following authorities, which came to his attention after filing of his brief in support of mandamus.

United States v. Craig, 875 F. Supp. 816 (S.D. Fla. 1994)
Alexander v. Primerica Holdings, Inc., 10 F.3d 155 (3d Cir. 1993)
Rapp v. Van Dusen, 350 F.2d 806 (3d Cir. 1965)

These cases suggest the inferences that may be drawn when a district judge whose rulings are challenged on mandamus retains counsel to represent him, and thus becomes more than merely a nominal party.

These cases relate to the mandamus petition arguments concerning Judge Alley's personal knowledge of and concerns about the events being litigated, and to the recent entry of appearance by counsel for Judge Alley.

SUPPLEMENTAL AUTHORITY



8 91265

Please bring this letter to the attention of the panel to whom the mandamus petition has been referred.

Sincerely,

Michael E. Tigar

VIA FEDERAL EXPRESS

cc by mail and fax:
Patrick M. Ryan, U.S. Attorney
Stephen A. Jones (and Rob Nigh & Richard Burr)
Harry F. Tepker, Jr.

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| TERRY LYNN NICHOLS,<br>Petitioner-Defendant | ) | 95-728 |
| v. | ) | No. 95- ______ |
| THE HONORABLE WAYNE E. ALLEY,<br>Respondent | ) | (Case No. CR 95-110-A below) |
| | ) | 95-6341 |

**PETITION FOR WRIT OF MANDAMUS**
**OF PETITIONER-DEFENDANT TERRY LYNN NICHOLS**
**AND BRIEF IN SUPPORT**


Michael E. Tigar
P.O. Box 160037
Austin, Texas 78716-0037
(512) 461-4678
Fax (800) 416-4620

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, Texas 77007
(713) 862-9600
Fax (713) 864-8738

D. Kate Rubin
Mid-America Tower
20 N. Broadway, Suite 1620
Oklahoma City, OK 73102
(405) 236-4741
Fax (405) 236-4743

Of counsel: Adam Thurschwell

Counsel for Petitioner-Defendant
Terry Lynn Nichols
(Appointed by the Court)



FILED
United States Court of Appeals
Tenth Circuit
SEP 27 1995
PATRICK FISHER
Clerk


88765a

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

| | | |
|---|---|---|
| TERRY LYNN NICHOLS,<br>Petitioner-Defendant | ) | |
| v. | ) | No. 95- ______ |
| THE HONORABLE WAYNE E. ALLEY,<br>Respondent | ) | (Case No. CR 95-110-A below) |

---

**PETITION FOR WRIT OF MANDAMUS**
**OF PETITIONER-DEFENDANT TERRY LYNN NICHOLS**
**AND BRIEF IN SUPPORT**

Michael E. Tigar
P.O. Box 160037
Austin, Texas 78716-0037
(512) 461-4678
Fax (800) 416-4620

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, Texas 77007
(713) 862-9600
Fax (713) 864-8738

D. Kate Rubin
Mid-America Tower
20 N. Broadway, Suite 1620
Oklahoma City, OK 73102
(405) 236-4741
Fax (405) 236-4743

Of counsel: Adam Thurschwell

Counsel for Petitioner-Defendant
Terry Lynn Nichols
(Appointed by the Court)

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| TERRY LYNN NICHOLS, Petitioner-Defendant | ) | |
| v. | ) | No. 95- _______ |
| THE HONORABLE WAYNE E. ALLEY, Respondent | ) | (Case No. CR 95-110-A below) |

**PETITION FOR WRIT OF MANDAMUS**
**OF PETITIONER-DEFENDANT TERRY LYNN NICHOLS**

Petitioner-defendant Terry Lynn Nichols, by his undersigned counsel, hereby petitions the Court to issue a writ of mandamus directing Respondent, the Honorable Wayne E. Alley, to recuse himself from the criminal proceeding against petitioner-defendant, United States of America v. Timothy James McVeigh and Terry Lynn Nichols, CR-95-110-A (W.D.Okla., filed August 10, 1995), and further disqualifying all other district judges of the Western District of Oklahoma from presiding over this matter, or, in the alternative, directing Judge Alley to permit discovery and hold an evidentiary hearing regarding the factual bases for disqualification issues raised in petitioner-defendant's motion for recusal..

The grounds for this petition are as follows:

1. On August 22, 1995, co-defendant Timothy McVeigh filed a Motion for Recusal of District Judge seeking recusal of Judge Alley and all other judges of the Western District of Oklahoma, pursuant 28 U.S.C. §§144 and 455, which motion was subsequently joined by petitioner-defendant Nichols.

2. On August 23, 1995, petitioner-defendant Nichols filed a Motion for Recusal and Request for Discovery and Evidentiary Hearing seeking recusal of Judge Alley and all other judges of the Western District of Oklahoma, pursuant to 28 U.S.C. §§144, 455(a) and 455(b)(1).

3. On September 8, 1995, the government filed its response to these motions, maintaining that recusal of Judge Alley and the other Western District judges was not required as a matter of law but nevertheless urging him and the other Western District judges to recuse themselves voluntarily.

4. On September 14, 1995, Judge Alley denied defendants' motion for recusal and declined the government's suggestion that he voluntarily recuse himself.

5. For the reasons stated in the attached Brief in Support of Petition for Writ of Mandamus of Petitioner-Defendant Terry Lynn Nichols, Judge Alley's ruling was clearly and indisputably erroneous as a matter of law, and issuance of a writ of mandamus is the appropriate remedy in the circumstances of this case.

WHEREFORE, petitioner-defendant Terry Lynn Nichols respectfully requests that this Court grant this petition and issue a writ of mandamus directing Respondent, the Honorable Wayne E. Alley, to recuse himself from the criminal proceeding against petitioner-defendant, United States of America v. Timothy James McVeigh and Terry Lynn Nichols, CR-95-110-A (W.D.Okla., filed August 10, 1995), and further disqualifying all other district judges of the Western District of Oklahoma from presiding over this matter, or, in the alternative, directing Judge Alley to permit discovery and hold an evidentiary hearing regarding the factual bases for disqualification issues raised in petitioner-defendant's motion for recusal.

Respectfully submitted,

Michael E. Tigar
P.O. Box 160037
Austin, Texas 78716-0037
(512) 461-4678
Fax (800) 416-4620

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, Texas 77007
(713) 862-9600
Fax (713) 864-8738

D. Kate Rubin
Mid-America Tower
20 N. Broadway, Suite 1620
Oklahoma City, OK 73102
(405) 236-4741
Fax (405) 236-4743

Of counsel: Adam Thurschwell

Counsel for Petitioner-Defendant
Terry Lynn Nichols
(Appointed by the Court)

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| TERRY LYNN NICHOLS,<br>Petitioner-Defendant<br><br>v.<br><br>THE HONORABLE WAYNE E. ALLEY,<br>Respondent | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 95- _______<br><br>(Case No. CR 95-110-A below) |

**BRIEF IN SUPPORT OF PETITION FOR WRIT OF MANDAMUS OF PETITIONER-DEFENDANT TERRY LYNN NICHOLS**


Michael E. Tigar
P.O. Box 160037
Austin, Texas 78716-0037
(512) 461-4678
Fax (800) 416-4620

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, Texas 77007
(713) 862-9600
Fax (713) 864-8738

D. Kate Rubin
Mid-America Tower
20 N. Broadway, Suite 1620
Oklahoma City, OK 73102
(405) 236-4741
Fax (405) 236-4743

Of counsel: Adam Thurschwell

Counsel for Petitioner-Defendant
Terry Lynn Nichols
(Appointed by the Court)

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ ii

ISSUE PRESENTED ........ 1

FACTUAL AND PROCEDURAL BACKGROUND ........ 1

ARGUMENT ........ 5

I. JUDGE ALLEY'S DENIAL OF THE RECUSAL MOTIONS ARE REVIEWABLE UPON PETITION FOR WRIT OF MANDAMUS ........ 5

II. JUDGE ALLEY AND THE OTHER JUDGES OF THE WESTERN DISTRICT OF OKLAHOMA SHOULD BE DISQUALIFIED ........ 7

A. Judge Alley and the other judges should be disqualified pursuant to 28 U.S.C. §§ 144 and 455(b)(1) for "personal bias and prejudice" ........ 11

B. Judge Alley and the other judges should be disqualified pursuant to 28 U.S.C. §455(b)(1) due to "personal knowledge of disputed evidentiary facts concerning the proceeding" ........ 18

C. Judge Alley and the other judges should be disqualified pursuant to 28 U.S.C. §455(a) because their "impartiality might reasonably be questioned" ........ 20

D. Judge Alley and the other judges may not preside over this case consistent with the Due Process Clause of the fifth amendment of the Constitution ........ 29

