**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| **CHRISTOPHER S.P. GREGORY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 25-3361-KHV** |
| | ) | |
| **THE COLORADO JUDICIAL DISCIPLINE** | ) | |
| **RULEMAKING COMMITTEE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**<u>MEMORANDUM AND ORDER</u>**

Christopher S.P. Gregory, a former executive director of the Colorado Commission on Judicial Discipline ("CCJD"), brings suit against the CCJD, the Colorado Judicial Discipline Rulemaking Committee ("CJDRC"), the Colorado Supreme Court and dozens of individuals, including Colorado Governor Jared Polis and State Attorney General ("AG") Philip Weiser in their official and individual capacities. <u>Verified Complaint And Jury Demand With Exhibits 1–3</u> (Doc. #1) filed October 23, 2025. Plaintiff seeks reinstatement as executive director, removal of members and appointees to the CCJD, damages and injunctive relief for federal civil rights violations and violations of state law. This matter comes before the Court on defendants' <u>Motion To Dismiss</u> (Doc. #59) filed March 18, 2026. For reasons stated below, the Court sustains defendants' motion and dismisses the complaint.

**<u>Factual Background</u>**

Highly summarized, plaintiff's <u>Verified Complaint</u> (Doc. #1) alleges as follows:

In July of 2018, the Controller of the State Court Administrator's Office ("SCAO") reported evidence of fraud and embezzlement by Mindy Masias, SCAO Chief of Staff. <u>Id.</u>, ¶ 53. Following internal and external investigations, the Justices of the Colorado Supreme Court

terminated Masias' employment.  Id., ¶ 54.  Instead of accepting her termination, Masias activated

leave under the Family Medical Leave Act ("FMLA").  Id.  In December 2018, Eric Brown, the

Human Resources Director of SCAO, began negotiating a multi-million-dollar contract for Masias

to provide leadership training services to the Judicial Department.  Id., ¶ 55.  Brown informed

then-Chief Justice Nathan Coats, Counsel to the Chief Justice Andrew Rottman and State Court

Administrator Christopher Ryan that Masias would release compromising information about the

Judicial Department and the Justices if they did not reach an agreement with her.  Id.

On March 15, 2019, Masias executed a separation agreement with SCAO.  The agreement

allowed her to keep her income from paid leave in exchange for a general release of claims and a

non-disclosure agreement ("NDA").  Masias executed the agreement with the expectation that she

would receive a five-year, $2.6 million contract to provide leadership training services.  Id., ¶ 56.

On April 11, 2019, with the approval of Chief Justice Coats, Ryan circulated the agreement for

signing.  Id., ¶ 59.

On April 15, 2019, the Fraud Hotline of the Office of the State Auditor ("OSA") received

an anonymous complaint alleging widespread fraud within the SCAO, including additional

financial misconduct by Masias.  Id., ¶ 60.  Each of the Colorado Supreme Court Justices,

Governor Polis and AG Weiser received the anonymous fraud hotline complaint.  Id.  When the

State Auditor asked how the Judicial Department wished to proceed given the fraud hotline

complaint, Chief Justice Coats responded that he had looked into the allegations in consultation

with the AG and his staff.  He did not inform the State Auditor that the SCAO had approved a

$2.6 million contract for Masias to provide leadership services to the courts.  Id., ¶ 61.

In July of 2019, the public learned of the Masias contract.  The Justices of the Colorado

Supreme Court accepted Ryan's resignation.  Id., ¶ 62.  The Justices released an official statement

which confirmed that they had jointly decided to cancel the contract with Masias.  Id.  In late 2020 or early 2021, the OSA released a management letter dated December of 2019 and an SCAO performance audit report dated November 18, 2020 which recognized the breakdown of SCAO internal controls and the appearance of impropriety which the contract with Masias created.  Id., ¶ 63.

On February 4 and 8, 2021, as part of a damage control effort, the Justices released public statements.  Id., ¶ 64.  The public statements confirmed that Chief Justice Coats had fully informed the Justices and other attorneys named in the Verified Complaint (Doc. #1) that they were complicit in knowingly concealing material information from the OSA during audits and its fraud hotline investigation.  Id.  Justice Rottman, Justice Morrison, AG Weiser and Aubrey Sullivan, Director of the Colorado Civil Rights Division ("CCRD"), interfered with, obstructed and delayed OSA's fraud hotline investigation.  Id., ¶ 65.  The OSA finally issued its report on February 4, 2022, with referrals for prosecution.  Id.

From May 15, 2017 until June 30, 2021, plaintiff served as an appointed member of the CCJD, the state body that investigates Requests for Evaluation ("RFEs") of judicial misconduct.  Id., ¶ 12.  From January 3, 2022 until January 19, 2024, plaintiff was the Executive Director of the CCJD.  On January 20, 2024, the CCJD wrongfully terminated plaintiff as Executive Director in retaliation for his duty-bound efforts to stop false claims for payment and other substantial judicial and attorney misconduct.  Id.[1]  At various times, plaintiff reported these circumstances to federal law enforcement and to the CCJD, but they deliberately ignored him.  More recently, the Colorado Commission on Judicial Performance, the CCRD, the CJDRC, the Colorado Supreme Court, the

---

[1]    Plaintiff alleges that members and staff of the CCJD and several other individuals, including Justices of the Colorado Supreme Court, were complicit in his termination.

Colorado Judicial Discipline Adjudicative Board ("CJDAB") and the CCJD intentionally ignored and/or suppressed plaintiff's submission of renewed complaints, public comments and two RFEs of judicial misconduct.  Id., ¶ 66.[2]  Defendants have repeatedly retaliated against plaintiff for his duty-bound pursuit of discipline against the Justices and for having reported misconduct within the CCJD.  Id.

To stack the various judicial discipline oversight entities, including the CJDRC, Governor Polis, AG Weiser, the Justices of the Colorado Supreme Court, members of the CJDAB and members/staff of the CCJD have obstructed Colorado's judicial disciplinary structure through the methodical, coordinated and overt abuse of appointment powers.  Id., ¶ 68.