CONCLUSION ........ 33

## TABLE OF AUTHORITIES

**Federal Cases** **Page**


Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813 (1986) .................... 30
Barksdale v. Emerick, 853 F.2d 1359 (6th Cir. 1988) .................... 2
Berger v. United States, 255 U.S. 22 (1921) .................... 11,13
Bloom v. Illinois, 391 U.S. 194 (1968) .................... 31
Burton v. Johnson, 948 F.2d 1150 (10th Cir. 1991), cert denied, 113 S.Ct. 1879 (1993) .................... 17,18
Chapman v. California, 386 U.S. 18 (1967) .................... 7
Easley v. University of Michigan Board of Regents, 853 F.2d 1351 (6th Cir. 1988) .................... 2
Faulkner, In re, 856 F.2d 716 (5th Cir. 1988) .................... 19,26
Frates v. Weinshienk, 882 F.2d 1502 (10th Cir. 1989), cert denied, 494 U.S. 1004 (1990) .................... 6
Guttierez de Martinez v. Lamagno, 115 S.Ct. 2227 (1995) .................... 12
Haines v. Liggett Group, Inc., 975 F.2d 81 (3d Cir. 1992) .................... 29
Hall v. Small Business Administration, 695 F.2d 175 (5th Cir. 1983) .................... 25
Harris v. Champion, 15 F.3d 1538 (10th Cir. 1994) .................... 29
Hinman v. Rogers, 831 F.2d 937 (10th Cir. 1987) .................... 6
Hunley v. Godinez, 975 F.2d 316 (7th Cir. 1992) .................... 16,18
IBM Corp, In re, 618 F.2d 923 (2d Cir. 1980) .................... 6
Irvin v. Dowd, 366 U.S. 717 (1961) .................... 16
Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988) .................... passim
Liteky v. United States, 114 S.Ct. 1147 (1994) .................... passim
Mayberry v. Pennsylvania, 400 U.S. 455 (1971) .................... 31,32
Mims v. Shapp, 541 F.2d 415 (3d Cir. 1976) .................... 15
Murchison, In re, 349 U.S. 133 (1955) .................... passim
Offutt v. United States, 348 U.S. 11 (1954) .................... 30
Parker v. Connors Steel Co., 855 F.2d 1510 (11th Cir. 1988), cert denied, 490 U.S. 1066 (1989) .................... 20,25
Public Utilities Comm'n of D.C. v. Pollak, 343 U.S. 451 (1952) .................... 10
School Asbestos Litigation, In re, 977 F.2d 764 (3d Cir. 1992) .................... 6,29
Smith v. Phillips, 455 U.S. 209 (1982) .................... 16
Tafero v. Wainwright, 796 F. 2d 1314 (11th Cir. 1986), cert denied, 483 U.S. 1033 (1987) .................... 9
Taylor v. Hayes, 418 U.S. 488 (1974) .................... 30,31
Texaco, Inc. v. Chandler, 354 F.2d 655 (10th Cir. 1965) cert denied, 383 U.S. 936 (1966) .................... 5,6
Tison v. Arizona, 481 U.S. 137 (1987) .................... 22
Tumey v. Ohio, 273 U.S. 510 (1927) .................... passim
United States v. Alabama, 828 F.2d 1532 (11th Cir. 1987), cert denied, 487 U.S. 1210 (1988) .................... 29
United States v. Burger, 964 F.2d 1065 (10th Cir. 1992) .................... 20

**Page**

United States v. Conforte, 624 F.2d 869 (9th Cir.), cert denied, 449 U.S. 1012 (1980) ........ 9
United States v. Cooley, 1 F.3d 985 (10th Cir. 1993) ........ passim
United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973) ........ 28
United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994) ........ passim
United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert denied, 474 U.S. 908 (1985) ........ 9,25
United States v. Jordan, 49 F.3d 152 (5th Cir. 1995) ........ 9,26
United States v. Lovaglia, 954 F.2d 811 (2d Cir. 1992) ........ 25
United States v. Nobel, 696 F.2d 231 (3d Cir.),cert denied, 462 U.S. 1118 (1983) ........ 23
United States v. Ritter, 273 F.2d 30 (10th Cir. 1959), cert denied, 362 U.S. 950 (1960) ........ 5
United States v. Ritter, 540 F.2d 459 (10th Cir.)(per curiam), cert denied, 429 U.S. 951 (1976) ........ 6
United States v. Ryan, 455 F.2d 728 (9th Cir. 1971) ........ 27
United States v. Story, 716 F.2d 1088 (6th Cir. 1983) ........ 12
United States v.Gigax, 605 F.2d 507 (10th Cir. 1979) ........ passim
Wilks v. Israel, 627 F.2d 32 (7th Cir. 1980), cert. denied, 449 U.S. 1086 (1981) ........ 31

**Constitution, Statutes and Rules**

28 U.S.C. § 144 ........ passim
28 U.S.C. § 455 ........ passim
28 U.S.C. § 455(a) ........ passim
28 U.S.C. § 454(b)(1) ........ passim
28 U.S.C. § 116(c) ........ 5,27
18 U.S.C. §3592(c) ........ 19
18 U.S.C §2332(a) ........ 22
18 U.S.C §844(f) ........ 22
Fed. R. Crim. P. 31(c) ........ 22
Local Rule of Court 3(D) ........ 27
Fed. R. Crim. P. 18 ........ 28

**Other Authorities**

Dr. Bonham's Case, 8 Co. Rep. 113b, 77 Eng. Rep 646 (K.B. 1609) ........ 12
Dudley, "Getting Beyond the Civil/Criminal Distinction: A New Approach to Regulation of Indirect Contempt," 79 Va. L. Rev. 1025 (1993) ........ 30
Federalist No. 10, The, . 79 (C. Rossiter ed. 1961) (J. Madison) ........ 12
Leubsdorf, "Theories of Judging and Judge Disqualification," 62 N.Y.U. L. Rev. 237 (1987) ........ 10
Note, "The Illegitimacy of the Extrajudicial Source Requirement for Judicial Disqualification Under 28 U.S.C §455(a)," 15 Cardozo L. Rev. 787 (1993) ........ 29

## ISSUE PRESENTED

Whether a judge who has been victimized by the commission of a crime which inflicted massive damage on his chambers, courtroom and the courthouse where he sits and caused injury and trauma to a number of courthouse personnel including a member of his personal staff, may, consistent with 28 U.S.C. §§ 144 and 455 and the Due Process Clause of the fifth amendment to the Constitution, preside at the trial of a person charged with the crime after both the defendant and the government have requested that he recuse himself, and whether the right to such relief is enforceable by mandamus under this Circuit's precedent.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to this petition are essentially undisputed.[2] On April 19, 1995, an

---

[1] Some Members of this Court may have such relationship to the events in issue that they will recuse themselves from this proceeding. The petition sets forth sufficient facts to permit such evaluation.

[2] As we argue herein, the present record alone mandates disqualification of Judge Alley. Nevertheless, apart from the facts of which we are aware, there remain significant unresolved factual questions regarding the scope of the injury to Judge Alley's and other courthouse personnel, damage caused to his chambers and the courthouse, and the extent of Judge Alley's relationship with those injured, which bear on the appropriateness of recusal. While Judge Alley has made some generalized disclosures regarding the effect of the bombing on him and his staff -- including statements that "two or three items" of his personal property received "minor nicks," that an unidentified member of his staff received "superficial scratches and bruises," and that his "personal office was not severely damaged" -- these raise more questions than they answer about the explosion's specific effect on him and the other judges. (Exh. B, Notice to Counsel, at 2-3.) Accordingly, our Motion for Recusal and Request for Discovery and Evidentiary Hearing requested discovery and an evidentiary hearing as alternative relief in the event the district court decided recusal was not mandated on the record before it. (Exh. C, Nichols Motion, at 22-24, 28.) Judge Alley's opinion fails to address or mention this request, and has denied other related requests for discovery. (Exh. H.)

These factual questions remain outstanding and cast an independent pall on the decision not to recuse. Accordingly, in the event disqualification is not mandated by this Court on the (continued...)

enormous explosion occurred at the base of the Alfred P. Murrah Federal Building in Oklahoma City. The explosion inflicted massive damage on the nearby Federal Courthouse, including extensive damage to the courtroom and chambers of Respondent, the Honorable Wayne E. Alley, and substantial injury, trauma and emotional suffering to the courthouse staff, including injury to one of Judge Alley's staff members.

The extent of the damage to the courthouse (amounting to over $1,000,000, measured by General Services Administration contracts issued for the clean-up) is graphically documented in the affidavits, photographs and videotape submitted in connection with the motions for recusal filed by Mr. Nichols and co-defendant McVeigh.[3] Over one hundred windows were shattered, and substantial damage was caused to interior ceilings, walls and fixtures. Most heavily damaged were the district judge's chambers located on the third and fourth floors along the north side of the building (facing the bomb site), which include Judge Alley's third floor chambers and courtroom. Ceilings collapsed (including the ceiling in parts of Judge Alley's chambers); flying glass caused substantial damage (including damage to woodwork and furniture in Judge Alley's courtroom); door hinges were damaged (including those in Judge Alley's courtroom), causing the doors to jam; and light fixtures were dislodged and left hanging. The skylight in Judge Alley's courtroom shattered, covering the courtroom floor in an inch-deep of broken glass. (Exhs. B, C.)

---

[2](...continued)
present record, the Court should remand the issue for the requested discovery and evidentiary hearing. See Barksdale v. Emerick, 853 F.2d 1359, 1363 (6th Cir. 1988) (party seeking recusal "should be given the opportunity to develop a full record for the basis of the disqualification"); Easley v. University of Michigan Board of Regents, 853 F.2d 1351, 1352 (6th Cir. 1988) (remanding for evidentiary hearing because, although some asserted grounds for disqualification were "patently meritless[,] [o]thers require[d] explication").