On October 20, 2024, several months after the CCJD terminated plaintiff's employment, he submitted an anonymous complaint to the OSA fraud hotline and an anonymous detailed RFE to the CCJD.  Id., ¶ 69.  The CCJD did not disqualify itself, as plaintiff had requested.  Instead, it summarily dismissed the RFE without any publicly expressed explanation.  Id.  More recently, plaintiff provided public comments to the CJDRC as part of its rulemaking process.  Id., ¶ 71. Plaintiff filed his public comments on proposed rule changes with an additional non-anonymous RFE.  Id.  On October 3, 2025, plaintiff delivered scripted oral comments at a CJDRC public hearing.  Id.  Plaintiff put defendants on notice that their attempts to impose prior restraints upon the rulemaking process and their refusal to accept or publish his public comments in the record

---

[2]    The Verified Complaint (Doc. #1) is replete with vague references, such as "at various times" and "more recently."  More often than not, plaintiff refers to "defendants" without specifying which of the 40 defendants to which he refers.  Plaintiff attaches to his complaint over 3,700 pages of exhibits and cites the exhibits throughout the complaint without explanation.  The Court has no obligation to review and interpret plaintiff's lengthy exhibits and declines to do so here.  See Cohen v. Delong, 369 F. App'x 953, 957 (10th Cir. 2010) ("Rule 8 demands more than naked assertions and unexplained citations to voluminous exhibits.").

violated his federal constitutional rights to freedom of expression, petition for redress of grievances, due process and equal protection. Id., ¶ 72.

Defendants have refused plaintiff's repeated requests to disqualify themselves and to allow various judicial selection, retention and disciplinary processes to occur in a transparent and conflict-free manner. Id., ¶ 73. Defendants have also persisted in their refusal to publish plaintiff's comments and RFE to the CJDRC's public record. Id. Defendants have obstructed plaintiff's fundamental right to be heard on misconduct within the CCJD and have been complicit in the retaliatory termination of his employment. Id., ¶ 74.

The CCRD summarily dismissed plaintiff's discrimination complaint on jurisdictional grounds. Plaintiff filed an administrative appeal with the Colorado Civil Rights Commission. Id., ¶¶ 5, 75. Director Sullivan summarily denied the appeal. Id. Defendants have continued to censor plaintiff's compelled speech—the mandatory reporting of judicial, attorney and official misconduct, including reasonably suspected false claims for payment and other crimes—to facilitate retaliation against plaintiff and to obstruct his access to administrative and judicial remedies. Id., ¶ 76. Defendants are protecting the Colorado Supreme Court Justices from accountability for probable criminal conduct and substantial violations of the Colorado Code of Judicial Conduct. Id.

Plaintiff asserts three federal claims against 36 individual defendants. Specifically, he alleges that they interfered with the legislative, administrative and judicial discipline processes in violation of 42 U.S.C. § 1983 (Count 1); conspired to interfere with his civil rights in violation of 42 U.S.C. § 1985(2)–(3) (Count 2); and neglected to prevent the conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1986 (Count 3). Under Colorado law, plaintiff asserts that defendants retaliated against him in violation of the Colorado False Claims Act ("FCA"), Colo.

-5-

Rev. Stat. § 24-31-1204(8) (Count 4) and seeks equitable reimbursement of attorney fees which

the State of Colorado paid for individual defendants (Count 7).[3]  As remedies for the foregoing,

plaintiff seeks reinstatement as Executive Director of the CCJD, compensatory and punitive

damages, equitable relief and writs of mandamus.[4]

### Legal Standard

Dismissal pursuant to Rule 12(b)(1) is appropriate when the Court lacks subject matter

jurisdiction over a claim for relief.  The party asserting jurisdiction has the burden of establishing

subject matter jurisdiction.  Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1189 (10th

Cir. 2008).  Generally, a Rule 12(b)(1) motion to dismiss takes one of two forms: a facial attack

or a factual attack.  Rural Water Dist. No. 2 v. City of Glenpool, 698 F.3d 1270, 1272 n.1 (10th

Cir. 2012).  When reviewing a facial attack on a complaint pursuant to Rule 12(b)(1), as here, the

Court accepts the allegations of the complaint as true.  Id.

In ruling on defendants' motion to dismiss for failure to state a claim under Rule 12(b)(6),

the Court assumes as true all well pleaded factual allegations and determines whether they

plausibly give rise to an entitlement of relief.  Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).  To

survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim

which is plausible and not merely conceivable on its face.  Id. at 679–80; Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007).  To determine whether a complaint states a plausible claim

for relief, the Court draws on its judicial experience and common sense.  Iqbal, 556 U.S. at 679.

---

[3]    Counts 5 and 6, entitled "Writs Of Mandamus And Prohibition" and "Equitable Relief For Statutory And Constitutional Violations," respectively, are actually requests for relief and are not independent claims.

[4]    Except as alleged in Count 4, plaintiff does not advance a stand-alone claim for wrongful termination of employment under Colorado law.

The Court need not accept as true those allegations which state only legal conclusions.  See id. at 678; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).  Plaintiff bears the burden to frame his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough for him to make threadbare recitals of a cause of action accompanied by mere conclusory statements.  Twombly, 550 U.S. at 556.  Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.  This requires plaintiff to show more than a sheer possibility that a defendant has acted unlawfully; it is not enough to plead facts that are "merely consistent" with liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged—but not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Rule 8(a)(2) depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

When defendants seek dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the Court must first decide the motion under Rule 12(b)(1) for the latter challenge would be moot if the Court lacks subject matter jurisdiction.  Mounkes v. Conklin, 922 F. Supp. 1501, 1506 (D. Kan. 1996).

<u>Analysis</u>

I.    **Sovereign Immunity**

The Colorado Supreme Court, CCJD and CJDRC argue that the Court lacks subject matter

jurisdiction over all claims against them because they are entitled to sovereign immunity under the Eleventh Amendment. Sovereign immunity bars suits against states and their agencies for monetary and injunctive relief, see Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1998), and a valid claim of sovereign immunity strips the district court of subject matter jurisdiction, Harrell v. United States, 443 F.3d 1231, 1234 (10th Cir. 2006); Harris v. Owens, 264 F.3d 1282, 1288 (10th Cir. 2001). Federal courts cannot exercise either diversity or federal question jurisdiction over a state when Eleventh Amendment sovereign immunity is asserted. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996).