[3] Mr. Nichols joined Mr. McVeigh 's motion for recusal below.

Courthouse personnel suffered numerous injuries apart from the property damage. One judge received cuts on his head, other judicial staff also received lacerations, a member of the Clerk's staff had to be hospitalized, and several secretaries were sufficiently traumatized that they have missed substantial work-time. Among those injured was a member of Judge Alley's personal staff, who Judge Alley reported received "superficial scratches and bruises." Others with courthouse connections were injured in the Murrah Building itself. The Clerk of the District Court, Robert Dennis, was in the Murrah Building at the time of the bombing and was buried in rubble. A member of the Clerk's staff lost a child in the Murrah Building day care center, and a judicial clerk's child who was also in the day care center was badly injured. (Exhs. B, C.)

Understandably, the primary reactions of the courthouse community to these traumatic events have been efforts to heal and an outpouring of sympathy for victims who were killed, injured and who lost loved ones, efforts which continue to the present day. A pamphlet offering counseling and healing services was distributed in the Clerk's office. A memorial wreath was displayed in the public area of the Clerk's office for two months after the bombing, purple ribbons commemorating those killed and injured were hung from the Courthouse doors, and other memorabilia were made available in the Courthouse. Also perhaps understandably, although inappropriately, in at least one instance this deference to the Courthouse victims has manifested itself at the expense of Mr. Nichols. As related in detail in the exhibits to Mr. Nichols's Supplemental Pleading Regarding Recusal, at Mr. Nichols' arraignment members of the "courthouse family" (in the words of the United States Marshal), including the employee who lost a child in the Murrah Building child care center, were given privileged access to seats on the

bench inside the courtroom well, while Mr. Nichols' own family was relegated to seats in the far rear corner of the courtroom. (Exhs. B, D.)

On August 10, 1995, a grand jury handed down an indictment against petitioner-defendant Terry Lynn Nichols, charging him with responsibility for the bombing that caused the damage, injury and trauma to the Courthouse and its personnel.

On August 14, 1995 -- before any motion to recuse him had been filed -- Judge Alley filed and distributed to defense counsel a "Notice to Counsel" stating, inter alia:

> I know of no reason whatsoever that would be a basis for self-recusal pursuant to 28 U.S.C. § 455. Of course, this notice is not intended to foreclose submission of a motion for recusal support by Affidavit and Certificate of Good Faith pursuant to § 144. (Exh. B, Notice to Counsel at 4.)

On August 22, 1995, co-defendant Timothy McVeigh filed a Motion for Recusal of District Judge, which was subsequently joined by petitioner-defendant Nichols. On August 23, 1995, petitioner-defendant Nichols filed a Motion for Recusal and Request for Discovery and Evidentiary Hearing seeking recusal of Judge Alley and all other judges of the Western District of Oklahoma, pursuant to 28 U.S.C. §§144, 455(a) and 455(b)(1). On September 8, 1995, the government filed its response to these motions, maintaining that recusal of Judge Alley and the other Western District judges was not required as a matter of law. The government nevertheless urged that Judge Alley and the other district judges recuse themselves voluntarily, explaining that "[i]t is of paramount importance that the nation have complete confidence in the integrity of the verdict ultimately reached in this case, and that partisan detractors not be permitted -- however wrongly -- to raise questions about judicial fairness" and that "[t]here is too much at stake here to risk even an erroneous reversal." (Exh. G (Gov't Response), at 1).

On September 14, 1995, Judge Alley denied defendants' motion for recusal and declined the government's suggestion that he voluntarily recuse himself, finding it to be "improvident." In the same Order -- again without any motion to transfer having been filed -- he also transferred the case to Lawton, Oklahoma for trial pursuant to 28 U.S.C. §116(c) and Local Rule of Court 3(D), stating, inter alia, that "[t]he United States Courthouse in Oklahoma City is too close to the bombing target," and that "[j]ury selection from a pool in the Oklahoma City area would be chancy." (Exh. A, at 4, 20.)

## ARGUMENT

### I. JUDGE ALLEY'S DENIAL OF THE RECUSAL MOTIONS ARE REVIEWABLE UPON PETITION FOR WRIT OF MANDAMUS

Mr. Nichols' right to the requested disqualification relief is clear and indisputable under governing precedent of the Supreme Court and this Circuit.

Like the vast majority of circuits, this Court holds that a district judge's denial of a motion for recusal is reviewable by petition for writ of mandamus. Texaco, Inc. v. Chandler, 354 F.2d 655 (10th Cir. 1965), cert. denied, 383 U.S. 936 (1966). In Chander, the Court held:

> The jurisdiction of this court to take action to guarantee a fair and impartial trial is no longer open to question. Upon an adequate showing, this court has held that it has the 'power and inescapable duty', whether under the allwrits statute, 28 U.S.C. 1651, or under its inherent powers of appellate jurisdiction, 'to effectuate what seems to us to be the manifest ends of justice.' 354 F.2d at 657 (quoting United States v. Ritter, 273 F.2d 30, 32 (10th Cir. 1959), cert. denied, 362 U.S. 950 (1960)).

See also United States v. Cooley, 1 F.3d 985, 996 n.9 (10th Cir. 1993) ("a district court's refusal to disqualify under § 455(a) may be challenged on direct appeal following conviction as well as by use of mandamus"). Accordingly, the Court routinely addresses the merits of mandamus petitions

seeking review of denials of motions for recusal without separately considering the appropriateness of the otherwise extraordinary mandamus remedy. See e.g. United States v. Ritter, 540 F.2d 459 (10th Cir.) (per curiam), cert. denied, 429 U.S. 951 (1976) (motion under §§144 and 455; reaching and discussing merits of recusal issue on mandamus without addressing mandamus jurisdiction; petition granted); Frates v. Weinshienk, 882 F.2d 1502 (10th Cir. 1989), cert. denied, 494 U.S. 1004 (1990) (motion under §455; same; petition denied); Hinman v. Rogers, 831 F.2d 937 (10th Cir. 1987) (per curiam) (motion under §§144 and 455; same; petition denied); see also In re School Asbestos Litigation, 977 F.2d 764, 777-78 (3d Cir.1992); In re IBM Corp., 618 F.2d 923, 927 (2d Cir. 1980) ("A claim of personal bias and prejudice strikes at the integrity of the judicial process, and it would be intolerable to hold that the disclaimer of prejudice by the very jurist who is accused of harboring it should itself terminate the inquiry until an ultimate appeal on the merits").

Immediate review of a meritorious motion for recusal is justified by considerations of judicial economy. A trial plainly tainted from the outset by a partial adjudicator (or one who lacks the requisite appearance of impartiality) is destined for eventual reversal and retrial, which is why courts require that "a motion to recuse . . . be filed promptly after the facts forming the basis of disqualification become known." United States v. Gigax, 605 F.2d 507, 511 (10th Cir. 1979). An even more significant justification for immediate review, however, is the importance of the value at stake: the fundamental "guarantee [of] a fair and impartial trial." Chandler, 354 F.2d at 657. As the Supreme Court has noted, the concern for an impartial judge embodied by the recusal statutes "has constitutional dimensions." Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 865 n.12 (1988).

As we discuss below, in the unique circumstances presented here it will in fact violate the Due Process Clause should Judge Alley (or any of the other Western District judges) continue to preside over this case. This species of constitutional error, moreover, is not subject to harmless error analysis. Chapman v. California, 386 U.S. 18, 24 n.9 (1967) (citing Tumey v. Ohio, 273 U.S. 510 (1927)).

Immediate and unqualified review therefore serves all parties' interests,[4] as well as the systemic interest in efficient allocation of judicial resources.

## II. JUDGE ALLEY AND THE OTHER JUDGES OF THE WESTERN DISTRICT OF OKLAHOMA SHOULD BE DISQUALIFIED

The issue posed by this case is simply stated: can a judge who, along with his co-workers, has himself been directly victimized by a crime of violence sit in judgment over one accused of committing that very crime? That Judge Alley and the other judges were in fact victimized by the Murrah Building bombing is not open to serious question. The explosion had a traumatic effect on all connected with the Courthouse: the judges' everyday place of work was devastated, at least one judge and many of their co-workers received injuries, schedules were disrupted, and the emotional effects of these events linger to this day, as evidenced by the memorials to victims and

[4] We note that the government's odd position in its Response below -- arguing both for and against the judge's recusal -- is forced upon it by the procedural posture in which it finds itself. While evidently (and correctly) fearing that Judge Alley's or other Western District judges' participation will make its case vulnerable on appeal (should it progress that far), the government cannot join with the defendants and argue that recusal is mandated as a matter of law without risk of waiving its ability to contest the defendants' (potentially dispositive) recusal argument, should that argument be raised on direct appeal from a conviction. Thus, regardless of whether the government in fact agrees that recusal of Judge Alley and the other district court judges is mandated as a matter of law, the government cannot take this position explicitly. That its actual position with respect to the recusal issue is closer to the defendants' than it is in a position to admit openly is signalled by its heavy reliance in its brief below on the possibility of purportedly "erroneous reversal" by this Court should Judge Alley fail to recuse himself. (Exh. G, at 1.)

victim-counseling services pamphlets still offered in the Courthouse. By Judge Alley's own account, his immediate reaction to news of the bombing was concern that members of his staff might have been injured, and his chambers and courtroom were badly damaged, a staff member was in fact injured, and he suffered minor damage to his personal property. (Exh. B, Notice to Counsel, at 2.)