The Colorado Supreme Court, CCJD and CJDRC are arms of the State of Colorado. See Colo. Const. art. VI, §§ 1, 23(3)(a), 23(3)(k)(I). They are therefore entitled to sovereign immunity. See Collins v. Daniels, 916 F.3d 1302, 1316 (10th Cir. 2019) (state courts considered arms of state entitled to sovereign immunity); Ysais v. N.M. Jud. Std. Comm'n, 616 F. Supp. 2d 1176, 1191 (D.N.M. 2009), aff'd sub nom. Ysais v. New Mexico, 373 F. App'x 863 (10th Cir. 2010) (constitutionally created state entity charged with overseeing discipline or removal of state judges entitled to sovereign immunity).

Plaintiff concedes that the Eleventh Amendment bars claims for damages against these defendants but argues that he seeks only prospective injunctive relief, which he incorrectly contends is permissible under Ex Parte Young, 209 U.S. 123, 159–60 (1908). Sovereign immunity applies to claims for both monetary and equitable relief. See Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (absent waiver, "State cannot be sued directly in its own name regardless of the relief sought"); see also Alabama v. Pugh, 438 U.S. 781, 782 (1978) (per curiam) (absent consent, Eleventh Amendment bars suit for injunction against State and its agency). It is well established that Congress did not abrogate the states' sovereign immunity when it enacted Section 1983.

-8-

Quern v. Jordan, 440 U.S. 332, 345 (1979). Plaintiff does not dispute that the Colorado Supreme Court, CCJD and CJDRC have not consented to suit. The Court therefore lacks subject matter jurisdiction over plaintiff's claims against those defendants. Accordingly, the Court sustains defendants' motion to dismiss on this ground and dismisses all claims against the Colorado Supreme Court, CCJD and CJDRC.

## II.    Standing

All defendants argue that plaintiff lacks standing to maintain claims based on generalized grievances about the conduct of government. Speaking generally, the Court agrees. See Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 482–83 (1982) (Supreme Court repeatedly has rejected claims of standing predicated on citizen's right to require that government be administered according to law). Unfortunately, defendants do not specify which claims should be dismissed for lack of standing on this theory. Plaintiff clearly has standing to bring his retaliatory termination claims. Defendants do not address what specific allegations in the complaint might succumb to their standing argument. Therefore, the Court overrules defendants' motion to dismiss the complaint based on lack of standing.

## III.    Absolute Immunity From Damages

Aubrey Sullivan, Director of the Colorado Civil Rights Division ("CCRD"), and the members and staff of the CCJD argue that they have absolute immunity from damages claims for conduct within their judicial or quasi-judicial capacities. Plaintiff counters that absolute immunity does not shield retaliatory or obstructive conduct.

Absolute immunity bars suits for money damages for acts made in the exercise of prosecutorial or judicial discretion. See Guttman v. Khalsa, 446 F.3d 1027, 1033 (10th Cir. 2006), abrogated on other grounds by, T.M. v. Univ. of Md. Med. Sys. Corp., 608 U.S. ----, 146 S. Ct.

1739, 1746 n.2 (2026).  Where executive officials serve in quasi-judicial roles, they are entitled to the absolute immunity afforded to judges, prosecutors and jurors.  Horwitz v. State Bd. of Med. Exam'rs of Colo., 822 F.2d 1508, 1514 (10th Cir. 1987) (citing Butz v. Economou, 438 U.S. 478, 513  (1978)).  This rule extends to state administrative and executive officials who serve in "adjudicative, judicial, or prosecutorial capacities."  Id. at 1515.  Absolute immunity covers individual members who serve on quasi-judicial bodies that receive, consider and adjudicate disciplinary complaints against attorneys and judges.  See, e.g., Simes v. Ark. Jud. Discipline & Disability Comm'n, 734 F.3d 830, 834 (8th Cir. 2013) (executive director of Arkansas Judicial Discipline and Disability Commission entitled to absolute prosecutorial immunity for role in choosing which complaints to pursue); McKeown v. N.Y. State Comm'n on Jud. Conduct, 377 F. App'x 121, 124 (2nd Cir. 2010) (persons involved in preparing and adjudicating attorney discipline proceedings protected by doctrine of quasi-judicial immunity); Kwasnik v. LeBlon, 228 F. App'x 238, 244 (3d Cir. 2007) (members of New Jersey Supreme Court Advisory Committee on Judicial Conduct enjoy quasi-judicial immunity from suit and when their actions are prosecutorial in nature, members are protected by prosecutorial immunity).

Once absolute immunity attaches, it is broad, and subject to only two exceptions: immunity does not apply to non-judicial actions or to judicial actions taken in the complete absence of jurisdiction.  Roemer v. Crow, 993 F. Supp. 834, 836 (D. Kan. 1998); see also Guttman, 446 F.3d at 1033–34 ("Only accusations that a judge was not acting in his judicial capacity or that he acted in the complete absence of all jurisdiction can overcome absolute immunity.").

A Colorado statute requires the CCRD Director to investigate charges of discrimination, make a finding of probable cause and report to the commission when conciliation efforts fail.  See Wilhelm v. Cont'l Title Co., 720 F.2d 1173, 1178 (10th Cir. 1983).  The position of CCRD Director

in the state administrative process is similar to that of a judge, hearing officer or prosecutor.  Id.

Therefore, she is entitled to absolute immunity.  Id.; see also Masterpiece Cakeshop Inc. v. Elenis,

445 F. Supp. 3d 1226, 1249 (D. Colo. 2019) (CCRD Director entitled to absolute immunity).  The

Court finds that Director Sullivan has absolute immunity from damages claims based on her

decision to deny plaintiff's administrative appeal of the decision by the Colorado Civil Rights

Commission to dismiss his discrimination and unfair employment practices complaint.