The significance of the bombing's effects on the courthouse cannot be side-stepped, as the government attempts to do, by relying on semantic niceties like a distinction between a judge's "official" and "personal" capacities -- a distinction expressly rejected by the Supreme Court in Liteky v. United States, 114 S.Ct. 1147 (1994).[5] Nor are victims of the bombing restricted to those actually present in the Courthouse at the time of the explosion, as Judge Alley suggests. (Exh. B, Notice to Counsel, at 1-2 (Judge Alley was at home at time)). One whose place of work is burglarized (or bombed) while she is on vacation is not less "victimized" because of her absence. Nor does it matter for recusal purposes that Judge Alley believes in good faith that he has not been victimized by the crime, because the judge's good faith belief in his own impartiality is not a relevant consideration under any of the recusal standards, statutory or constitutional.

In sum, under any reasonable definition of "victimization" -- and certainly any definition sensitive to the concern underlying the recusal statutes, the "'possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the

[5] Compare Exh. G, Gov't Response, at 7 ("any damage to court facilities affected him only in an official, and not a personal, capacity") with Liteky 114 S.Ct. at 1154 ("[b]ias and prejudice seem to us not divided into the 'personal' kind, which is offensive, and the official kind, which is perfectly all right").

accused,'" In re Murchison, 349 U.S. 133, 136 (1955) (quoting Tumey v. State of Ohio, 273 U.S. 510, 532 (1927)) -- the judges of the Western District were "victimized" by the crime.

Thus, the overriding error in Judge Alley's opinion is the failure to give any weight to the direct, adverse effects the bombing had on him personally in his consideration of whether recusal is appropriate. This is the "thread" that he finds missing in Mr. Nichols' arguments below. (Exh. A, Order, at 18.) Instead of considering the fact that he himself has been victimized by the bombing, Judge Alley focusses his entire attention on a separate issue -- whether he had any relationship with any of the (other) victims of the bombing.[6] A judge's relationships with other victims are indeed significant, as we discuss below in connection with §455(a), but they should not be confused with the case in which the judge has himself suffered direct effects as a result of the crime.

In part because this case is indeed unique and in part because recusal cases tend to be "extremely fact intensive and fact bound," United States v. Jordan, 49 F.3d 152, 157 (5th Cir. 1995), precedents addressing the instant situation are rare. But the absence of direct precedent is also attributable to the fact that recusal is so clearly required in circumstances like those presented here that judges ordinarily voluntarily recuse themselves (as the government requested Judge Alley do here) without any need to file an opinion or discuss the legal merits.[7] In any event,

---

[6] The three cases that introduce his opinion, for example, are all "relationship" cases. None of them bear any resemblance to the instant case. United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert.denied, 474 U.S. 908 (1985) (professional relationship with victim); United States v. Conforte, 624 F.2d 869 (9th Cir.), cert. denied 449 U.S. 1012 (1980) (relationship with defendant); Tafero v. Wainwright, 796 F.2d 1314 (11th Cir. 1986), cert. denied, 483 U.S. 1033 (1987) (habeas case decided under constitution; professional relationship with victim).

[7] As one commentator notes, "a judge who withdraws usually writes no opinion.
(continued...)

whether voluntary or mandated by a reviewing court, the reasons for self-recusal where the judge has been personally and directly affected by the crime on trial are abundantly clear: the possibility of unconscious bias regardless of the good faith and intentions of the judge, and the appearance of partiality.[8] Unsurprisingly, as we demonstrate in the following sections, this situation falls squarely within the reach of §§144 and 455, as well as the Due Process Clause of the fifth amendment.

---

[7](...continued)
Published opinions, consequently, form an accumulating mound of reasons and precedents against withdrawal; meanwhile, some judges routinely and silently disqualify themselves in comparable cases." Leubsdorf, "Theories of Judging and Judge Disqualification," 62 N.Y.U. L. Rev. 237, 244-5 (1987).

[8] Justice Frankfurter provided a succinct explanation for the need for self-recusal in recusing himself from an appeal that posed a far less compelling case of judicial "victimization" than the one presented here:

> The judicial process demands that a judge move within the framework of relevant legal rules and the covenanted modes of thought for ascertaining them. He must think dispassionately and submerge private feeling on every aspect of a case. . . . The fact is that on the whole judges do lay aside private views in discharging their judicial functions. . . . But it is also true that reason cannot control the subconscious influence of feelings of which it is unaware. When there is ground for believing that such unconsious feelings may operate in the ultimate judgment, or may not unfairly lead others to believe they are operating, judges recuse themselves. They do not sit in judgment. They do this for a variety of reasons. The guiding consideration is that the administration of justice should reasonably appear to be disinterested as well as be so in fact.
>
> This case for me presents such a situation. My feelings are so strongly engaged as a victim of the practice in controversy that I had better not participate in judicial judgment upon it.

Public Utilities Comm'n of D.C. v. Pollak, 343 U.S. 451, 466-467 (1952) (Frankfurter, J., in chambers) (Supreme Court held, without Justice Frankfurter participating, that radio programs played in the streetcars and busses of the District of Columbia Transit Authority did not violate the first or fifth amendments).

If this Court decides that Judge Alley's and the other Western District judges' continuing participation in this case would cause a reasonable person to question their impartiality within the meaning of 28 U.S.C. §455(a), then it need not reach the other bases for disqualification discussed below. Cooley, 1 F.3d at 995-6 ("Because of this holding [under §455(a)] it is unnecessary for us to address the allegations under §144 or §455(b)(1) of actual bias against the defendants"). Nevertheless, because of the clarity of the right to relief and the importance of ensuring that the conduct of this trial is beyond reproach, we address the other statutory and constitutional provisions mandating disqualification as well.

A. Judge Alley and the other judges should be disqualifed pursuant to 28 U.S.C. §§144 and 455(b)(1) for "personal bias and prejudice"

Judge Alley correctly held that Mr. Nichols met the procedural requirements of §144 (relating to the form and timing of the supporting affidavit), so the only issue here is whether the court's conclusion that the facts set forth in Mr. Nichols affidavit are insufficient to support a finding of "personal bias or prejudice either against him or in favor of any adverse party." (Exh. A, Order, at 7.) Section 455(b)(1) prescribes recusal for the same reasons as §144 but is self-executing and is not restricted to the facts stated in the affidavit. (Id. at 10.) Because the "personal bias or prejudice" clause of §455(b)(1) is construed in pari materia with the identical language of §144, we discuss these two claims together. Liteky, 114 S.Ct. at 1153.

Recusal is mandated under 28 U.S.C. §144 "[i]f the facts give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." United States v. Gigax, 605 F.2d 507, 511 (10th Cir. 1979) (quoting Berger v. United States, 255 U.S. 22, 33-34 (1921)). Judge Alley has made it clear that he does not consider himself to be "personally biased or

prejudiced" against Mr. Nichols. However, if the party seeking recusal submits an affidavit and the judge determines that the facts alleged are legally sufficient, "the judge must recuse even though the statements may not accurately reflect the judge's state of mind." Gigax, 605 F.2d at 511.[9] Underlying these principles is the obvious point that the judge's actual "state of mind" is ultimately knowable with certainty only to himself. Accordingly, §144 requires only a showing of facts sufficiently probative of that state of mind to "give fair support" to the claim of personal bias or prejudice.

In Mr. Nichols' affidavit he set forth facts sufficient to show that Judge Alley was directly and personally affected by the violent crime with which Mr. Nichols was charged. The hoary principle[10] that "no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome," In re Murchison, 349 U.S. 133, 136 (1955), is broad enough to cover the case of a judge who was a victim of the very crime charged in the trial over which she is presiding, and to justify imputing "personal bias or prejudice" to the judge as a matter of law. Cf. United States v. Greenspan, 26 F.3d 1001, 1005-6 (10th Cir. 1994) (judge who received information that defendant scheduled for sentencing was participant in conspiracy to murder him should have recused himself pursuant to §455(a)).

---

[9] Judge Alley appears to have applied an erroneous standard of proof regarding the §144 showing. After correctly citing Gigax for the "fair support" standard, he then cites a Sixth Circuit case for the proposition that the facts must be "such as would 'convince a reasonable man that a bias exists.'" Exh. A, Order, at 8 (quoting United States v. Story, 716 F.2d 1088, 1090 (6th Cir. 1983)). The correct test, under Berger and Gigax, is whether the facts "give fair support" to a biased or prejudicial "bent of mind."