As explained above, the CCJD is entitled to sovereign immunity.  The members and staff

of the CCJD—Mary Sooter, Ingrid Barrier, Jill Brady, Gina Cannan, James Carpenter, Robert

Gardner, Sara Garrido, Alison Kyles, Anne Mangiardi, Bonnie McLean, Reed Owens, Meredith

Patrick Cord, Courtney Sutton, Emily Tofte Nestaval, Stephanie Trujillo, Maryann Vielma and

Jeffrey Walsh[5] ("the CCJD individual defendants")—are also entitled to absolute immunity from

damages because their work for the CCJD is quasi-judicial.[6]  Under authority granted by the

Colorado Constitution, the CCJD investigates RFEs of judicial misconduct as it deems necessary

and either dismisses the RFEs, orders informal discipline or sets formal hearings before the

adjudicative board to seek the removal, retirement, suspension, censure, reprimand or other

discipline of justices or judges.[7]

---

[5]      Plaintiff does not name Walsh as a defendant in any of his claims.  For this independent reason, the Court dismisses Walsh from this suit.

[6]      Defendants do not assert absolute immunity as to plaintiff's claims of retaliatory termination, which the Court addresses below.

[7]      Colo. Const. art. VI, § 23(e)(I).  A justice or judge may appeal the commission's order of informal discipline to a panel of the adjudicative board.  Id.  After a formal hearing, the justice or judge may appeal an adjudicative panel's disciplinary order, and the commission may appeal an adjudicative panel's dismissal or disciplinary order to the Colorado Supreme Court.  Id., § 23(e)(II).  In certain situations, a special tribunal of judges of the court of appeals and district court review the decision of the adjudicative panel.  Id., § 23(f)(II).

Plaintiff alleges that the CCJD individual defendants are not entitled to immunity for the wrongful termination of his employment or their summary dismissals of his RFEs of judicial misconduct.  Plaintiff is correct that employment actions are not judicial acts and are therefore not covered by absolute immunity.  See Forrester v. White, 484 U.S. 219, 229 (1988) (judge not entitled to absolute immunity for decision to demote and dismiss probation officer); Mee v. Ortega, 967 F.2d 423, 425 (10th Cir. 1992) (only qualified immunity protects judge's decision to fire probation officer).  Plaintiff does not allege specific facts, however, which suggest that when the CCJD individual defendants dismissed his RFEs of judicial misconduct, they acted in the "clear absence of all jurisdiction."  Stump v. Sparkman, 435 U.S. 349, 357 (1978); Guttman, 446 F.3d at 1033.

The Court finds that Director Sullivan and each of the CCJD individual defendants are absolutely immune from damages claims in Counts 1 through 3 for conduct within their judicial or quasi-judicial capacities.  The Court addresses plaintiff's claims of retaliatory termination below.

## IV.    Qualified Immunity

All defendants whom plaintiff sues individually argue that they are entitled to qualified immunity.[8]  Government officials sued in their individual capacities are entitled to qualified

---

[8]    Plaintiff sues the following defendants individually: Mary Sooter, Philip Weiser, Jared Polis, Maria Berkenkotter, Brian Boatright, Richard Gabriel, Melissa Hart, William Hood, III, Monica Marquez, Carlos Samour, Ingrid Barrier, David Beller Jill Brady, Gina Cannan, James Carpenter, Nancy Cohen, Robert Gardner, Sara Garrido, Kirsten Grooms, James Hartmann, Amanda Hollander, Alison Kyles, Bryon Large, Anne Mangiardi, Bonnie McLean, Colleen McManamon, Kristen Mix, Reed Owens, Meredith Patrick Cord, Aubrey C. Sullivan, Courtney Sutton, Jeff Swanty, Emily Tofte Nestaval, Stephanie Trujillo, MaryAnn "Mariana" Vielma and Vincente Vigil.

immunity from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Wilson v. Stoltenberg, --- F.4th ----, No. 25-3139, 2026 WL 2066343, at *3 (10th Cir. July 17, 2026).  In resolving a motion to dismiss based on qualified immunity, the Court must consider whether the facts that plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct.  Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011).  The Court has discretion to decide which of the two prongs of the qualified immunity analysis to address first.  Pearson, 555 U.S. at 236.

Whether a right is "clearly established" is an objective test: the relevant, dispositive inquiry is "whether it would be clear to a reasonable [individual] that his conduct was unlawful in the situation he confronted."  Brown, 662 F.3d at 1164 (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010)).  For the law to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."  Id.

Plaintiff has the burden of showing both that defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation.  Williams v. Berney, 519 F.3d 1216, 1219–20 (10th Cir. 2008).  He "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it;" he "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity."  Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 517 (10th Cir. 1998)).

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably.  Pearson, 555 U.S. at 232.  Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial."  Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  The driving force behind the qualified immunity doctrine is a desire to ensure that "insubstantial claims against government officials will be resolved prior to discovery."  Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)).  Accordingly, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

A.  Violation Of Constitutional Right

As an initial matter, defendants argue that plaintiff fails to allege how any defendant's conduct is traceable to a violation of his rights.  Few of the paragraphs in the complaint actually describe what any specific defendant allegedly did.  Plaintiff argues that the complaint identifies each defendant's role in the judicial oversight structure and explains how each defendant used that role to suppress evidence and retaliate against plaintiff.

To survive a Rule 12(b)(6) motion, "the complaint must plead factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Morphew v. Chaffee County, 172 F.4th 802, 813 (10th Cir. 2026).  In a Section 1983 action against multiple individual defendants, it is particularly important that the complaint make clear exactly who is alleged to have done what to whom.  Wilson v. Montano, 715 F.3d 847, 852 (10th Cir. 2013).  Plaintiff must specify how each defendant participated in the alleged constitutional

-14-

violation because Section 1983 liability is predicated on a violation traceable to a defendant-official's "own individual actions." Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013) (quoting Iqbal, 556 U.S. at 676). When analyzing plausibility, the Court reads plaintiff's allegations "in the context of the entire complaint[.]" Ullery v. Bradley, 949 F.3d 1282, 1288 (10th Cir. 2020).

As explained below, plaintiff fails to state a claim on which relief can be granted for his civil rights claims. With very few exceptions, plaintiff lumps the 36 individual defendants into collective action throughout the complaint, but the Court need not rely on this basis to dismiss his claims.