[10] See Dr. Bonham's Case, 8 Co. Rep. 113b, 77 Eng. Rep. 646 (K.B. 1609) (also reported as College of Physician's Case, 2 Br. & Gold. 256, 123 Eng. Rep. 928); see also The Federalist No. 10, p. 79 (C. Rossiter ed. 1961) (J. Madison); Guttierez de Martinez v. Lamagno, 115 S.Ct. 2227, 2233 (1995)

Judge Alley, however, found that Mr. Nichols' showing was "an ipse dixit" consisting of "naught but speculation, conjecture and accusation" based on an assumption that the judge was afflicted with "a conscious or unconscious urge for revenge, brought about by some osmotic process" that "bears a curious resemblance to the discredited fallacy of 'guilt by association.'" (Exh. A, Order, at 8, 9.) Given the specific, careful, good faith and uncontradicted factual allegations set forth in Mr. Nichols' §144 affidavit, the somewhat contemptuous tone of these conclusions is unwarranted. More importantly, they miss the entire thrust of Mr. Nichols' claim of "personal bias or prejudice." The specifics that Judge Alley find lacking (id. at 8) are amply supplied in the detailed descriptions of the damage and injury done to his chambers, courtroom, staff and the Courthouse and its personnel. The affidavit states that Judge Alley himself (as well as those who work close to him) experienced devastating consequences at his place of work as a result of the Murrah Building bombing, and that the individual who the government has charged with responsibility for that devastation is a party to the litigation before him. These are the specific facts and circumstances that "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Gigax, 605 F.2d at 511 (quoting Berger, 255 U.S. at 33-34).

We thus do not dispute as a general principle that "[a]llegations of general sorrow in the workplace do not translate into prejudice towards this particular defendant" (Exh. A, at 9), but the Nichols Affidavit sets forth far more than "general sorrow" -- it sets forth general devastation. Similarly, it is undoubtedly the case, as the government argued below, that "every federal judge in the country knows about, and is horrified by, the carnage and suffering caused by the April 19th bombing." (Exh. G, Gov't Response, at 8-9.) But it is emphatically not the case that the

chambers and courtroom of "every federal judge in the country" were devastated by the April 19th bombing. Surely there is a meaningful distinction to be made between "suffering direct consequences of a crime" and "knowing about a crime." The former plainly tends to "give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment" on the part of the one who was victimized by the crime, regardless of whether the latter does or not.

This "bias or prejudice" is, moreover, "personal" to Mr. Nichols within the meaning of the statute. Judge Alley held that

> [b]ecause the bias must be specifically shown to be against the movant personally, deploring the alleged crime itself cannot be the kind of bias contemplated by the statute. The missing link is showing why these environmental factors would result in a judicial bent to retaliate against these two defendants, who are presumed to be innocent. (Exh. A, Order, at 9.)

Again, what is alleged in the Nichols affidavit is more than that Judge Alley "deplor[ed] the alleged crime," it is that he was directly and personally affected by it. The "link" connecting to Mr. Nichols, moreover, is the fact that he is the one charged with committing the crime. To date a grand jury, a judge and a magistrate of the Western District of Oklahoma and a panel of this Court have concluded that there is probable cause to believe that Mr. Nichols is responsible for the damage and injuries caused in the Federal Courthouse. It is difficult to see how much stronger a "link" to Mr. Nichols there could be at this stage of the proceedings.[11] A judge is personally biased if she has an attitude toward a party "that is significantly different from and more particularized than the normal, general feelings of society at large," Mims v. Shapp, 541

[11] The fact that Mr. Nichols is "presumed to be innocent" is of course true as a matter of law but irrelevant here; what is at stake is whether the facts alleged in the affidavit lend fair support to the possibility that Judge Alley will be unable to give these words their full and required legal meaning.

F.2d 415, 417 (3d Cir. 1976), a condition which is plainly met by the "attitude" of a victim of a crime toward one formally charged with the crime.[12]

Finally, Judge Alley states that "[d]efendant cites no statements or actions by means from which any finding of bias or prejudice can be made," and expresses doubt that "recusal for actual bias [could be] required when the judge made no statements or rulings or other demonstrations that admitted or implied bias and prejudice." (Exh. A, Order, at 9, 10-11.) While showings of prejudice or bias under §§144 and 455(b)(1) usually involve citations of extrajudicial statements, see e.g., Berger, supra (extrajudicial comments about Germans), nothing in the statute requires such a showing. Indeed, requiring such a showing in a case involving a judge-victim makes little sense; otherwise a defendant charged with committing a crime against the judge to whom her case

---

[12] It should be clear that the "personal bias or prejudice" necessary under §144 need not rise to the level of an evil intent or animus on Judge Alley's part. "Bias or prejudice" need not have the character of an "urge for revenge," as Judge Alley suggests. (Exh. A, Order, at 9.) Rather, as the Supreme Court put it in Liteky, "bias and prejudice"

> connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts)." 114 S.Ct. at 1155.

The sense in which Judge Alley's attitude is "wrongful or inappropriate" is thus the same sense in which a juror who is incapable of serving has an attitude which is "wrongful or inappropriate:" he is incapable of "hold[ing] the balance nice, clear, and true between the state and the accused," In re Murchison, 349 U.S. at 136 (cite omitted). This, it should be clear, is not a moral judgment; indeed, where one who has been victimized by a crime is asked to preside as judge over its trial, it would defy human moral capacities to "hold the balance nice, clear, and true."

was assigned could not move for recusal under §§144 or 455(b)(1) until (and unless) the judge made some overt expression of wrongful or inappropriate attitude.

Rather than reach this counter-intutitive conclusion, it makes more sense to say that the fact that the judge was victimized by the defendant is alone sufficient to "give fair support" to the claim of actual bias or prejudice, as we suggest above. Alternatively, the situation can be deemed to be one of those rare circumstances in which actual bias is implied by law. This is not unprecedented; indeed, bias is implied by law in closely analogous situations where a juror's partiality is challenged.[13] See Smith v. Phillips, 455 U.S. 209, 222 n.* & 223 (1982) (O'Connor, concurring) (noting that the use of a "conclusive presumption of [juror] bias" is not foreclosed in "extreme" or "extraordinary" cases); Hunley v. Godinez, 975 F.2d 316 (7th Cir. 1992) (explaining and applying the doctrine of "implied bias").

In particular, the one extraordinary situation in which courts have been willing to impute bias as a matter of law to a juror whose anwers on voir dire would otherwise make her immune from "for cause" dismissal occurs when the juror has been the victim of a crime that is very similar to the crime on trial. In these circumstances, the court is required to dismiss the juror for cause on the theory that, no matter how good faith her statements of impartiality may be, the risk of bias is too great. See Hunley, 975 F.2d at 318-19 (discussing doctrine and collecting cases). Hunley, for example, concerned the trial of a defendant for burglary and murder. The Seventh Circuit

---

[13] Defendants have a right to an impartial jury under the sixth amendment that is similar in scope and import to their right to an impartial judge under the Due Process Clause. Indeed, leading cases construing the sixth amendment "impartial jury" right cite and quote extensively the leading "impartial adjudicator" cases for support. See e.g. Irvin v. Dowd, 366 U.S. 717, 722 (1961) (citing and quoting In re Oliver, 333 U.S. 257 (1948); Tumey v. Ohio, 273 U.S. 510 (1927); In re Murchison, 349 U.S. 133, 136 (1955)).

ruled that the defendant was denied a trial by an impartial jury after several jurors' rooms were burglarized during the course of deliberations. Although all jurors disclaimed any effect of the incident on their decision to return a guilty verdict, the Seventh Circuit ruled that "[t]he burglary [of the jurors' hotel] placed the jurors in the shoes of the victim just before she was murdered," and that a mistrial should have been declared. 975 F.2d at 319.

This Court has applied the "implied bias" doctrine in a complementary situation, in which the defendant, who was on trial for murder, raised the battered woman syndrome defense. Burton v. Johnson, 948 F.2d 1150 (10th Cir. 1991), cert. denied, 113 S.Ct. 1879 (1993). The juror in question had suffered abuse very similar to the defendant's, but failed to disclose it during voir dire. The Court concluded that the "similarities of experience" between the defendant and juror required the Court to imply bias as a matter of law and ruled that the juror should have been excluded for cause.[14] 948 F.2d at 1159.

The Supreme Court has recently made it clear that the terms "bias and prejudice" in the judicial recusal statutes are to be understood by analogy to "biased" or "prejudiced" jurors.

> The words ["bias or prejudice"] connote a favorable or unfavorable disposition or opinion that is somehow wrongful or inappropriate, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess (for example, a criminal juror who has been biased or prejudiced by receipt of inadmissible evidence concerning the defendant's prior criminal activities), or because it is excessive in degree (for example, a criminal juror who is so inflamed by properly admitted evidence of a defendant's prior criminal activities that he will vote guilty regardless of the facts)." Liteky, 114 S.Ct. at 1155.

---

[14] The Court also ruled that the juror's failure to disclose her abuse on voir dire was a distinct ground for reversal, but specifically stated that "[a]ssuming that the juror had answered the voir dire question honestly, the record still would not have fairly supported the presumption of correctness of the trial court's finding of juror impartiality." 975 F.2d at 1158.

Here Judge Alley is not only "similarly situated" to the Murrah Building bombing victims, he himself has been victimized by the same crime.