### 1. First Amendment Violation – Retaliatory Termination

In Count 1, plaintiff alleges that in violation of the First Amendment, defendants terminated his employment as Executive Director of the CCJD because he reported judicial misconduct. Verified Complaint (Doc. #1), ¶ 12 (defendants wrongfully terminated plaintiff in retaliation for his "duty-bound efforts to stop claims and other substantial judicial and attorney misconduct"); see also id., ¶ 3 (Justices' scheme to suppress evidence of substantial criminal and ethical misconduct included retaliation against whistleblowers and regulators such as plaintiff). Defendants argue that the complaint includes no allegations regarding the termination of plaintiff's employment or suggesting that his termination was in retaliation for protected speech.

To evaluate whether a public employee plaintiff has established a prima facie case of First Amendment retaliation, the Court applies a test derived from Supreme Court decisions in Garcetti v. Ceballos, 547 U.S. 410 (2006), and Pickering v. Bd. of Educ., 391 U.S. 563 (1968). For a public employee to state a prima facie case, he must establish five elements: (1) the protected speech was not made pursuant to his official duties; (2) the protected speech addressed a matter of public

concern; (3) the government's interests as an employer did not outweigh the employee's free-speech interests; (4) the protected speech was a motivating factor in the adverse employment action; and (5) absent the protected speech, defendant would not have made the same employment decision. Timmins v. Plotkin, 157 F.4th 1275, 1277 (10th Cir. 2025); see Pryor v. Sch. Dist. No. 1, 99 F.4th 1243, 1250 (10th Cir. 2024). If plaintiff made his speech pursuant to his official duties, the First Amendment does not protect it, and plaintiff fails to state a claim. Garcetti, 547 U.S. at 420–21.

In determining whether speech was pursuant to an employee's official duties, "[t]he critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of the employee's duties, not whether it merely concerns those duties." Timmins, 157 F.4th at 1277–78 (quoting Lane v. Franks, 573 U.S. 228, 240 (2014)). "Merely because an employee's speech was made *at* work and *about* work does not necessarily remove that employee's speech from the ambit of constitutional protection." Thomas v. City of Blanchard, 548 F.3d 1317, 1323 (10th Cir. 2008) (emphasis in original). The Court takes a "practical view of all the facts and circumstances surrounding the speech and the employment relationship." Timmins, 157 F.4th at 1280 (quoting Knopf v. Williams, 884 F.3d 939, 946 (10th Cir. 2018)).

The complaint does not allege with specificity what speech by plaintiff resulted in his termination. It does not allege its content, when it occurred or whether it fell outside his official duties. It merely alleges that plaintiff was "duty-bound" to stop false claims and judicial and attorney misconduct. Verified Complaint (Doc. #1), ¶ 12. His former employer, the CCJD, is a commission which investigates judicial misconduct and enforces the Code of Judicial Conduct. Based on the sparse allegations in the complaint, plaintiff has not plausibly shown that his speech was outside his official duties. Garcetti, 547 U.S. at 420–21; Timmins, 157 F.4th at 1277. Also,

plaintiff has not alleged that his free speech rights outweighed the interests of the CCJD or that absent his protected speech, defendants would not have made the same employment decision. Timmins, 157 F.4th at 1277.  The Court therefore finds that plaintiff has not stated a claim on which relief can be granted for retaliatory termination in violation of the First Amendment.

### 2. First Amendment Violation – Impeding Right To Petition And Chilling Effect

Plaintiff alleges that because the CJDRC refused to accept and publish his public comments to the record, defendants violated his First Amendment right to petition and imposed a prior restraint on his participation in the CJDRC rulemaking process.  As best the Court can ascertain, plaintiff also alleges that defendants have attempted to silence him or chill his speech through a coordinated refusal to consider his allegations of official misconduct or to grant disqualification.  Defendants argue that nothing in the complaint establishes that defendants precluded plaintiff from filing his papers.

The right to petition allows citizens to express their ideas, hopes and concerns to their government and elected representatives.  See Borough of Duryea v. Guarnieri, 564 U.S. 379, 388 (2011); Santa Fe All. for Pub. Health & Safety v. City of Santa Fe, N.M., 993 F.3d 802, 819 (10th Cir. 2021).  To further this goal, the right to petition extends to all departments of the government. See Cal. Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972).  The First Amendment does not speak in terms of *successful* petitioning—it speaks simply of the right of the people to petition the government for redress of grievances.  BE & K Const. Co. v. NLRB, 536 U.S. 516, 532 (2002); Santa Fe All., 993 F.3d at 819 (case law uniformly rejects contention that First Amendment guarantees any success when petitioning).  To prevail on his claim that defendants' actions chilled his speech, plaintiff must prove that defendants' actions effectively chilled the exercise of his First Amendment right to petition the government.  See Nat'l

Commodity & Barter Ass'n v. Archer, 31 F.3d 1521, 1531 n.4 (10th Cir. 1994); Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998).

By his own admission, plaintiff has freely expressed his opinions to the CJDRC, orally and in writing.  Plaintiff does not allege that defendants prevented him from submitting comments to the CJDRC or other government entities, including the CCJD.   In fact, the complaint reflects that even after his termination, plaintiff "repeated[ly]" shared his opinions and sought redress.  See, e.g., Verified Complaint (Doc. #1), ¶¶ 66, 69, 73, 74, 76, 87, 91.  Plaintiff's true grievance is that defendants have not *complied* with his requests.  See, e.g., id., ¶ 76 ("[D]espite repeated requests to do so, all the individual Defendants have refused to disqualify themselves."); id., ¶¶ 66, 73, 87, 91.  As noted earlier, the First Amendment does not guarantee plaintiff success when petitioning. Santa Fe All., 993 F.3d at 819.  The vague allegations in the complaint are insufficient to state a First Amendment claim based on a prior restraint or a chilling effect.

### 3.  Equal Protection

Count 1 alleges that the individual defendants interfered with plaintiff's fundamental right to equal protection under the law.  Defendants argue that the complaint fails to state an equal protection claim under Section 1983.