Accordingly, given the close connection between judicial "bias and prejudice" and jurorial "bias and prejudice" drawn by Liteky, Burton, Hunley and the other "implied bias" cases stand for the proposition that, at least in the unique circumstance where the judge has himself been victimized by the crime on trial before him, judicial bias should be implied under §§144 and 455(b)(1).

B. Judge Alley and the other judges should be disqualified pursuant to 28 U.S.C. §455(b)(1) due to "personal knowledge of disputed evidentiary facts concerning the proceeding"

Under 28 U.S.C. §455(b)(1), a judge must disqualify herself if she has personal knowledge of evidentiary facts that will be disputed at trial. Our motion for recusal, the Affidavit of Terry Lynn Nichols, and the exhibits accompanying both our motion and that of Mr. McVeigh show that the district judge must recuse himself under section 455(b)(1).[15] (Exhs. C and D.)

Judge Alley's ruling does not contest his knowledge of facts related to the bombing, but insists that nothing he knows can be deemed "disputed" within the meaning of the statute. He also argues that "the Court's role in this matter will be confined to issues of law." (Exh. A, Order, at 12, 13.)

Judge Alley takes too narrow a view of the impact of his prior (and continuing) knowledge and experience of the facts of this tragedy, and of the trial rights protected by §455(b)(1). Apart from his own knowledge, he is in daily contact with countless people who

[15] Mr. Nichols does not now and did not below, as the judge evidently believed, take the position that information submitted in the §144 affidavit can "bootstrap" itself into the status of "disputed facts." See Exh. A, Order, at 13.

have direct, personal knowledge of the bombing and its effects. They do and will continue to share his workplace. The bombing, its effects, and what should happen to the defendants are matters of constant discussion in the Courthouse. His relationships with the other Courthouse personnel thus closely parallel the relationship found disqualifying under §455(b)(1) in In re Faulkner, 856 F.2d 716 (5th Cir. 1988) (holding that judge "has, at least through his personal conversations with [a witness with whom he had relationship], 'personal knowledge of disputed evidentiary facts concerning the proceeding' sufficient to disqualify him, under section 455(b)(1), from presiding further over this case").

Moreover, should Judge Alley continue on this case he will inevitably be called upon to make rulings about how much and what type of evidence can be presented consistent with Rule 403 of the Federal Rules of Evidence, as well as possibly having to rule on the admissibility of evidence at a death penalty hearing. Without conceding the admissibility of any evidence under 18 U.S.C. §3592(c) or on any other basis, it is clear that the injury suffered by a member of Judge Alley's staff and the physical damage to Judge Alley's courtroom and chambers constitute relevant evidence that could be introduced by the government against Mr. Nichols in a noncapital sentencing proceeding, or -- possibly -- as an aggravating factor in a capital sentencing proceeding, should either occur. Moreover, even if the basic facts of the staff member's injury and the damage to Judge Alley's chambers and courtroom were undisputed at sentencing, their significance will be contested. Any competent defense counsel would challenge the extent of damage and the weight it should be given in a Guidelines calculation by the district judge. If a capital sentencing proceeding were to occur, defense counsel would be duty-bound to argue the significance and weight of this evidence as it relates to the jury's weighing of aggravating and

mitigating factors in deciding whether to impose a sentence of death. The presiding judge will be called on continually to make rulings on the permissible scope of cross-examination, lines of questioning, and other routine (but critical) evidentiary decisions in which prior knowledge and direct experience of the impact of the bombing could unconsciously enter into the calculation.

Thus, a district judge who has himself been victimized by the bombing and who has daily contact with others affected even more severely cannot be considered an impartial decision-maker of legal and evidentiary issues that will surely arise, particularly if this case proceeds to a sentencing phase, whether it is capital or non-capital.

C. Judge Alley and the other judges should be disqualified pursuant to 28 U.S.C. §455(a) because their "impartiality might reasonably be questioned"

The broadest in scope of the recusal statutes, 28 U.S.C. §455(a) requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." See generally Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847 (1988). Unlike §§144 and 455(b)(1), the test is "purely objective," looking not to "actual bias" but to "'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" United States v. Cooley, 1 F.3d 985, 993 (10th Cir. 1993) (quoting United States v. Burger, 964 F.2d 1065, 1070 (10th Cir. 1992)). Moreover, "when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification." Parker v. Connors Steel Co., 855 F.2d 1510, 1524 (11th Cir.1988), cert. denied, 490 U.S. 1066 (1989). These doubts must be evaluated from a lay rather than judicial perspective, moreover, keeping in mind the Supreme Court's admonition that "people who have

not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges." Liljeberg, 486 U.S. at 864-5.

There is no question that a reasonable person supplied with all the facts of this case would harbor doubts about Judge Alley's and the other Western District judges' partiality.

First, as we argued above, Judge Alley and the other judges possess "personal bias or prejudice" against Mr. Nichols by virtue of the fact that they have been victimized by the very crime that he is accused of committing, a circumstance that is paradigmatic of "facts that give fair support to the charge of a bent of mind that may prevent or impede impartiality of judgment." Nevertheless, even if this Court declines to find "personal bias or prejudice" as a matter of law here, there remains the question of whether a reasonable person apprised of the facts that Judge Alley's chambers and courtroom were decimated, that a member of his staff was injured, and that he is exposed on a daily basis to reminders of the tragedy that took place on April 19 would harbor doubts about Judge Alley's ability to remain impartial. A reasonable person need not speculate about willful partiality or evil intent to doubt whether a person whose place of work has been devastated and co-workers and staff members injured would be able to maintain the impartial attitude required of a judge.

Two cases recently decided by this Court under §455(a) strongly support disqualification here. In United States v. Greenspan, 26 F.3d 1001 (10th Cir. 1994), the Court held that Judge Conway should have disqualified himself from further proceedings in the case after he was informed by the FBI that the defendant was under investigation for participation in a conspiracy to murder the judge and his family, stating that "[e]ven if this judge were one of those remarkable

individuals who could ignore the personal implications of such a threat, the public reasonably could doubt his ability to do so." Id. at 1007.

Greenspan is instructive in a number of respects. First, as here, the concern requiring recusal was Judge Conway's knowledge that he might become a crime victim of the defendant before him. It is true that Judge Conway was allegedly the intended target of the crime -- the murder conspiracy -- while Judge Alley and the other Western District judges were victimized by crimes that, on their face, have no specific intent mens rea component with regard to human life. See 18 U.S.C. §§2332a and 844(f). This distinction is superficial, however, and will disappear entirely when it comes time for the government to prove its case. In Count 3 of the indictment, brought under 18 U.S.C. §844(f), Mr. Nichols is charged with inflicting personal injury and property damage. Counts 1, 2 and 3 charge responsibility for resulting deaths. An attempt to cause such a death -- with respect to those who did not perish -- is a lesser included offense. Fed. R. Crim. P. 31(c). At trial, in either the guilt or penalty phase or both, the government will have to prove some mens rea with respect to the resulting deaths, at a minimum (to the extent that the government decides to seek the death penalty) that the defendant acted with depraved indifference to the lives of those in the Murrah Building and adjacent structures. See Tison v. Arizona, 481 U.S. 137 (1987). Thus, the defendants' intent towards the judges themselves will, in effect if not in name, be placed in issue by the government.

Apart from the intent issue, moreover, this case presents a far more compelling case for reasonably doubting the Western District judges' ability to remain impartial. Judge Alley was victimized by a completed crime that caused devastating harm to his place of work, while Judge Conway was the target of an inchoate crime that never came to fruition. Furthermore, viewed

from the objective perspective of a reasonable person, the connection tending to link Mr. Nichols personally to responsibility for the Courthouse destruction in the mind of Judge Alley is much stronger than the linkage of Mr. Greenspan to the alleged murder plot in the mind of Judge Conway in Greenspan. The tip regarding the murder plot in Greenspan was just that -- an investigative tip -- while, as we noted above, here there have been several findings of probable cause against Mr. Nichols to date.[16]

If an investigative lead indicating that a judge is the target of an inchoate crime that never comes to fruition is sufficient to mandate recusal under §455(a), then it would appear to follow as a matter of course that a judge who has reason to believe -- based on multiple findings of probable cause -- that he was victimized in fact by a defendant should also require recusal. See also United States v. Nobel, 696 F.2d 231, 235-36 (3d Cir.), cert. denied, 462 U.S. 1118 (1983) (holding that "a judge who owns a substantial interest in the victim of a crime must disqualify himself or herself in the subsequent criminal proceeding" under §455(a)).