The Fourteenth Amendment prohibits a state from denying "any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  To state a claim for violation of the Equal Protection Clause of the Fourteenth Amendment, plaintiff must show that defendant acted with the intent or purpose to discriminate against him because of his membership in a particular group.  SECSYS, LLC v. Vigil, 666 F.3d 678, 685–86 (10th Cir. 2012).  The Equal Protection Clause is triggered when the government intentionally treats someone differently than another who is similarly situated.  Buckley Constr., Inc. v. Shawnee Civic & Cultural Dev. Auth.,

-18-

933 F.2d 853, 859 (10th Cir. 1991); see Grace United Methodist Church v. City of Cheyenne, 451 F.3d 643, 659 (10th Cir. 2006) (equal protection is direction that all persons similarly situated be treated alike).

The complaint contains no factual allegations to support plaintiff's conclusory statement that defendants interfered with his right to equal protection under the law. Plaintiff does not allege that he is a member of a protected class or that the government treated him differently than others who are similarly situated. Plaintiff argues that the complaint alleges that the CJDRC excluded his submissions from the record while accepting submissions from other participants. Plaintiff's Response (Doc. #94) filed April 9, 2026 at 9 (citing Verified Complaint (Doc. #1), ¶¶ 71–73). The complaint, including paragraphs 71 through 73, does not allege that the CJDRC accepted submissions from other participants, or that it excluded plaintiff's submissions on account of his membership in a protected class. Plaintiff fails to state an equal protection claim.

### 4. Due Process

Plaintiff alleges that the individual defendants interfered with his fundamental right to due process under the law. Defendants argue that the complaint does not make clear what actions allegedly violated plaintiff's due process rights and does not even specify whether plaintiff alleges a violation of substantive due process or procedural due process. The Court construes plaintiff's claim as a procedural due process claim.[9]

---

[9] The Supreme Court recognizes two types of substantive due process claims: (1) claims that the government has infringed a "fundamental" right and (2) claims that government action deprived a person of life, liberty or property in a manner so arbitrary it shocks the judicial conscience. See Stepp v. Lockhart, 168 F.4th 1286, 1313 (10th Cir. 2026). Where plaintiff challenges executive action, as here, the Court applies the shocks-the-conscience approach. Id. To state a claim for an executive violation of substantive due process rights, plaintiff must allege

(continued . . .)

To state a procedural due process claim, plaintiff must allege that (1) he possessed a constitutionally cognizable liberty or property interest to which due process protection applied; and (2) defendants did not afford him a level of process which was constitutionally sufficient. PJ ex rel. Jensen v. Wagner, 603 F.3d 1182, 1200 (10th Cir. 2010). A property interest is created when a person has secured an interest in a specific benefit to which the individual has "a legitimate claim of entitlement." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). At will employees lack a property interest in continued employment. Coleman v. Utah State Charter Sch. Bd., 673 F. App'x 822, 828 (10th Cir. 2016).

Defendants argue that plaintiff does not identify a protected property interest. Plaintiff argues the Colorado FCA, Colo. Rev. Stat. § 24-31-1204(8), expressly prohibits termination of employment in retaliation for reporting suspected false claims for payment and therefore creates a protected property interest in his position as Executive Director of the CCJD. The Colorado FCA creates a cause of action for some instances of retaliation. It does not transform plaintiff's at will employment into a protected property interest. See Butler v. City of Prairie Vill., 961 F. Supp. 1470, 1474–75 (D. Kan. 1997), aff'd in part, rev'd in part, 172 F.3d 736 (10th Cir. 1999).

Defendants argue that plaintiff also fails to identify what process he claims he is due. Plaintiff argues that he has a liberty interest in receiving a fair hearing, and defendants denied him access to an impartial tribunal by filling the judicial oversight agencies with conflicted appointees. Response (Doc. #94) at 8. The complaint identifies only two hearings, and they do not implicate plaintiff's liberty interests. See Verified Complaint (Doc. #1), ¶ 5 (plaintiff failed to receive

---

⁹(. . . continued)
a (1) deprivation of life, liberty or property and (2) executive action that shocks the conscience. Lindsey v. Hyler, 918 F.3d 1109, 1115 (10th Cir. 2019); Moore v. Guthrie, 438 F.3d 1036, 1040 (10th Cir. 2006). Plaintiff does not state a substantive due process claim under these tests.

hearing before Colorado Civil Rights Commission for administrative claims of discrimination and retaliation);[10] id., ¶ 71 (plaintiff delivered oral statements at CJDRC public hearing).  Therefore, plaintiff fails to state a claim for denial of due process.[11]

### 5.  Federal False Claims Act

Plaintiff alleges that by suppressing his speech, defendants unlawfully interfered with his right to report evidence of false claims under the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 et seq.  Verified Complaint (Doc. #1), ¶ 78.  Defendants argue that plaintiff does not state a claim because he does not allege that any defendant took any action which the FCA prohibits or that plaintiff complied with any requirement for a private person to bring an FCA claim.

The FCA authorizes the federal government to bring suit to recover damages for false claims for payment.  31 U.S.C. § 3729(a)(1).  The *qui tam* provisions of the FCA authorize a private person, known as a relator, to initiate FCA actions for the benefit of the federal government and to share in any recoveries.  See 31 U.S.C. § 3730(b); United States ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S. 419, 424 (2023).

Here, the complaint does not allege that defendants submitted false payment claims to the federal government, or that federal funds reimbursed any false claims.  As best the Court can ascertain, the complaint alleges that in paying off a former state government official to avoid claims of discrimination, the Colorado judicial branch and other state government entities misused

---

[10]    The Court has already found that Aubrey Sullivan, Director of the Colorado Civil Rights Division, is entitled to absolute immunity.

[11]    Defendants argue that plaintiff fails to state a claim under the Fifth Amendment because the Due Process Clause of the Fifth Amendment applies only to action by the federal government.  Plaintiff alleges conduct only by state actors and entities; therefore, he fails to state a claim under the Fifth Amendment.  Koessel v. Sublette Cnty. Sheriff's Dep't, 717 F.3d 736, 748 n.2 (10th Cir. 2013).