United States v. Cooley, 1 F.3d 985 (10th Cir. 1993), is also instructive. In Cooley this Court held that Chief Judge Kelly of the District of Kansas had to be disqualified under §455(a)

---

[16] Greenspan illustrates the error in Judge Alley's persistent statements that no connection can be made between any bias or prejudice (or "reasonable doubt" about his partiality) created by the damage to the Courthouse and his feelings (or reasonable appearance of feelings) about Mr. Nichols or co-defendant McVeigh in particular. See e.g. Exh. A, Order, at 9 ("missing link" between "sorrow in the workplace" and "judicial bent to retaliate against these two defendants"), 16 ("I find that a reasonable citizen would not question impartiality as to these defendants on the basis of my daily contact" with his injured staff member; emphasis in original). The connection between the event triggering recusal in Greenspan (the alleged murder plot) and the defendant there was supported by a far more slender thread than the connection between the event triggering recusal here (the Courthouse damage and injuries) and Mr. Nichols, since the murder conspiracy allegation in Greenspan had not been formally charged or tested by judicial proceedings. Yet this Court had no trouble in discerning the potential for the appearance of partiality against the defendant in Greenspan.

and convictions reversed because he had made an appearance on Nightline to state his views about anti-abortion protests then taking place in Wichita. These protests were in direct violation of his orders, and he stated on the television show that it was his purpose to see that "'these people whose purpose it is to close these clinics by illegal means . . . understood fairly so, firmly so, that this order [the court's injunction prohibiting obstruction of access to the clinics] would be honored.'" 1 F.3d at 995. The Court found that Judge Kelly's appearance

> unmistakenly conveyed an uncommon interest and degree of personal involvement in the subject matter. . . . [I]t unavoidably created the appearance that the judge had become an active participant in bringing law and order to bear on the protesters, rather than remaining as a detached adjudicator. Id. (footnote omitted).

Although the factual setting is very different in this case, the underlying concerns expressed in Cooley are present here as well. It would be eminently reasonable for a member of the public to suspect that Judge Alley and the other Western District judges must have "an uncommon interest and degree of personal involvement in the subject matter" of this case, since the subject matter concerns an event that directly and adversely affected their lives. For similar reasons, the fact that Judge Alley was directly affected cannot help but call into question his ability to remain a "detached adjudicator."

Consistent with his approach to the other recusal statutes, Judge Alley's discussion of §455(a) glosses over the devastating effect of the bombing on his chambers and the Courthouse. While conceding that his courtroom suffered significant damage, he otherwise attempts to minimize the effect of the bombing. (Exh. A, Order, at 15-16, 18.) Nevertheless, although Judge Alley's statement that he has "experienced greater loss of courtroom time because of water leaks and utility failures," id., may reflect his personal feelings about the devastation wrought by the

bombing, his subjective view is not the test. A reasonable person who reviewed the videotape, photographs and documentary record submitted with the recusal motions could reasonably reach other conclusions, sufficient to raise a doubt about the ability of anyone who worked in the Courthouse to maintain impartiality in this case.

Despite his claims to the contrary, a reasonable person could also conclude that Judge Alley's daily contact with the staff member who was injured in the bombing raises doubts about his impartiality. While not every relationship with a victim or defendant automatically requires recusal, see e.g. United States v. Lovaglia, 954 F.2d 811, 817 (2d Cir. 1992), a number of courts have recognized that a judge's relationship with his clerk staff is a particularly sensitive one. Hall v. Small Business Administration, 695 F.2d 175, 179 (5th Cir.1983) ("Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be"); Parker, 855 F.2d at 1525 ("We recognize the importance that some law clerks play in the decisional process and it is for this reason that a clerk is forbidden to do all that is prohibited to the Judge.) (cites, internal quotes omitted). Daily contact with a person who was injured by a violent criminal act, even if the injuries are minor, would necessarily and reasonably raise doubts about the judge's ability to maintain his judicial detachment in a trial of that very crime.

Judge Alley, on the other hand, relies heavily on United States v. Harrelson, 754 F.2d 1153 (5th Cir.), cert.denied, 474 U.S. 908 (1985), as he does throughout his opinion, for the proposition that a judge can preside at the trial of a fellow judge's murder even after attending his funeral and eulogizing him. (Exh. A, Order, at 1, 16.) Harrelson, however, will not bear the weight that Judge Alley places on it. Apart from the fact that it does not address the more fundamental basis for recusal here -- i.e., that Judge Alley was himself victimized by the bombing -

- the Harrelson holding is based on a restrictive interpretation of §455(a) which has not survived Liljeberg and which is in any event flatly inconsistent with this Circuit's understanding of §455(a). Compare Harrelson, 754 F.2d at 1165 ("recusal is not warranted absent specific instances of conduct indicating prejudice against a defendant") with Cooley, 1 F.3d at 995-6 (disqualifying Judge Kelly under §455(a) despite the fact that "the record below, including the sentences imposed, discloses no bias"). Indeed, although never expressly overruled, Harrelson appears to be generally inconsistent with subsequent Fifth Circuit "relationship" cases. See Jordan, supra (judge's friendship with attorney who had had criminal charges brought against him by defendant sufficient to require recusal); In re Faulkner, 856 F.2d 716 (5th Cir. 1988). In any event, the Harrelson court described the relationship between Judge Sessions and Judge Wood as "collegial" and noted that there was "no evidence of any special relationship between the two judges." 754 F.2d at 1164. The daily contact and dependence that a judge maintains with her staff is more analogous to the friendship that precipitated the recusal in Jordan than the collegial relationship between the two judges in Harrelson.

Finally, Judge Alley notes that "[d]efendants point to no rulings by the Court on other pre-trial matters that indicate a bias against defendants or in favor of the government." (Exh. A, Order, at 17.) Since the recusal motions were filed only 13 days after Judge Alley was assigned, there were not many pretrial rulings to complain about. More fundamentally, reliance on judicial rulings is generally (although not absolutely) precluded by the "extrajudicial source" doctrine. Liteky, 114 S.Ct. at 1154-5. Nevertheless, since this Court has occasionally adverted to in-court rulings to buttress its conclusions regarding the appearance of partiality under §455(a), see e.g. Greenspan, 26 F.3d at 1005-6 (referring to judge's expedition of the defendant's sentencing

hearing and failure to continue hearing despite appointment of new counsel), we note two rulings suggesting a tendency to prejudgment that is at odds with the appearance of judicial detachment required by §455(a).

First, Judge Alley did not wait for counsel to move his recusal; he simply announced at the very first meeting that he knew of "no reason whatsoever that would be a basis for self-recusal pursuant to 28 U.S.C. §455." (Exh. B, Notice to Counsel, at 3.) Although he was careful to add that "this notice is not intended to foreclose submission of a motion for recusal supported by Affidavit and Certificate of Good Faith pursuant to §144," id., the effect of this unexpected announcement was to suggest that motions for recusal were likely to be futile. The Ninth Circuit has found the precipitous decision of a §455 motion to be a factor favoring reassignment of a case on remand to a new judge, United States v. Ryan, 455 F.2d 728, 735 & n.* (9th Cir. 1971) (fact that district judge "[a]cted upon a 28 U.S.C. §455 motion on the day it was filed and prior to the time it was formally set for hearing, even though counsel stated, 'I am not arguing this motion to you at this time'" a factor motivating appeals court to request reassignment under old §455 for sake of "appearances").

Second, and more significantly, in the same Order denying defendants' motions for recusal Judge Alley ordered this matter set for trial in Lawton,Oklahoma, pursuant to 28 U.S.C. §116(c) and Local Rule of Court 3(D). The reasons given for this decision were convenience of the "local witnesses" and "affected persons who want to be spectators," and because the judge had decided that "[j]ury selection from a pool in the Oklahoma City area would be chancy." Judge Alley also indicated that at least part of the basis for his selection of Lawton was ex parte consultation with

the United States Marshals Service, which has evidently been surveying potential trial sites without the knowledge of (and certainly without consulting) the defense. (Exh. A, Order, at 20.)

Judge Alley's transfer order is disturbing for a number of reasons, all of which bespeak the same tendency to decide issues improperly and adversely to the defense before they are even raised by a party, and without any opportunity for briefing and hearing. Rule 18, Fed. R. Crim. P., provides that "[t]he court shall fix the place of trial within the district with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice." The district court's opinion makes no mention of the "convenience of the defendant," nor could it, since Lawton is tremendously inconvenient for many reasons: few if any of Mr. Nichols' witnesses can be characterized as "local," as they are almost all from Kansas and Michigan; Lawton is far from the nearest major airport and is otherwise an unsuitable venue for a major trial involving hundreds of witnesses and countless physical exhibits; the forensic evidence is being evaluated in many places including the District of Columbia; and even the government's main announced trial witnesses are from Arizona. See United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973) (Friendly, J.) (intradivisional transfer intended for convenience of defendant and witnesses, not judge). The reference to jury pools is also ominous in so far as it suggests (as did the sua sponte decision of the §455 motions that had not been filed yet) that Judge Alley may be prejudging a critical issue for the defendants -- venue -- before having the benefit of the defendants' evidence and argument.

We do not ask the Court to determine the propriety of these decisions by the district court, but mention them only because they contribute to the "totality of the circumstances," Greenspan, 26 F.3d at 1006, suggesting the basis for disqualification. Cf. Haines v. Liggett

Group Inc., 975 F.2d 81, 97-98 (3d Cir. 1992) (prejudgment of issues may create "appearance of bias" sufficiently extreme to warrant reassignment of case to another judge). Should the Court grant this petition and disqualify Judge Alley, the proper course is not to address the Lawton transfer on the merits but to direct that the new judge examine de novo any challenged rulings by Judge Alley. See Harris v. Champion, 15 F.3d 1538, 1571-1572 (10th Cir. 1994) (discussing vacatur remedy following disqualification); In re School Asbestos Litigation, 977 F.2d 764, 784-788 (3d Cir. 1992) (same).