Colorado state funds.  The false claims which plaintiff alleges appear to be exclusively related to state—not federal—interests.  Therefore, plaintiff fails to state a claim under the FCA.  See United States ex. rel. Smith v. Boeing Co., 825 F.3d 1138, 1148 (10th Cir. 2016) (FCA extends only to frauds committed against United States); Costner v. URS Consultants, Inc., 153 F.3d 667, 677 (8th Cir. 1998) ("claims" within meaning of FCA must have purpose and effect of causing United States to pay out money it is not obligated to pay).

### 6.  Violations Of State Law

Plaintiff alleges that defendants violated the Colorado Constitution and the Colorado FCA, Colo. Rev. Stat. § 24-31-1204(8).  Verified Complaint (Doc. #1), ¶ 78.  Defendants argue that plaintiff cannot use Section 1983 as a vehicle to assert violations of state law.

Section 1983 only provides a cause of action for violations of the United States Constitution and federal law, not state constitutions or statutory law.  See, e.g., D.L. v. Unified Sch. Dist. No. 497, 596 F.3d 768, 776 (10th Cir. 2010).  Therefore, plaintiff fails to state claim for violations of state law under Section 1983.

### 7.  Conspiracy To Deny Constitutional Rights

In Count 2, plaintiff alleges that in violation of Section 1985, defendants conspired to deny his constitutional rights.[12]  Defendants argue that the complaint contains only bare legal

---

[12]    Conspiracy allegations are strewn throughout the complaint, but only Count 2 cites Section 1985, "Conspiracy to interfere with civil rights."  Specifically, plaintiff claims violations of subsections (2) and (3).  Section 1985(2) states as follows:

If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or

(continued…)

conclusions and no factual allegations suggesting conspiracy.

To state a valid claim for conspiracy under Section 1985, plaintiff must allege specific facts showing an agreement and concerted action among defendants. Tonkovich, 159 F.3d at 533; see Brooks v. Gaenzle, 614 F.3d 1213, 1227–28 (10th Cir. 2010) (plaintiff must allege meeting of minds, agreement among defendants or general conspiratorial objective), abrogated on other grounds by Torres v. Madrid, 592 U.S. 306 (2021). Conclusory allegations of conspiracy are

---

[12](… continued)
indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws[.]

42 U.S.C. § 1985(2). Section 1985(3) provides as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

insufficient.  Tonkovich, 159 F.3d at 533.

Several paragraphs in the complaint mention a conspiracy or a scheme, but the complaint is devoid of specific facts which plausibly suggest an agreement and concerted action among defendants to violate plaintiff's rights.  See, e.g., Verified Complaint (Doc. #1), ¶¶ 2–4, 78, 81. Plaintiff argues that circumstantial evidence of a conspiracy is "unusually strong" in this case and is sufficient to plead an agreement.  Response (Doc. #94) at 10.  He argues that internal Judicial Department emails document real-time coordination among the Justices, the Attorney General's Office and other named defendants.  Id.  The complaint does not discuss any such emails, however, and as noted earlier, the Court declines to comb through 3,700 pages of attachments digging for facts that support plaintiff's conclusory conspiracy claims.  See Cohen, 369 F. App'x at 957. Plaintiff further argues that other circumstances, including the appointment of conflicted officials across several government bodies, show a coordinated pattern.  Again, the complaint does not allege those circumstances—at least not in a manner that supports an inference that two or more defendants agreed or had a meeting of the minds.  The naked allegations in the complaint that discuss a conspiracy to deprive plaintiff of federal rights are conclusory and do not state a claim under Section 1985.  See Tonkovich, 159 F.3d at 533.

Defendants argue that plaintiff's conspiracy claims also fail because the complaint does not allege facts to support the additional elements of a claim under Sections 1985(2) or (3).

The first part of 42 U.S.C. § 1985(2) creates a private right of action for damages based on certain forms of interference with federal judicial proceedings.  See Kush v. Rutledge, 460 U.S. 719, 724 (1983).  To state a claim under the first part of Section 1985(2), plaintiff must prove three elements: (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified and (3) injury to plaintiff.  Hogan v.

-24-

Winder, 762 F.3d 1096, 1113 (10th Cir. 2014).  The complaint does not allege that any defendant's actions were designed to intimidate or deter plaintiff from appearing or testifying in a federal judicial proceeding.  The second part of Section 1985(2) applies to conspiracies to obstruct the course of justice in state courts.  Kush, 460 U.S. at 725.  The CCJD and CJDRC are not courts. Therefore, Section 1985(2) does not apply to the CCJD or CJDRC.  See Sims v. Unified Gov't of Wyandotte Cnty./Kan. City, 120 F. Supp. 2d 938, 957 (D. Kan. 2000) (Section 1985(2) does not apply to administrative proceedings).

To state a claim under 42 U.S.C. § 1985(3), plaintiff must prove (1) the existence of a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993).  Section 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); see also Brown v. Reardon, 770 F.2d 896, 906– 07 (10th Cir. 1985) (Supreme Court has consistently required showing of class-based animus to establish Section 1985 action).

Defendants correctly argue that plaintiff fails to allege that any defendant conspired to interfere with his rights because of racial or class-based animus.  Plaintiff's argument that Section 1985(3) protects a government whistleblower lacks legal support.  See Wilhelm v. Cont'l Title Co., 720 F.2d 1173, 1176 –77 (10th Cir. 1983) (Supreme Court precedent signals classes covered by Section 1985 should not be extended beyond those already expressly provided).  The Court therefore dismisses plaintiff's Section 1985(3) claim.

Because a Section 1986 claim requires plaintiff to establish a Section 1985 claim and

plaintiff fails to do so here, his Section 1986 claim (Count 3) fails as well.[13]  See Brown, 770 F.2d at 907 (affirming dismissal of Section 1986 claim because it is dependent upon existence of valid claim under Section 1985).

### B.  Clearly Established Law

Plaintiff fails to allege a violation of his constitutional rights, much less that such rights were clearly established at the time of the alleged violation.  Pearson, 555 U.S. at 231.  The individual defendants are entitled to qualified immunity.

## V.    State Law Claims

Plaintiff alleges state law claims against the individual defendants for retaliation in violation of the Colorado FCA, Colo. Rev. Stat. § 24-31-1204(8), and for equitable reimbursement of attorney fees which the State of Colorado incurred to defend individual defendants.