D. Judge Alley and the other judges may not preside over this case consistent with the Due Process Clause of the fifth amendment to the Constitition

Finally, continued participation by Judge Alley or other Western District judges in this case will violate the Due Process Clause as well as the recusal statutes. The precise relationship between the Due Process Clause and the federal recusal statutes is unsettled,[17] and as a general matter a court should decide cases under the recusal statutes where they apply before reaching the constitutional issue. See e.g. United States v. Alabama, 828 F.2d 1532, 1540 n.22 (11th Cir. 1987), cert. denied, 487 U.S. 1210 (1988). Nevertheless, because it is clear that the Due Process Clause proscribes a judge from sitting in the present circumstances -- in which the judge has been directly and adversely affected by the crime of violence on trial -- we briefly delineate the applicability of the Supreme Court's Due Process jurisprudence to the instant case.

Like the recusal statutes, the Due Process Clause forbids both partiality in fact and the appearance of partiality by a judge:

---

[17] See Note, "The Illegitimacy of the Extrajudicial Source Requirement for Judicial Disqualification Under 28 U.S.C. §455(a)," 15 Cardozo L. Rev. 787, 792 n.33 (1993).

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. . . . This Court has said, however, that 'Every procedure which would offer a possible temptation to the average man as a judge . . . not to hold the balance nice, clear, and true between the State and the accused denies the latter due process of law.' . . . Such a stringent rule may sometimes bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way 'justice must satisfy the appearance of justice.' In re Murchison, 349 U.S. 133, 136 (1955) (quoting Tumey v. State of Ohio, 273 U.S. 510, 532 (1927) and Offutt v. United States, 348 U.S. 11, 14 (1954)).

See also Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 825 (1986) (appearance of partiality sufficient to trigger due process clause); Taylor v. Hayes, 418 U.S. 488, 501 (1974) (same).

The Supreme Court has suggested in dicta that only in "the most extreme of cases would disqualification [for the appearance of bias] be constitutionally required" by the Due Process Clause. Lavoie, 475 U.S. at 821. There is one "extreme case," however, in which the Court has consistently held that the appearance of bias is sufficient to require disqualification. This exceptional circumstance, as here, involves a situation in which the judge has allegedly been victimized by the same defendant over whose case she is presiding: cases of criminal contempt in which the contempt citation is based on personal attacks on the judge. As one commentator explains, in such cases "the roles of victim, prosecutor, and judge are dangerously commingled." Dudley, "Getting Beyond the Civil/Criminal Distinction: A New Approach to the Regulation of Indirect Contempts," 79 Va. L. Rev. 1025, 1028 (1993) (note omitted). See also In re Murchison, supra (judge in criminal contempt proceeding improperly assumed role of victim, prosecutor and judge).

In particular, the Supreme Court has held that in cases where a trial judge has been "reviled by the contemnor" with "insults . . . apt to strike 'at the most vulnerable and human qualities of a judge's temperament,'" the Due Process Clause forbids the judge to preside at the contempt hearing based on those insults. Mayberry v. Pennsylvania, 400 U.S. 455, 466 (1971) (quoting Bloom v. Illinois, 391 U.S. 194, 202 (1968)).[18]

There are, of course, distinctions to be made between the typical "personal attack" contempt hearing and the case presented here (e.g., that the judge is the unique intended target of the "personal attacks" while here there were many victims; that in typical contempt situations the judge will have personally witnessed the defendant commit the attack whereas in this case the judges did not, etc.). These distinctions are unimportant, however, in light of the fundamental principle represented by Mayberry -- that a judge may not, consistent with the Due Process Clause, sit in judgment over a defendant charged with a crime that caused the judge herself direct injury.[19] Nor can this principle be confined to the contempt situation -- indeed, if anything, the principle has more force outside the contempt context since due process protections are traditionally relaxed in that context. Dudley, supra, 79 Va. L. Rev. at 1068-9.

---

[18] The other due process exception to the general rule permitting judges to preside at contempt proceedings they have initiated occurs where the judge has become "embroiled in a running controversy" with the contemnor. Taylor, 418 U.S. at 501. That exception does not apply here.

[19] Of course, a defendant cannot deliberately attack a judge in the expectation that this will result in recusal. Mayberry, 400 U.S. at 463 ("A judge cannot be driven out of a case"); see also Greenspan, 26 F.3d at 1006-7 (discussing same principle under recusal statutes); see e.g. Wilks v. Israel, 627 F.2d 32, 37 (7th Cir. 1980), cert. denied, 449 U.S. 1086 (1981) (assault on judge following multiple attempts to have judge recused; "petitioner's deliberate attack on the trial judge calculated to disrupt the proceedings will not force a judge out of a case"). This doctrine has no applicability to the instant case, where the "attack" on the judge occured prior to any judicial proceedings and is not intended to achieve recusal.

If verbal attacks on a judge by a defendant may rise to a level that reasonably calls her impartiality into question for purposes of the Due Process Clause, then physical violence, arson and destruction wrought on a judge's chambers, courtroom and staff must raise the same constitutional doubts. Far more than verbal insults, physical destruction and injury to a judge's personal staff "strike 'at the most vulnerable and human qualities of a judge's temperament.'" Mayberry, 400 U.S. at 466. Accordingly, since Mr. Nichols is charged with causing just such physical destruction and injury to the Federal Courthouse, it would violate the Due Process Clause for Judge Alley or any other judge of the Western District to preside over his criminal case.

## CONCLUSION

For the foregoing reasons, petitioner-defendant Terry Lynn Nichols requests that this Court issue a writ of mandamus disqualifying all judges of the Western District of Oklahoma from further participation in these proceedings and ordering reassignment of this case to another judge. In the alternative, petitioner-defendant requests the issuance of a writ of mandamus ordering Judge Alley to permit discovery and hold an evidentiary hearing regarding the factual bases for disqualification issues raised in petitioner-defendant's motion for recusal.

Respectfully submitted,

Michael E. Tigar
P.O. Box 160037
Austin, Texas 78716-0037
(512) 461-4678
Fax (800) 416-4620

Ronald G. Woods
5300 Memorial, Suite 1000
Houston, Texas 77007
(713) 862-9600
Fax (713) 864-8738

D. Kate Rubin
Mid-America Tower
20 N. Broadway, Suite 1620
Oklahoma City, OK 73102
(405) 236-4741
Fax (405) 236-4743

Of counsel: Adam Thurschwell

Counsel for Petitioner-Defendant
Terry Lynn Nichols
(Appointed by the Court)

## CERTIFICATE OF SERVICE

I hereby certify that one copy of the foregoing **PETITION FOR WRIT OF MANDAMUS OF PETITIONER-DEFENDANT TERRY LYNN NICHOLS AND BRIEF IN SUPPORT** was served this 27th day of September, 1995, on:

The Honorable Wayne E. Alley
United States District Judge
for the Western District of Oklahoma
Federal Courthouse, Room 3102
Oklahoma City, Oklahoma 73102

Patrick M. Ryan
United States Attorney
for the Western District of Oklahoma
210 W. Park, Suite 400
Oklahoma City, Oklahoma 73102

United States District Court
for the Western District of Oklahoma
Federal Courthouse Building
Oklahoma City, Oklahoma 73102

by hand delivery.

Courtesy copies of this petition were also mailed to:

Timothy McVeigh
c/o Stephen Jones, Esq.
Richard Burr, Esq.
114 East Broadway, Suite 1100
Post Office Box 472
Enid, Oklahoma 73702-0472
(405) 242-5500

[signature]

Construe as
motion for
finding of
eligibility for
appt of Counsel.
per pb.

MICHAEL E. TIGAR
RONALD G. WOODS
D. KATE RUBIN
ATTORNEYS-AT-LAW

Mid-America Tower • Suite 1620
20 North Broadway
Oklahoma City, Oklahoma 73102
(405) 236-4741 (voice)
(405) 236-4743 (fax)

FILED
United States Court of Appeals
Tenth Circuit

SEP 27 1995

PATRICK FISHER
Clerk

September 27, 1995

Mr. Patrick Fisher
Court Clerk
United States Court of Appeals
for the Tenth Circuit
Office of the Court Clerk
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257

RECEIVED
United States Court of Appeals
Tenth Circuit

SEP 27 1995

PATRICK FISHER
Clerk

95-728

Dear Mr. Fisher:

Terry Lynn Nichols, by counsel, is filing a Petition for Writ of Mandamus in the United State Court of Appeals for the Tenth Circuit on the 27th day of September, 1995. Mr. Nichols has previously been determined to be indigent and eligible for services other than counsel under the provisions of the Criminal Justice Act, 18 U.S.C § 3006A and 21 U.S.C. § 848. Further, Mr. Nichols has been granted in forma Pauperis status by this court prior to filing his Memorandum Brief on Bail Appeal (case no. 95-6223) on June 23rd, 1995. Therefore, counsel for Mr. Nichols request that the fee to file this petition with the court be waived.

Yours very truly

Michael E. Tigar
Ronald G. Woods
D. Kate Rubin

Counsel for Terry Lynn Nichols
(Appointed by the court)