The Court has supplemental jurisdiction over state law claims which are integrally related to a federal claim, but it may refuse to exercise supplemental jurisdiction if it dismisses the federal law claims.  See 28 U.S.C. § 1367(a), (c)(3); see also Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006).  The Court usually dismisses supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.  United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002) (suggesting district court should retain jurisdiction only if parties have expended great deal of time and energy on state law claims).  The Court

---

[13]    Section 1986 provides that "[e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable[.]"  42 U.S.C. § 1986.

considers the nature and extent of pretrial proceedings, judicial economy, convenience and whether retaining jurisdiction would serve fairness. Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995). In the usual case, the balance of factors points toward declining to exercise jurisdiction over remaining state law claims. McWilliams v. Jefferson Cnty., 463 F.3d 1113, 1118 (10th Cir. 2006).

Here, defendants have not yet answered the complaint and the parties have not engaged in discovery. At this preliminary stage, the Court finds no persuasive reason to exercise supplemental jurisdiction to decide the merits of plaintiff's state law claims. See Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (absent compelling reasons to contrary, notions of comity and federalism demand that state court try its own lawsuits). Having determined that plaintiff's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claims (Counts 4 and 7) based on considerations of judicial economy, convenience, fairness and comity. See Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997).[14]

---

[14] As noted earlier, Counts 5 and 6 seek writs of mandamus and equitable relief as to other claims in the complaint and do not assert independent causes of action. A writ of mandamus is designed to compel government officers to perform nondiscretionary duties. Pittston Coal Grp. v. Sebben, 488 U.S. 105, 121 (1988). To grant mandamus relief, the Court must find (1) plaintiff's clear right to the relief sought; (2) defendant's plainly defined and preemptory duty to do the act in question; and (3) no other adequate available remedy. Wilder v. Prokop, 846 F.2d 613, 620 (10th Cir. 1988). In a Section 1983 action, a plaintiff may seek prospective declaratory and injunctive relief against a state official in his official capacity to end a continuing violation of federal law. Chilcoat v. San Juan Cnty., 41 F.4th 1196, 1214 (10th Cir. 2022). These remedies can overlap in certain circumstances. The Court has found that plaintiff fails to state a federal claim on which relief can be granted and has declined to exercise supplemental jurisdiction over plaintiff's state law claims. Therefore, plaintiff is not entitled to *any* relief.

Even if plaintiff could assert an independent claim for writs of mandamus against Governor Polis and AG Weiser under the All Writs Act, 28 U.S.C. § 1651, his claim would fail. The appointment powers of the Governor and the Attorney General are clearly discretionary duties.

(continued . . .)

-27-

## VI.    Leave To Amend The Complaint

In opposing defendants' motion to dismiss, plaintiff argues that "[i]n the alternative, if this Court identifies any deficiency in the pleading, the Plaintiff respectfully requests leave to amend pursuant to Federal Rule of Civil Procedure 15(a)(2)."  Response (Doc. #94) at 16.  Defendants urge the Court to reject plaintiff's request for leave to amend because (1) his request, embedded in an opposition, does not properly put the issue before the Court, see Order (Doc. #89) filed March 27, 2026 at 3 ("a motion for relief should not be included in a response or reply to the original motion, but must be filed as a separate document"); (2) plaintiff could have filed an amended complaint as of right within 21 days after defendants filed their motion to dismiss under Rule 15(a)(1)(B), Fed. R. Civ. P., but he did not do so; and (3) plaintiff cannot show a valid basis for leave to amend due to futility, bad faith, undue delay and prejudice to defendants.

The Court overrules plaintiff's request to amend the complaint because the issue is not properly before the Court.  A motion for relief must be filed in a separate document, see Order (Doc. #89) at 3, and plaintiff must attach as an exhibit a copy of the proposed amended complaint, see D.C.COLO.LCivR 15.1(b).  Plaintiff made his request to amend in the last paragraph of his response to defendants' motion to dismiss and did not attach a proposed amended complaint. See Response (Doc. #94) at 16.  Furthermore, plaintiff has had ample time and opportunity to amend

---

[14](. . . continued)
See Colo. Const. art. VI, § 23(3)(a)-(b) (governor has authority to appoint and remove attorney and citizen members of CCJD); id., § 24 (attorney and citizen members of judicial nominating commissions appointed by majority action of governor, attorney general and chief justice; all other members appointed by governor); People ex rel. Duncan v. Scott, 307 P.2d 191, 193 (Colo. 1957) (appointive power vested in governor requires exercise of judgment and discretion; "[e]xecutive action may be questioned or controlled by the courts only when such action is ministerial in character, and requires the exercise of neither judgment nor discretion").  The Court cannot issue a writ of mandamus to compel state officials to perform discretionary duties.

his complaint and has declined to do so.  The Court assumes that plaintiff, who is a lawyer, has already alleged his strongest case, and he offers no clue as to the nature of any proposed amendment.  Open-ended leave to amend to add unspecified allegations would defeat the objectives of Rule 1, Fed. R. Civ. P., by unnecessarily prolonging this litigation and increasing its cost with no incremental progress toward the just determination of this action.

**IT IS THEREFORE ORDERED** that defendant's Motion To Dismiss (Doc. #59) filed March 18, 2026 is **SUSTAINED**.  Pursuant to Rule 12(b)(1), Fed. R. Civ. P., the Court dismisses for lack of jurisdiction all claims against the Colorado Supreme Court, the Colorado Commission on Judicial Discipline and the Colorado Judicial Discipline Rulemaking Committee.  Pursuant to Rule 12(b)(6), Fed. R. Civ. P., the Court dismisses Counts 1, 2 and 3 for failure to state a claim on which relief can be granted.  The Court declines to exercise supplemental jurisdiction over plaintiff's state law claims (Counts 4 and 7) and dismisses those claims without prejudice.  Counts 5 and 6 only seek writs and equitable relief as to other claims in the complaint and do not assert independent causes of action, and to the extent that they pertain to federal claims, the Court therefore dismisses them as moot.  To the extent that Counts 5 and 6 relate to state claims, the Court declines to exercise supplemental jurisdiction over them and dismisses them without prejudice.  No claims remain against any defendants.

Dated this 11th day of August, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

-29-